# EXHIBIT   D

RESOLUTION OF THE TOWN BOARD
ADOPTING LOCAL LAW NO. 5 - 2016

WHEREAS, a proposed local law entitled,

"A LOCAL LAW AMENDING THE ZONING MAP AND CHAPTER 290
(ZONING) OF THE LOCAL LAWS OF THE TOWN OF CLARKSTOWN WITH
RESPECT TO REGULATING NON-RESIDENTIAL USES IN RESIDENTIAL
ZONING DISTRICTS"

was introduced by Councilperson Borelli at a Town Board meeting

held on December 17, 2015, and

WHEREAS, the Town Board of the Town of Clarkstown, by

resolution adopted on December 17, 2015, directed that a public

hearing be held on March 8, 2016 at 8:00 p.m., or as soon

thereafter as possible, relative to such proposed local law, and

WHEREAS, notice of said hearing was duly prepared and

published in the Journal News on February 29, 2016, and

WHEREAS, by resolution adopted December 17, 2015, the Town

Board referred the proposed local law to the Clarkstown Planning

Board for their comment, pursuant to §290-33 of the Zoning Local

Law of the Town of Clarkstown, and to the Rockland County

Commissioner of Planning, pursuant to General Municipal Law

§§239-l & m, and

WHEREAS, a public hearing was held by the Town Board of the

Town of Clarkstown on March 8, 2016 and continued on March 22,

2016 to allow time to review comments made at the March 8th

meeting, and

Adopted 3/22/16

WHEREAS, a pdf copy of the proposed local law in final form, which addresses some of the comments the Town Board received at the March 8, 2016 meeting, was sent in electronic format by electronic means to the desks of the Supervisor and the Councilpersons at their office at the Clarkstown Town Hall, 10 Maple Avenue, New City, New York, on March 14, 2016, and

WHEREAS, the Town Board of the Town of Clarkstown has reviewed the Environmental Assessment Form and proposed Negative Declaration, prepared by the Jose Simoes, Principal Town Planner, as agent for the Town Board, pursuant to SEQRA, and which the Board has discussed and considered in making its decision herein, and

WHEREAS, by resolution dated February 10, 2016, the Town of Clarkstown Planning Board found that the current draft of the proposed local law, as amended with changes recommended by the Special Board for the Implementation of the Comprehensive Plan and some modifications recommended by the Planning Board and which said changes and modifications were also reviewed and accepted by the Rockland County Department of Planning, is consistent with the aims and principles embodied in Chapter 290 and the Comprehensive Plan, and the Planning Board, therefore, recommends in favor of the proposed final version of the local law, and

WHEREAS, the Town Board has clarified and addressed the majority of the recommendations of the Rockland County Department of Planning, dated February 19, 2016, in the current draft of the local law, and

WHEREAS, the Town Board has determined to adopt this amendment to the Town Code in accordance with the recommendations outlined in the memorandum from Jose Simoes, Principal Town Planner, dated February 26, 2016, except for the following numbered items which require a supermajority (majority plus one) affirmative vote:

No. 3 — Section 290-21D(1) is not proposed to be amended and should be amended to include all utility/drainage easements.

Reason: Underground utilities and drainage easements should not be deducted from the gross lot area as they do not pose the potential hazards or impediments to development as overhead utilities. An unrelated inconsistency in this section was corrected.

No. 9 — The definition for dormitories should be amended to also include that the sleeping facility is associated with an educational or public institution, including religious institutions, as well as camps.

Reason: The requirement that Dormitories be associated with educational institutions or camps is a Special Permit

3

subject to specified conditions in residential zoning districts and should not be added to the definition of Dormitories, as Dormitories may or may not be associated with these uses in certain zones or circumstances;

NOW, THEREFORE, be it

RESOLVED, that based upon the EAF prepared by Jose Simoes, Principal Town Planner, acting as agent to the Town Board as lead agency, it is hereby determined that the proposed action is a Type I action under SEQRA that will not have the potential to adversely affect the environment, (2) that will protect the Town's residential neighborhoods from out of character uses, (3) that overall development potential will be slightly lowered, and (4) is consistent with the Town's Comprehensive Plan, and be it

FURTHER RESOLVED, that the Town Board has reviewed and hereby accepts the attached Negative Declaration, and directs that same be filed, distributed and published pursuant to 6 NYCRR Part 617.7(b), and be it

FURTHER RESOLVED, that a copy of this resolution be filed with the Rockland County Commissioner of Planning, pursuant to General Municipal Law §239-m(6), and be it

FURTHER RESOLVED, that Local Law No. 5 - 2016 entitled:

"A LOCAL LAW AMENDING THE ZONING MAP AND CHAPTER 290 (ZONING) OF THE LOCAL LAWS OF THE TOWN OF CLARKSTOWN WITH RESPECT TO REGULATING NON-RESIDENTIAL USES IN RESIDENTIAL ZONING DISTRICTS"

is hereby ADOPTED and passed by a majority plus one affirmative vote of the Town Board of the Town of Clarkstown, the vote for adoption being as follows:

George Hoehmann, Supervisor . . . . . *aye*
Frank Borelli, Councilman . . . . . . *aye*
Stephanie G. Hausner, Councilwoman . . *aye*
John J. Noto, Councilman . . . . . . *aye*
Valerie Moldow, Councilwoman . . . . . *aye*

The Clerk of the Town of Clarkstown is directed to file the local law pursuant to Section 27 of the Municipal Home Rule Law, and be it

FURTHER RESOLVED, that the GIS Coordinator for the Town of Clarkstown is hereby authorized and directed to amend the Zoning Map as set forth herein.

Dated:  March 22, 2016

TB 03-22 TA RES Adopt LL-Amend Zoning Map-Non-Residential Uses-pm

# STATE ENVIRONMENTAL QUALITY REVIEW
## NEGATIVE DECLARATION
## NOTICE OF DETERMINATION OF NON-SIGNIFICANCE

Lead Agency: Town Board
Town of Clarkstown
10 Maple Avenue
New City, NY 10956

<u>Date:</u> March 8, 2016

This notice is issued pursuant to part 617 of the implementing regulation pertaining to Article 8 (State Environmental Quality Review Act) of the Environmental Conservation Law.

The Town Board of the Town of Clarkstown, as lead agency, has determined that the proposed action described below will <u>not</u> have a significant impact on the environment, and a Draft Environmental Impact Statement will not be prepared.

<u>Name of Action:</u>  Local Law Amending the Zoning Map and Chapter 290 of the Town Code of Clarkstown - Regulation of Non-Residential Uses in Residential Zoning Districts

<u>Location:</u>  Clarkstown, NY

<u>SEQRA Status:</u> Type I

<u>Description of Proposed Action:</u>  The General Residence, Low Density (RG-1) and General Residence, Medium Density (RG-2) zoning districts are proposed to be replaced by Multifamily (MF-2 and MF-3) zoning districts.

The majority of the proposed text amendment concerns the Town's residential zones (R-160, R-80, R-40, R-22, R-15, R-10, MF-1, MF-2, MF-3, RG-1 and RG-2).  Specifically, the types of non-residential uses and their permitted locations and physical configurations within residential areas are being modified.  A number of uses deemed unfit for residential areas are proposed to be removed, and undefined uses were added along with proposed accompanying regulations. Similar modifications are also being made to the AAR zone, which is a floating zone that can be applied in certain residential and nonresidential districts within the Town given specific conditions.  Other changes are proposed to the Town Code which will affect land use projects throughout the Town.  These proposed changes include a provision that would prohibit the Town Board, Planning Board or Zoning Board of Appeals from reviewing and approving any land use proposal until the owner of property pays the Town any outstanding taxes or fees and resolves any existing Code violations and a requirement that all special permits within residential zones be renewed every five years.

<u>Intent of Proposed Action:</u>  The intent of this proposed Local Law is to protect the Town's residential neighborhoods from out of character uses.

This proposed Local Law advances the following goals and objectives of the Comprehensive Plan:

1. Preserve the suburban and remaining semi-rural character of the Town.
2. Develop zoning and building regulations that reduce or restrict odors, sounds, commercial traffic, light pollution and other negative environmental impacts on residential areas.
3. Expand initiatives to safeguard neighborhoods from inappropriately scaled development.

<u>Potential Impacts and Support of Determination:</u>   The proposed Zoning Map amendment involves eliminated one type of multifamily zoning from the zoning map and replacing it with another similar existing multifamily zoning type.  Very little vacant General Residence, Low Density (RG-1) and General Residence, Medium Density (RG-2) zoned land exists within the Town.  The MF-2 and MF-3 zoning districts were created in 1988 and were originally intended to replace the RG zones.  The housing densities permitted by the MF-2 and MF-3 are slightly lower than those of the RG-1 and RG-2 zones, respectively.  Thus overall development potential will be slightly lowered were this Law to take effect and the change to the total residential capacity of the Town as a result of this change would be negligible.

As stated, it is the overall goal of this text amendment to reduce negative impacts generated by non-residential uses within residential zoning districts.    The proposed amendment would decrease the types of non-single-family residential uses permitted in residential zoning districts. Many of the remaining permitted non-single-family residential uses would be restricted to State and County roadways, which are better suited to handle more intensive uses.  Additionally, the intensity of these uses will be further reduced by new limits on principal building coverage and total lot coverage within residential zones.  Further oversight will be added to Special Permit uses, by requiring them to renew their Permit every 5 years.

Significant changes to demand for public services, public transportation, traffic, air quality, energy use and demand, stormwater runoff and the community character of the area proposed for rezoning or affected by the proposed text amendment are not anticipated.  All development within these areas will be analyzed on a per site basis and additional studies will be mandated by the Planning Board as required under the provisions of SEQRA.

For further information please refer to the Synopsis of the Local Law.

<u>Contact Person:</u>  Jose Simoes
Town Planner
10 Maple Avenue
New City, NY 10956
(845-639-2070)

RESOLUTION REFERRING AND SETTING A PUBLIC HEARING ON A PROPOSED LOCAL LAW ENTITLED, "A LOCAL LAW REGULATING NON-RESIDENTIAL USES IN RESIDENTIAL ZONING DISTRICTS"

WHEREAS, Councilperson *Borelli*               , a member

of the Town Board of the Town of Clarkstown has introduced a

proposed local law entitled,

"A LOCAL LAW REGULATING NON-RESIDENTIAL USES IN RESIDENTIAL ZONING DISTRICTS"

and

WHEREAS, the proposed local law is to regulate non-

residential uses in residential zoning districts;

NOW, THEREFORE, be it

RESOLVED, that the proposed local law be referred to

the Clarkstown Planning Board for report pursuant to Section

290-33 of the Zoning Local Law of the Town of Clarkstown and

to the Rockland County Commissioner of Planning pursuant to

Sections 239-1 and 239-m of the General Municipal Law for

report, and be it

FURTHER RESOLVED, that for the purposes of the New York

State Environmental Quality Review Act (SEQRA), the Town

Board determines that it shall act as lead agency and Jose

Simoes, Principal Planner for the Town of Clarkstown, is

hereby authorized and directed to act as agent for the Town

Board with respect to SEQRA review, and be it

FURTHER RESOLVED, that a public hearing, pursuant to

§20 of the Municipal Home Rule Law, be held at the

Auditorium of the Town Hall, 10 Maple Avenue, New City, New

*Adopted 12/17/15*

York on March 8, 2016 at 8:00 p.m., or as soon thereafter as possible, relative to such proposed local law, and be it

FURTHER RESOLVED, that the Town Attorney prepare notice of said hearing, and that the Town Clerk cause same to be published and posted as aforesaid and file proof thereof in the Office of the said Clerk

Dated:   December 17, 2015

TB 12-17 TA RES Refer-Public Hearing LL Land Development-Residential Areas-pm

TOWN OF CLARKSTOWN

LOCAL LAW NO. 5 - 2016

Be it enacted by the Town Board of the Town of Clarkstown as follows:

## Section 1. Title

A Local Law Amending the Zoning Map and Chapter 290 of the Town Code of Clarkstown Regulating Non-Residential Uses in Residential Zoning Districts

## Section 2. Legislative intent.

The purpose of this Local Law is to amend the Zoning Map and Chapter 290 of the Town Code consistent with the following goals and objectives of the Comprehensive Plan:

1. Preserve the suburban and remaining semi-rural character of the Town.

2. Develop zoning and building regulations that reduce or restrict odors, sounds, commercial traffic, light pollution and other negative environmental impacts on residential areas.

3. Expand initiatives to safeguard neighborhoods from inappropriately scaled development.

## Section 3. Zoning Map Amendment – Replacement of RG-1 and RG-2 Zoning Districts with MF-2 and MF-3 Zoning Districts

The following changes shall be made to the Zoning Map of the Town of Clarkstown:

All RG-1 zones shall be changed to MF-2 zones.

All RG-2 zones shall be changed to MF-3 zones.

## Section 4. Amendments to Use Tables

The following changes shall be made to 290-11A – Use Tables:

Table 1 (R-80), Table 2 (R-40), Table 3(R-22), Table 4 (R-15), Table 5 (R-10), Table 6 (RG-1), Table 7 (RG-2), Table 18 (R-160) and Table 19 (MF-1, MF-2 and MF-3) are to be removed and replaced with the new Table 1 - Residential Zoning Districts Land Use (Attachment 1 of this Local Law)

1

The Residential Zoning Districts Land Use shall become Table 1 and all following tables shall be renumbered accordingly.

References to the removed tables throughout the Town Code shall be altered to refer to the Residential Zoning Districts Land Use Table.

## Section 5. Addition of Residential Use Parking and Loading Table

Add a new table, "Table 2 – Residential Zoning Districts Parking and Loading Requirements," (Attachment 2 of this Local Law).

## Section 6. Amendments to Bulk Table

The following changes shall be made to §290-11B – Table 16, General Bulk Regulations:

Remove RG-1 and RG-2 rows from Table 16 General Bulk Regulations.

Insert CO and COS rows from Table 21, General Bulk Regulations (CO/COS District) to Table 16.

Add notes 41 thru 47 from Table 21 to Table 16, General Bulk Regulations.

Remove Table 21, General Bulk Regulations (CO/COS District) from Town Code.

Add new Group row, "N," to R-10 row, which shall read as follows:

| Zone | Group | For Use listed below | Max. Floor Area Ratio | Min. Lot Area | Min. Lot Width | Required Front Yard Depth | Required Side Yard Width | Total Width Both Required Side Yards | Required Rear Yard Depth | Max. Bldg. Height in Ft. and In. per Ft. of Distance from DSL |
|------|-------|----------------------|----------------------|---------------|----------------|---------------------------|--------------------------|--------------------------------------|--------------------------|--------------------------------------------------------------|
| R-10 | N | Two-Family Residences (See Note No. 48) | 0.20 (See Note No. 31) | 15,000 | 100 | 30 | 25 (See Note No. 14) | 50 | 50 (See Note No. 14) | 10" (See Note No. 38) |

Add Note 48, which shall read:

These uses shall have minimum frontage of 100' and access to either a State or County major or secondary road as classified on the Town Official Map.

Add Note 48 reference to R-160, Group C, Column 3; R-80, Group C, Column 3; R-40 Group F, Column 3; R-22, Group I, Column 3; R-15, Group L, Column 3 and R-10, Group N, Column 3.

Add two new columns, "12 – Maximum Principal Buildings(s) Coverage" and "13 – Maximum Total Lot Coverage" which shall read as follows:

| District | Group | Column 12 Maximum Principal Buildings(s) Coverage | Column 13 Maximum Lot Coverage (including Principal Building(s) coverage) |
|---|---|---|---|
| R-160 | A | 2.50% | 5% |
| | C | 2.50% | 5% |
| R-80 | A | 5.00% | 10% |
| | C | 5.00% | 10% |
| R-40 | D | 6.00% | 12% |
| | F | 6.00% | 18% |
| R-22 | G | 10.00% | 20% |
| | I | 7.00% | 21% |
| R-15 | J | 11.50% | 23% |
| | L | 6.60% | 20% |
| R-10 | M | 12.50% | 25% |
| | N | 10.00% | 20% |
| | O | 5.00% | 15% |

Change R-10 row, Group O, Column 5 value from 40,000 to 80,000.

Add the following definition, alphabetically placed, to §290-3B:

BUILDING, PRINCIPAL:  A building in which is conducted the principal use of the lot on which it is located.

## Section 7. Additional Regulations for Multifamily Residential Uses

Add the following definition, alphabetically placed, to §290-3B:

MULTI-FAMILY:  See Multiple Residence.

Modify the table within §290-20F(2) adding a new row, to be inserted below the "Efficiency" row within the MF-2 section of the table, which shall read as follows:

| Square Feet of Land Area per Unit | Units Per Acre | Bedrooms in Unit |
|---|---|---|
| 3,800 | 11.5 | 1 |

3

Modify §290-20F(2)(a), to read as follows:

Maximum principal buildings(s) coverage and lot coverage shall be as follows:

| District | Maximum Principal Buildings(s) Coverage | Maximum Lot Coverage (including Principal Building(s) coverage) |
|----------|------------------------------------------|----------------------------------------------------------------|
| MF-1 | 16.50% | 33% |
| MF-2 | 20.00% | 40% |
| MF-3 | 25.00% | 50% |

Modify subsection §290-20F(8)(a), to read as follows:

Definitions. For purposes of this section, a "nonconforming building" in the Multifamily (MF-1, MF-2 and MF-3) Districts shall be a building which does not conform to the bulk requirements set forth herein. A "nonconforming use" shall be a use which does not conform to the permitted use requirements set forth herein.

Delete subsections §290-20F(8)(b)[1] & [2] in their entirety.

Modify subsection §290-20F(8)(b), to read as follows:

Reserved

Add new subsections to §290-20F, which shall read:

(11) For residential uses, the following additional requirements shall apply:

(a) All open areas not used for buildings, parking spaces and driveways shall be suitably landscaped or left in their natural state, as determined by the Planning Board.

(b) A specifically designated area or areas shall be available for recreational use of the residents.

(c) In an MF-1 District, 25% of the entire tract shall be reserved as usable open space for use by all residents of the development or at the request of the applicant, prior to final site plan approval and subject to acceptance by the Town Board upon recommendation of the Parks Board and Recreation Commission, may be offered for dedication, in

4

whole or in part, to the town. Such usable open space, exclusive of any off-street parking areas and access driveways or any other paved areas, shall have no dimension of less than 30 feet, except for access, and the location thereof shall be subject to the approval of the Planning Board. The community building and recreation facilities may be located within the usable open space. In an MF-2 District, the above percentage shall be 15%. In MF-3 districts the above percentage shall be 10%. Density shall be established prior to the identification of usable open space.

(d) Facilities for refuse disposal shall be provided for all dwelling units. Collection areas shall be maintained and conveniently located for all groups of dwelling units. All storage containers for the collection of solid waste not within principal buildings shall be completely enclosed in a manner which is architecturally compatible with the principal buildings. All storage containers shall have permanently attached covers. The location of enclosures shall be subject to approval by the Planning Board.

(e) All areas intended for vehicular use, access or parking shall be paved with a hardtop surface upon a suitable subgrade of materials and to specifications acceptable to the Director of Environmental Control. The base shall be properly drained and suitably constructed to support the prospective traffic load.

(f) Open parking areas and driveways shall not be closer than 20 feet to any building or lot line.

(g) No active exterior recreation facility, such as, but not limited to, a swimming pool (to edge of fence), tennis court or other recreational facility, shall be closer than 30 feet to any building or 50 feet to any lot line or be between a building line and a public street. Locker rooms and other supporting facilities shall be considered buildings for purposes of this distance requirement between buildings.

(h) Traffic directional signs shall be provided as required by the Planning Board.

(i) All walks, outside steps, vehicular entranceways, exitways and intersections of roads shall be adequately lighted; said lighting shall not be directed on adjacent streets or properties.

(j) Buildings shall be individually identified and clearly marked with signs sufficiently illuminated to be visible from roadways or access drives at all times.

(k) Group garages, if provided, shall be architecturally compatible with principal buildings.

5

(l) Recreational areas and facilities, except where dedicated to the Town shall be solely for the use of residents of the development and their guests.

(m) Opaque fencing, aesthetically attractive on both sides, at least 6 feet in height, shall be placed along any property line abutting a nonresidential use or nonresidential zone. The Planning Board may waive this requirement where adequate fencing, properly maintained, already exists on adjacent properties.

(n) Internal roads shall be as follows: 2-way internal roads shall be at least 24 feet in width; while 1-way internal roads may be 14 feet in width if not used as parking aisles.

(o) A single access road shall be provided and paved to a width of at least 24 feet for developments of not more than 50 units. For developments in excess of 50 units, a double-paved roadway of at least 24 feet and a median of 10 feet shall be provided, or multiple single-access roads shall be provided. Notwithstanding the foregoing, the Planning Board may approve alternates if reasonable safety and access are provided. Internal roads shall be built to town specifications.

(p) The property shall have frontage on and access from a public street or streets.

(q) The property shall be served by public water and sanitary sewers.

(r) Distance between buildings. The distance between any two principal building structures shall be not less than the height of the tallest of the two buildings. The distance between any principal building and any accessory building or between two detached accessory buildings shall be not less than 20 feet for MF-1, MF-2 and MF-3, and no parking shall be located within this area. However, any other provision notwithstanding, a minimum distance of 60 feet shall be maintained between the center of any window in a habitable space other than a window in a bathroom or kitchen and any wall of the same or of another structure, the plane of which is parallel to or which intersects the plane of the wall in which said window is located at an angle of less than 90°, such distance being measured in horizontal projection at the sill level of said window.

(12) In addition, the site plan shall be accompanied by: sketches showing proposed architectural treatment; single-line floor plans showing layout of all buildings (not construction plans or structural plans) and the text of all filed or proposed restrictions concerning the use of land and buildings. The applicant shall submit a general statement describing the type of development proposed, which shall include a description of the proposed management, maintenance and ownership of the various elements of development, including:

6

(a) Dwelling unit.
(b) Common areas and facilities maintenance.
(c) Ground, building and facility maintenance.
(d) Street ownership and maintenance.

(13) The Planning Board may determine, on application for subdivision approval, if the site is appropriate for fee simple ownership-type units; in such cases, the minimum lot area for each dwelling shall be as determined by the Planning Board. The Planning Board may establish additional requirements.

(14) A community hall or space shall be provided within each residential development, with a meeting room with an area no less than 15 square feet per dwelling unit, but not less than 400 square feet in area. The location of the community hall or space shall be subject to the approval of the Planning Board.

(15) There shall be not more than 8 units in any building.

## Section 8. Additional Regulations for All Residential Zones

Add new subsection, §290-20I, which shall read:

I. Additional regulations in R-160, R-80, R-40, R-22, R-15, R-10, MF-1, MF-2 and MF-3 zoning districts shall be as follows:

(1) All new nonresidential uses are subject to continued enforcement of performance standards procedure (§290-13B)

(2) In addition to the particular requirements for any use listed in Table 1, the Board of Appeals, Planning Board, or Town Board, as specified in Table 1 for a particular use, where reasonable and appropriate, may require fences and other safety devices, landscaping, screening, access roads and buffer areas.

(3) No use listed in Table 1 shall be permitted for which there shall not be sufficient access suitably located to avert prospective traffic congestion, or hazard.

(4) Buffer areas of 75 feet shall be required for special permit uses, except home occupation use. The Planning Board shall have the authority to reduce this buffer, but in no case shall the buffer be reduced to less than the required yard dimensions of the zoning district.

(5) Parking spaces of any nonresidential use shall not be located within a required yard and shall be screened from adjoining properties by

7

permanent landscaping which may include berms or other topographic features as required by the Planning Board.

(6) All residences with an attached or included garage opening into a side yard shall have a minimum of 30 feet of side yard for access thereto.

(7) All uses other than single family residences shall have minimum frontage of 100' and access to either a State or County major or secondary road as classified on the Town Official Map.

(8) Any use in existence by virtue of a Special Permit issued by a municipal board shall be required to obtain a new Special Permit before the issuance of any building permit or within five (5) years of the effective date of this Local Law, whichever is first, regardless of whether any Special Permit was granted for that use before the enactment of this Local Law. The Special Permit shall be periodically renewed every five (5) years from the date of issuance or some other period of time as required by the applicable board.

