# EXHIBIT G




# TOWN OF CLARKSTOWN
## TOWN BOARD REGULAR MEETING

Town Hall Auditorium

November 27, 2018 at 7:00 PM

MINUTES

PRESENT:
Supervisor George Hoehmann
Councilman Frank Borelli
Councilman Peter Bradley
Councilman Donald Franchino
Councilman Patrick Carroll
Town Clerk Justin Sweet

ABSENT:

Thomas Mascola, Town Attorney Present
Tom Morr, Town Comptroller Present

The Supervisor George Hoehmann declared the Town Board meeting opened. Assemblage saluted the flag. The Town Clerk read the roll call.

Det. Lt. Glen Dietrich to Report

The Supervisor thanked the entire Police Department for their efforts.

**PUBLIC HEARING #1:**

PH-1. **RESOLUTION No (586-2018)** - Authorizing Local Law Amending Chapter 16 of Town Code Regarding the Department of Environmental Control

At 7:32 P.M. there was a motion to open the Public Hearing by

Co. Carroll and seconded by Co. Franchino. The vote was unanimous.

A Local Law Amending Chapter 16, the Department of Environmental Control, and other sections of the code of the Town of Clarkstown by deleting all references to the "Department of Environmental Control" and inserting in place thereof the "Department of Engineering and Facilities Management" and by deleting all references to the "Director of Environmental Control" and inserting in place thereof the "Director of Engineering and Facilities Management."

Robert Alberty, Director of Finance explained the Proposed Local Law and how it will fuse together several maintenance departments. There will be a few changes to the Proposed Local Law and it will be presented at the next Town Board Meeting.

Co. Carroll asked if all maintenance departments will be consolidated into one department with the exception of the Clarkstown Highway Department?

Mr. Alberty stated that this was correct.

Mr. Johnny Velez, Clarkstown Highway Department and Vice President of the CSEA Union.

Mr. Velez asked when this information was presented to

Ms. Beth McDonald, President of the CSEA?

Mr. Alberty stated that there have been several conversations over the last six months discussing this concept. There have been at least three meetings with the CSEA or their representatives. He will be working with the CSEA over the next few days to perfect this. The current terms of the CSEA contract will be fully enforced.

At 7:38 P.M. there was a motion to CONTINUE the Public Hearing at the next Town Board Meeting on Thursday, December 13, 2018. This was offered by Co. Borelli and seconded by Co. Bradley. The vote was unanimous.

| | |
|---|---|
| **RESULT:** | **TABLED [UNANIMOUS]** |
| | **Next: 12/13/2018 12:00 PM** |
| **MOVER:** | Frank Borelli, Councilman |
| **SECONDER:** | Peter Bradley, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |

**PUBLIC HEARING #2:**

**Motion to:** Public Hearing Granting a Special Permit to RO-DYLL Realty LLC to Construct Apartments Over Retail Space in the Congers Overlay District

Public Hearing #2 -

The Supervisor made a motion to open the Public Hearing. All were in favor.

Mr. Joe Simoes, Clarkstown Town Planner explained this proposal for a Special Permit that allows for three, one bedroom apartments to be built above retail space in the Congers Overlay District.

Rental preference will be given to Clarkstown Emergency Volunteers.

Mr. Simoes recommended to the Town Board to close and adopt this Public Hearing. The applicant has met all approvals.

Al Osterwitz, New City

He would like to know who the principals are in the LLC.

Mr. Simoes responded:

Ed Bertolino and Mike Graziano.

There were no additional comments or questions from the Town Board or the Public regarding this Public Hearing.

This Public Hearing was closed and adopted. See Resolution 604-2018. This was offered by Co. Borelli and seconded by Co. Franchino. All were in favor. Closed and adopted.

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Patrick Carroll, Councilman |
| **SECONDER:** | Frank Borelli, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |

**AGENDA ITEM #1:**

**RESOLUTION No (587-2018)** - Accepting Town Board Minutes of October 16, 2018

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Patrick Carroll, Councilman |
| **SECONDER:** | Donald Franchino, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |

**AGENDA ITEM #2:**

**RESOLUTION No (588-2018)** - Setting a Public Hearing on a Proposed Local Law Entitled "Amending Chapter 249A, Stormwater Management, To Improve Peak Rate of Flow from any new Developments or Projects in Clarkstown

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Frank Borelli, Councilman |
| **SECONDER:** | Peter Bradley, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |

**AGENDA ITEM #3:**

**RESOLUTION No (589-2018)** - Setting a Public Hearing on a Proposed Local Law Entitled "Landscaper Licensing Law of the Town of Clarkstown"

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Frank Borelli, Councilman |
| **SECONDER:** | Donald Franchino, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |

**AGENDA ITEM #4:**

**RESOLUTION No (590-2018)** - Authorizing Expenses for Conference (FBI National Academy Graduation Ceremonies) (*Total Cost: $300.00*)

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Frank Borelli, Councilman |
| **SECONDER:** | Peter Bradley, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |

**AGENDA ITEM #5:**

**RESOLUTION No (591-2018) -** Authorizing Expenses for Conference (2019 SHOT Show) (*Total Cost: $3,350.00*)

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Patrick Carroll, Councilman |
| **SECONDER:** | Peter Bradley, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |

**AGENDA ITEM #6:**

**RESOLUTION No (592-2018) -** Authorizing Supervisor to Enter into an Agreement with WageWorks to Administer Employee Flexible Spending Accounts (*$4,200.00 annually for 3 years*)

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Peter Bradley, Councilman |
| **SECONDER:** | Frank Borelli, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |

**AGENDA ITEM #7:**

**RESOLUTION No (593-2018) -** Authorizing the Supervisor to Enter Into a Second Amendment to an Agreement with DCAK-MSA Architecture & Engineering P.C. to Perform Architectural & Engineering Services for Renovations at Street Community Center (*$68,000*)

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Patrick Carroll, Councilman |
| **SECONDER:** | Frank Borelli, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |

**AGENDA ITEM #8:**

**RESOLUTION No (594-2018) -** Awarding Bid - #26-2017 - Street Community Center Renovations - Phase II (*Total Cost: $1,428,965.00 plus a 15% contingency*)

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Patrick Carroll, Councilman |
| **SECONDER:** | Peter Bradley, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |

**AGENDA ITEM #9:**

**RESOLUTION No (595-2018) -** Authorizing Funds for Street Community Center Renovations Phase II (*($1,715,000)*)

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Donald Franchino, Councilman |
| **SECONDER:** | Peter Bradley, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |

**AGENDA ITEM #10:**

**RESOLUTION No (596-2018) -** Authorizing the Purchasing Agent to Advertise Bid (#2-2019 - Fireworks Display)

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Patrick Carroll, Councilman |
| **SECONDER:** | Peter Bradley, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |

**AGENDA ITEM #11:**

**RESOLUTION No (597-2018)** - Authorizing Purchasing Agent to Advertise Bid (#3 - 2019 - Pool Chemicals)

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Frank Borelli, Patrick Carroll |
| **SECONDER:** | Peter Bradley, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |

**AGENDA ITEM #12:**

**RESOLUTION No (598-2018)** - Authorizing Purchasing Agent to Advertise Bid (#4-2019 - Athletic Field and Turf Maintenance)

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Patrick Carroll, Councilman |
| **SECONDER:** | Peter Bradley, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |

**AGENDA ITEM #13:**

**RESOLUTION No (599-2018)** - Authorizing Purchasing Agent to Advertise Bid (#5-2019 - Groundskeeping and Landscape Supplies)

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Patrick Carroll, Councilman |
| **SECONDER:** | Peter Bradley, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |

**AGENDA ITEM #14:**

**RESOLUTION No (600-2018)** - Authorizing Purchasing Agent to Advertise Bid (#6-2019 - First Aid/Safety Supplies)

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Patrick Carroll, Councilman |
| **SECONDER:** | Peter Bradley, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |

**AGENDA ITEM #15:**

**RESOLUTION No (601-2018)** - Authorizing Purchasing Agent to Advertise Bid (#7-2019 - Work Clothing)

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Patrick Carroll, Councilman |
| **SECONDER:** | Peter Bradley, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |

**AGENDA ITEM #16:**

**RESOLUTION No (602-2018)** - Authorizing Purchasing Agent to Advertise Bid (#8-2019 - Highway Signing and Road Maintenance Supplies)

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Patrick Carroll, Councilman |
| SECONDER: | Peter Bradley, Councilman |
| AYES: | Hoehmann, Borelli, Bradley, Franchino, Carroll |

**AGENDA ITEM #17:**

**RESOLUTION No (603-2018)** - Authorizing Execution and Acceptance of Stormwater Maintenance Agreement Regarding Durso Properties Site Plan (Tap Map Designation: 35.14-1-50.2)

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Frank Borelli, Councilman |
| SECONDER: | Peter Bradley, Councilman |
| AYES: | Hoehmann, Borelli, Bradley, Franchino, Carroll |

**AGENDA ITEM #18:**

**RESOLUTION No (604-2018)** - Resolution and Special Findings Granting a Special Permit to RO-DYLL Realty LLC to Construct Apartments Over Retail Space in the Congers Overlay District

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Frank Borelli, Patrick Carroll |
| SECONDER: | Donald Franchino, Councilman |
| AYES: | Hoehmann, Borelli, Bradley, Franchino, Carroll |

**AGENDA ITEM #19:**

**RESOLUTION No (605-2018)** - Amending Town Board Resolution #374-2016 General Vehicle Policy Regarding the Use of Town Vehicles by Employees of the Town of Clarkstown

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Peter Bradley, Patrick Carroll |
| SECONDER: | Donald Franchino, Councilman |
| AYES: | Hoehmann, Borelli, Bradley, Franchino, Carroll |

**AGENDA ITEM #20:**

**RESOLUTION No (606-2018)** - Granting Certificates of Sewer Registration

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Frank Borelli, Councilman |
| SECONDER: | Peter Bradley, Councilman |
| AYES: | Hoehmann, Borelli, Bradley, Franchino, Carroll |

**AGENDA ITEM #21:**

**RESOLUTION No (607-2018)** - Accepting the Resignation of Francis Voce, Police Officer, Clarkstown Police Department, Effective and Retroactive November 13, 2018

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Peter Bradley, Councilman |
| SECONDER: | Frank Borelli, Councilman |
| AYES: | Hoehmann, Borelli, Bradley, Franchino, Carroll |

**AGENDA ITEM #22:**

**RESOLUTION No (608-2018)** - Accepting the Resignation of Pierrot Guillaume, Municipal Bus Driver, Part Time, Mini Trans, Effective and Retroactive November 19, 2018

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Patrick Carroll, Councilman |
| SECONDER: | Peter Bradley, Councilman |
| AYES: | Hoehmann, Borelli, Bradley, Franchino, Carroll |

PUBLIC COMMENTS ON GRACE BAPTIST PROPERTY - 11/18

The Supervisor stated that the meeting that was held on November 26, 2018 was not a Town Board meeting. Many organizations ask to use the auditorium for public meetings and the Pastor of the Grace Baptist Church in Nanuet asked to hold a public meeting in the auditorium. This is what took place. It was not a Town sanctioned meeting.