Modify §290-21B(7) to read as follows:

Accessory buildings in required front yards. Where necessary and appropriate, the Board of Appeals may authorize any one of the following, accessory to a commercial or industrial use in R-160, R-80, R-40, R-22, R-15, R-10, MF-1, MF-2, MF-3, LS, LO, LIO, CS, RS, MRS, M or to an institutional use in any district: one dwelling unit for a caretaker; gatehouse; reception office; or watchman's post, to encroach in a required front yard, provided that such accessory building is set back at least 25 feet from the front lot line and 10 feet from any other lot line, does not cover more than 1% of the area of the lot, and has a height of no more than 25 feet.

## Section 9. Development Constraint Changes

Modify §290-21D(1) to read as follows:

Rights-of-way, easements and designated streets. 50% of any land within easements or rights-of-way for overhead utilities or within a designated street line and 100% of any land within easements or rights-of-way for ingress or egress shall not be counted as part of any minimum lot area requirement. No building or structure shall be located within any easement. However, a road may traverse an easement.

Modify §290-21D(2) to read as follows:

Land under water (applicable prior to development). Not more than 50% of the area of any lot proposed to be developed may be counted as part of any lot area if subject to the following: ponds; freshwater wetlands regulated by the Army Corps

8

of Engineers; streams; areas within the Federal Emergency Management Agency designated special flood hazard or other flood area; that portion of any freshwater wetland and any one-hundred foot control area designated by the New York State Department of Environmental Conservation. No buildings or structures may be located in such areas.

Modify §290-21D(3)(b) to read as follows:

No buildings, structures or land disturbance shall be permitted on that portion of a lot with a slope in excess of the foregoing.

Modify the following definition in §290-3B, "BUFFER AND/OR BUFFER AREA," to read:

BUFFER AND/OR BUFFER AREA: Area(s) on a lot usually within required yard areas, used to screen development or uses on adjoining properties, composed of either undisturbed or landscaped areas subject to the requirements of the Planning Board and Architecture and Landscape Commission, and located according to the provisions of the Zoning Ordinance and the requirements of the Planning Board. The required setback shall be measured from the lot line for side and rear buffers and from the designated street line for front yard buffers. The following types of uses shall not be allowed in a "buffer area":

(1) Buildings or aboveground structures.

(2) Driveways and loading areas, except a driveway for ingress and egress to and from the site only shall be allowed to cross a buffer.

(3) Parking areas or reserve parking areas.

(4) Identification sign (pylon/movement).

(5) Dumpster, trash, and recycling receptacles of any type.

(6) Other structures or uses prohibited by the Planning Board.

## Section 10. Changes to Off-Street Loading Berths and Parking

Add the following definitions, alphabetically placed, to §290-3B:

LOADING AREA: A space other than a street, public right-of-way, or required parking space, the principal use of which is for standing, loading and unloading of motor trucks, tractors, and trailers, to avoid undue interference with the public use of streets and alleys.

LOADING BERTH: A space adjacent to a loading dock, platform or dedicated receiving area other than a street, public right-of-way, or required parking space,

9

the principal use of which is for standing, loading and unloading of motor trucks, tractors, and trailers, to avoid undue interference with the public use of streets and alleys.

Modify §290-23 to read as follows:

Off-street loading berths, open or enclosed, are permitted accessory to any use except residences for one or two families, subject to §290-25. However, no off-street loading berth shall be located within a required front yard.

Modify the title of §290-25 to read as follows:

**Required Off-Street Loading Berths and Loading Areas**

Modify the title of §290-25A to read as follows:

A. Where required. Accessory off-street loading berths and loading areas shall be provided for any lot for any use specified in Column 7 of the Use Tables and Table 2 – Residential Zoning Districts Parking and Loading Requirements. Any land which is developed as a unit under single ownership and control shall be considered a single lot for the purposes of such requirements.

Modify §290-25B to read as follows:

Size, location and access. Each required loading area shall be at least 12 feet wide by 20 feet long. Each required loading berth shall be at least 12 feet wide, 33 feet long and 14 feet high and may be located either within a building or in open space but not within required accessory off-street parking spaces or accessory drives thereto. Unobstructed access at least 12 feet wide to and from a street shall be provided. Such access may be combined with access to a parking lot. All permitted or required loading berths shall be on the same lot as the use to which they are accessory, except as provided in Subsection C.

Add three new subsections, §290-25 D, E, and F which shall read:

D. Open loading berths are permitted, provided that they are not located in the required front or side yards and are not adjacent to a residential district or residential use permitted by right. No loading area shall be permitted within 50 feet of any property line, and this setback shall be screened.

E. Completely enclosed loading berths are permitted in all yard areas except the front yard; however, no enclosed loading berth, enclosed loading area or driveways serving either a loading berth or loading area shall be located within 25 feet of any property line.

F. All loading berths, loading areas and driveways serving either a loading berth or loading area shall be illuminated with indirect lighting and shall have

access only from a major or secondary road as classified on the Official Map of the Town of Clarkstown.

Modify §290-22A(2) to read as follows:

One currently registered commercial vehicle, not exceeding 6,500 pounds gross weight, may be permitted to park in an open parking space, adequately screened, in a residential zone, provided that such parking will not be in the required front or rear yard, or within 10 feet of a side lot line, except where there are driveways abutting lot lines or common driveways in use by two or more homes.

**Section 11. Transfer of Specific Requirements for Special Permits and Accessory Uses from Use Tables to Town Code Text and Changes to the Definition of Home Occupation**

Modify the following definition in §290-3B, "Home Occupation," to read:

**HOME OCCUPATION:** Any occupation, business or professional activity which results in a product or service and which is conducted in whole or in part in a dwelling or on a residentially zoned property, is clearly subordinate in space utilization and intensity to the residential use of the dwelling unit and has received a permit from the Building Inspector or the Board of Appeals.

(1) Home occupations do not include:

(a) Outside storage of equipment or material.

(b) The use or storage on site of a wheeled vehicle in excess of 6,500 pounds gross weight and no more than one wheeled vehicle other than passenger cars.

(c) Activities after the hour of 11:00 p.m. and before 7:00 a.m. on weekdays and from 11:00 p.m. to 9:00 a.m. on Saturdays and legal holidays.

(d) The keeping of goods for sale or rent.

(2) Home occupations do not include animal hospitals, morticians, limousine services, automotive-repair services, barbershops, nail salons, beauty parlors, massage establishments, restaurants, pet grooming, animal breeding or kennels or similar uses which in the opinion of the Building Inspector are not usual and customary to a home occupation.

11

Add new subsection, §290-17AC which shall read:

AC. Home Occupation - As permitted by Special Permit of the Zoning Board of Appeals, a home occupation may utilize up to 25% of habitable floor area of principal building even if it exceeds 250 square feet. If the home occupation use, including related storage, utilizes less than 25% of the habitable floor area of the existing principal residence and less than 250 square feet in the principal residence, then this may constitute an Accessory Use subject to §290-20I.

Home occupations as permitted by this Special Permit of the Zoning Board of Appeals shall be subject to the following conditions:

(1) The Board of Appeals shall make appropriate findings with respect to locations, intensity of use, parking and any other factors that may affect neighboring properties.

(2) The home occupation may be allowed in an accessory building if all yard requirements are met for said accessory building.

(3) No more than 2 employees may be permitted.

(4) Off-street parking shall be shown on a site plan, provided on the site, and shall not adversely affect neighborhood character. The Board of Appeals shall require adequate screening to protect neighboring properties. The off-street parking shall be provided without paving more than 25% of the required front yard.

(5) The home shall be the actual place of residence of the person conducting the home occupation.

(6) The home occupation may allow the use of equipment not a customary household appliance or light office equipment. The Board of Appeals shall give consideration to such factors as air quality, noise, visual impact, sewers, emissions, and any other pollution standards that may be applicable.

(7) The lawful use of any premises as a home occupation existing on May 24, 1988 may be continued although neither such use nor bulk conforms to the current regulations. Normal maintenance and repair of premises used as a nonconforming home occupation shall be permitted if it is does not extend the area of or the intensity of such use.

(8) The applicant shall provide a sworn and notarized affidavit indicating how all the aforementioned conditions will be met.

Add new subsection, §290-20I, which shall read:

I.  Home Occupation – Accessory Use.  Home occupations shall be accessory uses by right upon issuance of a permit from the Building Inspector if the use, including related storage, is located in and occupies no more than 25% of the habitable floor area of the existing principal residence and no more than 250 sq. ft. in the principal residence, whichever is less.  If said home occupation exceeds 250 sq. ft. in the principal residence the use would require a Special Permit of the Zoning Board of Appeals subject to §290-17AC.

Home occupations as accessory uses shall be subject to the following conditions:

(1) The number of persons who assist or are employed in any capacity, whether as employees, commission agents, independent contractors, partners, officers, directors or stockholders, shall not exceed 1 person outside those residing in the family unit.

(2) Visiting clientele may not exceed more than 1 vehicle per 1/2 hour.

(3) Off-street parking shall be shown on a plan and shall be provided without paving more than 25% of the required front yard.

(4) The plan shall show 2 parking spaces in addition to those which are required for the residence(s).

(5) Landscaping or other appropriate screening as required by the Building Inspector or the Director of Environmental Control of the Town of Clarkstown shall be provided to screen parking from adjoining properties.

(6) The home shall be the actual place of residence of the person conducting the home occupation.

(7) The home occupation shall not involve the on-site use or storage of any commercial vehicles or construction equipment or mechanical equipment not permanently affixed to the premises, except for 1 vehicle not over 6,500 pounds.

(8) The home occupation shall not involve the use of any chemical, mechanical or electrical equipment or fixture which is not a customary household appliance or light office equipment. This requirement shall not apply to the use of the premises as a home occupation by doctors, dentists and chiropractors.

(9) No manufacturing or assembly shall be permitted using other than manually operated equipment.

(10) There shall be no more than 1 home occupation per dwelling unit.

(11) Instructional services or sales meeting shall be limited to no more than 2 participants, including visitors, at a time.

(12) The applicant shall demonstrate that there will be no noise, odor, smoke, glare or vibration beyond the property line.

(13) Provision for dust collection or collection of similar by-products shall be provided.

(14) The lawful use of any premises as a home occupation existing on May 24, 1988 may be continued although neither such use nor bulk conforms to the current regulations. Normal maintenance and repair of premises used as a nonconforming home occupation shall be permitted if it is does not extend the area of or the intensity of such use.

(15) The applicant shall provide a sworn and notarized affidavit indicating how all the aforementioned conditions will be met.

Add new subsection, §290-20J, which shall read:

J. In the R-160, R-80, R-40, R-22, R-15 and R-10 zoning districts keeping domestic animals (except pigs) for individual domestic purposes shall be permitted provided that not more than 1 horse or cow per acre, 5 cats or dogs over 6 months old, and not more than 25 fowl shall be kept on any lot. No animals (except cats or dogs) shall be penned or housed within 50 feet of any lot line and there shall be no storage of manure, animal waste or odor-or dust-producing substance or use, except spraying or dusting to protect vegetation, within 50 ft. of any lot line, watercourse or wetland.

Add new subsection, §290-20K, which shall read:

K. Retail/Commercial Agricultural Allowable Operations.

In the R-160, R-80, R-40, R-22 and R-15 zoning districts the following commercial agriculture operations shall be permitted, provided that there shall be no greenhouse, heating plant, stable or similar animal housing, or the storage of manure of other odor-or dust-producing substance or use, except spraying or dusting to protect vegetation, within 200 ft. of any lot line, watercourse or wetland and all equipment is kept within a completely enclosed building:

(a) Nurseries, greenhouse and growing of mushrooms, provided that no smokestack shall exceed the height regulation; buildings for display and sale of agricultural products.

(b) Orchards, truck gardening and growing of other field crops and vineyards and growing of other bush and berry crops.

14

(c) Keeping, breeding and raising of cattle (including dairies), sheep, goats and horses and rental of horses, on lots of 10 acres or more. However, keeping, breeding, and raising of fowl, pigs, rabbits, fox, mink, rodents, primates and other small fur-bearing animals for any commercial or laboratory purpose is not permitted.

**Section 12. Changes to the Active Adult Residence (AAR) Zoning District and Senior Housing Requirements**

**AAR**

Modify §290-7.1(I), to read as follows:

I. Incentive density bonus. In granting an application for rezoning to an Active Adult Residence Zone, the Town Board may, in its discretion, grant up to the following maximum density bonuses:

(1) In R-22, R-15 and R-10 Zones, the maximum density bonus is equal to 100% of the maximum residential density, provided that 30% of the additional units permitted as a result of the density bonus shall constitute affordable units.

(2) In MF-1, MF-2 and MF-3 Zones, the maximum density bonus is equal to 20% of the maximum residential density, provided that 35% of the additional units permitted as a result of the density bonus shall constitute affordable units.

(3) For nonresidential zones, the maximum residential density shall be calculated by applying the zoning district of abutting residential parcels, and calculating a theoretical unit count based upon a standard subdivision map. For nonresidential parcels that abut more than one residentially zoned parcel, the maximum residential density shall be calculated by applying the zoning district of the residential parcel with the greatest percentage of property abutting the subject property. For nonresidential zones abutting R-22, R-15 and R-10 Zones, the maximum density bonus is equal to 100% of the maximum residential density, provided that 30% of the additional units permitted as a result of the density bonus shall constitute affordable units. For nonresidential zones abutting MF-1, MF-2 and MF-3 Zones, the maximum density bonus is equal to 20% of the maximum residential density, provided that 35% of the additional units permitted as a result of the density bonus shall constitute affordable units.

(4) The Town Board may, in its discretion, grant less than the maximum density bonus with a corresponding pro-rata reduction in the number of required affordable units. The density bonus shall be established on a case-by-case basis by the Town Board using comparisons of traffic, impervious surface, proposed numbers of affordable units, variety of housing types and any other

15

development-related factors the Town Board deems to be relevant, including, but not limited to, the surrounding residential zones.

Modify §290-20(G)(1)(c) to read as follows:

Maximum principal building(s) coverage shall be 20% and maximum lot coverage, which includes Principal Building(s) coverage, shall be 50% within the AAR zoning district.

Modify §290-20(G)(1)(d) to read as follows:

(d) Minimum front lot line for overall site shall be 300 feet and access to either a State or County major or secondary road as classified on the Town Official Map.

**Senior Housing**

Modify §290-17O(A)(8)(b), to read as follows:

At least 10% of the units shall be affordable units, except for Assisted Care Living Quarters.

Modify §290-17O(A)(11)(c), to read as follows:

Minimum front lot line shall be 300 feet along a State or County major or secondary road.

Add new subsection, §290-17O(A)(11)(v), which shall read:

One bedroom dwelling units shall be a maximum of 900 square feet and two bedroom units shall be a maximum of 1,200 square feet.

Add new subsection, §290-17O(B)(2)(l), which shall read:

One bedroom dwelling units shall be a maximum of 900 square feet and two bedroom units shall be a maximum of 1,200 square feet.

Modify §290-17O(A)(11)(f), to read as follows:

Maximum principal building(s) coverage shall be 33% and maximum lot coverage, which includes Principal Building(s) coverage, shall be 50%.

Modify §290-17O(A)(11)(m), to read as follows:

Reserved

Modify §290-17O(A)(11)(n), to read as follows:

Reserved

16

Modify §290-17O(B)(2)(f), to read as follows:

> Maximum principal building(s) coverage shall be 33% and maximum lot coverage, which includes Principal Building(s) coverage, shall be 66%.

Modify §290-17O(B)(2)(b), to read as follows:

> Minimum lot area shall be one acre.

Section 13. Requirements for Dormitories/Accessory Sleeping Quarters

Add the following two definitions, alphabetically placed, to §290-3B:

> **SCHOOL OF GENERAL INSTRUCTION**: Any public or private nursery, elementary, junior high, high school or college offering courses in general instruction and accredited by the New York State Education Department, offering courses at least five days per week and seven months per year.

> **DORMITORIES**: A building or part of a building containing private or semiprivate rooms which open to a common hallway, which rooms are sleeping quarters for administrative staff, faculty or students, along with bathroom, dining, cooking, laundry, lounge and recreation facilities, as required. Dormitory rooms shall not contain separate cooking, dining or housekeeping facilities, except that one dwelling unit with complete housekeeping facilities may be provided for use of a superintendent or supervising staff for every 50 dormitory rooms, or major part thereof. No more than one communal dining room shall be provided in the building or structure used for dormitory purposes. Single-family, two-family and/or other multiple residential facilities, other than that described above, are not to be considered as dormitories. Private rooms may be occupied by no more than one person and semiprivate rooms by no more than four persons.

Add new subsection, §290-17AB, which shall read:

> AB. Dormitories – Dormitories are permitted by Special Use Permit of the Planning Board only as accessory uses to, and located on the same lot as, Schools of General Instruction or camps subject to the following conditions:
>
> (1) There shall be a minimum lot area of 2,400 square feet provided per dormitory bed, exclusive of the lot area allocated and devoted to the principal and other accessory buildings on any site including the required yards and/or setbacks, buffers and parking facilities for said buildings.
>
> (2) The minimum distance between a dormitory and any other building on the lot shall be 50 feet.

17

(3) The minimum distance between any dormitory and any interior driveway shall be 25 feet.

(4) The maximum height of any dormitory shall be two stories or 25 feet, whichever is less.

(5) No dormitory room or dwelling unit shall be permitted in any cellar or basement.

(6) All dormitories shall be equipped with sprinkler and fire alarm systems in accordance with the Town of Clarkstown Fire Prevention Code and the New York State Uniform Fire Prevention and Building Codes.

(7) Required off-street parking (subject to Article VI and Table 2).

(8) Additional regulations.

(a) No trucking shall be permitted into a site from a collector or local street. No shipping or receiving of goods shall be permitted between the hours of 7:00 p.m. and 7:00 a.m.

(b) Access roads:

[1] Ingress and egress roads shall be from a State or County major or secondary road. A variance from this provision shall be deemed a use variance.

[2] Site access roads shall not be located within 100 feet of any street intersection.

(9) Floor area ratio shall be 0.30.

(10) Yard requirements:

Front Yard 100 feet
Side Yard 100 feet
Rear Yard 100 feet

## Section 14. Requirement for Payment or Resolution of Taxes, Assessments, Violations and Other Fees

Modify §290-14 to read as follows:

No variances, special permits, subdivision or site plan approvals or authorizations shall be issued, no applications therefore shall be considered, and no review shall be conducted by the Town Board, Planning Board and Zoning Board of Appeals, with respect to any premises within the Town unless and until all outstanding Code violations on said premises are resolved and all amounts due the Town in real estate taxes, special

18

assessments and any other payment chargeable to the owner or possessor of said premises, together with all penalties and interest thereon, shall have been paid in full.

## Section 15.  Table Re-Numbering and Referencing

Re-number the tables of the Town Code accordingly to reflect those tables removed and the addition of the new Tables 1 and 2.

Modify all references to the tables to reflect re-numbering.

## Section 16.  When effective.

This local law shall take effect immediately upon filing with the Secretary of State of the State of New York.

| | | | | | | | MF-1 |
|---|---|---|---|---|---|---|---|
| | | | | | | | MF-2 |
| | | | | | | | MF-3 |

| | Attachment #1 | | | | | | |
|---|---|---|---|---|---|---|---|
| | Table #1 | | | | | | |
| | Residential Zoning Districts Land Use | | | | | | |
| P=Permitted By Right | | | | | | | |
| Blank = Not Permitted | | | | | | | |
| TB = Permitted by Special Permit of the Town Board | | | | | | | |
| ZBA = Permitted by Special Permit of the ZBA | | | | | | | |
| PB= Permitted by Special Permit of the PB | | | | | | | |
| A = Permitted as General Accessory Use | | | | | | | |
| **ALL USES** | R-160 | R-80 | R-40 | R-22 | R-15 | R-10 | MF-3 |
| **RESIDENTIAL** | | | | | | | |
| Single-family detached residences | P | P | P | P | P | P | P |
| Two-family residences | | | | | | P | P |
| Multi-family Residences | | | | | | | P |
| Senior citizen housing subject to §290-170(A). | | | | PB | PB | PB | PB |
| Accommodations for superintendent which shall be part of the overall density of the site. | | | | | | | A |
| Gatehouse, reception office or watchman's post, subject to §290-21B(7). | A | A | A | A | A | A | A |
| The following private structures when provided as an integral part of an overall development: garages, tennis (and similar) courts, swimming pools,pump houses, clubhouses. Swimming pools are subject to Chapter 258 of the Town Code. | | | | | | | A |

| ALL USES | R-160 | R-80 | R-40 | R-22 | R-15 | R-10 | MF-1 MF-2 MF-3 |
|---|---|---|---|---|---|---|---|
| The following private structures: greenhouses, barns, tool sheds, garages, tennis (and similar) courts, swimming pools. Swimming pools are subject to Chapter 258 of the Town Code. | A | A | A | A | A | A | |
| Keeping not more than 2 nontransient boarders or roomers | A | A | A | A | A | A | |
| Keeping not more than 1 unoccupied trailer, or boat or commercial vehicle subject to §290-22. | A | A | A | A | A | A | |
| Keeping domestic animals (except pigs) subject to §290-20J. | A | A | A | A | A | A | |
| Keeping of not more than 3 cats or dogs over 6 months old. | | | | | | | A |
| CIVIC/RECREATION | | | | | | | |
| Private Recreational Clubs on lots not less than 10 acres in area, including golf courses, tennis clubs, beaches, marinas, yacht and similar clubs, related uses such as boat rental and picnic grounds. Accessory restaurants shall not be within 200 ft. of any lot line. | PB | PB | PB | PB | PB | PB | PB |
| Places of worship. | P | P | P | P | P | P | P |
| Preserves, parks and playgrounds | P | P | P | P | P | P | P |
| Recreation facilities, indoor and outdoor, incidental to places of worship or to schools. | A | A | A | A | A | A | |
| Day Camps on lots not less than 10 acres, subject to §290-17D. | PB | PB | PB | PB | PB | | |
| Camps, on lots not less than 10 acres, with dormitories, subject to §290-17D and §290-17AB. | PB | PB | PB | PB | PB | | |

| ALL USES | R-160 | R-80 | R-40 | R-22 | R-15 | R-10 | MF-1 MF-2 MF-3 |
|---|---|---|---|---|---|---|---|
| Community Centers, libraries, museums, art galleries and similar facilities. | PB | PB | PB | PB | PB | PB | |
| **SCHOOLS** | | | | | | | |
| Schools of general instruction. | | P | P | P | P | P | P |
| Schools of general instruction with dormitories subject to §290-17AB. | | PB | PB | PB | PB | PB | PB |
| **MEDICAL** | | | | | | | |
| Convalescent and nursing homes, and institutions for children-or the aged, licensed by the State or authorized by the Department of Health of NYS as a residential health care facility whether or not operated for profit, provided that no building is located within 100 ft. of any lot and the lot has an area of at least 4 acres. | | | | | | | TB |
| Hospice residences on lots with a minimum of 10 acres, subject to §290-17W. | TB | TB | | | | | |
| **RETAIL/COMMERCIAL** | | | | | | | |
| Commercial Agriculture Operations, subject to §290-20K. | P | P | P | P | P | | |
| Child day-care centers, when accessory to places of worship pursuant to §290-17Z. | PB | PB | PB | PB | PB | PB | PB |
| Home occupations, subject to §290-17AC. | ZBA | ZBA | ZBA | ZBA | ZBA | ZBA | |
| Home occupations subject to §290-20I. | A | A | A | A | A | A | |

| ALL USES | R-160 | R-80 | R-40 | R-22 | R-15 | R-10 | MF-1<br>MF-2<br>MF-3 |
|---|---|---|---|---|---|---|---|
| Professional offices of a doctor, psychologist, dentist, chiropractor, lawyer or accountant, engineer, or surveyor provided that the number of such offices in each development shall not exceed 1 for each 25 dwelling units or major fraction thereof, not to exceed 2,000 square feet per office. | | | | | | | A |
| Temporary structures for storage of equipment and materials used in connection with the construction of residential development, and temporary sales offices, not to exceed 2 years. The Building Inspector may extend the time period in one-year increments so long as construction and sales activities are underway. | A | A | A | A | A | A | A |
| MISCELLANEOUS | | | | | | | |
| Cemeteries on plots of at least 5 acres subject to approval of the County Legislature. | P | P | P | P | P | P | P |
| Public utility substations or pumping stations and telephone exchanges, housed in a structure that harmonizes with the character of the neighborhood and having adequate fences and other safety devices and adequate screening and landscaping provided that they provide service to the surrounding area. | ZBA | ZBA | ZBA | ZBA | ZBA | ZBA | ZBA |

| ALL USES | R-160 | R-80 | R-40 | R-22 | R-15 | R-10 | MF-1<br>MF-2<br>MF-3 |
|---|---|---|---|---|---|---|---|
| Public utility right-of-way, towers and lines, provided that they are necessary for the general welfare; neighborhood character and surrounding property values are reasonably safeguarded; and that the towers and poles conform to the height restrictions of the district. | ZBA | ZBA | ZBA | ZBA | ZBA | ZBA | ZBA |
| Reservoirs | TB | | | | | | |
| Water towers and water tanks owned and operated by a public utility, which water tank or water tower is located at or above ground, on plots of 3 acres or more. | TB | TB | TB | TB | TB | TB | TB |
| MISCELLANEOUS ACCESSORY USES | | | | | | | |
| Accessory parking, subject to Article VI and Table 2 Residential Zoning Districts Parking and Loading Requirements. | A | A | A | A | A | A | A |
| Accessory loading, subject to Article VI and Table 2 Residential Zoning Districts Parking and Loading Requirements. | A | A | A | A | A | A | A |