Tonight the Supervisor will present the facts. First there is a Town Board meeting and after the meeting there will be a time for Public Comments. If anyone would like to speak regarding ANYTHING, other than agenda items, they will be allowed to speak up to three minutes.

The Supervisor presented the timeline of the sale of the Grace Baptist Church. The Town, Church and School District engaged in a discussion of a potential purchase. All negotiations fell through due to appraisal issues. The Town was interested in the land and solicited a qualified appraiser of the property. The Towns appraisal came in much lower than the Grace Baptist's appraisal. The Town cannot put an offer on the property if the asking price is more than 10% over their appraisal. The Supervisor feels that the Town gave a fair and reasonable offer to the Church. The Town made a verbal offer and the Church refused it.

The Supervisor feels there were issues with the Church's appraisal. They received their own appraisal that came in at 8.7 Million dollars. This is far more than double than what the Town received as an appraisal. The Church had a second appraisal or adjusted their appraisal, downward, due to square footage (basement) issues. The second appraisal came in at 6.7 Million dollars.

The Church originally listed the property for $5.9 Million. The Town made an offer, and it was declined. The sale is a private sale, with a contract between two private parties. Rabbi Fink from Ateres Bais Yaakov Academy of Rockland and the Grace Baptist Church. The Supervisor stated that it would be illegal and inappropriate for the Town to interfere in the sale of this property, but there is definitely an interest in this property for Town usage and the school district is interested in the parking located there.

The buyer intends to use this property as a school. The Supervisor made it clear that any school that is certified by the New York Education Department is required to be inspected annually by a certified inspector (Building Inspector and/or Fire Inspector). All private schools in the Town of Clarkstown get their own inspections. They typically will use the Town's Fire Inspectors to perform these inspections. All of these buildings need

to be in compliance. The last recorded inspection that is on file in the Town for the Grace Baptist School was in 1991. The last time that the Grace Baptist School was used for general instruction was in 1991.

The Building department will review this application and they will decide if the proposed use is an allowable use. The buyer did not do due diligence prior to his offer as most buyers do, and would have met with the Building Inspector to solicit input. Scores of applicants have come to meet with employees of the Town to discuss their intentions and research what they may or may not do on these types of properties. The Supervisor is willing to meet with anyone that wants to appear - he will prepare a team - including himself, the Building Inspector, the Town Planner, the Director of Environmental Control, and representatives from our Town Attorney's office - to discuss potential use of properties.

The Town Code has had many changes in 27 years and as of today, the applicant has not submitted any applications or narratives to the Building department. The proposed use of the property must go through a process. Based on the meeting last night, it appears to the Supervisor that there may be some problems with having this building as a school. The Supervisor asked the Building Inspector to come forth and discuss what he knows about the potential applicant and his intentions.

THE SUPERVISOR CONTINUED;

This is a private property matter. The Town expressed interest under the prior Town Board for a potential acquisition, in partnership with the Nanuet School District. The Town has followed their process. The Town secured a legitimate appraisal and made a verbal offer to the Church in accordance with the parameters that were outlined with the Town's appraisal at the time. The Town was told that the offer was insufficient and the Church pursued other options. Amongst those prior options, the Church had two previous buyers, and each backed out. The other two buyers did their due diligence and contacted the Town to learn about the potential usage of the property. The Town cannot interfere with a private property matter between two parties, but the Town will strongly enforce our zoning laws and our building code within the entire Town of Clarkstown.

(audience clapped)

This is a regular Town Board meeting with a clear agenda. The agenda will be reviewed as appropriate. This will take approximately 45 minutes. At that time, the Town Board will allow all Public Comments to be presented. Everyone can speak up to three minutes on the record.

Everyone's comments will be taken and the Board will answer any questions. The Board will stay as long as it takes to get through the comments and questions with the Town staff to assist.

The Supervisor stated that he understands that passionate exchanges have taken place, but he is there to keep order and let everyone speak with respect.

The Supervisor asked Erik Asheim, Clarkstown Building Inspector to address this matter.

Erik Asheim, Building Inspector

As of today, the Building Department has not received an application or narrative regarding this matter. Mr. Asheim reached out to Rabbi Fink on November 26, 2018 and introduced himself. Rabbi Fink indicated that he is interested in opening a school on this property. The Building Department, at this moment does not have any real information on this applicant's intentions.

The property is in a residential, R10 Zoning district. The property is approximately two acres in size. The Church is using it for their religious studies. There currently is no school. Fire Inspectors inspect all private schools and churches. The last time the Inspectors were there and filed a report for the school was back in the 1990's. In 2001 there was a preschool for approximately one year. The school has not been in use for a number of years.

The Church is currently operating as a nonconforming use. A church is a permitted usage in this zoning district but it needs to have access to a state or a county road. The current code states that if that use lapses for over a year, they lose that use. He mentioned this to the Rabbi in their conversation and explained to him that his option is going through the Zoning Board of Appeals to ask for relief of that code. The ZBA would require a SEQRA - A New York State Environmental Quality Review, including a Traffic Study, any renovations, additions, alterations etc.

The Supervisor stated that it is clear that this will require a variance and this will be presented to the Zoning Board of Appeals for approval. Mr. Asheim stated that according to the Building Department's records the use has not been current for more than a year.

Mr. Hansen, Nanuet School Board

January 2017 - The School Board received notice that the Grace Baptist Church would like to sell.

Shortly thereafter, the School Board asked the Superintendent of Nanuet Schools, Dr. McNeill to approach the Pastor to confirm. Dr. McNeill approached the Pastor and told him that the school may be interested in purchasing part of this property. The district needs a parking lot. The district stated that they do not need the entire facility. The

church needs a smaller building to house their church. There were conversations between Dr. McNeil, Pastor French and the Town's Finance Director, Vincent Belascio. The Pastor declined to accept any agreements or offers. There were discussions about "land swap" deals between the Town and the Church and those too, fell through. Properties (Outdoor Education Center on Convent Road) were considered for the Church, but the Church wanted additional payment from the Town as well as land from the district. The Town informed the district there will be no land swap for several different reasons. The land was never swapped.

The Supervisor Reiterated:

The pastor first wanted an acre of property. Mr. Simoes, the Town Planner reviewed the property at the Outdoor Education Center. The Town requested an offer from Pastor French, who then stated that the Church needed more than one acre of property.

The Town Board Meeting Continued:

Detective Glenn Dietrich gave a Police Report (with statistics) for the Clarkstown Police Department.

Public Hearing #1: Authorizing Local Law Amending Chapter 16 of the Town Code regarding the Department of Environmental Control.

Public Hearing #2: Mr. Joe Simoes, Clarkstown Town Planner explained this proposal for a Special Permit that allows for three, one bedroom apartments to be built above retail space in the Congers Overlay district.

Rental preference will be given to Clarkstown Emergency Volunteers.

---

PUBLIC COMMENTS ON ANY NEW OR OLD BUSINESS

Kristen De Lorenzo, Nanuet

Stated that Rabbi Fink mentioned to her in confidence that there had already been a completed traffic study of the area around the Grace Baptist Church in Nanuet. Mr. Fink stated that someone from the Town of Clarkstown told him that Church Street was

already in the process of being expanded and a turning lane will be installed in the area. She would like to know if this information is accurate?

Matt Maroney, Nanuet

Rabbi Fink mentioned that he is willing to possibly have the contract bought out. Is this possible and is this still something that will be discussed?

Katherine Burrascano, Nanuet

Ms. Burrascano would like to know if Rabbi Fink's School curriculum - state mandated, or are the tax payers going to be paying for it?

Roy Kelly, West Nyack

He would like to know what is the additional tax burden if the school were to expand? Will the school be paying anything on their behalf or will this become a bill to the taxpayers of Clarkstown/Nanuet?

Scott Foran, Nanuet

If the Rabbi decides not to use this land as a school, what are the zoning restrictions on the buildings that he would be permitted to build? What would be the expected benefit to the Town (in terms of taxes paid), and if it's used as a higher density rental, what would be the regulations to ensure that the equity would be distributed fairly?

Michael Krist, Nanuet

Why was the Board's verbal offer not followed up in writing? If this was done, the Board could have legal recourse or other options.

Ed Ryan, Nanuet

Regarding Financing: This is a very large purchase. Five million dollars is a tremendous amount of money. Mr. Ryan read an advisory from the Department of Treasury regarding "cash purchases." Where exactly is this money coming from? This is an essential part of our town which is going to affect us every day. Who is financing this transaction? How does this fit into the advisory from the Department of Treasury? The Real Estate Agent has a duty to report these types of transactions to the Department of Treasury. Has this been done? This funding far exceeds the purchase and assessment of this property. Whose names are on the contract? Is it a limited liability company, is it the Rabbi, is it the School itself? This School is tremendously overspending based on evaluations. These are all Red Flags that need to be looked at and as our Elected Officials, the Town Board needs to recognize this and follow this Advisory Report from the Department of Treasury.

Debra Stemmerman, Nanuet

On the Tax Map for Nanuet, there is a paper road called Center Street that runs directly through the Grace Baptist Church. Because of all the anticipated traffic through this area, she wants to make sure that this paper road will remain open.

William Fran, Nanuet

What is the square footage per child for this building? How many children can you fit in this building? We are proud of our Town. We should renovate this building or knock it down and make a parking lot for the Nanuet School District.