Attachment #2

Table #2

## Residential Zoning Districts Parking and Loading Requirements

Minimum Required Off Street Parking and Loading for Zoning Districts R-160, R-80, R-40, R-22, R-15, R-10, MF 1, 2 & 3
(Subject to Article VI )

| ALL USES | AT LEAST ONE PARKING SPACE FOR EACH: | LOADING BERTH (LB) OR LOADING AREA (LA) REQUIRED |
|---|---|---|
| Residential Districts | 1/2 dwelling unit, plus 2 spaces for any accessory home occupation or principal agricultural use. | – |
| Multi-Family Residences | ½ unit. At least ¼ of all required parking shall be enclosed. Additional guest parking shall be provide and shall be no Less than 20% of the required parking. Guest parking shall be in groups of 5 or more spaces and shall be placed to allow convenient use by guests, as determined by the Planning Board. Driveways shall not be considered as Parking spaces for purposes of meeting this requirement. | – |
| Senior Housing | Refer to §290-17O(A)(10) or §290-20G(2)(d),(3)(c) | LB |
| Private Recreational Clubs, golf courses, tennis clubs, beaches, marinas, yacht and similar clubs. | 2 members or accommodations such as lockers, whichever is greater. | LA |
| Places of worship | 200 Square Feet of Floor Area, but not less than 1 space for each 5 seats where provided. | – |
| Preserves, parks and playgrounds | 0.4 acres | – |
| Recreation facilities, indoor and outdoor, incidental to places of worship. | No additional parking required. Parking provided for Places of Worship. | – |
| Day camps | Employee | – |
| Camps with dormitories | 10 beds plus 1 for each employee | LA |
| Community Centers, libraries, museums, art galleries and similar facilities | 200 Square Feet of Floor Area, but not less than 1 space for each 5 seats where provided. | LB |
| Schools of general instruction | 12 seats or students for schools of elementary or nursery grades and 6 seats or students for other schools. | – |
| Schools of general instruction with dormitories | 12 seats or students for schools of elementary or nursery grades and 6 seats or students for other schools, plus 1 space per 4 beds for high schools and 1 space per 2 beds for post secondary schools. | LA |
| Convalescent and nursing homes and institutions for children or the aged | 4 beds, plus 1 for each employee. | LB |
| Hospice residences | 4 beds, plus 1 for each employee. | LA |
| Commercial agriculture operations | 200 Square Feet. | LA |
| Child day-care centers when accessory to places of worship | 350 Square Feet. | – |
| Professional offices of a doctor, psychologist, dentist, chiropractor, lawyer or accountant, engineer, or surveyor. | 150 square feet of gross floor area, except that this provision shall not be applicable to premises for which building permits were issued prior to September 30, 1978. | – |
| Public Utility substations or pumping stations and telephone exchanges | ½ site, plus 1 per employee. | – |

RESOLUTION ADOPTED AT TOWN BOARD MEETING MARCH 22, 2016
RESOLUTION NO. (129 '16)

RESOLUTION OF THE TOWN BOARD
ADOPTING LOCAL LAW NO. 5 - 2016

WHEREAS, a proposed local law entitled,

"A LOCAL LAW AMENDING THE ZONING MAP AND CHAPTER 290
(ZONING) OF THE LOCAL LAWS OF THE TOWN OF CLARKSTOWN WITH
RESPECT TO REGULATING NON-RESIDENTIAL USES IN RESIDENTIAL
ZONING DISTRICTS"

was introduced by Councilperson Borelli at a Town Board meeting

held on December 17, 2015, and

WHEREAS, the Town Board of the Town of Clarkstown, by

resolution adopted on December 17, 2015, directed that a public

hearing be held on March 8, 2016 at 8:00 p.m., or as soon

thereafter as possible, relative to such proposed local law, and

WHEREAS, notice of said hearing was duly prepared and

published in the Journal News on February 29, 2016, and

WHEREAS, by resolution adopted December 17, 2015, the Town

Board referred the proposed local law to the Clarkstown Planning

Board for their comment, pursuant to §290-33 of the Zoning Local

STATE OF NEW YORK
ROCKLAND COUNTY      SS:
TOWN OF CLARKSTOWN

I, JUSTIN SWEET, Town Clerk of the Town of Clarkstown, County of Rockland, hereby certify that I have
compared the foregoing copy with the information on file in the Town Clerk Department, and find the same to be a true
and correct transcript there from and the whole of such original.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the seal of the Town of
Clarkstown, this 23rd day of March 2016.

JUSTIN SWEET
Town Clerk

WHEREAS, a pdf copy of the proposed local law in final form, which addresses some of the comments the Town Board received at the March 8, 2016 meeting, was sent in electronic format by electronic means to the desks of the Supervisor and the Councilpersons at their office at the Clarkstown Town Hall, 10 Maple Avenue, New City, New York, on March 14, 2016, and

WHEREAS, the Town Board of the Town of Clarkstown has reviewed the Environmental Assessment Form and proposed Negative Declaration, prepared by the Jose Simoes, Principal Town Planner, as agent for the Town Board, pursuant to SEQRA, and which the Board has discussed and considered in making its decision herein, and

WHEREAS, by resolution dated February 10, 2016, the Town of Clarkstown Planning Board found that the current draft of the proposed local law, as amended with changes recommended by the Special Board for the Implementation of the Comprehensive Plan and some modifications recommended by the Planning Board and which said changes and modifications were also reviewed and accepted by the Rockland County Department of Planning, is consistent with the aims and principles embodied in Chapter 290 and the Comprehensive Plan, and the Planning Board, therefore, recommends in favor of the proposed final version of the local law, and

2

WHEREAS, the Town Board has clarified and addressed the majority of the recommendations of the Rockland County Department of Planning, dated February 19, 2016, in the current draft of the local law, and

WHEREAS, the Town Board has determined to adopt this amendment to the Town Code in accordance with the recommendations outlined in the memorandum from Jose Simoes, Principal Town Planner, dated February 26, 2016, except for the following numbered items which require a supermajority (majority plus one) affirmative vote:

No. 3 - Section 290-21D(1) is not proposed to be amended and should be amended to include all utility/drainage easements.

Reason: Underground utilities and drainage easements should not be deducted from the gross lot area as they do not pose the potential hazards or impediments to development as overhead utilities. An unrelated inconsistency in this section was corrected.

No. 9 - The definition for dormitories should be amended to also include that the sleeping facility is associated with an educational or public institution, including religious institutions, as well as camps.

Reason: The requirement that Dormitories be associated with educational institutions or camps is a Special Permit

3

subject to specified conditions in residential zoning districts and should not be added to the definition of Dormitories, as Dormitories may or may not be associated with these uses in certain zones or circumstances;

NOW, THEREFORE, be it

RESOLVED, that based upon the EAF prepared by Jose Simoes, Principal Town Planner, acting as agent to the Town Board as lead agency, it is hereby determined that the proposed action is a Type I action under SEQRA that will not have the potential to adversely affect the environment, (2) that will protect the Town's residential neighborhoods from out of character uses, (3) that overall development potential will be slightly lowered, and (4) is consistent with the Town's Comprehensive Plan, and be it

FURTHER RESOLVED, that the Town Board has reviewed and hereby accepts the attached Negative Declaration, and directs that same be filed, distributed and published pursuant to 6 NYCRR Part 617.7(b), and be it

FURTHER RESOLVED, that a copy of this resolution be filed with the Rockland County Commissioner of Planning, pursuant to General Municipal Law §239-m(6), and be it

FURTHER RESOLVED, that Local Law No. 5 -' 2016 entitled:

"A LOCAL LAW AMENDING THE ZONING MAP AND CHAPTER 290 (ZONING) OF THE LOCAL LAWS OF THE TOWN OF CLARKSTOWN WITH RESPECT TO REGULATING NON-RESIDENTIAL USES IN RESIDENTIAL ZONING DISTRICTS"

4

is hereby ADOPTED and passed by a majority plus one affirmative vote of the Town Board of the Town of Clarkstown, the vote for adoption being as follows:

George Hoehmann, Supervisor . . . . . Aye
Frank Borelli, Councilman . . . . . . Aye
Stephanie G. Hausner, Councilwoman . . Aye
John J. Noto, Councilman . . . . . . . Aye
Valerie Moldow, Councilwoman . . . . . Aye

The Clerk of the Town of Clarkstown is directed to file the local law pursuant to Section 27 of the Municipal Home Rule Law, and be it

FURTHER RESOLVED, that the GIS Coordinator for the Town of Clarkstown is hereby authorized and directed to amend the Zoning Map as set forth herein.

Dated:  March 22, 2016

TB 03-22 TA RES Adopt LL-Amend Zoning Map-Non-Residential Uses-pm

### TOWN OF CLARKSTOWN
### OFFICE OF THE TOWN ATTORNEY
### INTER OFFICE-MEMORANDUM

**TO:**    Justin Sweet, Town Clerk

**FROM:**  Patricia McDonald, Paralegal

**RE:**    Local Law No. 5-2016 (Amend Zoning Map and Chapter
           290 Regulating Non-Residential Uses in Residential
           Zoning Districts)

**DATE:**  March 23, 2016

For your information, enclosed please find a copy of Local
Law No. 5-2016, which was adopted at the Town Board meeting
on March 22, 2016.

/pm
Encl.

cc:  Building Department
     Planning Department
     DEC
     ZBA



# TOWN OF CLARKSTOWN
### OFFICE OF THE TOWN ATTORNEY

**LINO J. SCIARRETTA**
TOWN ATTORNEY

March 23, 2016

General Code LLC
781 Elmgrove Road
Rochester, NY 14624

      Re:  Local Law Nos. 3, 4 & 5 of 2016
               Town of Clarkstown

Madam/Gentlemen:

Enclosed please find copies of the Local Laws referred to
above, which were adopted by the Town Board on March 22,
2016.

                      Very truly yours,

                      Lino J. Sciarretta
                      Town Attorney

LJS/pm
Encl.

New York State Department of State
Division of Corporations, State Records and Uniform Commercial Code
One Commerce Plaza, 99 Washington Avenue
Albany, NY 12231-0001
www.dos.state.ny.us/corps

# Local Law Filing

(Use this form to file a local law with the Secretary of State.)

**Text of law should be given as amended.  Do not include matter being eliminated
and do not use italics or underlining to indicate new matter.**

~~County~~
~~City~~
Town of          CLARKSTOWN
~~Village~~

Local Law No.     5     of the year   2016

"A LOCAL LAW AMENDING THE ZONING MAP AND CHAPTER 290 (ZONING) OF THE
LOCAL LAWS OF THE TOWN OF CLARKSTOWN WITH RESPECT TO REGULATING NON-
RESIDENTIAL USES IN RESIDENTIAL ZONING DISTRICTS"

Be it enacted by the          TOWN BOARD                    of the
                        (Name of Legislative Body)

~~County~~
~~City~~
Town of                   CLARKSTOWN              as follows:
~~Village~~

See attached Local Law.

(If additional space is needed, attach pages the same size as this sheet, and number each.)

(1)

(Rev. 06/12)

(Complete the certification in the paragraph that applies ( the filing of this local law and strike out that which is not applicable.

1.  (Final adopted by local legislative body only.)

I hereby certify that the local law annexed hereto, designated as local law No. __5__ of 2016 of the (County)(City)(Town)(Village) of CLARKSTOWN___ was duly passed by the TOWN BOARD___ on ___March 22, 2016, in accordance with applicable provisions of law.
(Name of legislative body)

2.  (Passage by local legislative body with approval, no disapproval or repassage after disapproval by the Elective Chief Executive Order*.)

I hereby certify that the local law annexed hereto, designated as local law No. _____ of 20____ of the (County)(City)(Town)(Village) of _____ was duly passed by the _____ on _____ 20____, and was (approved)(not approved)
(Name of Legislative Body)
(repassed after disapproval) by the _____ and was deemed duly adopted
(Elective Chief Executive Officer*)
on _____ 20____, in accordance with the applicable provisions of law.

3.  (Final adoption by referendum.)

I hereby certify that the local law annexed hereto, designated as local law    No. _____ of 20____ of the (County)(City)(Town)(Village) of _____ was duly passed by the _____ on _____ 20_____, and was (approved) (not approved)(repassed
(Name of Legislative Body)
after disapproval) by the _____. Such local law was submitted
(Elective Chief Executive Officer*)
to the people by reason of a (mandatory)(permissive) referendum, and received the affirmative vote of a majority of the qualified electors voting thereon at the (general)(special)(annual) election held on _____ 20___, in accordance with the applicable provisions of law.

4.  (Subject to permissive referendum and final adoption because no valid petition was filed requesting referendum.)

I hereby certify that the local law annexed hereto, designated as local law No. _____ of 20____ of the (County)(City)(Town)(Village) of _____ was duly passed by the _____ on _____ 20, and was (approved)(not approved) repassed after
(Name of Legislative Body)
disapproval) by the _____ on _____, 20_____.
(Elective Chief Executive Officer*)
Such local law was subject to permissive referendum and no valid petition requesting such referendum was filed as of _____ 20____, in accordance with the applicable provisions of law.

*   Elective Chief Officer means or includes the chief executive officer of a county elected on a county-wide basis or, if there be none, the chairperson of the county legislative body, the mayor of a city or village, or the supervisor of a town where such officer is vested with the power to approve or veto local laws or ordinances.

5.  (City local law concer   g Charter revision proposed by(  tition.)

I, hereby certify that the local law annexed hereto, designated as local law  No. _____
of 20_____ of the City of _____ having been submitted to referendum pursuant
to the provisions of section (36)(37) of the Municipal Home Rule Law, and having received
the affirmative vote of a majority of the   qualified electors of such city voting
thereon at the (special)(general) election held on _____, 20____, became
operative.


6.  (County local law concerning adoption of Charter.)

I hereby certify that the local law annexed hereto, designated as local law  No. _____
of 20____ of the County of _____, State of New York, having been submitted to
the electors at the General Election of November _____, 20____, pursuant to
subdivisions 5 and 7 of section 33 of the Municipal Home Rule Law, and having received
the affirmative vote of a majority of the qualified electors of the cities of said county
as a unit and a majority of the qualified electors of the towns of said county considered
as a unit voting at said general election, became operative.

(If any other authorized form of final adoption has been followed, please provide an
appropriate certification.)

I further hereby certify that I have compared the preceding local law with the original
on file in this office and that the same is a correct transcript therefrom and of the
whole of such original local law, and was finally adopted in the manner indicated in
paragraph  1  , above.

                              *Joanne Castaldo*
                              Deputy Town Clerk
                              Joanne Castaldo

(Seal)                        Date:  ___3/23/16___

(Certification to be executed by County Attorney, Corporation Counsel, Town Attorney,
Village Attorney or other authorized attorney of locality.)

STATE OF NEW YORK
COUNTY OF  ROCKLAND

I, the undersigned, hereby certify that the foregoing local law contains the correct text
and that all proper proceedings have been had or taken for the enactment of the local law
annexed hereto.

                              *[Signature]*
                              Signature

                              Lino J. Sciarretta, Town Attorney
                              Title

                              County
                              City
                              Town of   CLARKSTOWN
                              Village


                              Date:  ___3/23/16___

Montalbano, Condon & Frank, P.C.

ATTORNEYS AND COUNSELORS AT LAW

67 North Main Street
Post Office Box 1070          (845) 634-7010
New City, New York 10956-8070          Fax (845) 634-8993          E-Mail: mcf@mcfnylaw.com

# MEMORANDUM

TO:     Lino Sciarretta, Esq.

FROM:   Brian J. Quinn, Esq.

DATE:   March 22, 2016

RE:     Written Comments from O&R Utilities regarding Proposed Zone Change

Lino,

As per our discussion of yesterday, I will be appearing at the Town Board meeting this evening to provide comments on behalf of Orange and Rockland Utilities ("O&R") with respect to the proposed zoning changes. I have attached hereto a copy of the letter I will be submitting on behalf of O&R.

As we discussed yesterday, it is our client's position that existing facilities, already operating with a Special Permit, should be "grandfathered in" as non-conforming, pre-existing conditions with respect to the new required buffer. Additionally, any renewal, or reapplication for an existing Special Permit, which has not changed, or requires an amendment, should be reapproved upon submission of an affidavit of compliance by the holder of the Special Permit and the Town's confirmation, after inspection (if required) that the applicant is in compliance with any requirements or conditions imposed upon the issuance of the original Special Permit.

Since the procedural requirements for the renewal of an existing Special Permit are not enunciated in the draft zoning amendment, I am concerned that the re-approval for a Special Permit could be unnecessarily complicated. For example, the new Amendment to the Zoning Code specifies a buffer zone of 75 feet. However, the Planning Board shall have the right to reduce the 75 feet to not less than the required yard dimensions in the applicable zone. This implies that an application to the Planning Board may be required for the renewal of a Special Permit. If there are existing facilities in the buffer, a referral to the ZBA may result. While a planning board review may be appropriate if the Special Permit requires an amendment, it would appear to be unnecessarily onerous if the holder of a Special Permit is otherwise in full compliance of the terms and conditions originally imposed for the Special Permit and no amendment is required. I believe O&R's concerns are clearly enunciated in the attached letter, along with other matters stated in this letter.

Once you have had a chance to review this letter, I would welcome an opportunity to discuss this with you. Thank you.

March 22, 2016
Page 2



**Orange & Rockland**
a conEdison, Inc company

Francis W. Peverly
Vice President
Operations

March 22, 2016

Town Board of the Town of Clarkstown
Attn: George Hoehmann, Supervisor
10 Maple Lane
New City, NY 10956

Re:   **Comments of Orange and Rockland Utilities, Inc. ("O&R") to the Proposed Local
Law Amendment Dated March 11, 2016 to the Zoning Map and Chapter 290 of the
Town Code of the Town of Clarkstown Regulating Non-Residential Uses in
Residential Zoning Districts ("Proposed Zoning Amendment")**

Dear Supervisor Hoehmann and Members of the Town Board:

Thank you for the opportunity to submit comments to the Town Board's Proposed
Zoning Amendment affecting residential and multi-family zones ("Affected Zones") in the Town
of Clarkstown ("Town"). As written, the Proposed Zoning Amendment will adversely impact
O&R facilities, projects and properties (collectively, the "O&R Facilities and Real Property"),
which are currently located, or may in the future be located, in the Town. These include
substations, natural gas regulator stations, natural gas lines, as well as non-Article VII
transmission lines, upgrades, and right of ways. As described more fully below, O&R
respectfully requests modifications to the Proposed Zoning Amendment which will allow O&R
to continue to provide essential utility services to its customers within and beyond the Town.

### O&R's Comments to the Proposed Rezoning

O&R provides electric and natural gas services throughout its public utility service
territory, which includes the Town. Section 65(1) of the New York State Public Service Law
requires that O&R provide safe and adequate service to its customers. In providing such service,
O&R's activities are subject to review and approval by the New York State Public Service
Commission. The O&R Facilities and Real Property are critical to O&R's ability to provide safe
and adequate utility service to its customers within and beyond the Town. The locations of
O&R's facilities are based on unique requirements. Electric and natural gas distribution systems,
substations and natural gas regulator stations must be located in particular neighborhoods where
demand has been identified. Since our systems are networks, facilities must also be sited where
they can interact most effectively with other network facilities and must be in close proximity to
existing transmission supply and right of ways, as well as existing distribution systems.

In light of O&R's overarching obligation to provide safe and adequate utility service, O&R is extremely concerned regarding Section 8 "Additional Regulations for All Residential Zones" of the Proposed Zoning Amendment. Specifically, Section 8 would require that uses permitted by Special Permit obtain a **new** Special Permit every five years. As the Town Board is well aware, Special Permits are granted to O&R's facilities only after extensive review. Once granted, O&R relies on them in constructing these facilities, the cost of which often amounts to millions of dollars (which are an essential component of the Town's tax base). O&R recognizes and certainly does not contest its obligations to comply fully with all conditions of any Special Permits granted by the Town.

The prospect, however, that Special Permits granted to O&R may be subject to review and potential relitigation every five years is extremely problematic. This renewal process potentially subjects O&R to the expenditure of resources (all at customers' expense) to address issues that either were addressed or should have been addressed during the initial review process. The renewal process also may subject O&R to operational uncertainties. Simply stated, it serves no useful public purpose to require O&R to obtain a new Special Permit for facilities whose purpose is to provide essential public utility services to its customers, particularly those located in the Town.

O&R is also particularly concerned with new subsection 290-20I (4) in the Proposed Zoning Amendment which requires a buffer of 75 feet for Special Permit uses. While that subsection provides that the Planning Board shall have the authority to reduce this buffer, it shall not be reduced to less than the required yard dimensions of the zoning district. As drafted, this new section will require amendments to the draft site plan already pending before the Town for O&R's application for the substation at North Little Tor Road, or will require variances. Additionally, the Proposed Zoning Amendment modifies the definition of "Buffer and/or Buffer Area" in section 290-3B of the zoning code. As drafted, this would appear to require O&R to obtain variances for existing facilities which have already been granted a Special Permit. O&R believes, and requests, that its existing facilities should be considered grandfathered as non-conforming, pre-existing conditions, that are not subject to these new buffer requirements.

The Proposed Zoning Amendment also does not provide the procedural means for the renewal of existing Special Permits. Without further guidance, it would appear that for the renewal of an existing Special Permit, an application to the Planning Board and/or the Zoning Board of Appeals will need to be submitted, which may require O&R to produce site plans for facilities that have been in place for many years. In addition, existing town requirements for the issuance of a Special Permit require a public hearing. In the event existing facilities are not grandfathered as exempt from the new buffer and other developmental requirements, a referral to the Zoning Board of Appeals may be required, which also requires a public hearing. Overall, this process could potentially be an enormous investment of time and added expense, the cost of which will be borne by O&R's rate payers.

2

While it is appropriate that the Town maintain the ability to confirm the terms of any existing Special Permit are being complied with, it would seem more appropriate that enforcement actions be brought for those holders of Special Permits that are not in compliance. It would also seem that the enforcement of Special Permit conditions could be confirmed through the submission of an affidavit of compliance, to be submitted every five years, by the holders of Special Permits. O&R is not aware of any instances where it is not in compliance with the terms of any Special Permit it currently holds.

Accordingly, O&R hereby requests that all of its existing facilities be grandfathered to zoning regulations and other applicable municipal requirements that were in force when any initial Special Permit was issued to O&R. In addition, O&R requests that exceptions be added to allow a public utility to have automatic Special Permit **renewals** (as opposed to a new permit application) and to be exempt from the buffer and other developmental constraints so that the most efficient use may be made of sites where O&R's facilities are required to be located within Affected Zones.

These proposed modifications to the Proposed Zoning Amendment will safeguard O&R's ability to maintain its existing facilities in the Town, as well as construct new facilities and expand existing facilities. Such ability is absolutely vital to O&R's ability to continue to provide reliable, safe and adequate service to its customers, including Town residents, in response to present and future service needs and our ability to meet future continuing growth in the region.

Thank you for considering our comments and O&R's operational needs. Should you have any questions regarding any of the matters discussed above, please do not hesitate to contact me.