Jeff Gillies, Bardonia

His questions are for Rabbi Fink. Water and electricity were shut off at his school in New Hempstead. It is very difficult to have your utilities shut off. Did the Village of New Hempstead grant a permit or give a Certificate of Occupancy with no utilities? Were there bills that went unpaid? How did you and your school end up in a situation like this? You tapped into a neighbor's well and into someone's electricity. How did this happen?

Tom Connors, Nanuet

He has a question with regards to the TOD in Nanuet. The Grace Baptist Church is located very close to the TOD area. With regards to the meetings that were currently held with all parties involving the TOD - are the Environmental Studies coinciding with the Environmental Study that will be performed for the Grace Baptist School? He is extremely concerned that the development in this very small, very compact, very dense area in downtown Nanuet will become unbearable. How do you control that?

Kyle Waters, Nanuet

Does the Town Council have any plans on filing any action(s) against the buying or the selling for a preliminary injunction while the Town has time to investigate all the concerns presented tonight? He was advised by Mr. Kunis to a FOIL regarding Mr. Paul Adler. This is a big deal. What has taken place is very underhanded.

Jenna Apicella, Nanuet

She would like to know what the original verbal offer was from the Town. If this contract falls through, will the Town be willing to put in a reasonable offer to the seller.

Marge Hook, New City

Mrs. Hook commented on the starting salary for the Chief of Police in 2017 and compared it to his salary increase. She is questioning the number of police officers that were currently hired and their salaries.

Rory Bradley, Congers

He is a relative to Co. Bradley. He was born and raised in Congers. He wants to stay in Clarkstown. Nanuet is part of Clarkstown. What happens in Nanuet, happens in all of Clarkstown. Mr. Finks's school in New Hempstead was closed by the County for not having adequate water supply for its 200 students. This is obscene and unacceptable in 2018. We are not a third world country. He is begging the Town Board to look and see what happened to the Town of Ramapo. This cannot happen here. 40% of the Ramapo has been indicted. Former Supervisor St. Lawrence went to prison. The Town of Clarkstown needs to stay on top of overdevelopment and traffic.

Jim Flynn, Nanuet

Wants to thank the Town Board and the School Board. There is a price of about $3 million on the property. The Pastor of the church has a fiduciary responsibility to his church to get as much money out of the sale. In addition, the Supervisor and the Town Board have a fiduciary responsibility to the people of the Town and at the same time needs to follow rules and regulations. The Town tried to work it out. The parties went back and forth and this sale has been discussed at various meetings throughout the Town. He is pleased how everyone has tried to work together. This is now a private sale. Continue to work with the Pastor and the School. Perhaps a developer would be interested or Middlewood may be interested? Thank you for your efforts.

Scott Walters, Nanuet

Nanuet School has had issues this past year with new school schedules, who uses the Highview playground, and the sale of the Grace Baptist Church. All of these happened with a lack of planning by our School Board and Town Board. There were issues of dropping children off at wrong times and returning students are wrong times. Dry runs of the routes by the busses would have helped the situation. The playground is a unique icon in the community. There are rules and regulations because it sits on school property. The Superintendent of the School reached out to the pastor before a realtor was engaged. Discussions between the school district and the seller ended in March 2017. This property would be perfect for Administrative Offices, Continuing Education, PTA Offices, storage and much more for the Nanuet School District. Let's hope that a proper solution can be made before it is too late.

Joe Rand, Partner of RAND Commercial Realty

Mr. Rand would like everyone to know that he truly understands everyone's concerns and fears. He grew up here. He went to the Clarkstown Schools. He lived in New York City for a while and then moved his family back to the area. He wants his children to grow up in the same type of community that he grew up in. His company is 35 years old. He's had anonymous threats that have been called in against himself and his family. He is emotional about this situation. This community should be better than that. He understands the communities anger but his company represented the seller in this transaction. He had no relationship with the buyer. Rand Realty came in after most of

the discussions took place with the Town. He worked hard to get a buyer for this property. It is religious use. They had a lot of religious groups interested. Rand thought that there was a deal with the Zen Monastery and that deal fell through. In addition, Rand follows Federal Law that they cannot discriminate against any religion. He has no relationship with the buyer and he has no idea what his plans are. If the buyer is not telling the truth, he expects that the Town will hold them to the Codes of the Town. Our local government has a responsibility to make sure this buyer abides by the rules and codes of Clarkstown. Rand had a job to do for the seller and that is what they did. He hopes that everything works out.

Legislature Santulli, Rockland County Legislature

Hon. Santulli represents areas of Clarkstown and her family has lived in Rockland for several generations. She is the legislative liaison to the Fire Advisory Board. This school has been on the Fire Advisory Board's radar for well over a year. The School in New Hempstead that Rabbi Fink was involved in has had violation after violation. Established Firefighters have inspected this property. The Fire Advisory Board for Rockland County meets at the end of each month. Anyone can request minutes of their meetings. They are welcome to see the history of Rabbi Fink's school and the problems that arose in the Town of Ramapo. Electric hookup was in violation at this school. Water hookup was a violation at this school. The Rockland County Health Department has been brought in. All of these violations took place in a school for young girls. She has seen destruction with the schools up in Ramapo. She is a teacher at Spring Valley High School and she has lived it firsthand. She is offering the services of the Fire Advisory Board to the public.

The Supervisor asked Legislature Santulli to forward any relevant information to his office so he can have it for his file.

Tina Rodriguez, Nanuet

She was born here and is now raising three children in Nanuet. This "fire" did not just happen. The applicant did not do their due diligence. The applicant will try to keep it as a religious land use. This is not going to be resolved here. How far is Clakstown willing to go?

Paul Meahan, Nanuet

Why would a Real Estate company that has roots in Clarkstown hire a convicted felon who was convicted of fraud to represent them?

Dorothy Fulton, Orangetown

This affects Orangetown as well as Clarkstown. Our children attend the same school. She read an article from Mid Hudson News, dated October 21, 2016. It indicated that the girls school was looking to move from Rockland County (Airmont) to Orange County

(New Windsor). Officials are asking the Orange County Funding Organization to seek approval to receive bonds to build a new $10 million facility. The school will accommodate more than 450 students per year and generate 75 jobs. There was a letter dated October 7th to the Orange County organization that has authority to grant tax exempt tax bonds to non-profits. The proposed school will be on a multi acre property. This location will not be revealed until contract negotiations are finalized. Rabbi Fink authored the letter. He is asking for $8 million of this $10 million request. She wants to reveal to the public that this is where he is getting money for the Grace Baptist Church.

Bill Southard, Nanuet

He is a retired NYPD Detective. He vows to every resident in the room that when he dies, RAND Realty will NOT have a sign on his front lawn.

Kathy Sulla, Pearl River

She grew up on Prospect Street. She has been involved with Nanuet for over 50 years. She does not want Nanuet to turn into Ramapo. She is asking the Supervisor if he knew Mr. Paul Adler was a convicted felon. If he knew about the situation, why would he not work with Mr. Hansen from the Nanuet School Board, and buy this property? Taxes in Nanuet have increased every year since she has been here. Nanuet residents should have been notified of the potential sale. Now is when she and others do not mind paying extra taxes for the purchase of the Church. The Town of Clarkstown should have worked harder and stepped in. She wants to keep Clarkstown and Nanuet special. The Town Board works for the people of this Town. She does not want the Nanuet School district to turn into an East Ramapo School. She noted that Ron Hansen did not want to purchase it because the prospective enrollment for the Nanuet Schools will be reduced. If this goes through, it will be ridiculous.

Michelle Guarido, Nanuet

Yesterday, Rabbi Fink gave a reason as to why he is vacating his current property in Ramapo and purchasing the property in Nanuet. Many Nanuet residents did their research and found that there is over a million dollars in loans against his Ramapo property. Her question to Rabbi Fink is how are you going to pay this back and where is this money coming from to purchase this current property. She is also asking the Town Board if his current organization does purchase this property in Nanuet, what happens to his current debt? Does it get transferred over to the Grace Baptist Church's property?

Loretta Walsh, Nanuet

If money was an issue with the purchase, how did the Town come up with the funds to renovate the Street Community Center? Also, is Rabbi Fink willing to negotiate this property with the Town?

Rabbi Aaron Fink

He briefly described the school and had two students with him to answer questions from the community. He noted their achievements with Regents Exams and AP Exams from his school. He will be consulting with the School District and the Town to make this transition as successful as possible. He looks forward to being our new neighbors.

The Supervisor Responded:

There are significant concerns that our public have and need to be addressed. He understands that it is a personal sale, but would like to address some of the concerns of the public.

There was an offer on the table and the Rabbi was willing to discuss it, but Pastor Will French was not willing to disclose the amount. He understands that it was an "all cash" transaction. Residents from Orangetown did some research and found that the Rabbi submitted an application and is seeking funding from Tax Exempt Bonds. Will this go to the proceeds of the sale? Will these funds go to paying off the debt in Ramapo? How is this different from what you presented to the Town yesterday?

The Rabbi responded:

The buyer of this sale is not waiting for financing. This is not a "cash" deal. We will be getting funding without financing. When we needed to leave our location in Airmont, we looked all over the region. They applied to the Orange County Industrial Development Agency (IDA) for bonding to help finance that purchase. They have done the same in Rockland County. They met with the Regional IDA to help fund this deal. The bonding is a "mortgage". They will pay whatever interest is incurred. They are also exploring the conventional mortgage market.

The Rabbi has an application before the IDA. They were approved at the site in Airmont, but he abandoned the building due to his health concerns. He applied and asked for bonding for the purchase of the Grace Baptist Church in Nanuet.

They had a prior application that was approved. The documents were signed by the County Executive, Ed Day. The whole process was approved in December 2017. This was a bond for $10 million to build a building at their site in Airmont.

The Supervisor continued:

The Supervisor questioned why he did not pursue the building in Airmont if the funding was already in place. The Rabbi stated that he was trying to reduce his stress level due to health reasons.

The Supervisor confirmed with the Rabbi that he has a current application with the IDA? The Rabbi stated that yes, they asked the IDA to modify their application. There will be

a hearing on this modification at the IDA's next meeting. The meeting is apparently in the month of December. The Rabbi stated that he is not positive of the day of this meeting.

The Supervisor stated that both - Mr. Steve Porath and the IDA will need to hold some type of Public Hearing. This is an expenditure and approval that involves Public Funds. Residents can get additional information from Ed Day's office - the Rockland County Executive's Office. Residents can also google the Rockland County Industrial Development Agency for additional information and their schedule of meetings.