Sincerely,

Roberta Scerbo *for*
Francis W. Peverly
Vice President - Operations

cc: The Town Clerk

3



**Orange & Rockland**
a conEdison, Inc. company

Francis W. Peverly
Vice President
Operations

March 22, 2016

Town Board of the Town of Clarkstown
Attn: George Hoehmann, Supervisor
10 Maple Lane
New City, NY 10956

Re:   **Comments of Orange and Rockland Utilities, Inc. ("O&R") to the Proposed Local
Law Amendment Dated March 11, 2016 to the Zoning Map and Chapter 290 of the
Town Code of the Town of Clarkstown Regulating Non-Residential Uses in
Residential Zoning Districts ("Proposed Zoning Amendment")**

Dear Supervisor Hoehmann and Members of the Town Board:

Thank you for the opportunity to submit comments to the Town Board's Proposed
Zoning Amendment affecting residential and multi-family zones ("Affected Zones") in the Town
of Clarkstown ("Town"). As written, the Proposed Zoning Amendment will adversely impact
O&R facilities, projects and properties (collectively, the "O&R Facilities and Real Property"),
which are currently located, or may in the future be located, in the Town. These include
substations, natural gas regulator stations, natural gas lines, as well as non-Article VII
transmission lines, upgrades, and right of ways. As described more fully below, O&R
respectfully requests modifications to the Proposed Zoning Amendment which will allow O&R
to continue to provide essential utility services to its customers within and beyond the Town.

### O&R's Comments to the Proposed Rezoning

O&R provides electric and natural gas services throughout its public utility service
territory, which includes the Town. Section 65(1) of the New York State Public Service Law
requires that O&R provide safe and adequate service to its customers. In providing such service,
O&R's activities are subject to review and approval by the New York State Public Service
Commission. The O&R Facilities and Real Property are critical to O&R's ability to provide safe
and adequate utility service to its customers within and beyond the Town. The locations of
O&R's facilities are based on unique requirements. Electric and natural gas distribution systems,
substations and natural gas regulator stations must be located in particular neighborhoods where
demand has been identified. Since our systems are networks, facilities must also be sited where
they can interact most effectively with other network facilities and must be in close proximity to
existing transmission supply and right of ways, as well as existing distribution systems.

In light of O&R's overarching obligation to provide safe and adequate utility service, O&R is extremely concerned regarding Section 8 "Additional Regulations for All Residential Zones" of the Proposed Zoning Amendment. Specifically, Section 8 would require that uses permitted by Special Permit obtain a **new** Special Permit every five years. As the Town Board is well aware, Special Permits are granted to O&R's facilities only after extensive review. Once granted, O&R relies on them in constructing these facilities, the cost of which often amounts to millions of dollars (which are an essential component of the Town's tax base). O&R recognizes and certainly does not contest its obligations to comply fully with all conditions of any Special Permits granted by the Town.

The prospect, however, that Special Permits granted to O&R may be subject to review and potential relitigation every five years is extremely problematic. This renewal process potentially subjects O&R to the expenditure of resources (all at customers' expense) to address issues that either were addressed or should have been addressed during the initial review process. The renewal process also may subject O&R to operational uncertainties. Simply stated, it serves no useful public purpose to require O&R to obtain a new Special Permit for facilities whose purpose is to provide essential public utility services to its customers, particularly those located in the Town.

O&R is also particularly concerned with new subsection 290-201 (4) in the Proposed Zoning Amendment which requires a buffer of 75 feet for Special Permit uses. While that subsection provides that the Planning Board shall have the authority to reduce this buffer, it shall not be reduced to less than the required yard dimensions of the zoning district. As drafted, this new section will require amendments to the draft site plan already pending before the Town for O&R's application for the substation at North Little Tor Road, or will require variances. Additionally, the Proposed Zoning Amendment modifies the definition of "Buffer and/or Buffer Area" in section 290-3B of the zoning code. As drafted, this would appear to require O&R to obtain variances for existing facilities which have already been granted a Special Permit. O&R believes, and requests, that its existing facilities should be considered grandfathered as non-conforming, pre-existing conditions, that are not subject to these new buffer requirements.

The Proposed Zoning Amendment also does not provide the procedural means for the renewal of existing Special Permits. Without further guidance, it would appear that for the renewal of an existing Special Permit, an application to the Planning Board and/or the Zoning Board of Appeals will need to be submitted, which may require O&R to produce site plans for facilities that have been in place for many years. In addition, existing town requirements for the issuance of a Special Permit require a public hearing. In the event existing facilities are not grandfathered as exempt from the new buffer and other developmental requirements, a referral to the Zoning Board of Appeals may be required, which also requires a public hearing. Overall, this process could potentially be an enormous investment of time and added expense, the cost of which will be borne by O&R's rate payers.

While it is appropriate that the Town maintain the ability to confirm the terms of any existing Special Permit are being complied with, it would seem more appropriate that enforcement actions be brought for those holders of Special Permits that are not in compliance. It would also seem that the enforcement of Special Permit conditions could be confirmed through the submission of an affidavit of compliance, to be submitted every five years, by the holders of Special Permits. O&R is not aware of any instances where it is not in compliance with the terms of any Special Permit it currently holds.

Accordingly, O&R hereby requests that all of its existing facilities be grandfathered to zoning regulations and other applicable municipal requirements that were in force when any initial Special Permit was issued to O&R. In addition, O&R requests that exceptions be added to allow a public utility to have automatic Special Permit **renewals** (as opposed to a new permit application) and to be exempt from the buffer and other developmental constraints so that the most efficient use may be made of sites where O&R's facilities are required to be located within Affected Zones.

These proposed modifications to the Proposed Zoning Amendment will safeguard O&R's ability to maintain its existing facilities in the Town, as well as construct new facilities and expand existing facilities. Such ability is absolutely vital to O&R's ability to continue to provide reliable, safe and adequate service to its customers, including Town residents, in response to present and future service needs and our ability to meet future continuing growth in the region.

Thank you for considering our comments and O&R's operational needs. Should you have any questions regarding any of the matters discussed above, please do not hesitate to contact me.

Sincerely,

Roberta Seerbo *for*
Francis W. Peverly
Vice President - Operations

cc: The Town Clerk

3

**TOWN OF CLARKSTOWN**

**OFFICE OF THE TOWN ATTORNEY**

**INTEROFFICE MEMORANDUM**

COPY

**TO:**      Justin Sweet, Town Clerk

**FROM:**   Patricia McDonald, Paralegal  *PM*

**SUBJECT:**  Affidavits of Publication – Public Hearings
Local Law – Amend Zoning Map & Chap. 290 (Non-Residential Uses)
Local Law – Residency of Appointed Officials

**DATE:**     March 22, 2016

Enclosed, for your file, are original Affidavits of Publication from the Journal News regarding the above local laws.

/pm
Encl.



# AFFIDAVIT OF PUBLICATION
# FROM



_____ being duly sworn says that he/she is the principal clerk of **THE JOURNAL**

**NEWS,** a newspaper published in the County of Westchester and the State of New York, and the notice of which the

annexed is a printed copy, was published in the newspaper area(s) on the date (s) below:

**Zone:**
**Rockland**

**Run Dates:**
02/29/16

_____
Signature

Sworn to before me, this ___7th___ day of ___march___ 2016

_____
Notary Signature

Vilma Avelar
Notary Public State of New York
NO. 01AV6318411
Qualified in Westchester County
Commission Expires January 26, 2019

**Legend:**

**WESTCHESTER:**
Amawalk, Ardsley, Ardsley on Hudson, Armonk, Baldwin Place, Bedford, Bedford Hills, Brewster, Briarcliff Manor, Bronxville, Buchanan, Carmel, Chappaqua, Cold Spring, Crompond, Cross River, Croton Falls, Croton on Hudson, Dobbs Ferry, Eastchester, Elmsford, Garrison, Goldens Bridge, Granite Springs, Greenburg, Harrison, Hartsdale, Hastings, Hastings on Hudson, Hawthorne, Irvington, Jefferson Valley, Katonah, Lake Peekskill, Larchmont, Lincolndale, Mahopac, Mahopac Falls, Mamaroneck, Millwood, Mohegan Lake, Montrose, Mount Kisco, Mount Vernon, New Rochelle, North Salem, Ossining, Peterson, Peekskill, Pelham, Pleasantville, Port Chester, Pound Ridge, Purchase, Purdys, Putnam Valley, Rye, Scarsdale, Shenorock, Shrub Oak, Somers, South Salem, Terrytown, Thornwood, Tuckahoe, Valhalla, Verplanck, Waccabuc, White Plains, Yorktown Heights, Yonkers

**ROCKLAND:**
Blauvelt, Congers, Garnerville, Haverstraw, Hillburn, Monsey, Nanuet, New City, Nyack, Orangeburg, Palisades, Pearl River, Piermont, Pomona, Sloatsburg, Sparkill, Spring Valley, Stony Point, Suffern, Tallman, Tappan, Thiells, Tomkins Cove, Valley Cottage, West Haverstraw, West Nyack

**Ad Number: 0001082466**

Ad Number: 0001082466          Run Dates: 02/29/16

NOTICE OF PUBLIC HEARING ON PROPOSED
LOCAL LAW - TOWN OF CLARKSTOWN

NOTICE IS HEREBY GIVEN that a public hearing
will be held by the Town Board of the Town of
Clarkstown, Rockland County, at the Auditori-
um of the Town Hall, 10 Maple Avenue, New
City, New York, on March 8, 2016 at 8:00 P.M.,
or as soon thereafter as possible, for the pur-
pose of considering the adoption of a local law
entitled,

"A LOCAL LAW AMENDING THE ZONING MAP
AND CHAPTER 290 (ZONING) OF THE LOCAL
LAWS OF THE TOWN OF CLARKSTOWN WITH
RESPECT TO REGULATING NON-RESIDENTIAL
USES IN RESIDENTIAL ZONING DISTRICTS"

The purpose of this local law is to amend the
Town Zoning Map and Chapter 290 of the
Town Code of the Town of Clarkstown regulat-
ing non-residential uses in residential zoning
districts.

A copy of the proposed local law and map are
on file in the Office of the Town Clerk, 10
Maple Avenue, New City, New York.

ALL parties in interest and citizens will be
heard by the Town Board at the public hearing
to be held as aforesaid.

Dated: February 29, 2016
Justin Sweet
Town Clerk

Lino J. Sciarretta, Esq.
Town Attorney
Town of Clarkstown
10 Maple Avenue
New City, New York          1082466

```
         AFFIDAVIT OF SERVICE OF PROPOSED LOCAL LAW
            IN ELECTRONIC FORMAT BY ELECTRONIC MEANS
```

```
STATE OF NEW YORK      )
COUNTY OF ROCKLAND     )      SS.:
```

I, Patricia McDonald, being duly sworn, depose and say:

That I am over the age of eighteen (18) years and reside in Pearl River, New York.

I served the proposed final version of a Local Law amending the Zoning Map and Chapter 290 of the Town Code of Clarkstown Regulating Non-Residential Uses in Residential Zoning Districts on the following parties:

George Hoehmann, Supervisor: g.hoehmann@clarkstown.org
Frank Borelli, Councilman: f.borelli@clarkstown.org
Stephanie G. Hausner, Councilwoman: s.hausner@clarkstown.org
John J. Noto, Councilman: j.noto@clarkstown.org
Valerie Moldow, Councilwoman: v.moldow@clarkstown.org

by sending a true PDF copy of same in electronic format by electronic means to their desks at the Clarkstown Town Hall, 10 Maple Avenue, New City, New York on March 14, 2016.

_Patricia McDonald_
Patricia McDonald

```
Sworn to before me this
14th day of March 2016.
```

_____
Notary Public

STACY KUO
Notary Public, State of New York
No. 01KU6277660
Qualified in Rockland County
Commission Expires March 11, 2017

*TOWN OF CLARKSTOWN*
*OFFICE OF THE TOWN ATTORNEY*
*INTER OFFICE-MEMORANDUM*

TO:     George Hoehmann, Supervisor
        Town Board Members

FROM:   Lino J. Sciarretta, Town Attorney

RE:     **Proposed Local Law — Amend Town Zoning Map &**
        **Chapter 290 of the Town Code Regulating Non-**
        **Residential Uses in Residential Zoning Districts**

DATE:   March 14, 2016

Enclosed, for your information, is a copy of the revised
proposed local law referred to above.

The purpose of this revised final draft of the local law is
to amend the Zoning Map and Chapter 290 regulating non-
residential uses in residential zoning districts consistent
with the goals and objectives of the Comprehensive Plan.


LJS/pm
Encl.

cc:  Town Clerk

March 11, 2016

TOWN OF CLARKSTOWN

LOCAL LAW NO.  - 2016

Be it enacted by the Town Board of the Town of Clarkstown as follows:

**Section 1.  Title**

A Local Law Amending the Zoning Map and Chapter 290 of the Town Code of Clarkstown Regulating Non-Residential Uses in Residential Zoning Districts

**Section 2.  Legislative intent.**

The purpose of this Local Law is to amend the Zoning Map and Chapter 290 of the Town Code consistent with the following goals and objectives of the Comprehensive Plan:

1. Preserve the suburban and remaining semi-rural character of the Town.

2. Develop zoning and building regulations that reduce or restrict odors, sounds, commercial traffic, light pollution and other negative environmental impacts on residential areas.

3. Expand initiatives to safeguard neighborhoods from inappropriately scaled development.

**Section 3. Zoning Map Amendment – Replacement of RG-1 and RG-2 Zoning Districts with MF-2 and MF-3 Zoning Districts**

The following changes shall be made to the Zoning Map of the Town of Clarkstown:

        All RG-1 zones shall be changed to MF-2 zones.

        All RG-2 zones shall be changed to MF-3 zones.

**Section 4. Amendments to Use Tables**

The following changes shall be made to 290-11A – Use Tables:

        Table 1 (R-80), Table 2 (R-40), Table 3(R-22), Table 4 (R-15), Table 5 (R-10), Table 6 (RG-1), Table 7 (RG-2), Table 18 (R-160) and Table 19 (MF-1, MF-2 and MF-3) are to be removed and replaced with the new

Table 1 - Residential Zoning Districts Land Use (Attachment 1 of this Local Law)

The Residential Zoning Districts Land Use shall become Table 1 and all following tables shall be renumbered accordingly.

References to the removed tables throughout the Town Code shall be altered to refer to the Residential Zoning Districts Land Use Table.

## Section 5. Addition of Residential Use Parking and Loading Table

Add a new table, "Table 2 – Residential Zoning Districts Parking and Loading Requirements," (Attachment 2 of this Local Law).

## Section 6. Amendments to Bulk Table

The following changes shall be made to §290-11B – Table 16, General Bulk Regulations:

Remove RG-1 and RG-2 rows from Table 16 General Bulk Regulations.

Insert CO and COS rows from Table 21, General Bulk Regulations (CO/COS District) to Table 16.

Add notes 41 thru 47 from Table 21 to Table 16, General Bulk Regulations.

Remove Table 21, General Bulk Regulations (CO/COS District) from Town Code.

Add new Group row, "N," to R-10 row, which shall read as follows:

| Zone | Group | For Use listed below | Max. Floor Area Ratio | Min. Lot Area | Min. Lot Width | Required Front Yard Depth | Required Side Yard Width | Total Width Both Required Side Yards | Required Rear Yard Depth | Max. Bldg. Height in Ft. and In. per Ft. of Distance from DSL |
|---|---|---|---|---|---|---|---|---|---|---|
| R-10 | N | Two-Family Residences (See Note No. 48) | 0.20 (See Note No. 31) | 15,000 | 100 | 30 | 25 (See Note No. 14) | 50 | 50 (See Note No. 14) | 10" (See Note No. 38) |

Add Note 48, which shall read:

These uses shall have minimum frontage of 100' and access to either a State or County major or secondary road as classified on the Town Official Map.

2

Add Note 48 reference to R-160, Group C, Column 3; R-80, Group C, Column 3; R-40 Group F, Column 3; R-22, Group I, Column 3; R-15, Group L, Column 3 and R-10, Group N, Column 3.

Add two new columns, "12 – Maximum Principal Buildings(s) Coverage" and "13 – Maximum Total Lot Coverage" which shall read as follows:

| District | Group | Column 12 Maximum Principal Buildings(s) Coverage | Column 13 Maximum Lot Coverage (including Principal Building(s) coverage) |
|----------|-------|--------|--------|
| R-160 | A | 2.50% | 5% |
|       | C | 2.50% | 5% |
| R-80 | A | 5.00% | 10% |
|      | C | 5.00% | 10% |
| R-40 | D | 6.00% | 12% |
|      | F | 6.00% | 18% |
| R-22 | G | 10.00% | 20% |
|      | I | 7.00% | 21% |
| R-15 | J | 11.50% | 23% |
|      | L | 6.60% | 20% |
| R-10 | M | 12.50% | 25% |
|      | N | 10.00% | 20% |
|      | O | 5.00% | 15% |

Change R-10 row, Group O, Column 5 value from 40,000 to 80,000.

Add the following definition, alphabetically placed, to §290-3B:

**BUILDING, PRINCIPAL**: A building in which is conducted the principal use of the lot on which it is located.

## Section 7. Additional Regulations for Multifamily Residential Uses

Add the following definition, alphabetically placed, to §290-3B:

**MULTI-FAMILY**: See Multiple Residence.

Modify the table within §290-20F(2) adding a new row, to be inserted below the "Efficiency" row within the MF-2 section of the table, which shall read as follows:

3

| Square Feet of Land Area per Unit | Units Per Acre | Bedrooms in Unit |
|---|---|---|
| 3,800 | 11.5 | 1 |

Modify §290-20F(2)(a), to read as follows:

Maximum principal buildings(s) coverage and lot coverage shall be as follows:

| District | Maximum Principal Buildings(s) Coverage | Maximum Lot Coverage (including Principal Building(s) coverage) |
|---|---|---|
| MF-1 | 16.50% | 33% |
| MF-2 | 20.00% | 40% |
| MF-3 | 25.00% | 50% |

Modify subsection §290-20F(8)(a), to read as follows:

Definitions. For purposes of this section, a "nonconforming building" in the Multifamily (MF-1, MF-2 and MF-3) Districts shall be a building which does not conform to the bulk requirements set forth herein. A "nonconforming use" shall be a use which does not conform to the permitted use requirements set forth herein.

Delete subsections §290-20F(8)(b)[1] & [2] in their entirety.

Modify subsection §290-20F(8)(b), to read as follows:

Reserved

Add new subsections to §290-20F, which shall read:

(11) For residential uses, the following additional requirements shall apply:

(a) All open areas not used for buildings, parking spaces and driveways shall be suitably landscaped or left in their natural state, as determined by the Planning Board.

(b) A specifically designated area or areas shall be available for recreational use of the residents.

4

(c) In an MF-1 District, 25% of the entire tract shall be reserved as usable open space for use by all residents of the development or at the request of the applicant, prior to final site plan approval and subject to acceptance by the Town Board upon recommendation of the Parks Board and Recreation Commission, may be offered for dedication, in whole or in part, to the town. Such usable open space, exclusive of any off-street parking areas and access driveways or any other paved areas, shall have no dimension of less than 30 feet, except for access, and the location thereof shall be subject to the approval of the Planning Board. The community building and recreation facilities may be located within the usable open space. In an MF-2 District, the above percentage shall be 15%. In MF-3 districts the above percentage shall be 10%. Density shall be established prior to the identification of usable open space.

(d) Facilities for refuse disposal shall be provided for all dwelling units. Collection areas shall be maintained and conveniently located for all groups of dwelling units. All storage containers for the collection of solid waste not within principal buildings shall be completely enclosed in a manner which is architecturally compatible with the principal buildings. All storage containers shall have permanently attached covers. The location of enclosures shall be subject to approval by the Planning Board.

(e) All areas intended for vehicular use, access or parking shall be paved with a hardtop surface upon a suitable subgrade of materials and to specifications acceptable to the Director of Environmental Control. The base shall be properly drained and suitably constructed to support the prospective traffic load.

(f) Open parking areas and driveways shall not be closer than 20 feet to any building or lot line.

(g) No active exterior recreation facility, such as, but not limited to, a swimming pool (to edge of fence), tennis court or other recreational facility, shall be closer than 30 feet to any building or 50 feet to any lot line or be between a building line and a public street. Locker rooms and other supporting facilities shall be considered buildings for purposes of this distance requirement between buildings.

(h) Traffic directional signs shall be provided as required by the Planning Board.

(i) All walks, outside steps, vehicular entranceways, exitways and intersections of roads shall be adequately lighted; said lighting shall not be directed on adjacent streets or properties.

5

(j) Buildings shall be individually identified and clearly marked with signs sufficiently illuminated to be visible from roadways or access drives at all times.

(k) Group garages, if provided, shall be architecturally compatible with principal buildings.

(l) Recreational areas and facilities, except where dedicated to the Town shall be solely for the use of residents of the development and their guests.

(m) Opaque fencing, aesthetically attractive on both sides, at least 6 feet in height, shall be placed along any property line abutting a nonresidential use or nonresidential zone. The Planning Board may waive this requirement where adequate fencing, properly maintained, already exists on adjacent properties.

(n) Internal roads shall be as follows: 2-way internal roads shall be at least 24 feet in width; while 1-way internal roads may be 14 feet in width if not used as parking aisles.

(o) A single access road shall be provided and paved to a width of at least 24 feet for developments of not more than 50 units. For developments in excess of 50 units, a double-paved roadway of at least 24 feet and a median of 10 feet shall be provided, or multiple single-access roads shall be provided. Notwithstanding the foregoing, the Planning Board may approve alternates if reasonable safety and access are provided.   Internal roads shall be built to town specifications.

(p) The property shall have frontage on and access from a public street or streets.

(q) The property shall be served by public water and sanitary sewers.

(r) Distance between buildings. The distance between any two principal building structures shall be not less than the height of the tallest of the two buildings. The distance between any principal building and any accessory building or between two detached accessory buildings shall be not less than 20 feet for MF-1, MF-2 and MF-3, and no parking shall be located within this area. However, any other provision notwithstanding, a minimum distance of 60 feet shall be maintained between the center of any window in a habitable space other than a window in a bathroom or kitchen and any wall of the same or of another structure, the plane of which is parallel to or which intersects the plane of the wall in which said window is located at an angle of

less than 90°, such distance being measured in horizontal
projection at the sill level of said window.

(12) In addition, the site plan shall be accompanied by: sketches
showing proposed architectural treatment; single-line floor plans
showing layout of all buildings (not construction plans or structural
plans) and the text of all filed or proposed restrictions concerning
the use of land and buildings. The applicant shall submit a general
statement describing the type of development proposed, which
shall include a description of the proposed management,
maintenance and ownership of the various elements of
development, including:

(a) Dwelling unit.
(b) Common areas and facilities maintenance.
(c) Ground, building and facility maintenance.
(d) Street ownership and maintenance.

(13) The Planning Board may determine, on application for subdivision
approval, if the site is appropriate for fee simple ownership-type
units; in such cases, the minimum lot area for each dwelling shall
be as determined by the Planning Board. The Planning Board may
establish additional requirements.

(14) A community hall or space shall be provided within each
residential development, with a meeting room with an area no less
than 15 square feet per dwelling unit, but not less than 400 square
feet in area. The location of the community hall or space shall be
subject to the approval of the Planning Board.

(15) There shall be not more than 8 units in any building.


**Section 8. Additional Regulations for All Residential Zones**

Add new subsection, §290-20I, which shall read:

I. Additional regulations in R-160, R-80, R-40, R-22, R-15, R-10,
MF-1, MF-2 and MF-3 zoning districts shall be as follows:

(1) All new nonresidential uses are subject to continued
enforcement of performance standards procedure (§290-13B)

(2) In addition to the particular requirements for any use listed in
Table 1, the Board of Appeals, Planning Board, or Town
Board, as specified in Table 1 for a particular use, where
reasonable and appropriate, may require fences and other safety
devices, landscaping, screening, access roads and buffer areas.

7

(3) No use listed in Table 1 shall be permitted for which there shall not be sufficient access suitably located to avert prospective traffic congestion, or hazard.

(4) Buffer areas of 75 feet shall be required for special permit uses, except home occupation use. The Planning Board shall have the authority to reduce this buffer, but in no case shall the buffer be reduced to less than the required yard dimensions of the zoning district.

(5) Parking spaces of any nonresidential use shall not be located within a required yard and shall be screened from adjoining properties by permanent landscaping which may include berms or other topographic features as required by the Planning Board.

(6) All residences with an attached or included garage opening into a side yard shall have a minimum of 30 feet of side yard for access thereto.

(7) All uses other than single family residences shall have minimum frontage of 100' and access to either a State or County major or secondary road as classified on the Town Official Map.