The Supervisor stated that the Rabbi has not submitted a narrative and he wants to make it clear; There has been no Traffic Study. He is encouraging the Rabbi to schedule a meeting with the Building Inspector and other Town officials. The Supervisor stated that the Rabbi needs to immediately submit a written narrative of his intentions. Under the law, you need to communicate your intentions with the Town of Clarkstown's Building Inspector. Not the public officials.....it's the Building Inspector. He understands the Code and he is the determiner of the Code. The preexisting nonconforming use should be a huge concern for all. There was a local law that was passed in 2016, when he became Supervisor - certain usage is not permitted on certain roadways. With this property, there are probably at least two variances that are required. Tere is a process and the Rabbi will have to do his due diligence on. Any other applicant would be required to do the exact same thing. You have attested that you plan to buy, close, move in and operate. This will NOT occur in the Town of Clarkstown without ALL approvals.

The Rabbi stated that he expects to follow every aspect of the law in Clarkstown that pertain to Zoning Laws and Building Codes. The Rabbi wants to state for the record that his counsel and his realtor had some informal discussions (without mentioning any names) with the Building Department in April of 2018. This is when he first heard about the availability of the property. A discussion took place and he felt confident and comfortable that he could move forward. He will be happy to discuss this with Eric. It is the belief of the Town staff that no one has come in to talk with them - not anyone from the Church or Rabbi Fink's entity. The Rabbi stated that they were first interested in the property in April and at that time his counsel and his realtor had a conversation with the Building Department.

The Supervisor stated that there is nothing formally on the Town's Capital Plan for Church Street for expansion. This will require studies from the Town's Engineering Department. This will probably require acquisitions of properties to allow for expansion of Church Street. There was no traffic study that was performed and if there are any variances needed by any developer, they would have to get permission from our Land Use Boards.

County Legislative Santulli stated that there are number of major violations on your property in Airmont and the Supervisor asked Rabbi Fink to address these concerns.

Rabbi Fink:

The Rabbi stated that there are no violations on his property at this time. They have been inspected by three or four fire agencies in the past six months. He stated that he never had a problem with fire compliance in the Village of Airmont. The Rabbi stated that a temporary Fire hydrant was approved by the State monitor on the Village of New Hempstead property and the Town of Ramapo's Building Department. He received permission to use this temporary Fire Hydrant by the Town of Ramapo in lieu of the permanent Fire Hydrant that they were waiting to have installed by United Water. United Water took over nine months to install that permanent hydrant. The Fire Department was not happy with this but he continued to use the permits that were issued to him by the Village of New Hempstead (Town of Ramapo). He had a temporary Certificate of Occupancy so he opened the doors of the school. At the time they were waiting for Orange and Rockland to install power lines. He felt there was plenty of time for Orange and Rockland to install the lines, so he did not wait for completion. He used an electrician to connect to a house next door from the facility. They ran 100 amps of service so they could run the lights in the building.

The Airmont site hooked up to a private home's well. The Rabbi stated that in terms of Rockland County Health laws, he did not know there is a difference between a well that is used at a private home and a well that is used at a school. He assumed this was permitted. They brought in a water truck and fed the school with the line from the truck. When the pipes froze, they closed school for the day.

There are a series of liens on the property. The Supervisor asked if the liens follow you to your new property? The Rabbi stated that the liens came about as a result of his illness. The Rabbi takes care of paying the invoices and the fundraising. The vendors put Mechanic Leans on the property. He expects that the proceeds of the sale will retire any debt that they have.

The Supervisor continued:

If the Rabbi was successful with his application, and the school were to open, what would the cost implications be to the Nanuet School District? Bussing, books, nursing care etc…

The Rabbi stated that to the best of his knowledge, that his school would have a nurse provided by the Nanuet School district. Everything else is provided by the school district wherever the student resides. The Superintendent of the Nanuet School District will be their Superintendent too. He would make sure that all of their entitlements and programs are run appropriately.

Superintendent McNeill responded:

The school district just learned - today - what the school was and who Rabbi Fink was. He has been trying to figure out the costs that the school district will bear if the school were to open. He believes it will be similar to St. Anthony's School (the only other private school) in Nanuet. They would provide a Nurse and they would share aid in text books and software. The school district will need to know what type of individuals are at the school in order to see what is needed as far as professional development - including remedial math, remedial reading, and remedial speech. The costs for all professional development gets billed back to private schools. NY State has raised the bar as to what the local schools are responsible for. Currently there is a nurse, speech teacher, and a psychologist at St. Anthony's.

Michael Stocks, Nanuet

We listened for approximately 30 minutes with all the nonsense that went on at his school in Ramapo. Con Ed, Water, and Sewer problems - he has never heard anything like this. It sounds like situations that happen in third world countries. He would like to know how he can secure 8 million dollars when he cannot even get water into his building? He also questioned the Supervisor about the 10% factor (above assessed value). The Rabbi cannot get a school together, and he is coming away with 8 million dollars. This does not seem possible. He stated to the Town Board that this property will be run down within one year and Nanuet will be taken over along with the rest of Clarkstown.

Luke Mills, Nanuet

If this God awful deal does go through, from closing - how long can we expect the School to be in full operation and what are you going to do to make sure ALL the codes are enforced.

John Fidalgo, Nanuet

The Rabbi explained how the money raised will be a bond issue. He is asking the Town Board to educate the public and explain how they could do what they have done today at the County level. He would like to let all the elected officials know what the repercussions will be if this is not done properly. What can be done legally? He would like to rally the forces so that they can be educated.

David Fleishman, New City

It is easy for Towns to get sued due to antisemitism. We are trying to emphasize - this is NOT about a particular religion, it is about understanding the impact on other communities and having a history of bad behavior. He is trying to protect the Town from particular lawsuits.

Meghan Vitale, Nanuet

What type of representation will they have on the School Board? How much will they have a say in things? Are they going to be held to the NY state standard and public school standards regarding vaccinations? What is their definition of being vaccinated?

Mr. Foley, Nanuet

If the bond fails to get secured by January, does the deal fall apart?

Jim Farkas, Nanuet

Questioned the "timeline" for this transaction. The Pastor indicated that this deal was definite and this deal was going to close in January. Based on tonight's discussions, the Rabbi stated that this deal is contingent on this bond being approved. Also, the information that the Supervisor gave about the IDA is critical. The public needs to be aware of the status of the bond. They need to attend the IDA meeting, and voice their concerns. The IDA is very strict about how they issue bonds. Is it safe to say that there are variances that need to occur and zoning issues that were not revealed yesterday? Is it unrealistic to think that this transaction can close in mid-January, with all the levels of contingency that need to take place?

Jeff Gartner, Nanuet

He would like to know specifics about the financing of this purchase and how much the Nanuet School District will need to contribute. The amount of students that the Rabbi wants to house in this school is double the amount of students at St. Anthony's school. He would like to know what St. Anthony's currently receives? Let's double that and get a ball park figure.

Nora Cullen, Pearl River

Ms. Cullen has children that attend the Nanuet Schools. The Reverend and Rabbi stated that they were getting funding from private donors to pay for the transaction. They also mentioned to the public that they were going to fundraise. The issue of a "bond" never came up. If this bond was never brought up tonight, would it have ever been mentioned? She is questioning his transparency.

Andrea Hauser, Nanuet

Because Highview playground is outdoors and the school will be doing renovations - will they be held to air quality standards? There are children that are playing in the Highview Playground all the time. There is also asbestos in the building. If air quality turns into a problem, she will be the first to lead a class action lawsuit against the School and the Town. The playground is a resident only playground. Also, if this sale goes through they need to be held to yearly inspections of this school.

Linda Spatafora, Nanuet

She lives across the street from Highview School. The traffic is horrendous already. If the school has their way and has their full capacity, where are we going to put these people? The streets did not grow with us. There are too many people on this block. Nobody has any respect for the neighbors. The Town needs to respect the community and the safety of the area. Something better has to be done. A school of any kind is not needed on this street.

The Supervisor Concluded:

Everyone can be assured that there is a strict Code enforcement in the Town of Clarkstown. The Town will make sure that all laws, codes, variances and enforcements are followed with specific uses. All applicants will be treated equally. We currently have three Code Enforcement Officers and we have a Deputy Town Attorney who has a career as a Criminal Prosecutor from New York City. She heads up Clarkstown's Code Enforcement. ALL of our building codes will be followed. We will issue search warrants if necessary. Prior from the Supervisor taking office, there were 600 building and code violations. Currently there are over 1700 building and code violations that were issued by our Town. We do not look for voluntary compliance. We look for people to comply.

The Supervisor would like to thank everyone for being respectful this evening.

Co. Patrick Carroll, Ward 4

Co. Carroll stated that this issue has raised the passion of the neighborhoods in Clarkstown and he would like to thank everyone for coming out to voice their concerns. Your voices have been heard and your concerns have been noted. We will review them to the extent that the town can - with a private sale. All proper approvals will be required. He would like to see the public attend more meetings in general.

Co. Peter Bradley, Ward 2

Co. Bradley stated that he works for the entire Town of Clarkstown, not just his Ward. He works for us. He was a member of the Zoning Board and listened to many applications regarding variances. The Zoning and Planning Boards are legitimate entities. There are many public hearings to hear all the facts and vote for approvals. Public input is very important. There are processes that get followed in Clarkstown. Your voices matter.

Co. Frank Borelli, Ward 1

Co. Borelli stated that he understands how the communities are concerned about their neighborhoods. We are all in this together. It does not matter what Ward he is from. He represents all of Clarkstown. The Town Board has worked very hard over the last few years to bring new rules and regulations to our Zoning Code. There have been many changes and this has not been easy. We've had numerous public hearings regarding our

Town Code. With the public coming out tonight paints a picture of how important this topic is to our Town. He pledges to the Town that the Town Board is behind you all. They will do the right thing by any citizen who has a property being developed as long as laws are followed.