(8) Any use in existence by virtue of a Special Permit issued by a municipal board shall be required to obtain a new Special Permit before the issuance of any building permit or within five (5) years of the effective date of this Local Law, whichever is first, regardless of whether any Special Permit was granted for that use before the enactment of this Local Law. The Special Permit shall be periodically renewed every five (5) years from the date of issuance or some other period of time as required by the applicable board.

Modify §290-21B(7) to read as follows:

Accessory buildings in required front yards. Where necessary and appropriate, the Board of Appeals may authorize any one of the following, accessory to a commercial or industrial use in R-160, R-80, R-40, R-22, R-15, R-10, MF-1, MF-2, MF-3, LS, LO, LIO, CS, RS, MRS, M or to an institutional use in any district: one dwelling unit for a caretaker; gatehouse; reception office; or watchman's post, to encroach in a required front yard, provided that such accessory building is set back at least 25 feet from the front lot line and 10 feet from any other lot line, does not cover more than 1% of the area of the lot, and has a height of no more than 25 feet.

8

**Section 9. Development Constraint Changes**

Modify §290-21D(1) to read as follows:

> Rights-of-way, easements and designated streets. 50% of any land within easements or rights-of-way for overhead utilities or within a designated street line and 100% of any land within easements or rights-of-way for ingress or egress shall not be counted as part of any minimum lot area requirement. No building or structure shall be located within any easement. However, a road may traverse an easement.

Modify §290-21D(2) to read as follows:

> Land under water (applicable prior to development).  Not more than 50% of the area of any lot proposed to be developed may be counted as part of any lot area if subject to the following: ponds; freshwater wetlands regulated by the Army Corps of Engineers; streams; areas within the Federal Emergency Management Agency designated special flood hazard or other flood area; that portion of any freshwater wetland and any one-hundred foot control area designated by the New York State Department of Environmental Conservation.  No buildings or structures may be located in such areas.

Modify §290-21D(3)(b) to read as follows:

> No buildings, structures or land disturbance shall be permitted on that portion of a lot with a slope in excess of the foregoing.

Modify the following definition in §290-3B, "BUFFER AND/OR BUFFER AREA," to read:

> **BUFFER AND/OR BUFFER AREA:** Area(s) on a lot usually within required yard areas, used to screen development or uses on adjoining properties, composed of either undisturbed or landscaped areas subject to the requirements of the Planning Board and Architecture and Landscape Commission, and located according to the provisions of the Zoning Ordinance and the requirements of the Planning Board. The required setback shall be measured from the lot line for side and rear buffers and from the designated street line for front yard buffers.  The following types of uses shall not be allowed in a "buffer area":

> (1) Buildings or aboveground structures.

> (2) Driveways and loading areas, except a driveway for ingress and egress to and from the site only shall be allowed to cross a buffer.

> (3) Parking areas or reserve parking areas.

9

(4) Identification sign (pylon/movement).

(5) Dumpster, trash, and recycling receptacles of any type.

(6) Other structures or uses prohibited by the Planning Board.

## Section 10. Changes to Off-Street Loading Berths and Parking

Add the following definitions, alphabetically placed, to §290-3B:

**LOADING AREA:** A space other than a street, public right-of-way, or required parking space, the principal use of which is for standing, loading and unloading of motor trucks, tractors, and trailers, to avoid undue interference with the public use of streets and alleys.

**LOADING BERTH:** A space adjacent to a loading dock, platform or dedicated receiving area other than a street, public right-of-way, or required parking space, the principal use of which is for standing, loading and unloading of motor trucks, tractors, and trailers, to avoid undue interference with the public use of streets and alleys.

Modify §290-23 to read as follows:

Off-street loading berths, open or enclosed, are permitted accessory to any use except residences for one or two families, subject to §290-25. However, no off-street loading berth shall be located within a required front yard.

Modify the title of §290-25 to read as follows:

**Required Off-Street Loading Berths and Loading Areas**

Modify the title of §290-25A to read as follows:

A. Where required. Accessory off-street loading berths and loading areas shall be provided for any lot for any use specified in Column 7 of the Use Tables and Table 2 – Residential Zoning Districts Parking and Loading Requirements. Any land which is developed as a unit under single ownership and control shall be considered a single lot for the purposes of such requirements.

Modify §290-25B to read as follows:

10

Size, location and access. Each required loading area shall be at least 12 feet wide by 20 feet long. Each required loading berth shall be at least 12 feet wide, 33 feet long and 14 feet high and may be located either within a building or in open space but not within required accessory off-street parking spaces or accessory drives thereto. Unobstructed access at least 12 feet wide to and from a street shall be provided. Such access may be combined with access to a parking lot. All permitted or required loading berths shall be on the same lot as the use to which they are accessory, except as provided in Subsection C.

Add three new subsections, §290-25 D, E, and F which shall read:

D. Open loading berths are permitted, provided that they are not located in the required front or side yards and are not adjacent to a residential district or residential use permitted by right. No loading area shall be permitted within 50 feet of any property line, and this setback shall be screened.

E. Completely enclosed loading berths are permitted in all yard areas except the front yard; however, no enclosed loading berth, enclosed loading area or driveways serving either a loading berth or loading area shall be located within 25 feet of any property line.

F. All loading berths, loading areas and driveways serving either a loading berth or loading area shall be illuminated with indirect lighting and shall have access only from a major or secondary road as classified on the Official Map of the Town of Clarkstown.

Modify §290-22A(2) to read as follows:

One currently registered commercial vehicle, not exceeding 6,500 pounds gross weight, may be permitted to park in an open parking space, adequately screened, in a residential zone, provided that such parking will not be in the required front or rear yard, or within 10 feet of a side lot line, except where there are driveways abutting lot lines or common driveways in use by two or more homes.

**Section 11. Transfer of Specific Requirements for Special Permits and Accessory Uses from Use Tables to Town Code Text and Changes to the Definition of Home Occupation**

Modify the following definition in §290-3B, "Home Occupation," to read:

HOME OCCUPATION: Any occupation, business or professional activity which results in a product or service and which is conducted in whole or in part in a dwelling or on a residentially zoned property, is clearly subordinate in space utilization and intensity to the residential use

11

of the dwelling unit and has received a permit from the Building Inspector or the Board of Appeals.

(1) Home occupations do not include:

(a) Outside storage of equipment or material.

(b) The use or storage on site of a wheeled vehicle in excess of 6,500 pounds gross weight and no more than one wheeled vehicle other than passenger cars.

(c) Activities after the hour of 11:00 p.m. and before 7:00 a.m. on weekdays and from 11:00 p.m. to 9:00 a.m. on Saturdays and legal holidays.

(d) The keeping of goods for sale or rent.

(2) Home occupations do not include animal hospitals, morticians, limousine services, automotive-repair services, barbershops, nail salons, beauty parlors, massage establishments, restaurants, pet grooming, animal breeding or kennels or similar uses which in the opinion of the Building Inspector are not usual and customary to a home occupation.

Add new subsection, §290-17AC which shall read:

AC. Home Occupation - As permitted by Special Permit of the Zoning Board of Appeals, a home occupation may utilize up to 25% of habitable floor area of principal building even if it exceeds 250 square feet. If the home occupation use, including related storage, utilizes less than 25% of the habitable floor area of the existing principal residence and less than 250 square feet in the principal residence, then this may constitute an Accessory Use subject to §290-20I.

Home occupations as permitted by this Special Permit of the Zoning Board of Appeals shall be subject to the following conditions:

(1) The Board of Appeals shall make appropriate findings with respect to locations, intensity of use, parking and any other factors that may affect neighboring properties.

(2) The home occupation may be allowed in an accessory building if all yard requirements are met for said accessory building.

(3) No more than 2 employees may be permitted.

(4) Off-street parking shall be shown on a site plan, provided on the site, and shall not adversely affect neighborhood character. The

12

Board of Appeals shall require adequate screening to protect neighboring properties. The off-street parking shall be provided without paving more than 25% of the required front yard.

(5) The home shall be the actual place of residence of the person conducting the home occupation.

(6) The home occupation may allow the use of equipment not a customary household appliance or light office equipment. The Board of Appeals shall give consideration to such factors as air quality, noise, visual impact, sewers, emissions, and any other pollution standards that may be applicable.

(7) The lawful use of any premises as a home occupation existing on May 24, 1988 may be continued although neither such use nor bulk conforms to the current regulations. Normal maintenance and repair of premises used as a nonconforming home occupation shall be permitted if it is does not extend the area of or the intensity of such use.

(8) The applicant shall provide a sworn and notarized affidavit indicating how all the aforementioned conditions will be met.

Add new subsection, §290-20I, which shall read:

I. Home Occupation – Accessory Use.  Home occupations shall be accessory uses by right upon issuance of a permit from the Building Inspector if the use, including related storage, is located in and occupies no more than 25% of the habitable floor area of the existing principal residence and no more than 250 sq. ft. in the principal residence, whichever is less.  If said home occupation exceeds 250 sq. ft. in the principal residence the use would require a Special Permit of the Zoning Board of Appeals subject to §290-17AC.

Home occupations as accessory uses shall be subject to the following conditions:

(1) The number of persons who assist or are employed in any capacity, whether as employees, commission agents, independent contractors, partners, officers, directors or stockholders, shall not exceed 1 person outside those residing in the family unit.

(2) Visiting clientele may not exceed more than 1 vehicle per 1/2 hour.

(3) Off-street parking shall be shown on a plan and shall be provided without paving more than 25% of the required front yard.

(4) The plan shall show 2 parking spaces in addition to those which are required for the residence(s).

(5) Landscaping or other appropriate screening as required by the Building Inspector or the Director of Environmental Control of the Town of Clarkstown shall be provided to screen parking from adjoining properties.

(6) The home shall be the actual place of residence of the person conducting the home occupation.

(7) The home occupation shall not involve the on-site use or storage of any commercial vehicles or construction equipment or mechanical equipment not permanently affixed to the premises, except for 1 vehicle not over 6,500 pounds.

(8) The home occupation shall not involve the use of any chemical, mechanical or electrical equipment or fixture which is not a customary household appliance or light office equipment. This requirement shall not apply to the use of the premises as a home occupation by doctors, dentists and chiropractors.

(9) No manufacturing or assembly shall be permitted using other than manually operated equipment.

(10) There shall be no more than 1 home occupation per dwelling unit.

(11) Instructional services or sales meeting shall be limited to no more than 2 participants, including visitors, at a time.

(12) The applicant shall demonstrate that there will be no noise, odor, smoke, glare or vibration beyond the property line.

(13) Provision for dust collection or collection of similar by-products shall be provided.

(14) The lawful use of any premises as a home occupation existing on May 24, 1988 may be continued although neither such use nor bulk conforms to the current regulations. Normal maintenance and repair of premises used as a nonconforming home occupation shall be permitted if it is does not extend the area of or the intensity of such use.

(15) The applicant shall provide a sworn and notarized affidavit indicating how all the aforementioned conditions will be met.

Add new subsection, §290-20J, which shall read:

J. In the R-160, R-80, R-40, R-22, R-15 and R-10 zoning districts keeping domestic animals (except pigs) for individual domestic purposes shall be permitted provided that not more than 1 horse or cow per acre, 5 cats or dogs over 6 months old, and not more than 25 fowl shall be kept on any lot. No animals (except cats or dogs) shall be penned or housed within 50 feet of any lot line and there shall be no storage of manure, animal waste or odor-or dust-producing substance or use, except spraying or dusting to protect vegetation, within 50 ft. of any lot line, watercourse or wetland.

Add new subsection, §290-20K, which shall read:

K. Retail/Commercial Agricultural Allowable Operations.

In the R-160, R-80, R-40, R-22 and R-15 zoning districts the following commercial agriculture operations shall be permitted, provided that there shall be no greenhouse, heating plant, stable or similar animal housing, or the storage of manure of other odor-or dust-producing substance or use, except spraying or dusting to protect vegetation, within 200 ft. of any lot line, watercourse or wetland and all equipment is kept within a completely enclosed building:

(a) Nurseries, greenhouse and growing of mushrooms, provided that no smokestack shall exceed the height regulation; buildings for display and sale of agricultural products.

(b) Orchards, truck gardening and growing of other field crops and vineyards and growing of other bush and berry crops.

(c) Keeping, breeding and raising of cattle (including dairies), sheep, goats and horses and rental of horses, on lots of 10 acres or more. However, keeping, breeding, and raising of fowl, pigs, rabbits, fox, mink, rodents, primates and other small fur-bearing animals for any commercial or laboratory purpose is not permitted.

**Section 12. Changes to the Active Adult Residence (AAR) Zoning District and Senior Housing Requirements**

AAR

Modify §290-7.1(I), to read as follows:

I. Incentive density bonus. In granting an application for rezoning to an Active Adult Residence Zone, the Town Board may, in its discretion, grant up to the following maximum density bonuses:

(1) In R-22, R-15 and R-10 Zones, the maximum density bonus is equal to 100% of the maximum residential density, provided that 30% of the additional units permitted as a result of the density bonus shall constitute affordable units.

(2) In MF-1, MF-2 and MF-3 Zones, the maximum density bonus is equal to 20% of the maximum residential density, provided that 35% of the additional units permitted as a result of the density bonus shall constitute affordable units.

(3) For nonresidential zones, the maximum residential density shall be calculated by applying the zoning district of abutting residential parcels, and calculating a theoretical unit count based upon a standard subdivision map. For nonresidential parcels that abut more than one residentially zoned parcel, the maximum residential density shall be calculated by applying the zoning district of the residential parcel with the greatest percentage of property abutting the subject property. For nonresidential zones abutting R-22, R-15 and R-10 Zones, the maximum density bonus is equal to 100% of the maximum residential density, provided that 30% of the additional units permitted as a result of the density bonus shall constitute affordable units. For nonresidential zones abutting MF-1, MF-2 and MF-3 Zones, the maximum density bonus is equal to 20% of the maximum residential density, provided that 35% of the additional units permitted as a result of the density bonus shall constitute affordable units.

(4) The Town Board may, in its discretion, grant less than the maximum density bonus with a corresponding pro-rata reduction in the number of required affordable units. The density bonus shall be established on a case-by-case basis by the Town Board using comparisons of traffic, impervious surface, proposed numbers of affordable units, variety of housing types and any other development-related factors the Town Board deems to be relevant, including, but not limited to, the surrounding residential zones.

Modify §290-20(G)(1)(c) to read as follows:

Maximum principal building(s) coverage shall be 20% and maximum lot coverage, which includes Principal Building(s) coverage, shall be 50% within the AAR zoning district.

Modify §290-20(G)(1)(d) to read as follows:

(d) Minimum front lot line for overall site shall be 300 feet and access to either a State or County major or secondary road as classified on the Town Official Map.

16

**Senior Housing**

Modify §290-17O(A)(8)(b), to read as follows:

> At least 10% of the units shall be affordable units, except for Assisted Care Living Quarters.

Modify §290-17O(A)(11)(c), to read as follows:

> Minimum front lot line shall be 300 feet along a State or County major or secondary road.

Add new subsection, §290-17O(A)(11)(v), which shall read:

> One bedroom dwelling units shall be a maximum of 900 square feet and two bedroom units shall be a maximum of 1,200 square feet.

Add new subsection, §290-17O(B)(2)(l), which shall read:

> One bedroom dwelling units shall be a maximum of 900 square feet and two bedroom units shall be a maximum of 1,200 square feet.

Modify §290-17O(A)(11)(f), to read as follows:

> Maximum principal building(s) coverage shall be 33% and maximum lot coverage, which includes Principal Building(s) coverage, shall be 50%.

Modify §290-17O(A)(11)(m), to read as follows:

> Reserved

Modify §290-17O(A)(11)(n), to read as follows:

> Reserved

Modify §290-17O(B)(2)(f), to read as follows:

> Maximum principal building(s) coverage shall be 33% and maximum lot coverage, which includes Principal Building(s) coverage, shall be 66%.

Modify §290-17O(B)(2)(b), to read as follows:

> Minimum lot area shall be one acre.

## Section 13.  Requirements for Dormitories/Accessory Sleeping Quarters

Add the following two definitions, alphabetically placed, to §290-3B:

17

**SCHOOL OF GENERAL INSTRUCTION**: Any public or private nursery, elementary, junior high, high school or college offering courses in general instruction and accredited by the New York State Education Department, offering courses at least five days per week and seven months per year.

**DORMITORIES**: A building or part of a building containing private or semiprivate rooms which open to a common hallway, which rooms are sleeping quarters for administrative staff, faculty or students, along with bathroom, dining, cooking, laundry, lounge and recreation facilities, as required. Dormitory rooms shall not contain separate cooking, dining or housekeeping facilities, except that one dwelling unit with complete housekeeping facilities may be provided for use of a superintendent or supervising staff for every 50 dormitory rooms, or major part thereof. No more than one communal dining room shall be provided in the building or structure used for dormitory purposes. Single-family, two-family and/or other multiple residential facilities, other than that described above, are not to be considered as dormitories. Private rooms may be occupied by no more than one person and semiprivate rooms by no more than four persons.

Add new subsection, §290-17AB, which shall read:

AB. Dormitories – Dormitories are permitted by Special Use Permit of the Planning Board only as accessory uses to, and located on the same lot as, Schools of General Instruction or camps subject to the following conditions:

(1) There shall be a minimum lot area of 2,400 square feet provided per dormitory bed, exclusive of the lot area allocated and devoted to the principal and other accessory buildings on any site including the required yards and/or setbacks, buffers and parking facilities for said buildings.

(2) The minimum distance between a dormitory and any other building on the lot shall be 50 feet.

(3) The minimum distance between any dormitory and any interior driveway shall be 25 feet.

(4) The maximum height of any dormitory shall be two stories or 25 feet, whichever is less.

(5) No dormitory room or dwelling unit shall be permitted in any cellar or basement.

(6) All dormitories shall be equipped with sprinkler and fire alarm systems in accordance with the Town of Clarkstown Fire Prevention Code and the New York State Uniform Fire Prevention and Building Codes.

(7) Required off-street parking (subject to Article VI and Table 2).

(8) Additional regulations.
(a) No trucking shall be permitted into a site from a collector or local street. No shipping or receiving of goods shall be permitted between the hours of 7:00 p.m. and 7:00 a.m.

(b) Access roads:

[1] Ingress and egress roads shall be from a State or County major or secondary road. A variance from this provision shall be deemed a use variance.

[2] Site access roads shall not be located within 100 feet of any street intersection.

(9) Floor area ratio shall be 0.30.

(10) Yard requirements:

Front Yard 100 feet
Side Yard 100 feet
Rear Yard 100 feet

## Section 14.  Requirement for Payment or Resolution of Taxes, Assessments, Violations and Other Fees

Modify §290-14 to read as follows:

No variances, special permits, subdivision or site plan approvals or authorizations shall be issued, no applications therefore shall be considered, and no review shall be conducted by the Town Board, Planning Board and Zoning Board of Appeals, with respect to any premises within the Town unless and until all outstanding Code violations on said premises are resolved and all amounts due the Town in real estate taxes, special assessments and any other payment chargeable to the owner or possessor of said premises, together with all penalties and interest thereon, shall have been paid in full.

## Section 15.  Table Re-Numbering and Referencing

Re-number the tables of the Town Code accordingly to reflect those tables removed and the addition of the new Tables 1 and 2.

Modify all references to the tables to reflect re-numbering.

**Section 16.  When effective.**

This local law shall take effect immediately upon filing with the Secretary of State of the State of New York.

| 11-Mar-16 | Local Law - Attachment #1 | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | Table #1 | | | | | | |
| | Residential Zoning Districts Land Use | | | | | | |
| P=Permitted By Right | | | | | | | |
| Blank = Not Permitted | | | | | | | |
| TB = Permitted by Special Permit of the Town Board | | | | | | | |
| ZBA = Permitted by Special Permit of the ZBA | | | | | | | |
| PB= Permitted by Special Permit of the PB | | | | | | | |
| A = Permitted as General Accessory Use | | | | | | | |
| | | | | | | | MF-1 |
| | | | | | | | MF-2 |
| **ALL USES** | R-160 | R-80 | R-40 | R-22 | R-15 | R-10 | MF-3 |
| **RESIDENTIAL** | | | | | | | |
| Single-family detached residences | P | P | P | P | P | P | P |
| Two-family residences | | | | | | P | P |
| Multi-family Residences | | | | | | | P |
| Senior citizen housing subject to §290-170(A). | | | | PB | PB | PB | PB |
| Accommodations for superintendent which shall be part of the overall density of the site. | | | | | | | A |
| Gatehouse, reception office or watchman's post, subject to §290-21B(7). | A | A | A | A | A | A | A |
| The following private structures when provided as an integral part of an overall development: garages, tennis (and similar) courts, swimming pools,pump houses, clubhouses. Swimming pools are subject to Chapter 258 of the Town Code. | | | | | | | A |
| The following private structures: greenhouses, barns, tool sheds, garages, tennis (and similar) courts, swimming pools. Swimming pools are subject to Chapter 258 of the Town Code. | A | A | A | A | A | A | |

| ALL USES | R-160 | R-80 | R-40 | R-22 | R-15 | R-10 | MF-1<br>MF-2<br>MF-3 |
|---|---|---|---|---|---|---|---|
| Keeping not more than 2 nontransient boarders or roomers | A | A | A | A | A | A | |
| Keeping not more than 1 unoccupied trailer, or boat or commercial vehicle subject to §290-22. | A | A | A | A | A | A | |
| Keeping domestic animals (except pigs) subject to §290-20J. | A | A | A | A | A | A | |
| Keeping of not more than 3 cats or dogs over 6 months old. | | | | | | | A |
| **CIVIC/RECREATION** | | | | | | | |
| Private Recreational Clubs on lots not less than 10 acres in area, including golf courses, tennis clubs, beaches, marinas, yacht and similar clubs, related uses such as boat rental and picnic grounds. Accessory restaurants shall not be within 200 ft. of any lot line. | PB | PB | PB | PB | PB | PB | PB |
| Places of worship. | P | P | P | P | P | P | P |
| Preserves, parks and playgrounds | P | P | P | P | P | P | P |
| Recreation facilities, indoor and outdoor, incidental to places of worship or to schools. | A | A | A | A | A | A | |
| Day Camps on lots not less than 10 acres, subject to §290-17D. | PB | PB | PB | PB | PB | | |
| Camps, on lots not less than 10 acres, with dormitories, subject to §290-17D and §290-17AB. | PB | PB | PB | PB | PB | | |
| Community Centers, libraries, museums, art galleries and similar facilities. | PB | PB | PB | PB | PB | PB | |
| **SCHOOLS** | | | | | | | |
| Schools of general instruction. | | P | P | P | P | P | P |
| Schools of general instruction with dormitories subject to §290-17AB. | | PB | PB | PB | PB | PB | PB |
| **MEDICAL** | | | | | | | |

| ALL USES | R-160 | R-80 | R-40 | R-22 | R-15 | R-10 | MF-1 MF-2 MF-3 |
|---|---|---|---|---|---|---|---|
| Convalescent and nursing homes, and institutions for children or the aged, licensed by the State or authorized by the Department of Health of NYS as a residential health care facility whether or not operated for profit, provided that no building is located within 100 ft. of any lot and the lot has an area of at least 4 acres. | | | | | | | TB |
| Hospice residences on lots with a minimum of 10 acres, subject to §290-17W. | TB | TB | | | | | |
| **RETAIL/COMMERCIAL** | | | | | | | |
| Commercial Agriculture Operations, subject to §290-20K. | P | P | P | P | P | | |
| Child day-care centers, when accessory to places of worship pursuant to §290-17Z. | PB | PB | PB | PB | PB | PB | PB |
| Home occupations, subject to §290-17AC. | ZBA | ZBA | ZBA | ZBA | ZBA | ZBA | |
| Home occupations subject to §290-20I. | A | A | A | A | A | A | |
| Professional offices of a doctor, psychologist, dentist, chiropractor, lawyer or accountant, engineer, or surveyor provided that the number of such offices in each development shall not exceed 1 for each 25 dwelling units or major fraction thereof, not to exceed 2,000 square feet per office. | | | | | | | A |

| | | | | | | | MF-1 |
| | | | | | | | MF-2 |
| **ALL USES** | **R-160** | **R-80** | **R-40** | **R-22** | **R-15** | **R-10** | **MF-3** |
| Temporary structures for storage of equipment and materials used in connection with the construction of residential development, and temporary sales offices, not to exceed 2 years. The Building Inspector may extend the time period in one-year increments so long as construction and sales activities are underway. | A | A | A | A | A | A | A |
| **MISCELLANEOUS** | | | | | | | |
| Cemeteries on plots of at least 5 acres subject to approval of the County Legislature. | P | P | P | P | P | P | P |
| Public utility substations or pumping stations and telephone exchanges, housed in a structure that harmonizes with the character of the neighborhood and having adequate fences and other safety devices and adequate screening and landscaping provided that they provide service to the surrounding area. | ZBA | ZBA | ZBA | ZBA | ZBA | ZBA | ZBA |
| Public utility right-of-way, towers and lines, provided that they are necessary for the general welfare; neighborhood character and surrounding property values are reasonably safeguarded; and that the towers and poles conform to the height restrictions of the district. | ZBA | ZBA | ZBA | ZBA | ZBA | ZBA | ZBA |
| Reservoirs | TB | | | | | | |
| Water towers and water tanks owned and operated by a public utility, which water tank or water tower is located at or above ground, on plots of 3 acres or more. | TB | TB | TB | TB | TB | TB | TB |
| **MISCELLANEOUS ACCESSORY USES** | | | | | | | |

| ALL USES | R-160 | R-80 | R-40 | R-22 | R-15 | R-10 | MF-1 MF-2 MF-3 |
|---|---|---|---|---|---|---|---|
| Accessory parking, subject to Article VI and Table 2 Residential Zoning Districts Parking and Loading Requirements. | A | A | A | A | A | A | A |
| Accessory loading, subject to Article VI and Table 2 Residential Zoning Districts Parking and Loading Requirements. | A | A | A | A | A | A | A |