Co. Donald Franchino, Ward 3

Co. Franchino represents this particular Ward that is being discussed tonight. There is a lot of work that is being done behind the scenes at the Town. This is a hot issue. He is concerned about the infrastructure in Nanuet and West Nyack. Some roads in Nanuet are Town roads and some are County roads. Another one of his concerns is sales tax revenue. The amount of money coming back to the communities is peanuts. He has gone to the County Legislature asking for change. Church street serves three existing schools, a feeder street to another school, a service road to Normandy Village, a popular playground, and a library. This is excessive. The sidewalks on this road are pitiful. There will be changes in this area. He thanked the School Board for coming out tonight. The Nanuet Schools have universal bussing but the amount of cars that enter the schools is increasing. One question that was asked tonight was about the time line - if this deal should go through. We have no idea what that will be. We are board members for the entire Town of Clarkstown. This is a great turnout. We are a community and will stick together. As far as the Grace Baptist Church, we will have to see how Rabbi Fink makes out with securing the bond he is looking for and how he handles his due diligence with our Building Department. It is a wait and see. It is a private transaction. The Town will not get involved with that. Should it not go through, we will meet again and discuss. He would like to thank the public for coming out. He told them that they have been heard loud and clear.

The Supervisor added:

The Supervisor stated that the Town will continue to look at the parking at Church Street and the entire area. He is very partial to the Highview playground. The School District controls it. Air monitoring will be reviewed if construction takes place in the area. The community can reach out to the IDA and the County Legislature. Please note that all applicants need to follow the process. Rabbi Fink indicated that he is going to follow his due diligence and we will proceed from there.

The Supervisor thanked everyone for their kind attention. He thanked Dr. McNeill and Rabbi Fink for answering questions from the Public.

At 10:25 P.M. A motion was made by Co. Carroll to move into Executive Session, this was seconded by Co. Franchino. This is to discuss a Personnel matter. All were in favor.

The Board will move into an Executive Session to discuss personnel and litigation matters.

There was a motion to enter into an Executive Session made at 10:25 PM by Co. Carroll and seconded by Co. Franchino. The motion was passed unanimously 5-0. The Town Attorney, Thomas Mascola, was designated as the keeper of record for this meeting.

**RESOLUTION NO. (608A-2018)**

During the Executive Session, after a discussion, a vote was taken to suspend a Town of Clarkstown employee without pay effective on November 28, 2018 until the first day of is disciplinary hearing. The motion to suspend the employee was made by Co. Carroll and seconded by Co. Borelli. The motion passed unanimously 5-0.

There was a motion to exit the Executive Session at 11:30 PM by Co. Carroll and seconded by Co. Borelli. That motion was passed unanimously 5-0.

At 11:31 PM, a motion to adjourn the meeting was made by Co. Franchino and seconded by Co. Borelli. This motion was passed unanimously 5-0.

Respectfully submitted by,

Justin Sweet, Town Clerk




## (586-2018)
## Authorizing Local Law Amending Chapter 16 of Town Code Regarding the Department of Environmental Control

WHEREAS, a proposed local law entitled,

"A LOCAL LAW AMENDING CHAPTER 16, THE DEPARTMENT OF ENVIRONMENTAL CONTROL, AND OTHER SECTIONS OF THE CODE OF THE TOWN OF CLARKSTOWN BY DELETING ALL REFERENCES TO THE "DEPARTMENT OF ENVIRONMENTAL CONTROL" AND INSERTING IN PLACE THEREOF THE "DEPARTMENT OF ENGINEERING AND FACILITIES MANAGEMENT" AND BY DELETING ALL REFERENCES TO THE "DIRECTOR OF ENVIRONMENTAL CONTROL" AND INSERTING IN PLACE THEREOF THE "DIRECTOR OF ENGINEERING AND FACILITIES MANAGEMENT."

was introduced by Councilperson Bradley at a Town Board meeting held on October 30, 2018, and

WHEREAS, the Town Board of the Town of Clarkstown, by resolution adopted on October 30, 2018, directed that a public hearing be held on November 27, 2018 at 7:00 p.m., or as soon thereafter as possible, relative to such proposed local law, and

WHEREAS, a copy of the proposed local law in final form was placed on the desks of the Supervisor and the Councilpersons at their offices at the Clarkstown Town Hall, 10 Maple Avenue, New City, New York, on November 14, 2018, and

WHEREAS, notice of said hearing was duly prepared and published in the Journal News on November 16, 2018, and

WHEREAS, the Town Board of the Town of Clarkstown has reviewed the November 19, 2018 memorandum prepared by Dennis Letson, Deputy Director of Environmental Control, as agent for the Town Board, pursuant to the State Environmental Quality Review Act (SEQRA) which the Board has discussed and considered in making its decision herein, and

WHEREAS, a public hearing was held by the Town Board of the Town of Clarkstown on November 27, 2018;

NOW, THEREFORE, be it

RESOLVED, that based upon the memorandum prepared by Dennis Letson, Deputy Director of Environmental Control, acting as agent for the Town Board pursuant to SEQRA, the Town Board hereby determines that the amendments to Chapter 16, the Department of Environmental Control, and other sections of the Town Code by deleting all references to the "Department of Environmental Control" and inserting in place thereof the "Department of Engineering and Facilities Management" and by deleting all references to the "Director of Environmental Control" and inserting in place thereof the "Director of Engineering and Facilities Management" are Type II actions, and no further processing pursuant to SEQRA is required, and be it

FURTHER RESOLVED, that Local Law No. - 2018 entitled:

"A LOCAL LAW AMENDING CHAPTER 16, THE DEPARTMENT OF ENVIRONMENTAL CONTROL, AND OTHER SECTIONS OF THE CODE OF THE TOWN OF CLARKSTOWN BY DELETING ALL REFERENCES TO THE "DEPARTMENT OF ENVIRONMENTAL CONTROL" AND INSERTING IN PLACE THEREOF THE "DEPARTMENT OF ENGINEERING AND FACILITIES MANAGEMENT" AND BY DELETING ALL REFERENCES TO THE "DIRECTOR OF ENVIRONMENTAL CONTROL" AND INSERTING IN PLACE THEREOF THE "DIRECTOR OF ENGINEERING AND FACILITIES MANAGEMENT."

is hereby ADOPTED and passed by a majority of the Town Board of the Town of Clarkstown, the vote for adoption being as follows:

George Hoehmann, Supervisor . . . . .
Frank Borelli, Councilman . . . . . .
Peter Bradley, Councilman . . . . . .
Donald Franchino, Councilman . . . .
Patrick Carroll, Councilman . . . . .

The Clerk of the Town of Clarkstown is directed to file the local law pursuant to Section 27 of the Municipal Home Rule Law.

Dated: November 27, 2018

TB 11-27-18 TA RES Adopt LL-Amend Chapter 16-Dept. of Environmental Control-kh

***TMM***

| | |
|---|---|
| **RESULT:** | **TABLED [UNANIMOUS]** |
| | **Next: 12/13/2018 12:00 PM** |
| **MOVER:** | Frank Borelli, Councilman |
| **SECONDER:** | Peter Bradley, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |




## (587-2018)
## Accepting Town Board Minutes of October 16, 2018

RESOLVED, that the Town Board Minutes of October 16, 2018 are hereby accepted as submitted by the Town Clerk.

Dated: November 27, 2018
***TMM***

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Patrick Carroll, Councilman |
| **SECONDER:** | Donald Franchino, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |




**(588-2018)**

**Setting a Public Hearing on a Proposed Local Law Entitled "Amending Chapter 249A, Stormwater Management, To Improve Peak Rate of Flow from any new Developments or Projects in Clarkstown**

WHEREAS, Councilperson Borelli, a member of the Town Board of the Town of Clarkstown, has introduced a proposed local law entitled,

"A LOCAL LAW AMENDING CHAPTER 249A, STORMWATER MANAGEMENT, TO IMPROVE PEAK RATE OF FLOW FROM ANY NEW DEVELOPMENTS OR PROJECTS IN CLARKSTOWN"

and

WHEREAS, this proposed local law is to amend the current requirement that new development have a zero percent effect on the peak rate of flow from its site to have a negative fifteen percent (15%) rate of flow from existing conditions so as to reduce the peak rate of flow and to provide for the health, safety and general welfare of the inhabitants of the Town of Clarkstown by helping our residents maintain current drainage conditions and not have new development adversely affect their quality of life;

NOW, THEREFORE, be it

RESOLVED, that a public hearing, pursuant to §20 of the Municipal Home Rule Law, be held at the Auditorium of the Town Hall, 10 Maple Avenue, New City, New York on January 22, 2019 at 7:00 p.m., or as soon thereafter as possible, relative to such proposed local law, and be it

FURTHER RESOLVED, that the proposed local law to amend the current requirement of stormwater management that new development have a zero percent effect on the peak rate of flow from its site will, if adopted, mandate that all new development have a negative fifteen percent (15%) rate of flow from existing conditions, reducing the peak rate of flow to help our residents maintain current drainage conditions and not have new development adversely affect their quality of life, is hereby referred to the Rockland County Commissioner of Planning and other municipalities and governmental bodies as

required by Sections 239-l and 239-m of the General Municipal law and other applicable provisions of law, and be it

FURTHER RESOLVED, for the purposes of the New York State Environmental Quality Review Act (SEQRA), the Town Board determines that it shall act as lead agency and Dennis Letson, Deputy Director of Environmental Control, is hereby authorized and directed to act as agent for the Town Board with respect to SEQRA review, and be it

FURTHER RESOLVED that the Town Attorney of the Town of Clarkstown prepare notice of such statutory hearing and that the Town Clerk cause the same to be published in the newspaper of general circulation and posted in the same manner provided by law and file proof thereof in the Office of the Town Clerk.

Dated: November 27, 2018

TB

*TMM*

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Frank Borelli, Councilman |
| **SECONDER:** | Peter Bradley, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |



## (589-2018)
## Setting a Public Hearing on a Proposed Local Law Entitled "Landscaper Licensing Law of the Town of Clarkstown"

WHEREAS, Councilperson Borelli, a member of the Town Board of the Town of Clarkstown, has introduced a proposed local law entitled,

"LANDSCAPER LICENSING LAW OF THE TOWN OF CLARKSTOWN"

and

WHEREAS, this proposed local law is to create a new chapter of the Clarkstown Town Code entitled "Landscaper Licensing Law of the Town of Clarkstown" to provide for registration and licensing of landscapers operating within the Town so as to control their activities, as such activities relate to the use of Town streets, and the removal of landscape materials from real property within the Town;

NOW, THEREFORE, be it

RESOLVED, that a public hearing, pursuant to §20 of the Municipal Home Rule Law, be held at the Auditorium of the Town Hall, 10 Maple Avenue, New City, New York on January 22, 2019 at 7:00 p.m., or as soon thereafter as possible, relative to such proposed local law to license and regulate landscapers operating within the Town of Clarkstown, and be it

FURTHER RESOLVED that the Town Attorney of the Town of Clarkstown prepare notice of such statutory hearing and that the Town Clerk cause the same to be published in the newspaper of general circulation and posted in the same manner provided by law and file proof thereof in the Office of the Town Clerk.