**Local Law -Attachment #2**
## Table #2
**Residential Zoning Districts Parking and Loading Requirements**
March 11, 2016
Minimum Required Off Street Parking and Loading for Zoning Districts R-160, R-80, R-40, R-22, R-15, R-10, MF 1, 2 & 3
(Subject to Article VI )

| ALL USES | AT LEAST ONE PARKING SPACE FOR EACH: | LOADING BERTH (LB) OR LOADING AREA (LA) REQUIRED |
|---|---|---|
| Residential Districts | 1/2 dwelling unit, plus 2 spaces for any accessory home occupation or principal agricultural use. | – |
| Multi-Family Residences | ½ unit. At least ¼ of all required parking shall be enclosed. Additional guest parking shall be provide and shall be no Less than 20% of the required parking. Guest parking shall be in groups of 5 or more spaces and shall be placed to allow convenient use by guests, as determined by the Planning Board. Driveways shall not be considered as Parking spaces for purposes of meeting this requirement. | – |
| Senior Housing | Refer to §290-17O(A)(10) or §290-20G(2)(d),(3)(c) | LB |
| Private Recreational Clubs, golf courses, tennis clubs, beaches, marinas, yacht and similar clubs. | 2 members or accommodations such as lockers, whichever is greater. | LA |
| Places of worship | 200 Square Feet of Floor Area, but not less than 1 space for each 5 seats where provided. | – |
| Preserves, parks and playgrounds | 0.4 acres | – |
| Recreation facilities, indoor and outdoor, incidental to places of worship. | No additional parking required. Parking provided for Places of Worship. | – |
| Day camps | Employee | – |
| Camps with dormitories | 10 beds plus 1 for each employee | LA |
| Community Centers, libraries, museums, art galleries and similar facilities | 200 Square Feet of Floor Area, but not less than 1 space for each 5 seats where provided. | LB |
| Schools of general instruction | 12 seats or students for schools of elementary or nursery grades and 6 seats or students for other schools. | – |
| Schools of general instruction with dormitories | 12 seats or students for schools of elementary or nursery grades and 6 seats or students for other schools, plus 1 space per 4 beds for high schools and 1 space per 2 beds for post secondary schools. | LA |
| Convalescent and nursing homes and institutions for children or the aged | 4 beds, plus 1 for each employee. | LB |
| Hospice residences | 4 beds, plus 1 for each employee. | LA |
| Commercial agriculture operations | 200 Square Feet. | LA |
| Child day-care centers when accessory to places of worship | 350 Square Feet. | – |
| Professional offices of a doctor, psychologist, dentist, chiropractor, lawyer or accountant, engineer, or surveyor. | 150 square feet of gross floor area, except that this provision shall not be applicable to premises for which building permits were issued prior to September 30, 1978. | – |
| Public Utility substations or pumping stations and telephone exchanges | ½ site, plus 1 per employee. | – |

AFFIDAVIT OF SERVICE OF PROPOSED LOCAL LAW
IN ELECTRONIC FORMAT BY ELECTRONIC MEANS

STATE OF NEW YORK      )
COUNTY OF ROCKLAND     )     SS.:

    I, Patricia McDonald, being duly sworn, depose and say:

    That I am over the age of eighteen (18) years and reside in Pearl River, New York.

    I served the proposed final version of a Local Law amending the Zoning Map and Chapter 290 of the Town Code of Clarkstown Regulating Non-Residential Uses in Residential Zoning Districts on the following parties:

George Hoehmann, Supervisor: g.hoehmann@clarkstown.org
Frank Borelli, Councilman: f.borelli@clarkstown.org
Stephanie G. Hausner, Councilwoman: s.hausner@clarkstown.org
John J. Noto, Councilman: j.noto@clarkstown.org
Valerie Moldow, Councilwoman: v.moldow@clarkstown.org

by sending a true PDF copy of same in electronic format by electronic means to their desks at the Clarkstown Town Hall, 10 Maple Avenue, New City, New York on March 14, 2016.

_Patricia McDonald_
Patricia McDonald

Sworn to before me this
14th day of March 2016.

_____
Notary Public

STACY KUO
Notary Public, State of New York
No. 01KU6277660
Qualified in Rockland County
Commission Expires March 11, 2017

March 11, 2016

## Synopsis

### Section 1. Title

Local Law Amending the Zoning Map and Chapter 290 of the Town Code of the Town of Clarkstown Regulating Non-Residential Uses in Residential Zoning Districts

### Section 2. Legislative Intent

On September 29, 2015 the Town Board passed a moratorium on applications to the Town Board, Planning Board and Zoning Board of Appeals for development approvals within the R, MF, RG and AAR zones. The intent of this legislation was to temporarily suspend the approval of residential subdivisions and other residential and non-residential development within residential and multifamily zoning districts while the Town considered changes to its land use regulations as they pertain specifically to the following goals and objectives of the Comprehensive Plan:

1. Preserve the suburban and remaining semi-rural character of the Town.

2. Develop zoning and building regulations that reduce or restrict odors, sounds, commercial traffic, light pollution and other negative environmental impacts on residential areas.

3. Expand initiatives to safeguard neighborhoods from inappropriately scaled development.

As instructed by the Supervisor, a committee was formed consisting of the Departments of Planning, Building and Environmental Control and the Town Attorney's Office. Since the moratorium was passed on September 29, 2015 this committee has met one to two times per week to develop amendments to the Zoning Map and Town Code that would address issues of development/redevelopment within the Town's residential zones.

### Section 3. Zoning Map Amendment – Replacement of RG-1 and RG-2 Zoning Districts with MF-2 and MF-3 Zoning Districts

The General Residence, Low Density (RG-1) and General Residence, Medium Density (RG-2) zoning districts are proposed to be replaced by Multifamily (MF-2 and MF-3) zoning districts. Very little vacant General Residence, Low Density (RG-1) and General Residence, Medium Density (RG-2) zoned land exists within the Town. The MF-2 and MF-3 zoning districts were created in 1988 and were originally intended to replace the RG zones. The housing densities permitted by the MF-2 and MF-3 are slightly lower than those of the RG-1 and RG-2 zones, respectively. Thus overall development potential will be slightly lowered were this change to take effect.

## Section 4. Amendments to Use Tables

The individual use tables for all of the residential zones (R-160, R-80, R-40, R-22, R-15, R-10, MF-1, MF-2 and MF-3), which currently exist as separate tables for each zone, are proposed to be consolidated into one table. As most of the uses permitted in these zones are common to all of them, consolidation of the tables will lead to a more comprehensible and concise reference system. It is recommended that many non-residential uses currently permitted in these residential zones be removed or modified. Other uses, which are licensed and regulated by the state or exempt from zoning, are also proposed to be removed. Some of the most significant changes are as follows:

- Remove sand pits, gravel pits and excavation operations from all residential zones
- Remove public and private hospitals and sanitariums from all residential zones
- Remove floodplain uses and reservoirs from all residential zones, except R-160 where they are currently located.
- Remove silos and greenhouses from MF zoning districts
- Reduce the number of non-transient boarders or roomers allowed from 3 to 2
- Increase private recreation clubs minimum area requirement from 5 to 10 acres
- Cap professional offices in MF zones at a 2,000 SF maximum
- Remove family day care uses, as these uses are regulated by the state
- Remove boarding home and group home uses, as these uses are mandated by the state to be treated as single family residential uses
- Remove fire, police, emergency service and United States Postal facilities, as these uses are exempt from zoning
- Require nursing and convalescent homes to be licensed
- Change references to churches to "places of worship"

Additionally, it is recommended that many uses which were previously permitted by Special Permit of the Town Board or Zoning Board of Appeals be instead permitted by Special Permit of the Planning Board. As the Planning Board is nearly always the entity responsible for ensuring applicants adhere to the provisions of Special Permit uses, and almost always the Lead Agency under the New York State Environmental Quality Review Act (SEQRA), charging the Planning Board with the issuance of these Special Permits makes for a more efficient and streamlined review process.

## Section 5. Addition of Residential Use Parking and Loading Table

As the separate residential use tables are proposed to be eliminated, portions of these tables dealing with parking and loading requirements were reorganized into a new separate table. Uses that previously did not have parking and loading requirements listed were updated to include this information. As an alternative to loading berths, loading areas were added for some uses, which offer a less intensive option for development.

## Section 6. Amendments to Bulk Table

As the RG-1 and RG-2 zones are being recommended for removal from the Zoning Map, these zones will also need to be removed from the bulk table. The elimination of the two rows on the bulk table previously occupied by the RG-1 and RG-2 zones provides space for the Commercial Office (CO) and Commercial Office Support (COS) zones, which were on a separate table previously; the notes from the CO and COS table can also be added to the bulk table.

A row was added to the bulk table to add requirements for two-family residences in the R-10 zone. Previously the bulk requirements for this use defaulted to a generic "other use" category. The minimum lot size for "all other uses" within the R-10 zoning district was also increased from 40,000 to 80,000 square feet to better protect these neighborhoods from potentially out of scale uses.

Additionally, a new map note was added to the bulk table to require uses other than single-family homes to have a minimum of 100 feet of frontage on a State or County major or secondary class road as classified on the Town Official Map. This requirement is based on the previous provision that two-family residences be located on major or secondary class roads. As other uses permitted within the residential zones are typically more intensive than two-family homes, it is recommended that these uses should carry this requirement and be further restricted to State or County roads, which can handle higher volumes of traffic.

Two new columns were added to the bulk table, Principal Buildings(s) Coverage and Total Lot Coverage; a definition for Principal Building was also added. These categories add requirements that will limit excess land coverage and aid in stormwater quality/quantity control.

## Section 7. Additional Regulations for Multifamily Residential Uses

To provide additional clarity to the Town Code, a definition for "Multi-Family" was added to the definitions section. This definition simply refers to the current definition for "Multiple Residences." Additional regulations for uses within the MF-1, MF-2 and MF-3 zones, which were previously located on the original use table, were moved to appropriate sections within the Code text. Certain requirements from the RG-1 and RG-2 zoning districts that were more restrictive and offered better development control were added to these sections as well. In addition, structure and lot coverage requirements were added to limit excess land coverage and aid in stormwater quality/quantity control.

## Section 8. Additional Regulations for All Residential Zones

Similar to Section 7, additional regulations for all residential uses were transferred from the original use table to the Code text. A cross reference concerning requirements for accessory buildings in front yards was corrected to include all applicable districts. Whereas currently the

Planning Board has the authority to reduce the required buffer from 75' to 25' for Special Permit uses, it is proposed that the Planning Board only be allowed to reduce this buffer to the required yard dimensions of the zoning district.   Further oversight of Special Permit uses is also proposed, by requiring them to renew their Permit every 5 years or some other period of time, as required by the applicable Board.

## Section 9. Development Constraint Changes

It is recommended that development on environmentally sensitive lands be further restricted.  It is proposed that 50% of the area of the land containing wetlands and designated floodplains not be counted toward the minimum lot area for development purposes.  Furthermore, no buildings or structures would be permitted in these areas.  Additionally, land disturbance of any kind, not just building construction, would no longer be permitted on steeply sloped portions of land.  The definition of "Buffer and/or Buffer Area" is also proposed to be modified to include additional information on how to measure buffers and buffer areas.

## Section 10. Changes to Required Off-Street Loading Berths and Permitted Accessory Parking

The requirements for loading berths, which were previously in the original use table, were added to the Code text.  New text was added to permit loading areas as an alternative to loading berths. The minimum vehicular weight of a commercial vehicle parked in a residential zone was increased from 4,000 pounds to 6,500 pounds. This change is recommended to accommodate the increase in weight of modern vehicles since the original text was written.  Definitions were added for "Loading Berth" and "Loading Area."

## Section 11. Transfer of Specific Requirements for Special Permits and Accessory Uses from Use Tables to Town Code Text and Changes to the Definition of Home Occupation

As in previous Sections, content from the original use tables concerning Special Permits and accessory uses were transferred to the Code text.  The definition of "Home Occupation" was altered to eliminate massage establishments, pet grooming, nail salons and other similar uses.

## Section 12. Changes to the Active Adult Residence (AAR) Zoning District and Senior Housing Requirements

Despite past efforts to increase the amount of affordable senior housing within the town, there is still a significant demand.  Density incentives utilized in past senior zoning resulted in the creation of luxury units that did not address this demand.  As such, this proposed Local Law

would increase the minimum requirement for affordable units within AAR developments from 20% to 30% when applied over R-22, R-15 and R-10 zones, and from 20% to 35% when applied over MF-1, MF-2 and MF-3 zones. The densities permitted for senior housing development should offset any loss of development revenue as a result of this increase. The affordable unit requirement is proposed to remain at 10% within Senior Housing developments, but it is proposed that Assisted Living Quarters not be held to this requirement as this housing type provides for many additional services.

To better protect the town's established single-family residential neighborhoods from out of scale development, the areas where senior housing developments are permitted to be constructed were reviewed. As stated previously, two-family residences are required to be located on major or secondary roads, and these uses are much less intense than senior housing developments. Likewise, it is proposed that senior housing developments would no longer be permitted on collector class roads, and would only be constructed on State or County major or secondary class roads. As these roads are capable of handling more traffic, the requirement that Senior Citizen Congregate Housing sites be located 1,500' apart is proposed to be removed, along with the same requirement for Assisted Care Living Quarters.

Two senior housing developments are currently being proposed within the Town. While the town's multifamily and mixed-use zoning districts have limits on unit sizes within housing developments, there is currently no cap on unit size within senior housing developments. As such, this Local Law establishes a maximum size for a one-bedroom unit at 900 square feet, and a maximum size for a two-bedroom unit at 1,200 square feet. In addition, structure and lot coverage requirements were added to limit excess land coverage and aid in stormwater quality/quantity control.

This Local Law also proposes lifting the cap on senior housing projects in our Hamlet Centers. Currently, in Hamlet Centers senior housing projects can only be on a "maximum of 2 acres." At 21 units an acre, a project could not have more than 42 units. Yet Hamlet Centers are ideal to support larger senior developments as they have the services, shopping, transportation and pedestrian amenities seniors need.

## Section 13.   Requirements for Dormitories/Accessory Sleeping Quarters

The town has recently received proposals for dormitory uses in association with camps and schools; no current regulations exist for such uses. Definitions are being proposed for both "Schools of General Instruction" and "Dormitories." Dormitories would be permitted by a Special Permit of the Planning Board, but only as accessory uses to Schools of General Instruction or camps. Similar to other more intensive uses, dormitories would only be permitted on State or County major or secondary class roads. Lot area requirements for dormitories would increase in relationship to bed count and dormitory structures would be limited to a maximum height of two-stories or 25', whichever is less. Front, side and rear yard setback requirements for

dormitories would be 100', which would help to safeguard single-family residential neighborhoods from potentially out of scale development.

## Section 14.  Requirement for Payment or Resolution of Taxes, Assessments, Violations and Other Fees

This section proposes the addition of language that would prohibit the Town Board, Planning Board or Zoning Board of Appeals from reviewing and approving any land use proposal until the owner of property pays the Town any outstanding taxes or fees and resolves any existing Code violations.

## Section 15.  Table Re-Numbering and Referencing

As several tables are proposed to be removed from the Town Code as a result of this law, the existing tables will require renumbering, and references to the tables throughout the Code will require updating.

## Section 16.  When effective.

This local law shall take effect immediately upon filing with the Secretary of State of the State of New York.

| 11-Mar-16 | | Residential Zoning Use Table Worksheet | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Town of Clarkstown | | | | | | | | | |
| Planning Department | P=Permitted By Right | | | | | | | | |
| Use Table for all Residential Zones | Blank = Not Permitted | | | | Strikethough text is proposed to be removed. | | | | |
| Incorporating edits as directed by | TB = Permitted by Special Permit of the Town Board | | | | Blue is proposed to be added. | | | | |
| Residential Zoning Working Group | ZBA = Permitted by Special Permit of the ZBA | | | | TEXT IN GREEN HAS BEEN RELOCATED TO A NEW SECTION IN 290 | | | | |
| (reflects edits through 1/14/16) | PB= Permitted by Special Permit of the PB | | | | | | | | |
| | A = Permitted as General Accessory Use | | | | | | | | |
| | | | | | | | | | |
| | | **ELIMINATED THE RG-1 & RG-2 ZONES in THEIR ENTIRETY** | | | | | | | |
| | | | | | | | | MF-1 | NOTES/CHANGES MADE |
| | | | | | | | | MF-2 | Re-ordered uses from |
| ALL USES | R-160 | R-80 | R-40 | R-22 | R-15 | R-10 | ~~RG-1~~ | ~~RG-2~~ | MF-3 | least to most intensive |
| **RESIDENTIAL** | | | | | | | | | | |
| Single-family detached residences | P | P | P | P | P | P | P | P | P | Added "P" to MFs |
| Two-family residences, ~~provided that the property shall conform to all the bulk regulations of Group H listed under Table of General bulk Regulations and shall have frontage and access to either a major, secondary or collector road as classified on the Town Official Map, as amended.~~ | | | | | | P | | | P | Added "P" to MFs |
| ~~Two-family residences~~ | | | | | | | ~~ZBA~~ | ~~ZBA~~ | | Eliminated the entire category |
| ~~Condominium-type garden apartments~~ | | | | | | | P | P | | Eliminated the entire category |
| ~~Rental-type garden apartments and cooperative garden apartments.~~ | | | | | | | ~~TB~~ | P | | Eliminated the entire category |
| Multi-family Residences ~~Dwelling units of all types of design and forms of ownership, including rental, cooperative, condominium, except single family detached residences. Fee simple shall be subject to Column 8, Item 10.~~ | | | | | | | | | P | Added and Deleted text as shown. |
| Senior citizen housing subject to §290-170(A). | | | | PB | PB | PB | ~~PB~~ | ~~PB~~ | PB | No Change |
| Accommodations for superintendent which shall be part of the overall density of the site. | | | | | | | | | A | No Change |
| ~~Sleeping facilities for servants.~~ | A | | | | | | | | | Eliminated the entire category |
| ~~Accommodations for servants.~~ | | A | A | A | A | A | A | A | | Eliminated the entire category |
| ~~For any institutional user 1 dwelling unit for a caretaker (which shall be part of the overall density of the site), gatehouse, reception office or watchman's post, subject to §290-218(7), except that all of the above are permitted. (See attached)~~ | | | | | | | | | A | Eliminated the entire category |
| ~~For any institutional user 1 dwelling unit for a caretaker,~~ Gatehouse, reception office or watchman's post, subject to §290-218(7). | A | A | A | A | A | A | A | A | A | Eliminated text as shown; Added "A" to MFs; |

| ALL USES | R-160 | R-80 | R-40 | R-22 | R-15 | R-10 | RG-1 | RG-2 | MF-1 MF-2 MF-3 | NOTES/CHANGES MADE Re-ordered uses from least to most intensive |
|---|---|---|---|---|---|---|---|---|---|---|
| The following private structures when provided as an integral part of an overall development: greenhouses, barns silos, tool sheds, main service buildings, garages, tennis (and similar) courts, water tanks, swimming pools, pump houses, clubhouses, recreational structures and other similar structures. Swimming pools are subject to Chapter 258 of the Town Code. | | | | | | | | | A | Eliminated text as shown; |
| The following private structures: greenhouses, barns, silos, tool sheds, garages, tennis(and similar) courts, swimming pools, recreational structures and other similar structures. Swimming pools are subject to Chapter 258 of the Town Code. (See attached) | A | A | A | A | A | A | A | A | | Inserted text as shown. |
| Keeping not more than 3 2 nontransient boarders or roomers | A | A | A | A | A | A | A | A | | Changed # of Boarders from 3 to 2. |
| Keeping not more than 1 unoccupied trailer or boat, or commercial vehicle subject to §290-22. | A | A | A | A | A | A | A | A | | |
| Keeping domestic animals (except pigs) subject to §290-20J. Keeping domestic animals (except pigs) for individual domestic purposes or for cultivation of the soil, provided that not more than 1 horse or cow per acre, 5 cats or dogs over 6 months old, and not more than 25 fowl shall be kept on any lot, and all No animals (except cats or dogs) or fowl shall be penned or housed within and no odor or dust-producing substance or use, except spraying or dusting to protect vegetation, shall be maintained allowed within 50 ft. of any | A | A | A | A | A | A | A | | | Inserted and removed text as shown and added "A" to R-160; |
| Keeping of not more than 3 cats or dogs over 6 months old. | | | | | | | A | A | A | Added "A" to MFs |
| **CIVIC/RECREATION** | | | | | | | | | | |
| Golf courses and tennis clubs(public or private), on lots not less than 10 acres in area, including picnic areas and accessory restaurants, whether or not operated for profit, but not within 200 feet of any lot line. | P | | | | | | | | | Eliminated the entire category |
| Private Recreational Clubs Golf Courses & Tennis Clubs and private clubs, on lots not less than 5 10 acres in area, including golf courses, tennis clubs, beaches, marinas, yacht and similar clubs, related uses such as boat rental or storage and picnic grounds. Accessory restaurants whether or not operated for profit, but shall not be within 200 ft. of any lot line. | PB | ZBA, PB | ZBA, PB | ZBA, PB | ZBA, PB | PB | ZBA | ZBA | PB | Inserted and removed text as shown; added "PB" to every district; removed ZBA from R-15, R-22. R-40, R-80. |
| Places of worship. accessory rooms for religious training, parish houses and rectories. | P | P | P | P | P | P | | | P | Eliminated and inserted text as shown; Added "P" to R-80, R-40, R-22, R-15, R-10. |