Dated: November 27, 2018
TB
*TMM*

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Frank Borelli, Councilman |
| **SECONDER:** | Donald Franchino, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |

2.4




## (590-2018)
## Authorizing Expenses for Conference (FBI National Academy Graduation Ceremonies)

WHEREAS, Clarkstown Police Department Captain Jeffrey Wanamaker has requested authorization for one (1) police officer to attend the FBI National Academy Graduation Ceremonies from December 13-14, 2018;

NOW, THEREFORE, be it

RESOLVED, that the Town Board hereby authorizes the police officer to attend the FBI National Academy Graduation Ceremonies from December 13-14, 2018, and be it

FURTHER RESOLVED, that the registration fees and reasonable and necessary expenses incurred by the police officer for lodging, travel and meals and dues shall constitute a proper charge to Account No. A-3120-404, and the total cost shall not exceed $300.00.

Dated: November 27, 2018

TB 11-27-18 FBI National Academy Graduation Ceremonies-sk
***TMM***

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Frank Borelli, Councilman |
| **SECONDER:** | Peter Bradley, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |




## (591-2018)
## Authorizing Expenses for Conference (2019 SHOT Show)

WHEREAS, Clarkstown Police Department Captain Jeffrey Wanamaker has requested authorization for two (2) police officers to attend the 2019 SHOT Show and Conference from January 20-25, 2019;

NOW, THEREFORE, be it

RESOLVED, that the Town Board hereby authorizes the police officers to attend the 2019 SHOT Show and Conference from January 20-25, 2019, and be it

FURTHER RESOLVED, that the registration fees and reasonable and necessary expenses incurred by the police officers for conference, lodging, travel and meals and dues shall constitute a proper charge to Account No. A-3120-404 & A-3120-414, and the total cost shall not exceed $3350.

Dated: November 27, 2018

TB 11-27-18 PD Conference - 2019 SHOT Show & Conference-sk
***TMM***

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Patrick Carroll, Councilman |
| **SECONDER:** | Peter Bradley, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |




## (592-2018)
## Authorizing Supervisor to Enter into an Agreement with WageWorks to Administer Employee Flexible Spending Accounts

WHEREAS, WageWorks has submitted a proposal to provide administration services in connection with the Town's employee Flexible Spending Account plan, and

WHEREAS, the Director of Personnel has reviewed the proposal and finds it reasonable in terms of both scope and price;

NOW, THEREFORE, be it

RESOLVED, that the Town Board hereby authorizes the Supervisor to enter into an agreement with WageWorks, 1100 Park Place, 4th Floor, San Mateo, CA 94403, in a form satisfactory to the Town Attorney, to provide the Town with administration services related to the employee Flexible Spending Account plan for the period from October 1, 2018 through September 30, 2021, and be it

FURTHER RESOLVED, that the fee for such services shall not exceed Four Thousand Two Hundred Dollars ($4,200.00) annually, which fee shall be charged to Account No. A-1315-463, and be it

FURTHER RESOLVED, that this resolution is retroactive to October 1, 2018.

Dated: November 27, 2018

TB 11-27-18 TA RES WageWorks-Employee Flexible Spending Account-kh
***TMM***

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Peter Bradley, Councilman |
| **SECONDER:** | Frank Borelli, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |




## (593-2018)
## Authorizing the Supervisor to Enter Into a Second Amendment to an Agreement with DCAK-MSA Architecture & Engineering P.C. to Perform Architectural & Engineering Services for Renovations at Street Community Center

WHEREAS, by Resolution No. 281-2017, adopted June 6, 2017, the Town Board authorized the Supervisor to enter into an agreement with DCAK-MSA Architecture and Engineering, PC, 53 Hudson Avenue, Nyack, NY 10960, to perform architectural and engineering services for renovations to the North Wing of the Street Community Center in New City; and

WHEREAS, by Resolution No. 357-2017, adopted August 15, 2017, the Town Board authorized the Supervisor to enter into an amended agreement with DCAK-MSA Architecture and Engineering, for additional HVAC and related work after it was determined that it would benefit the project if such work was performed all at once, rather than in separate phases as had been contemplated, and

WHEREAS, by Resolution No. 468-2017, adopted November 20, 2017, the Town Board authorized the Supervisor to enter into an agreement with DCAK-MSA Architecture and Engineering to perform services for renovations to the South Wing of the Street Community Center in New City, and

WHEREAS, additional asbestos testing and air monitoring and concrete and soil testing has been found necessary in connection with the renovations to be performed during Phase II to the Street Community Center, and

WHEREAS, DCAK-MSA Architecture and Engineering, PC has submitted an additional proposal, dated October 19, 2018, for the additional testing and monitoring associated with the renovations at the Street Community Center in New City,

NOW, THEREFORE, be it

RESOLVED, that the Town Board hereby authorizes the Supervisor to enter into a second amendment to the agreement with DCAK-MSA Architecture and Engineering, PC, 53 Hudson Avenue,

Nyack, NY 10960, in a form approved by the Town Attorney, for the additional testing and monitoring at Street Community Center, and be it

FURTHER RESOLVED, that the total cost of said additional testing and monitoring services shall not exceed $68,000 and shall constitute a proper charge to Account No. H-8770-409-0-93-15, be it

FURTHER RESOLVED, that it is the intent of the Town Board to fund this additional cost through the issuance of serial bonds.

Dated: November 27, 2018

TB 11-27-18 TA RES DCAK-MSA Additional at Street Community Center-kh
***TMM***

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Patrick Carroll, Councilman |
| **SECONDER:** | Frank Borelli, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |



## (594-2018)
## Awarding Bid - #26-2017 - Street Community Center Renovations - Phase II

RESOLVED, that based upon the recommendation of the Authorized Purchasing Agent and the Superintendent of Recreation and Parks that

BID #26-2017 - STREET COMMUNITY CENTER RENOVATIONS - PHASE II

is hereby awarded to: MONTANA CONTRACTING CORP.
173 ROUTE 9W
CONGERS, NY 10920
PRINCIPAL: JOSEPH MONTANA
RALPH RYAN
CHRISTOPHER MONTANA

as per their proposed total project cost of $1,428,965.00 plus a 15% contingency and be it

FURTHER RESOLVED, that said award is subject to the receipt by the Purchasing Department of the following:

a) Signed Contract Documents - four sets
b) Performance Bond - 100% of project cost
c) Labor and Materials Payment Bond - 100% of proposed project cost
d) Certificate of Contractor's Liability and Property Damage Coverage, including a Save Harmless Agreement
e) Certificate of Automobile Liability Coverage
f) Certificate of Worker's Compensation insurance coverage
g) Certificate of Worker's Disability Insurance coverage
h) Evidence that all Contractors/Sub-contractors have entered into an Apprenticeship Agreement which has been registered with and approved by the NYS Commissioner of Labor in accordance with Article 23 of the New York Labor Law.

The Town of Clarkstown must be named as additional insured by way of policy endorsement on all liability policies, as they pertain to the project awarded and be it

FURTHUR RESOLVED, that this project shall be under the supervision of the Clarkstown Recreation and Parks Department

FURTHER RESOLVED, that this project shall constitute a proper charge to account number H-8770-400-409-0-93-15, and be it

FURTHER RESOLVED, that it is the intent of the Town Board to fund this project with the issuance of Serial Bonds

DATED: November 27, 2018
***TMM***

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Patrick Carroll, Councilman |
| **SECONDER:** | Peter Bradley, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |




## (595-2018)
## Authorizing Funds for Street Community Center Renovations Phase II

BOND RESOLUTION OF THE TOWN OF CLARKSTOWN, NEW YORK, ADOPTED NOVEMBER 27, 2018, AUTHORIZING STREET COMMUNITY CENTER RENOVATIONS - PHASE II, STATING THE ESTIMATED MAXIMUM COST THEREOF IS $1,715,000, APPROPRIATING SAID AMOUNT FOR SUCH PURPOSE, AND AUTHORIZING THE ISSUANCE OF BONDS IN THE PRINCIPAL AMOUNT OF $1,715,000 TO FINANCE SAID APPROPRIATION

THE TOWN BOARD OF THE TOWN OF CLARKSTOWN, IN THE COUNTY OF ROCKLAND, NEW YORK, HEREBY RESOLVES (by the favorable vote of not less than two-thirds of all the members of said Town Board) AS FOLLOWS:

Section 1. The Town of Clarkstown, in the County of Rockland, New York (herein called the "Town"), is hereby authorized to finance the cost of Street Community Center Renovations - Phase II including improvements to the Middle and North Wings of the Community Center and the parking lot, comprising demolition, masonry, light gauge framing, windows, painting, flooring, roofing, electric, plumbing, carpentry, mill work, asbestos abatement and testing, paving ,security in the form of cameras and swipes, fire and alarm system installation, furniture and exercise equipment. The estimated maximum cost thereof, including preliminary costs and costs incidental thereto and the financing thereof, is $1,715,000 and said amount is hereby appropriated for such purpose. The plan of financing includes the issuance of bonds in the principal amount of $1,715,000 and any bond anticipation notes issued in anticipation of the sale of said bonds to finance said appropriation, and the levy and collection of taxes on all the taxable real property in the Town to pay the principal of and interest on said bonds and notes.

Section 2. Bonds of the Town in the principal amount of $1,715,000 are hereby authorized to be issued pursuant to the provisions of the Local Finance Law, constituting Chapter 33-a of the Consolidated Laws of the State of New York (herein called the "Law"), to finance said appropriation.

Section 3. The following additional matters are hereby determined and declared:

(a) The existing building is of at least Class "B" construction as defined by Section 11.00 a. 11. (b) of the Law, and the period of probable usefulness applicable to the specific object or purpose for which the bonds authorized by this resolution is to be issued within the limitations of Section 11.00 a. 12.(a)(2) of the Law, is fifteen (15) years.