| ALL USES | R-160 | R-80 | R-40 | R-22 | R-15 | R-10 | RG-1 | RG-2 | MF-1<br>MF-2<br>MF-3 | NOTES/CHANGES MADE<br>Re-ordered uses from least to most intensive |
|---|---|---|---|---|---|---|---|---|---|---|
| Houses of worship, religious buildings, parish houses and rectories. | | | | | | | | | P | Eliminated the entire category |
| Churches and similar places of worship, Sunday school buildings, parish houses and rectories. | | P | P | P | P | P | P | P | | Eliminated the entire category |
| Preserves, parks and playgrounds | P | P | P | P | P | P | | | P | Added "P" to R-10, R-15, R-22, R-40, R-80 and MFs |
| Public parks and playgrounds. | | P | P | P | P | P | P | P | P | Eliminated the entire category |
| Recreation facilities, indoor and outdoor, incidental to churches and similar places of worship or to schools. | A | A | A | A | A | A | A | A | | Removed text as shown |
| Day Camps on lots not less than 10 acres, subject to §290-17D and §290-17AB. | PB | ZBA, PB | ZBA, PB | ZBA, PB | ZBA, PB | | | | | Inserted text as shown; Removed ZBA Special Permit from R-80, R-40,R-22. R-15; Added PB Special Permit to R-15, R-22, R-40, R-80, R-160; |
| Camps, on lots not less than 10 acres, with dormitories,subject to §290-17D and §290-17AB. | ZBA, PB | PB | PB | PB | PB | | | | | Inserted text as shown; Removed ZBA Special Permit from R-160; Added PB Special Permit to R-15, R-22, R-40, R-80, R-160. |
| Community Centers, libraries, museums, art galleries, institutional study centers and similar facilities. | ZBA | | | | | | | | | Eliminated entire category |
| Community Centers, libraries, museums, art galleries and similar facilities. | PB | ZBA, PB | ZBA, PB | ZBA, PB | ZBA, PB | ZBA, PB | | | | Changed ZBA to PB |
| Fire, police and similar public safety buildings | P | | | | | | | | P | Eliminated the entire category Immune to Zoning |
| United States Postal Service post office facilities; fire, police and ambulance stations and other similar public safety buildings. | | P | P | P | P | P | P | P | | Eliminated the entire category Immune to Zoning |
| **SCHOOLS** | | | | | | | | | | |
| Schools of general instruction without dormitories, except nursery schools. | | P | P | P | P | P | P | P | P | Eliminated and added text as shown; added "P" to MFs |
| Schools of general instruction with dormitories subject to §290-17AB. | | PB | PB | PB | PB | PB | | | PB | Added the category |
| Nursery Schools, provided that no building area shall be within 100 ft. of any lot line. | ZBA | ZBA | ZBA | ZBA | ZBA | ZBA | ZBA | ZBA | | Eliminated entire category |
| **MEDICAL** | | | | | | | | | | |
| Convalescent and nursing homes, and institutions for children and/or the aged, licensed by the State or authorized by the Department of Health of NYS as a residential health care facility whether or not operated for profit, provided that no building is located within 100 ft. of any lot and the lot has an area of at least 40 acres. | | | | | | | TB | TB | TB | Eliminated and added text as shown; Added TB to MFs |

| ALL USES | R-160 | R-80 | R-40 | R-22 | R-15 | R-10 | RG-1 | RG-2 | MF-1 MF-2 MF-3 | NOTES/CHANGES MADE Re-ordered uses from least to most intensive |
|---|---|---|---|---|---|---|---|---|---|---|
| ~~Public and private hospitals and sanitariums for general medical care, on lots not less than 10 acres in area.~~ | ~~TB~~ | | | | | | | | | Non-residential; Eliminated entire category: Hospitals are allowed in non residential as follows: LO & H4 Inpatient by TB Special Permit; Permitted in PED and Outpatient in H2, H3, H4 |
| ~~Public and private hospitals and sanitariums for general medical care.~~ | | ~~TB~~ | ~~TB~~ | ~~TB~~ | ~~TB~~ | ~~TB~~ | | | | Eliminated entire category |
| ~~Agency boarding homes, agency group homes, agency community residences and residential care facilities for victims of domestic violence.~~ | | ~~TB~~ | ~~TB~~ | ~~TB~~ | ~~TB~~ | ~~TB~~ | ~~TB~~ | ~~TB~~ | | Eliminated entire category (considered single family) |
| Hospice residences on lots with a minimum of 10 acres, subject to §290-17W. | TB | TB | | | | | | | | (already considered residence) |
| **RETAIL/COMMERCIAL** | | | | | | | | | | |
| ~~The following Commercial~~ Agriculture Operations, subject to §290-20K. The following commercial agriculture operations provided that there shall be no greenhouse, heating plant, stable or similar animal housing, or the storage of manure of other odor- or dust-producing substance or use, except spraying or dusting to protect vegetation, within 200 ft. or any lot line and all equipment is kept within a completely enclosed building...... | P | P | P | P | P | | | | | No change |
| ~~Family day-care homes, subject to attached performance standards.~~ | ~~P~~ | ~~P~~ | ~~P~~ | ~~P~~ | ~~P~~ | ~~P~~ | | | | Eliminated entire category; pre-empted |
| Child day-care centers, when accessory to places of worship ~~a religious institution pursuant to §290-17Z. and subject to site plan approval by the Planning Board, which approved site plan shall accompany the application for special permit.~~ | PB | PB | PB~~TB~~ | PB~~TB~~ | PB~~TB~~ | PB~~TB~~ | ~~TB~~ | ~~TB~~ | PB~~TB~~ | Changed text as indicated; removed TB Special Permit; Added PB Special Permit in all districts. |
| Home occupations, subject to §290-17AC. ~~List of Conditions moved to 29017AC~~ | ZBA | ZBA | ZBA | ZBA | ZBA | ZBA | | | | Changed text as indicated. |
| Home occupations subject to §290-20I. Home occupation shall be accessory uses by right upon issuance of a permit from the Building Inspector, if the following standards are met........ | A | A | A | A | A | A | | | | Changed text as indicated. |
| Professional offices of a doctor, psychologist, dentist, chiropractor, lawyer or accountant, engineer, or surveyor provided that the number of such offices in each development shall not exceed 1 for each 25 dwelling units or major fraction thereof, not to exceed 2,000 square feet per office. | | | | | | | A | A | A | Inserted text as shown; Added "A" to MFs |
| ~~Sandpits, gravel pits, removal of topsoil and landfill or excavation operations, for a period not to exceed 5 years subject to §290-17L. (See attached)~~ | | ~~TB~~ | ~~TB~~ | ~~TB~~ | ~~TB~~ | ~~TB~~ | ~~TB~~ | ~~TB~~ | | Eliminated entire category |

| ALL USES | R-160 | R-80 | R-40 | R-22 | R-15 | R-10 | RG-1 | RG-3 | MF-1 MF-2 MF-3 | NOTES/CHANGES MADE<br>Re-ordered uses from<br>least to most intensive |
|---|---|---|---|---|---|---|---|---|---|---|
| ~~Buildings for processing and storing agricultural products~~ | A | A | A | A | A | | | | | Eliminated entire category |
| Temporary structures for storage of equipment and materials used in connection with the construction of residential development, and temporary sales offices, not to exceed 2 years. The Building Inspector may extend the time period in one-year increments so long as construction and sales activities are underway. | A | A | A | A | A | A | | | A | Added "A" to all districts except where it already existed in MFs |
| ~~Temporary structures for storage of equipment and materials used in connection with the construction of residential development, and temporary sales offices, not to exceed 2 years.~~ | A | A | A | A | A | A | A | A | | Consolidated this use with the use listed above to eliminate duplication. |
| **MISCELLANEOUS** | | | | | | | | | | |
| Cemeteries on plots of at least 5 acres subject to approval of the County Legislature. | P | P | P, ~~ZBA~~ | P | P | P | P | P | P | Removed ZBA Special Permit from R-40; Added "P" in R-160 and MFs |
| ~~Public housing substations or pumping stations and telephone exchanges, housed in a structure that harmonizes with the character of the neighborhood and having adequate fences and other safety devices and adequate screening and landscaping and subject to performance standards procedure of §200-138, provided that they provide service to the surrounding area. (See attached)~~ | | | | ZBA | ZBA | ZBA | ZBA | ZBA | | Eliminated entire category |
| Public utility substations or pumping stations and telephone exchanges, housed in a structure that harmonizes with the character of the neighborhood and having adequate fences and other safety devices and adequate screening and landscaping ~~and subject to performance standards procedure of §200-138~~, provided that they provide service to the surrounding area. | ZBA | ZBA | ZBA | ZBA | ZBA | ZBA | | | ZBA | Deleted text as shown, Added ZBA Special Permit to R-22, R-15, R-10 and MFs |
| Public utility right-of-way, towers and lines, provided that they are necessary for the general welfare; neighborhood character and surrounding property values are reasonably safeguarded; and that the towers and poles conform to the height restrictions of the district. | ZBA | ZBA | ZBA | ZBA | ZBA | ZBA | ~~ZBA~~ | ~~ZBA~~ | ZBA | No change |
| ~~Floodplain uses within areas designated on the Official Map as a floodplain, swamp, drainageway or drainage easement as follows: parking spaces, driveways, open recreation in landscaped areas, signs and fences, provided that said uses do not block, impede or interfere with the natural drainage of the area so as to increase the danger of flooding down- or upstream from the lot.~~ | ~~TB~~ | ~~ZBA~~ | ~~ZBA~~ | ~~ZBA~~ | ~~ZBA~~ | ~~ZBA~~ | ~~ZBA~~ | ~~ZBA~~ | ~~TB~~ | Eliminated entire category |

| ALL USES | R-160 | R-80 | R-40 | R-22 | R-15 | R-10 | RG-1 | RG-2 | MF-1 MF-2 MF-3 | NOTES/CHANGES MADE Re-ordered uses from least to most intensive |
|---|---|---|---|---|---|---|---|---|---|---|
| ~~Reservoirs on lots of 6 acres or more and water towers and water tanks owned and operated by a public utility, which water tank or water tower is located at or above ground, on plots of 6 acres or more.~~ | TB | | | | | | | | | Deleted text as shown |
| ~~Reservoirs on lots of 3 acres or more and~~ Water towers and water tanks owned and operated by a public utility, which water tank or water tower is located at or above ground, on plots of 3 acres or more. | TB | TB | TB | TB | TB | TB | | | TB | Deleted text as shown; Added TB Special Permit to R-160 and MFs |
| **MISCELLANEOUS ACCESSORY USES** | | | | | | | | | | |
| Accessory parking, subject to Article 6 and Table 2, Residential Zoning Districts Parking and Loading Requirements, ~~and the requirements of Column 8. All parking spaces (whether open or closed) shall be restricted to the parking of private passenger cars and maintenance vehicles or minibuses serving the property. (See attached)~~ | A | A | A | A | A | A | | | A | Text to be inserted to 290-22; Added "A" to R-160, R-80, R-40, R-22, R-15, R-10 |
| ~~Accessory parking, subject to §290-22. (See attached)~~ | A | A | A | A | A | | A | A | | Eliminated entire category |
| Accessory loading, subject to Article 6 and Table 2, Residential Zoning Districts Parking and Loading Requirements. §290-23. | A | A | A | A | A | A | A | A | A | Deleted and added text as shown; Added "A" to R-10 |
| ~~Any other similar accessory use, subject to approval of the Board of Appeals.~~ | A | A | A | A | A | A | A | A | | Eliminated entire category |

3/14/2016                                    Town of Clarkstown Mail – See Attached Local Law for Website

 **Town of Clarkstown**

Patricia McDonald <p.mcdonald@clarkstown.org>

## See Attached Local Law for Website
1 message

Patricia McDonald <p.mcdonald@clarkstown.org>                                    Mon, Mar 14, 2016 at 11:33 AM
To: Justin Sweet <j.sweet@clarkstown.org>, Joanne Castaldo <j.castaldo@clarkstown.org>, Kathy Carleo <k.carleo@clarkstown.org>


Patricia McDonald
Paralegal
Town Attorney's Office
Town of Clarkstown
10 Maple Avenue
New City, NY 10956
Phone:  845-639-2058
Fax:  845-639-2189
p.mcdonald@clarkstown.org


**Proposed Local Law - Zoning Map & Residential Uses 3-14-16.pdf**
1681K         *LL, table 1 + 2, synopsis + worksheet*



# TOWN OF CLARKSTOWN
**PLANNING DEPARTMENT**
**INTER-OFFICE MEMORANDUM**

RECEIVED
MAR 11 2016
TOWN ATTORNEY'S OFFICE

| | | |
|---|---|---|
| **DATE** | : | March 11, 2016 |
| **TO** | : | Lino Sciarretta, Town Attorney |
| **FROM** | : | Jose Simoes, Principal Planner |
| **RE** | : | Proposed Residential Zoning Local Law – Revisions and SEQRA Review |

Please find attached a markup of the proposed Local Law amending the Zoning Map and Chapter 290 of the Town Code regulating uses in residential zoning districts. This version of the Local Law shows changes (shown in red) to the proposed Local Law dated February 29, 2016 which addresses some of the comments received at the Town Board meeting of March 8, 2016 as well as other additional verbal and written comments. The Local Law includes two attachments (Table 1 and Table 2). Also included to aid in explaining the law is a section by section synopsis of the law, which has also been updated, and a residential zoning worksheet which illustrates the proposed changes made to the various use tables. Please note, it was requested at the public hearing that this information be posted on the Town Clerk's webpage.

I have also reviewed the SEQRA materials previously prepared in light of the above referenced changes and have found that my memo of February 29, 2016 is still valid. The EAF is accurate as written, and my recommendation of a Negative Declaration still stands.

TOWN OF CLARKSTOWN
DEPARTMENT OF PLANNING

JOSE C. SIMOES, PRINCIPAL PLANNER
JAMES CREIGHTON, PLANNER
10 Maple Avenue
New City, New York 10956-5099
Tel: (845) 639-2070
Fax: (845) 639-2071
planning@clarkstown.org



TOWN OF CLARKSTOWN
PLANNING BOARD

SHIRLEY J. THORMANN, CHAIRWOMAN
RUDOLPH J. YACYSHYN, VICE CHAIRMAN
GILBERT J. HEIM, MEMBER
PETER E. STREITMAN, MEMBER
STEPHEN M. PABAS, MEMBER
EDWARD J. GUARDARO, JR., MEMBER
PHILLIP J. DEGAETANO, MEMBER

March 10, 2016

| | |
|---|---|
| Owner and/or Attorney | ✓R.C. Dept. of Planning |
| Engineer | R.C. Dept. of Highways |
| ✓Town Attorney | Orange & Rockland Utilities |
| ✓Town Clerk | Architecture & Landscape Commission |
| ✓Building Dept. | ✓Highway Dept. |
| ✓Environmental Control | N.Y.S.D.O.T. |
| Traffic & Traffic Fire Safety | Zoning Board of Appeals |
| ✓Supervisor | ✓ Town Board |

Attached are the minutes of the Planning Board Meeting of <u>February 10, 2016.</u>

**TOWN BOARD REFERRAL:  PROPOSED LOCAL LAW ENTITLED, "A LOCAL LAW REGULATING NON-RESIDENTIAL USES IN RESIDENTIAL ZONING DISTRICTS**
Principal Planner Simoes gave a presentation for the proposed Local Law.  He stated that most people do not realize that residential districts allow non-residential uses.  The Town's existing Code permits nurseries, orchards, places of worship, parks and playgrounds, schools, post offices, cemeteries, family day care and senior housing as of right in the majority of the Town's residential zoning districts.  In addition, child day care centers, camps, community centers, golf courses, nursery schools, public utility substations, floodplain uses, home occupations, hospitals, reservoirs, sand pits, gravel pits and landfill operations are permitted by Special Permit of the Zoning Board of Appeals, Planning Board or the Town Board.  Many of these uses may have been compatible with the more rural residential development of the past, when housing developments could be separated from these uses a considerable distance and roadways had excess capacity to handle traffic. That is not the case anymore.  With our currently built-out suburban development, some of these uses are no longer compatible with adjacent residential uses.  Generally, these uses are allowed in residential zones without any limitation on lot size or roadway access.

On September 29, 2015 the Town Board voted to develop a Local Law to amend the Town's zoning code to restrict more intensive uses currently permitted in residential zones.  Changing the regulation of these uses meant that property owners would not be able to develop their property as they are currently allowed.  To avoid a rush of applications based on the current zoning, the Town adopted a moratorium on development in residential zones for a six month period while the contemplated amendments were being drafted and considered.  The moratorium affected applications in the R, MF, RG and AAR districts that had not yet received a Negative Declaration or Findings Statement (in the case of a Positive Declaration) with some minor exceptions for small subdivisions.  A committee was formed to develop the proposed Local Law consisting of the Departments of Planning, Building and Environmental Control and the Town

continued

TOWN BOARD REFERRAL:  PROPOSED LOCAL LAW ENTITLED, "A LOCAL LAW
REGULATING NON-RESIDENTIAL USES IN RESIDENTIAL ZONING DISTRICTS
PB MEETING OF FEBRUARY 10, 2016
PAGE 2

Attorney's Office.  The committee met one to two times a week to develop the proposed Local
Law.

Several documents were provided to the Planning Board to explain the proposed Local Law.
Aside from the actual Law there is a synopsis summarizing the changes to the Town Code and
Zoning Map and a worksheet that shows a side by side comparison of the uses currently allowed
in our residential zoning districts and the changes we are proposing to make.  Mr. Simoes stated
that he was going to attempt to summarize the synopsis.  First, it should be noted that the
proposed amendments are consistent with our Comprehensive Plan. There are 3 major changes to
highlight:

1.  All of the Residential Use Tables, of which there are currently 9, will be combined into 1 Use
Table which allows for a side by side comparison of uses from least intense (R-160) to most
intense (MF).  Text from the use tables were moved to the text of the Zoning Code, where it
belonged, a new parking and loading table was developed and the bulk table was updated.  All of
these changes will provide clarity and help to make the development review process more
efficient.  Of special Note:

   a.  Many uses which were previously permitted by Special Permit of the Town Board or
       Zoning Board of Appeals will instead be permitted by Special Permit of the Planning
       Board.  As the Planning Board is nearly always the entity responsible for ensuring
       applicants adhere to the provisions of Special Permit uses, and almost always the Lead
       Agency under the New York State Environmental Quality Review Act (SEQRA),
       charging the Planning Board with the issuance of these Special Permits makes for a
       more efficient and streamlined review process.

   b.  Many non-residential uses currently permitted in these residential zones are being
       removed or modified, like sand pits, gravel pits and excavation operations and public and
       private hospitals and sanitariums.  Other uses, which are licensed and regulated by the
       state or exempt from zoning, are also proposed to be removed, such as family day care,
       group homes, emergency services and post offices.

   c.  Our old garden apartments districts, RG-1 and RG-2 are proposed to be replaced by MF-
       2 and MF-3, multi-family zoning districts.  This is very little vacant RG-1 and RG-2
       zoned land within the Town.  The MF-2 and MF-3 zoning districts were created in 1988
       and were originally intended to replace the RG zones.  The housing densities permitted
       by the MF-2 and MF-3 are slightly lower than those of the RG-1 and RG-2 zones,
       respectively.  Overall development potential will be slightly lowered as a result.

   d.  This Local Law institutes maximum Principal Buildings(s) Coverage and Total Lot
       Coverage which will limit excess land coverage and aid in stormwater quality/quantity
       control.

   e.  One of the most important changes is requiring all uses other than single-family homes to
       have a minimum of 100 feet of frontage on a State or County major or secondary class
       road as classified on the Town Official Map.  This requirement is based on the previous
       provision that two-family residences be located on major or secondary class roads.  As
       **continued**

TOWN BOARD REFERRAL: PROPOSED LOCAL LAW ENTITLED, "A LOCAL LAW
REGULATING NON-RESIDENTIAL USES IN RESIDENTIAL ZONING DISTRICTS
PB MEETING OF FEBRUARY 10, 2016
PAGE 3

other uses permitted within the residential zones are typically more intensive than two-family homes, it is recommended that these uses should carry this requirement and be further restricted to State or County roads, which can handle higher volumes of traffic.

2. Despite past efforts to increase the amount of affordable senior housing within the town, there is still a significant demand. Density incentives utilized in past senior zoning resulted in the creation of luxury units that did not address this demand. As such, this proposed Local Law would double the minimum requirement for affordable units within senior housing developments. The densities permitted for senior housing development should offset any loss of development revenue as a result of this increase.

To better protect the town's established single-family residential neighborhoods from out of scale development, it is proposed that senior housing developments would no longer be permitted on collector class roads, and would only be constructed on State or County major or secondary class roads. In addition, the Local Law establishes a maximum size for a one-bedroom unit at 900 square feet, and a maximum size for a two-bedroom unit at 1,200 square feet. While the town's multifamily and mixed-use zoning districts have limits on unit sizes within housing developments, there is currently no cap on unit size within senior housing developments, which has resulted in large developments with luxury-sized units.

This Local Law will lift the cap on senior housing projects in our Hamlet Centers. Currently, in Hamlet Centers senior housing projects can only be on a "maximum of 2 acres." At 21 units an acre, a project could not have more than 42 units. Yet Hamlet Centers are ideal to support larger senior developments as they have the services, shopping, transportation, pedestrian amenities seniors need. This change could be made before the Law sent to the County.

3. The Town recently received proposals for dormitory uses in association with camps and schools yet no current regulations exist for such uses. With the absence of specific regulations for dormitories the Town runs the risk of having a developer use the regulations of a similar multi-family residential use already allowed in our Code. The Law would permit dormitories by a Special Permit of the Planning Board, but only as accessory uses to Schools of General Instruction or camps. Similar to other more intensive uses, dormitories would only be permitted on State or County major or secondary class roads. Lot area requirements for dormitories would increase in relationship to bed count and dormitory structures would be limited to a maximum height of two-stories or 25', whichever is less. Front, side and rear yard setback requirements for dormitories would be 100', which would help to safeguard single-family residential neighborhoods from potentially out of scale development.

Lastly, the Law proposes the addition of language that would prohibit the Town Board, Planning Board or Zoning Board of Appeals from reviewing and approving any land use proposal until the

continued

**TOWN BOARD REFERRAL:  PROPOSED LOCAL LAW ENTITLED, "A LOCAL LAW
REGULATING NON-RESIDENTIAL USES IN RESIDENTIAL ZONING DISTRICTS
PB MEETING OF FEBRUARY 10, 2016
PAGE 4**

owner of property pays the Town any outstanding taxes or fees and resolves any existing Code
violations.

Brief discussion ensued and the following concerns and comments and changes were made:

- Chairwoman Thormann requested clarification on hospitals versus hospices being put in
  commercial zones. Mr. Simoes stated that they are referring to actual hospitals such as
  Nyack Hospital being built. Hospices are defined in the code and are staying in the
  R-160 and R-80.
- Member Heim inquired about Family Day Care being allowed in a single family house
  and if requirements should be set for this, such as parking and how much property there
  should be. Building Plans Examiner Maneri replied that Family Day Care Centers are
  allowed in a single family houses and are licensed by State Law (Department of Social
  Services). Town Attorney Sciarretta stated that they are exempt and there is nothing
  much the Town can do.
- First Deputy Director of Environmental Control Letson explained maximum principal
  building and lot coverage. He stated that the purpose is to provide for more green space
  and minimize stormwater runoff. Storm intensities have been increasing over the last 30
  years. Parameters were basically established in the 1970's. Since then runoff has
  significantly increased.
- Chairwoman Thormann inquired if any provisions have been made for transforming
  vacant church buildings to senior housing. First Deputy Director of Environmental
  Control Letson stated that they have not specifically addressed the reuse of any particular
  building that is vacant, however the redevelopment would have to be subject to review.
- Member Heim inquired if it would be possible to get the lighting review back under the
  Planning Board. Town Attorney Sciarretta replied that the committee is looking at
  revising and possibly modifying the ALC Code. Member Heim stated that it appeared to
  be better when that the ALC was advisory to the Planning Board.
- Member Papas inquired on screening, commercial vehicles on the residential property,
  home occupation and potential parking issues. These issues were clarified to the
  satisfaction of the Board during the discussion.
- Scott Turner, Congers resident, inquired if a group home for recovering drug addicts for
  example, would fit under health facilities. Town Attorney Sciarretta replied that would
  be exempt from Local Law. It would be under the State Law for Mental Hygiene.
- Principal Planner Simoes advised that the committee would like to tackle the non-
  residential zoning obstacles next using the same method as they used for residential
  followed by rewriting the text.
- Member Guardaro inquired how long it would be before all 3 phases are done. First
  Deputy Director of Environmental Control Letson replied approximately 12 to 18
  months. The Code should be revisited approximately every 10 years along with the
  Comprehensive Plan. He advised that there have been a number of amendments to the

**continued**

**TOWN BOARD REFERRAL:  PROPOSED LOCAL LAW ENTITLED, "A LOCAL LAW
REGULATING NON-RESIDENTIAL USES IN RESIDENTIAL ZONING DISTRICTS
PB MEETING OF FEBRUARY 10, 2016
PAGE 5**

Zoning Code made on a reactionary basis over the last 40 years; however it was never
coordinated with the Zoning Code which created loop holes.

- Member Heim suggested that the Planning Board, Zoning Board and Town Board meet
once a year in a workshop to discuss ideas.
- Changes were suggested by the Planning Board to be made to the wording for several
instances in the Local Law (see the changes in the revised proposed Local Law).