(b) The proceeds of the bonds herein authorized and any bond anticipation notes issued in anticipation of said bonds may be applied to reimburse the Town for expenditures made after the effective date of this resolution for the purpose for which said bonds are authorized. The foregoing statement of intent with respect to reimbursement is made in conformity with Treasury Regulation Section 1.150-2 of the United States Treasury Department.

(c) The proposed maturity of the bonds authorized by this resolution will exceed five (5) years.

Section 4. Each of the bonds authorized by this resolution and any bond anticipation notes issued in anticipation of the sale of said bonds shall contain the recital of validity as prescribed by Section 52.00 of the Law and said bonds and any notes issued in anticipation of said bonds shall be general obligations of the Town, payable as to both principal and interest by general tax upon all the taxable real property within the Town. The faith and credit of the Town are hereby irrevocably pledged to the punctual payment of the principal of and interest on said bonds and any notes issued in anticipation of the sale of said bonds and provision shall be made annually in the budget of the Town by appropriation for (a) the amortization and redemption of the bonds and any notes in anticipation thereof to mature in such year and (b) the payment of interest to be due and payable in such year.

Section 5. Subject to the provisions of this resolution and of the Law and pursuant to the provisions of Section 21.00 of the Law relative to the authorization of bonds with substantially level or

declining annual debt service, Section 30.00 relative to the authorization of the issuance of bond anticipation notes and Section 50.00 and Sections 56.00 to 60.00 and Section 168.00 of the Law, the powers and duties of the Town Board relative to authorizing bond anticipation notes and prescribing the terms, form and contents and as to the sale and issuance of the bonds herein authorized, and of any bond anticipation notes issued in anticipation of said bonds, and the renewals of said bond anticipation notes, and as to the execution of agreements for credit enhancements, are hereby delegated to the Supervisor, the chief fiscal officer of the Town.

Section 6. The validity of the bonds authorized by this resolution, and of any notes issued in anticipation of the sale of said bonds, may be contested only if:

(a) such obligations are authorized for an object or purpose for which the Town is not authorized to expend money, or

(b) the provisions of law which should be complied with at the date of the publication of such resolution, or a summary thereof, are not substantially complied with,

and an action, suit or proceeding contesting such validity is commenced within twenty days after the date of such publication, or

(c) such obligations are authorized in violation of the provisions of the constitution.

Section 7. This bond resolution is subject to a permissive referendum and the Town Clerk is hereby authorized and directed, within ten (10) days after the adoption of this resolution, to cause to be published in *"The Journal-News,"* a newspaper having a general circulation within said Town and hereby designated the official newspaper of the Town for such publication, and posted on the sign board of the Town maintained pursuant to the Town Law, a Notice in substantially the following form:

TOWN OF CLARKSTOWN, NEW YORK

PLEASE TAKE NOTICE that on November 27, 2018, the Town Board of the Town of Clarkstown, in the County of Rockland, New York, adopted a bond resolution entitled:

> "Bond resolution of the Town of Clarkstown, New York, adopted November 27, 2018, authorizing Street Community Center Renovations - Phase II, stating the estimated maximum cost thereof is $1,715,000, appropriating said amount for such purpose, and authorizing the issuance of bonds in the principal amount of $1,715,000 to finance said appropriation,"

an abstract of which bond resolution concisely stating the purpose and effect thereof, being as follows:

FIRST: AUTHORIZING said Town to finance the cost of Street Community Center Renovations - Phase II including improvements to the Middle and North Wings of the Community Center and the parking lot, comprising demolition, masonry, light gauge framing, windows, painting, flooring, roofing, electric, plumbing, carpentry, mill work, asbestos abatement and testing, paving ,security in the form of cameras and swipes, fire and alarm system installation, furniture and exercise equipment; STATING the estimated maximum cost thereof, including preliminary costs, and costs incidental thereto and the financing thereof, is $1,715,000; APPROPRIATING said amount for such purpose; STATING the plan of financing includes the issuance of $1,715,000 bonds of the Town to finance said appropriation, and the levy of a tax upon all the taxable real property within the Town to pay the principal of said bonds and interest thereon;

SECOND: AUTHORIZING the issuance of bonds in the principal amount of $1,715,000 pursuant to the Local Finance Law of the State of New York to finance said additional appropriation;

THIRD: DETERMINING and STATING the period of probable usefulness applicable to the purpose for which said bonds are authorized to be issued is fifteen (15) years; the proceeds of said bonds and any bond anticipation notes issued in anticipation thereof may be applied to reimburse the Town for expenditures made after the effective date of this bond resolution for the purpose for which said bonds are authorized; and the proposed maturity of said bonds will exceed five (5) years;

FOURTH: DETERMINING that said bonds and any bond anticipation notes issued in anticipation of said bonds shall be general obligations of the Town; and PLEDGING to their payment the faith and credit of the Town;

FIFTH: DELEGATING to the Supervisor the powers and duties as to the issuance of said bonds and any bond anticipation notes issued in anticipation of said bonds, or the renewals thereof; and

SIXTH: DETERMINING that the bond resolution is subject to a permissive referendum.

DATED: November 27, 2018

Justin Sweet
Town Clerk

TB November 27, 2018BOND APPROPRIATING $1,715,00 FOR STREET COMMUNITY CENTER RENOVATIONS

Section 8. The Town Clerk is hereby authorized and directed to cause said bond resolution to be published, in summary, after said bond resolution shall take effect, in the newspaper referred to in Section 7 hereof, and hereby designated the official newspaper for said publication, together with a Notice in substantially the form as provided by Section 81.00 of the Law.

*TMM*

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Donald Franchino, Councilman |
| **SECONDER:** | Peter Bradley, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |




## (596-2018)
## Authorizing the Purchasing Agent to Advertise Bid (#2-2019 - Fireworks Display)

**RESOLVED**, that the Authorized Purchasing Agent is hereby authorized to advertise for bids for:

BID#2-2019 - FIREWORKS DISPLAY

Bids to be returnable to the office of the Authorized Purchasing Agent, 10 Maple Avenue, New City, New York at ________ A.M. on TO BE DETERMINED ____ at which time bids will be opened and read, and be it

**FURTHER RESOLVED**, that bid specifications and proposal documents can be obtained at the office of the Purchasing Department.

DATE: November 27, 2018
*TMM*

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Patrick Carroll, Councilman |
| **SECONDER:** | Peter Bradley, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |




## (597-2018)
## Authorizing Purchasing Agent to Advertise Bid (#3 - 2019 - Pool Chemicals)

**RESOLVED**, that the Authorized Purchasing Agent is hereby authorized to advertise for bids for:

BID#3-2019 - POOL CHEMICALS

Bids to be returnable to the office of the Authorized Purchasing Agent, 10 Maple Avenue, New City, New York at _________ A.M. on TO BE DETERMINED____ at which time bids will be opened and read, and be it

**FURTHER RESOLVED**, that bid specifications and proposal documents can be obtained at the office of the Purchasing Department.

DATE: November 27, 2018
*TMM*

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Frank Borelli, Patrick Carroll |
| **SECONDER:** | Peter Bradley, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |




## (598-2018)
## Authorizing Purchasing Agent to Advertise Bid (#4-2019 - Athletic Field and Turf Maintenance)

**RESOLVED**, that the Authorized Purchasing Agent is hereby authorized to advertise for bids for:

BID#4-2019 - ATHLETIC FIELD AND TURF MAINTENANCE

Bids to be returnable to the office of the Authorized Purchasing Agent, 10 Maple Avenue, New City, New York at _________ A.M. on TO BE DETERMINED at which time bids will be opened and read, and be it

**FURTHER RESOLVED**, that bid specifications and proposal documents can be obtained at the office of the Purchasing Department.

DATE: November 27, 2018
***TMM***

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Patrick Carroll, Councilman |
| **SECONDER:** | Peter Bradley, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |




## (599-2018)
## Authorizing Purchasing Agent to Advertise Bid (#5-2019 - Groundskeeping and Landscape Supplies)

**RESOLVED,** that the Authorized Purchasing Agent is hereby authorized to advertise for bids for:

BID#5-2019 - GROUNDSKEEPING AND LANDSCAPE SUPPLIES

Bids to be returnable to the office of the Authorized Purchasing Agent, 10 Maple Avenue, New City, New York at ________ A.M. on TO BE DETERMINED____ at which time bids will be opened and read, and be it

**FURTHER RESOLVED,** that bid specifications and proposal documents can be obtained at the office of the Purchasing Department.

DATE: November 27, 2018
***TMM***

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Patrick Carroll, Councilman |
| **SECONDER:** | Peter Bradley, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |




## (600-2018)
## Authorizing Purchasing Agent to Advertise Bid (#6-2019 - First Aid/Safety Supplies)

**RESOLVED,** that the Authorized Purchasing Agent is hereby authorized to advertise for bids for:

BID#6-2019 - FIRST AID/SAFETY SUPPLIES

Bids to be returnable to the office of the Authorized Purchasing Agent, 10 Maple Avenue, New City, New York at ________ A.M. on TO BE DETERMINED____ at which time bids will be opened and read, and be it

**FURTHER RESOLVED,** that bid specifications and proposal documents can be obtained at the office of the Purchasing Department.

DATE: November 27, 2018
***TMM***

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Patrick Carroll, Councilman |
| **SECONDER:** | Peter Bradley, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |




## (601-2018)
## Authorizing Purchasing Agent to Advertise Bid (#7-2019 - Work Clothing)

**RESOLVED,** that the Authorized Purchasing Agent is hereby authorized to advertise for bids for:

BID#7-2019 - WORK CLOTHING

Bids to be returnable to the office of the Authorized Purchasing Agent, 10 Maple Avenue, New City, New York at _________ A.M. on TO BE DETERMINED____ at which time bids will be opened and read, and be it

**FURTHER RESOLVED,** that bid specifications and proposal documents can be obtained at the office of the Purchasing Department.