**Accolades where given to the Committee, which includes Dennis Letson, Charles Maneri,
Joe Simoes and Lino Sciarretta for their hard work and diligence, in addition to Cathy
Cirrone and James Creighton for their assistance throughout the process.**

On a Motion of Yacyshyn, Seconded by Heim, and carried 7:0, with Ayes of Thormann,
Streitman, Papas, Guardaro and DeGaetano **the following resolution of passed:**

**TOWN BOARD REFERRAL (RESOLUTION # 462-2015)
OF PROPOSED LOCAL LAW AMENDING THE ZONING MAP
AND CHAPTER 290 OF THE TOWN CODE OF CLARKSTOWN
REGULATING NON-RESIDEINTIAL USES IN RESIDENTIAL ZONING DISTRICTS**

**WHEREAS,** on December 17, 2015 the Town Board by resolution # 462-2015 referred to the
Planning Board a proposed local law amending the Zoning Map and Zoning Code of the Town
of Clarkstown – Regulating Non-Residential Uses in Residential Zoning Districts, and

**WHEREAS,** at their meeting of February 8, 2016 the Special Board for the Implementation of
the Comprehensive Plan made modifications to the proposed local law  to correct an
inconsistency in Section 7 and to add new language to Section 8 regarding the renewal of Special
Permits, and

**WHEREAS,** the Planning Board reviewed a draft of the proposed zoning amendment at their
regular meeting of February 10, 2016 and provided comment, and

**WHEREAS,** said proposed Local Law involves both a textual change to Chapter 290 as well as
changes to the Town Zoning Map and therefore requires findings to be made by the Planning
Board pursuant to Town Code Section 290-33 B (1) and (2), and

**WHEREAS,** pursuant to Town Code Section 290-33 B (1), the Planning Board does hereby
make the following findings:

(a) The amendment is consistent with the aims and principles embodied in Chapter 290,
specifically Section 290-2 in which the legislative intent of Section 290 is stated as being
"…to promote and protect the public health, safety and general welfare; to guide and

continued

**TOWN BOARD REFERRAL:  PROPOSED LOCAL LAW ENTITLED, "A LOCAL LAW
REGULATING NON-RESIDENTIAL USES IN RESIDENTIAL ZONING DISTRICTS
PB MEETING OF FEBRUARY 10, 2016
PAGE 6**

regulate the orderly growth, development and redevelopment of the Town of Clarkstown based on a comprehensive plan…"  The Town's Comprehensive Plan calls for zoning changes which preserve the suburban and remaining semi-rural character of the Town, the expansion of initiative to safeguard neighborhoods from inappropriately scaled development and the development of zoning and building regulations that reduce or restrict odors, sounds, commercial traffic, light pollution and other negative environmental impacts on residential areas,

(b) The majority of the proposed text amendments concern the town's residential zones (R-160, R-80, R-40, R-22, R-15, R-10, MF-1, MF-2, MF-3, RG-1 and RG-2).  Specifically, the types of non-residential uses and their permitted locations and physical configurations within residential areas were modified to protect the town's neighborhoods from out of character uses.  A number of uses were deemed unfit for residential areas are proposed to be removed, and undefined uses were added along with proposed accompanying regulations.  Similar modifications were also made to the AAR zone, which is a floating zone that can be applied in certain residential and nonresidential districts within the Town given specific conditions.  Other changes are proposed to the Town Code which will affect land use projects throughout the Town.  These proposed changes include a provision that would prohibit the Town Board, Planning Board or Zoning Board of Appeals from reviewing and approving any land use proposal until the owner of property pays the Town any outstanding taxes or fees and resolves any existing Code violations and a requirement that all special permits within residential zones be renewed every five years.

(c) There do not appear to be any indirect implications of making this change on other regulations at this time.

**WHEREAS**, pursuant to Town Code Section 290-33 B (2), the Planning Board does hereby make the following findings:

(a) The General Residence, Low Density (RG-1) and General Residence, Medium Density (RG-2) zoning districts are proposed to be replaced by Multifamily (MF-2 and MF-3) zoning districts.  Very little vacant General Residence, Low Density (RG-1) and General Residence, Medium Density (RG-2) zoned land exists within the Town.  The MF-2 and MF-3 zoning districts were created in 1988 and were originally intended to replace the RG zones.

(b) This amendment involves eliminated one type of multifamily zoning from the zoning map and replacing it with another similar existing multifamily zoning type.  The housing densities permitted by the MF-2 and MF-3 are slightly lower than those of the RG-1 and RG-2 zones, respectively.  Thus overall development potential will be slightly lowered were this change to take effect.  No additional public schools or public services will be required as a result of this change.

**continued**

TOWN BOARD REFERRAL:  PROPOSED LOCAL LAW ENTITLED, "A LOCAL LAW
REGULATING NON-RESIDENTIAL USES IN RESIDENTIAL ZONING DISTRICTS
PB MEETING OF FEBRUARY 10, 2016
PAGE 7

   (c) Public water supply and sanitary sewers are available in all areas affected by this
      amendment.

   (d) Very little undeveloped multifamily zoned land exists within the Town, and as this
      zoning map amendment proposed changing one type of multifamily zoning to another
      very similar type, the total amount of vacant multifamily land within the Town will
      remain the same.

   (e) The current rate of multifamily residential development is very low.  Little readily
      available multifamily land currently exists within the Town.

   (f) The proposed local law is consistent with the Comprehensive Plan goals to:

      i.   Preserve the suburban and remaining semi-rural character of the Town

      ii.   Expand initiatives to safeguard neighborhoods from inappropriately scaled
          development

      iii.   Develop zoning and building regulations that reduce or restrict odors, sounds,
          commercial traffic, light pollution and other negative environmental impacts on
          residential areas,

   (g) The housing densities permitted by the MF-2 and MF-3 are slightly lower than those of
      the RG-1 and RG-2 zones, respectively.  Thus overall development potential will be
      slightly lowered were this change to take effect.  The change to the total residential
      capacity of the Town as a result of this change would be negligible and would not affect
      the cost of providing public services within the Town.

   (h) The proposed zone change does not involve a change from a residential district to a
      nonresidential designation.

**THEREFORE BE IT RESOLVED** that the Planning Board does hereby recommend in
favor of the proposed Local Law amending the Zoning Map and Zoning Code of the Town of
Clarkstown – Local Law Amending the Zoning Map and Chapter 290 of the Town Code of
Clarkstown Regulating Non-Residential Uses in Residential Zoning Districts with those
changes proposed by the Special Board for the Implementation of the Comprehensive Plan
which corrected an inconsistency in Section 7 and added new language to Section 8
regarding the renewal of Special Permits, with some modifications recommended by the
Planning Board as shown in the attached amended proposed Local Law.

F76

LAW OFFICE

# Ira M. Emanuel, P.C.

4 Laurel Road, New City, NY 10956-0629
Tel: 845.634.4141  Fax: 845.634.9312
E-mail: Info@EmanuelLaw.com
www.EmanuelLaw.com

Counsel to
Freeman & Loftus, RLLP

March 10, 2016

Hon. George Hoehmann, Supervisor
Town of Clarkstown
10 Maple Avenue
New City, NY 10956

Re: Proposed amendments to the Zoning Code regarding senior housing

Dear Supervisor Hoehmann:

As you know, I represent the developers of the Schimpf Farms and Buckley Farms senior housing projects. Both projects intend to take advantage of the senior housing special permit available in their respective R districts. Both projects have been in the review process for many months.

At the public hearing in the above matter held on March 8, 2016, I identified a number of concerns that my clients had with the proposed amendments. The purpose of this letter is to summarize those concerns, correct some statements made by me at the public hearing because of incomplete information, and to reply to some of the responses made at the public hearing on behalf of the Town.

The overriding theme of these concerns is the imposition of governmental regulation in a manner that does not take into account the financial impacts of the regulation. These impacts either directly or indirectly affect the developer, and additional costs are then either transferred to the end user. In this case, the end user is the individual unit renter: precisely the person these regulations seek to protect. My clients believe that, in most cases, the result sought by the proposed amendment can be adequately achieved by current regulation or by minor changes to the proposals.

The following discussion is limited to the proposed amendments affecting the senior housing special permit use.

## 1. Affordable units

The proposal increases the required number of affordable units from 10% to 20%. As discussed at the public hearing, senior housing developments must be composed of rental units. As such, the market rate units will subsidize the affordable units. This situation will last for as long as the project exists. Thus, the rent to be charged for market rate units will be increased, making the overall project less affordable.

The main reason given for doubling the number of required affordable units was the Town's experience with two AAR projects: Wolf Landing and Eden Park. Those two projects are luxury AAR projects built as townhomes. They apparently did not provide the affordability component envisioned by the Town in its AAR regulations. This is what justified the need for the increase.

Wolf Landing and Eden Park differ from any potential senior housing project in two significant ways:
- They are townhouse projects under the AAR district. Senior housing units are apartment flats in multi-family buildings.
- They are ownership units. Senior housing units are rentals.

Interestingly, these two projects are the only AAR projects that have been built in the Town, and they sold quickly. Clearly, that developer did something right.

Thus, the Town actually has no data indicating the need to increase the number of affordable units in senior housing projects. None have been built, and the only other housing built for seniors was expressly aimed at the luxury market.

## 2. Limitation on unit sizes

The proposed code seeks to limit 1 bedroom units to 900 square feet each and 2 bedroom units to 1,200 square feet each. The Town's explanation for this was a desire to maintain affordability (but see #1, above) and that the limitation in size represented a small reduction from what has been already proposed.

This is a classic example of a situation where the Town has given no thought to financial impact. Some units in Buckley Farms are 1,350 sf in size; the Schimpf Farms units are 1054 sf and 1246 sf, respectively. Rather than accept those sizes, the Town proposes to shave 154 sf and 46 sf from these units. Doing so will require a complete redesign of the buildings and layout, at a cost estimated at $200,000 for each project. And for what? Wouldn't the public be just as well served if the size limits were just above what is being proposed?

*3. Lot coverage limitations*

The proposed amendments seek to reduce overall lot coverage from 65% to 50%. The current Buckley plan provides 36%; the Schimpf plan provides 50%.

Also proposed is a new limitation on principal building coverage at 33%.

Both projects can meet these limitations. My information to the contrary at the public hearing was incorrect.

*4. 75 foot buffer*

The imposition of a "one-size fits all" buffer is, as was acknowledged at the public hearing, problematic. We look forward to the revised draft on this matter.

The Buckley project cannot meet this buffer requirement. The topography sloping down from Main Street to the East requires that the access roads be as far from the center entrance as possible; otherwise, the road grades will be too great for emergency vehicles to climb. In addition, the Buckley project abuts an MF-3 zone, which has no required buffer. Why does senior housing require a buffer, while market housing does not?

The Schimpf project had actually provided a conforming layout in its initial stages. TAC deemed the conforming layout to be inferior to the current non-conforming layout.

Finally, the jurisdiction to adjust any required buffer should remain with the Planning Board. That board has the special expertise needed to understand why factors such as topography, density, building masses, and grading may necessitate a reduction in the buffer, and also to develop appropriate mitigation in exchange for the reduction.

*5. Renewal of special permit*

The proposal requires that special permits be renewed every five years, or at such other interval as the issuing board determines. The imposition of such a requirement on housing raises the specter that unit renters could lose their homes through no fault of their own. It is simply improper for this use.

This is especially so since the Code already has reporting requirements. §290-17.O(3) provides:

Annual report. The applicant and/or owners of a development under this subsection shall file with the Town Zoning Administrator, before

the first Monday in December of each year of operation, a form affidavit supplied by the Town Zoning Administrator, for compliance with all provisions of Subsection O(A)(4) and (8) and any state or federal filing requirement, if any. Any delay in filing of such form affidavit shall constitute a violation of this special permit, and, further, any real estate tax abatement provided under this subsection shall immediately cease.

The proposed amendment seeks to impose a board review on top of the administrative review.

On behalf of my clients, I ask the Board to reconsider these proposals and I again thank the Board for the opportunity to comment.

Very truly yours,

Ira M. Emanuel

Cc:   Lino Sciaretta, Esq.
      Alan Apfelbaum
      Jay Thiese
      Brooker Engineering
      Ricki Berger, Esq.

Town of Clarkstown Mail - Proposed Zoning Amendments

 **Town of Clarkstown**

George Hoehmann <g.hoehmann@clarkstown.org>

## Proposed Zoning Amendments

1 message

Ira Emanuel <ira@emanuellaw.com>
To: George Hoehmann <g.hoehmann@clarkstown.org>
Cc: "Lino J. Sciarretta Esq." <l.sciarretta@clarkstown.org>

Mon, Mar 7, 2016 at 11:13 AM

Dear Supervisor Hoehmann,

Attached is a letter regarding the proposed zoning amendments to be discussed at tomorrow evening's public hearing. This letter reflects my thoughts as a practitioner, and is not written on behalf of any client or organization.

As I intend to appear tomorrow in my representational capacity, I did not want my personal thoughts to be joined with those of my clients (although there is no conflict between the two). Please enter the attached into the record of the public hearing.

Very truly yours,
Ira M. Emanuel, Esq.
4 Laurel Road
New City, NY 10956
845-634-4141
Fax 845-634-9312

www.emanuellaw.com
Please reply to ira@emanuellaw.com

American Bar Association Ethics Opinion No. 99-413 and New York State Bar Association Ethics Opinion No. 709 permit unencrypted e-mail communications between attorney and client in most circumstances. Unless you object to the use of e-mail for communications, I will use it when I believe it to be appropriate.

📄 **Zoning Amendment Letter.pdf**
182K

LAW OFFICE

# Ira M. Emanuel, P.C.

4 Laurel Road, New City, NY 10956-0629
Tel: 845.634.4141 Fax: 845.634.9312
E-mail: Info@EmanuelLaw.com
www.EmanuelLaw.com

Counsel to
Freeman & Loftus, RLLP

March 7, 2016

Hon. George Hoehmann
Supervisor
Clarkstown Town Hall
10 Maple Avenue
New City, NY 10956

Re:     Proposed amendments to Clarkstown Zoning Code

Dear Supervisor Hoehmann:

I am writing as an interested zoning and land use professional who practices before the Clarkstown land use boards. The views expressed below are my own, and are not put forth on behalf of any client or association.

By way of background, I have practiced before the Clarkstown boards, and elsewhere, for thirty-five years. I am currently a member of the board of directors of the Rockland Municipal Planning Federation and I am the chairman of the Rockland County Bar Association Zoning Committee.

### *Issues of Concern*

#### 1. Approvals for parcels with violations

Section 14 of the proposed local law would add section 290-14. This section would prohibit the granting of any land use approval, and would also prohibit the entertainment of an application for any land use approval,

with respect to any premises within the Town unless and until all outstanding Code violations on said premises are resolved and all amounts due the Town in real estate taxes, special assessments and any other payment chargeable to the owner or possessor of said premises, together with all penalties and interest thereon, shall have been paid in full.

Hon. George Hoehmann
March 7, 2016                                                                                    Page 2

If the term "violation" is construed simply as the issuance of a notice of violation or a summons to appear in Justice Court, then I have three concerns with this provision.

First, a violation is not a violation until such time as a court of competent jurisdiction rules on it. Violations of the Zoning Code (and of the Building and Fire Codes) are handled in the criminal parts of the Justice Court. There is a constitutional presumption of innocence, which this provision appears to ignore. If applied prior to a finding of guilt, it deprives a property owner or user of the ability to seek administrative redress.

Second, Town Law § 267-a.6 provides an automatic stay of

all proceedings in furtherance of the action appealed from, unless the administrative official charged with the enforcement of such ordinance or local law, from whom the appeal is taken, certifies to the board of appeals, after the notice of appeal shall have been filed with the administrative official, that by reason of facts stated in the certificate a stay, would, in his or her opinion, cause imminent peril to life or property * * *.

The proposed amendment, if applied prior to a finding of guilt, is in direct conflict with this statutory requirement.

Third, as a matter of public policy, I believe this provision to be counter-productive. Again, if applied prior to a finding of guilt, it removes any incentive a property owner may have to correct or cure the situation. There have been numerous instances in my own practice where my clients have worked cooperatively with the Town to resolve issues. In most cases, this required an approval from a land use board. This provision makes such resolutions impossible to achieve, as it prohibits access to the land use board until after a return to the *status quo ante*, even if some other condition would be acceptable to the Town. This provision instead, encourages property owners to refuse to cooperate with the Town, preferring to pay fines as part of the cost of doing business.

This provision should, at the very least, make clear that the term "violation" applies only after a court has determined guilt, and should also provide for an avenue to approach a land use board to cure a violation even after guilt has been determined.

Hon. George Hoehmann
March 7, 2016

### 2. Buffers for special permit uses

Section 8 of the proposed amendment adds new subsection 290-20I.(4). This provision carries over an existing requirement for buffer areas of 75 feet for all special permit uses, except for home occupation use.

This requirement of the Zoning Code has always been troubling. It applies to all special permit uses, irrespective of the use, and irrespective of the parcel size. Thus, the same 75 foot buffer applies to senior citizen housing, concrete plants, quarries, child day-care centers, group homes, hotels, and nursery schools.

In addition, the 75 foot buffer conflicts with yard requirements set forth in other locations in the Code. For example, funeral homes require yards ranging from 0 to 50 feet depending on location (§ 290-17.P[1][e]). How does the 75 foot buffer apply here?

The proposed amendments make matters worse by moving relief to the Zoning Board of Appeals, whereas currently, the Planning Board could provide relief during the site plan review process. This requires an additional step, and a delay of at least two months.

These inconsistencies should be identified and resolved.

### 3. Multi-family housing

Nothing in the proposed amendments addresses the need for additional multi-family housing in the Town for all age groups. While the Town has made efforts to increase the number of multi-family units available to those aged 55 and older, it has done little for those under 55, or for older residents who do not wish to live in age-segregated communities.

We are all aware of demographic studies and anecdotal reports showing that we have more single family housing than we need. Decent rental housing in Rockland County is scarce, driving up rents. Millennials and empty-nesters are being chased out of Rockland. (My own son, a teacher in a Rockland County school district, lives in Ramsey, New Jersey, because he could not find an affordable apartment in Rockland.)

Although recent zoning changes try to encourage conversion and construction of rental housing in the hamlet centers, the Town should identify additional areas where new multi-family housing can be built and supported by the available

Hon. George Hoehmann
March 7, 2016                                                                    Page 4

infrastructure, and it should further encourage this housing to be available for rent, not sale. These amendments fail in that mission.

Thank you for the opportunity to comment.

Very truly yours,

Ira M. Emanuel

IME:i

Fax:8456346538                    Mar  4 2016 11:57am    P001/002

# DONALD S. TRACY

Attorney at Law
317 Little Tor Road South
New City, New York 10956
(845) 634-6404
FAX: (845) 634-6538
E-Mail: donaldtracy1018@yahoo.com



March 4, 2016

**VIA:  Facsimile (845) 634-5456**

Supervisor George A. Hoehmann
Town of Clarkstown
10 Maple Avenue
New City, New York 10956

RECEIVED
MAR - 4 2016
TOWN ATTORNEY'S OFFICE

Re:  Mountain View  Lodge Renovation

Dear Supervisor Hoehmann:

I have been consulted by an organization known as Chuangye Culture and Technology Group, LLC who has purchased and obtained a building permit to refurbish the Mountain View Lodge in Valley Cottage.

They will continue to use it as a Lodge, however, during school sessions some high school students from China will reside at the Lodge while attending high school at Bergen Catholic High School in New Jersey.  It is the future intention of this organization to construct a dormitory on the site, which would house approximately 50 high school students during the school year at  Bergen Catholic.  They have inquired as to the possibility of accomplishing that.

I have noted that in the proposed Zoning Ordinance that Dormitories will be permitted but, only on the same lot as an accredited school of general instruction.  Naturally, these high school students will not drive and will be bussed by two busses in the morning and two busses at the end of the school day back to the proposed dormitory.  Therefore, there will be no adverse traffic impact, while it would be a considerable ratable and a total upgrade to what was really a distressed property as they refurbish the Lodge.

The students would be from wealthy Chinese families in China and, of course, would only be housed in the Dormitory during the school year.

My impression that the requirement for "on the same lot" is to reduce the possibility of increased traffic, which would not be the case here.  It may also be possible to obtain a variance of that portion of the Zoning Ordinance unless, when enacted, that section is ameliorated by

Fax:8456346538                    Mar  4 2016 11:57am    P002/002

Supervisor George A. Hoehmann

Page 2
March 4, 2016

providing words to the effect of "unless it can be shown that the Dormitory will not create traffic problems in the area where located".

I am sending a copy of this correspondence to Lino Sciarretta for his input and I wonder if you would like to schedule an appointment to meet with the new owner who has the intentions of considerably upgrading the area.

I would appreciate your input and comments on this matter and I thank you in advance for that courtesy.

Very truly yours,

Donald S. Tracy

DST:sc
cc:     Lino Sciarretta, Town Attorney
        (Via Fax 639-2189)
        Chun Feng, RA (Via Fax 201-934-8260)

AFFIDAVIT OF SERVICE OF PROPOSED LOCAL LAW
IN ELECTRONIC FORMAT BY ELECTRONIC MEANS

STATE OF NEW YORK    )
COUNTY OF ROCKLAND   )    SS.:

I, Patricia McDonald, being duly sworn, depose and say:

That I am over the age of eighteen (18) years and reside in Pearl River, New York.

I served the proposed final version of a Local Law amending the Zoning Map and Chapter 290 of the Town Code of Clarkstown Regulating Non-Residential Uses in Residential Zoning Districts on the following parties:

George Hoehmann, Supervisor: g.hoehmann@clarkstown.org
Frank Borelli, Councilman: f.borelli@clarkstown.org
Stephanie G. Hausner, Councilwoman: s.hausner@clarkstown.org
John J. Noto, Councilman: j.noto@clarkstown.org
Valerie Moldow, Councilwoman: v.moldow@clarkstown.org

by sending a true PDF copy of same in electronic format by electronic means to their desks at the Clarkstown Town Hall, 10 Maple Avenue, New City, New York on February 29, 2016.

_Patricia McDonald_
Patricia McDonald

Sworn to before me this
29th day of February 2016.

_____
Notary Public

STACY KUO
Notary Public, State of New York
No. 01KU6277660
Qualified in Rockland County
Commission Expires March 11, 2017

STATE OF NEW YORK
**DEPARTMENT OF STATE**
ONE COMMERCE PLAZA
99 WASHINGTON AVENUE
ALBANY, NY 12231-0001
WWW.DOS.NY.GOV

ANDREW M. CUOMO
GOVERNOR

CESAR A. PERALES
SECRETARY OF STATE

March 28, 2016



RECEIVED
APR - 1 2016
TOWN ATTORNEY'S OFFICE

Lino J Sciarretta
Town Atorney
10 Maple Avenue
New City NY 10950

RE:    Town of Clarkstown, Local Law 3, 4, 5 2016, filed on March 28, 2016

Dear Sir/Madam:

The above referenced material was filed by this office as indicated.  Additional
local law filing forms can be obtained from our website, www.dos.ny.gov.

Sincerely,
State Records and Law Bureau
(518) 473-2492

NEW YORK
STATE OF
OPPORTUNITY. | Department
of State



GENER
**CODE**
Codification Division
p: 1-855-GEN-CODE   fax: 1-585-328-8189
email: ezsupp@generalcode.com

781 Elmgrove Road
Rochester, NY 14624



3/26/2016                    #316089

**Mr. Lino J. Sciarretta:**

We have received the following from your municipality:

LL No. [3-5]-2016

Town of Clarkstown
10 Maple Avenue
New City, NY 10956



# TOWN OF CLARKSTOWN
### OFFICE OF THE TOWN ATTORNEY

**LINO J. SCIARRETTA**
TOWN ATTORNEY



March 24, 2016

Mr. Douglas J. Schuetz
Acting Commissioner
County of Rockland
Department of Planning
Building T
50 Sanatorium Road
Pomona, NY 10970

      Re:  Amendment to the Zoning Map and Chapter 290
          (Zoning) of the Local Laws of the Town of
          Clarkstown (Regulating Non-Residential Uses in
          Residential Zoning Districts)

Dear Mr. Schuetz:

Pursuant to GML 239-m(6), enclosed is a certified copy of
the Town Board's Resolution adopted by a supermajority
affirmative vote on March 22, 2016 with respect to the
above matter, which addresses the County's comments.

Also enclosed is a copy of Jose Simoes' memorandum, dated
February 26, 2016, which addressed each comment and is
referenced in the resolution that was adopted.

                   Very truly yours,

                   Lino J. Sciarretta
                   Town Attorney

LJS/pm
Encl.