DATE: November 27, 2018
***TMM***

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Patrick Carroll, Councilman |
| **SECONDER:** | Peter Bradley, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |




## (602-2018)
## Authorizing Purchasing Agent to Advertise Bid (#8-2019 - Highway Signing and Road Maintenance Supplies)

**RESOLVED**, that the Authorized Purchasing Agent is hereby authorized to advertise for bids for:

BID#8-2019 - HIGHWAY SIGNING AND ROAD MAINTENANCE SUPPLIES

Bids to be returnable to the office of the Authorized Purchasing Agent, 10 Maple Avenue, New City, New York at ________ A.M. on TO BE DETERMINED____ at which time bids will be opened and read, and be it

**FURTHER RESOLVED**, that bid specifications and proposal documents can be obtained at the office of the Purchasing Department.

DATE: November 27, 2018
*TMM*

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Patrick Carroll, Councilman |
| **SECONDER:** | Peter Bradley, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |




## (603-2018)
## Authorizing Execution and Acceptance of Stormwater Maintenance Agreement Regarding Durso Properties Site Plan (Tap Map Designation: 35.14-1-50.2)

WHEREAS, based upon the recommendation of the Department of Environmental Control and as a condition to the approval of the final map by the Planning Board with regard to the Durso Properties LLC site plan, (35.14-1-50.2), Durso Properties LLC, as applicant, has provided a stormwater control facility maintenance agreement to the Town, and

WHEREAS, the First Deputy Director of the Department of Environmental Control has recommended acceptance of said conveyance; and the Town Attorney has advised that the document is in proper legal form;

NOW, THEREFORE, be it

RESOLVED, that the Town Board of the Town of Clarkstown hereby authorizes the Supervisor to execute the stormwater control facility maintenance agreement, and be it

FURTHER RESOLVED, that the Town Board of the Town of Clarkstown hereby accepts the stormwater control facility maintenance agreement from Durso Properties LLC, in connection with the Durso Properties LLC site plan and orders it recorded in the Rockland County Clerk's Office, subject to the receipt of recording fees.

Dated: November 27, 2018

TB 11-27-18 TA RES Durso Properties LLC Stormwater Agree-sk
*TMM*

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Frank Borelli, Councilman |
| **SECONDER:** | Peter Bradley, Councilman |
| **AYES:** | Hochmann, Borelli, Bradley, Franchino, Carroll |




## (604-2018)
## Resolution and Special Findings Granting a Special Permit to RO-DYLL Realty LLC to Construct Apartments Over Retail Space in the Congers Overlay District

WHEREAS, RO-DYLL Realty LLC has submitted a petition for a special permit to the Town Board of the Town of Clarkstown, pursuant to Section 290.7.2 of the Town Code of the Town of Clarkstown, to grant a special permit to allow three one-bedroom apartments above retail space. The property is located at 44-46 Lake Road, Congers, New York, and is located within the Congers Overlay District and designated on the Clarkstown Tax Map as 44.15-3-10, and

WHEREAS, the Petitioner had been previously granted a special permit by the Town Board on September 20, 2011 pursuant to resolution 511-2011. The Petitioner had not commenced construction and this prior special permit expired pursuant to Town 290-30. The present petition is a re-application for the same special permit that was granted in 2011, and

WHEREAS, by Resolution dated November 13, 2018, a public hearing was duly scheduled and thereafter held by the Town Board of the Town of Clarkstown on November 27, 2018, at which time all parties in interest were heard, and

WHEREAS, the Town Board has received a recommendation from the Clarkstown Planning Board, agent for the Town Board with respect to the New York State Environmental Quality Review Act (SEQRA), dated June 23, 2011, in which the Planning Board concluded that the proposed site plan, which included the special permit use, is an unlisted action and will not have a significant adverse environmental impact and the Planning Board, by resolution re-affirmed the aforementioned determination on August 8, 2018, and the Town Board has considered such report in making its decision herein, and

WHEREAS, the Town Board referred the petition to the Rockland County Commissioner of Planning for review, which advised, by memo dated June 14, 2011, that all required permits must be

obtained from the County of Rockland Department of Highways, and

WHEREAS, the Town of Clarkstown Planning Board, by Resolution dated June 22, 2011, recommended that the Town Board grant the Petition;

NOW, THEREFORE, be it

RESOLVED, that based upon the recommendation of Clarkstown Planning Board, dated June 23, 2011, the Town Board hereby determines that issuance of the special permit to RO-DYLL Realty LLC is an unlisted action and that the use allowed by the special permit will not have an adverse impact on the environment, and hereby adopts and reaffirms the negative declaration adopted by the Planning Board, and be it

FURTHER RESOLVED, that the Town Board makes the following Special Findings pursuant to Section 290-15B of the Zoning Local Law of the Town of Clarkstown:

1. The property is located within the Congers Hamlet Overlay District in which apartments over retail space are permitted by special permit of the Town Board, and the development furthers the goals and objectives of the Comprehensive Plan and shall be properly located with respect to transportation, water supply, waste disposal, fire and police protection and other public facilities;

2. The proposed construction of the lot will improve the aesthetics of the parcel;

3. Potential impact includes Stormwater run-off and loss of existing vegetation;

4. Drainage analysis indicates that run-off is adequately mitigated by the installation of drywells;

5. Tree removal should be mitigated on-site as much as practicable by new landscaping, and by contribution to the tree fund as required by the Tree Protection Ordinance;

NOW, THEREFORE, be it

RESOLVED, that a Special Permit to construct three (3) apartments over retail space in the Congers Overlay District as defined in Section 290.7.2 of the Town Code of the Town of Clarkstown is hereby GRANTED to the applicant subject to the following conditions:

A. Applicant must comply at all times with Section 290-15 and all other applicable provisions of the Zoning Local Law of the Town of Clarkstown;

B. Applicant shall return to the Clarkstown Planning Board for final site plan approval;

C. Applicant shall comply with requirements of the Rockland County Department of Highways and obtain any required permits;

D. That the Applicant shall comply with all requirements of its approved site plan and remain in compliance at all times;

E. The Applicant shall comply with all other provisions of law with respect to the apartments over retail space, including, but not limited to, provisions regarding rental preferences, and be it

FURTHER RESOLVED, that the within Special Findings and Resolution setting forth the reasons for granting said Special Permit shall constitute a written report to be filed with the Town Clerk.

TOWN BOARD, TOWN OF CLARKSTOWN

By: ______________________________
George Hoehmann, Supervisor

Dated: November 27, 2018

TB 11-27-18 TA RES RO-DYLL Special Permit-sk
*TMM*

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Frank Borelli, Patrick Carroll |
| **SECONDER:** | Donald Franchino, Councilman |
| **AYES:** | Hochmann, Borelli, Bradley, Franchino, Carroll |

2.19




## (605-2018)
## Amending Town Board Resolution #374-2016 General Vehicle Policy Regarding the Use of Town Vehicles by Employees of the Town of Clarkstown

**WHEREAS,** Town Board resolution #374-2016 updated Town policies and procedures with respect to the use of Town owned vehicles; and

**WHEREAS**, the policy restricts the use of vehicles on a twenty four (24) hour basis to certain personnel so that "they may be able to respond to urgent situations that require an immediate official response by the Town" and

**WHEREAS**, paragraph H of the General Vehicle Policy states "No Town employee who resides outside of the Town of Clarkstown shall have a vehicle assigned on a twenty-four (24) hour basis irrespective of job title" and

**WHEREAS**, Town Sewer Department personnel assigned to emergency standby rotation are often required to respond to urgent situations that require an immediate response;

**NOW THEREFORE BE IT RESOLVED**, that Schedule "A" of the Town's General Vehicle Policy listing positions authorized for twenty four (24) hour vehicle use be amended to include "One Sewer Department staff member assigned to emergency standby rotation as the primary contact"; and

**BE IT FURTHER RESOLVED**, that paragraph H of the General Vehicle Policy be revised to state "No Town employee who resides outside of the **County of Rockland** shall have a vehicle assigned on a twenty-four (24) hour basis irrespective of job title".

Dated: November 27, 2018
*TMM*

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Peter Bradley, Patrick Carroll |
| **SECONDER:** | Donald Franchino, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |




## (606-2018)
## Granting Certificates of Sewer Registration

WHEREAS, the following have applied for Certificates of Registration pursuant to §236-48 of the Town Code of the Town of Clarkstown:

PAVING SOLUTIONS, INC.
548 Route 17M
Monroe, NY 10950
Baruch Reich, Owner,

PEARL RIVER PLUMBING, HEATING & ELECTRIC d/b/a BERTUSSI'S
60-70 Dexter Plaza
Pearl River, NY 10965
Louis Bertussi, Vice President,

STEVE'S MASONRY, INC.
PO Box 22
Montvale, NJ 07645
Steven Slackman, President

R.R. PLUMBING SERVICES CORP. d/b/a ROTO TOOTER
525 Waverly Avenue
Mamaroneck, NY 10543
Terrence R. O'Shea, Owner

NOW, THEREFORE, be it

RESOLVED, that the Town Board hereby authorizes the issuance of Certificates of Registration as follows:

#19-4: PAVING SOLUTIONS, INC.
#19-5: PEARL RIVER PLUMBING, HEATING & ELECTRIC d/b/a BERTUSSI'S
#19-6: STEVE'S MASONRY, INC.
#19-7: R.R. PLUMBING SERVICES CORP. d/b/a ROTO ROOTER

DATED: November 27, 2018
TB 11.27.18 Certs of Regis LZ
***TMM***

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Frank Borelli, Councilman |
| **SECONDER:** | Peter Bradley, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |

2.21




## (607-2018)
## Accepting the Resignation of Francis Voce, Police Officer, Clarkstown Police Department, Effective and Retroactive November 13, 2018

RESOLVED, that the resignation of Francis Voce - Police Officer - Town of Clarkstown Police Department - is hereby accepted effective and retroactive to November 13, 2018.

DATED: November 27, 2018
P
*TMM*

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Peter Bradley, Councilman |
| **SECONDER:** | Frank Borelli, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |




## (608-2018)
## Accepting the Resignation of Pierrot Guillaume, Municipal Bus Driver, Part Time, Mini Trans, Effective and Retroactive November 19, 2018

RESOLVED, that the resignation of Pierrot Guillaume, Municipal Bus Driver P/T - Mini Transportation - is hereby accepted effective and retroactive to November 19, 2018.

DATED: November 27, 2018
P
*TMM*

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Patrick Carroll, Councilman |
| **SECONDER:** | Peter Bradley, Councilman |
| **AYES:** | Hoehmann, Borelli, Bradley, Franchino, Carroll |