# EXHIBIT   H

## PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (this "Agreement"), made as of the 17th day of October , 2018 (the "Effective Date") by and between Grace Baptist Church of Nanuet, a New York religious corporation, with offices at 20 Demarest Ave., Nanuet, NY 10954, (the "Seller"), and Ateres Bais Yaakov Academy of Rockland, a New York educational corporation, with an office at 200 Summit Park Road, New Hempstead, NY 10977 (the "Purchaser").

W I T N E S S E T H :

1.   Property.  Seller agrees to sell and convey, and Purchaser agrees to purchase, all of Seller's right, title and interest in and to (a) that certain parcel of land (the "Land") owned by Seller located in the Town of Clarkstown, State of New York described on Exhibit A and generally known by the street addresses 22 Demarest Ave., 24 Demarest Ave., 26 Demarest Ave. and 9 Highview Ave.. Nanuet, NY (4 tax lots identified as Section 64, Block 1, Lots 47, 48, 50 and 51), together with all buildings, structures and improvements and fixtures located thereon and owned by Seller (the "Improvements"); (b) all rights and appurtenances, easements, appurtenances, air, development, zoning and all other rights of any kind relating or pertaining to the Land or the Improvements and owned by Seller; (c) any and all of Seller's right, title and interest in and to all fixtures, equipment, machinery, appliances, carpeting, and canopies which are appurtenant to the Land or Improvements; provided, however, that all furniture, racking systems, display cases and portable equipment shall be excluded unless Seller, at its sole option, elects to abandon same at the Property as of the Closing (the "Personal Property"); and (d) all of Seller's right, title and interest in and to unexpired warranties and guaranties, including all warranties under a construction or vendor contract, affecting the Premises and/or the Personal Property, if any (the property described in clauses (a) through (d) of this Section 1 collectively, the "Property").

2.   Purchase Price.  (a)  The Purchase Price (the "Purchase Price") for the Property is FOUR MILLION THREE HUNDRED ONE THOUSAND AND NO/DOLLARS ($4,300,000.00), payable as follows:

(i)   Concurrently with the execution and delivery of this Agreement, Purchaser shall deliver to Freeman & Loftus RLLP, as escrow agent (the "Escrow Agent"), the sum of One Hundred Seven Thousand Five Hundred and No/Dollars ($107,500.00) (together with all interest that shall accrue thereon, the "Deposit") by check subject to collection.  The Deposit shall be held by Escrow Agent in escrow pursuant to the terms and conditions set forth on Exhibit B attached hereto.

(ii)   Within five (5) business days following the later to occur of (a) expiration of the Review Period or (b) Purchaser's receipt of all necessary Approvals (as defined below), the sum of One Hundred Seven Thousand Five Hundred and No/Dollars ($107,500.00) (together with all interest that shall accrue thereon, the "Additional Deposit") by check subject to collection.  The Additional Deposit shall be held by Escrow Agent in escrow pursuant to the terms and conditions set forth on Exhibit B attached hereto.

(iii)   The balance of the Purchase Price, as adjusted by the prorations provided for herein, shall be paid by Purchaser at the Closing (as defined below)

1

by certified or bank check payable as Seller may direct, or by wire transfer of immediately available funds to a bank account designated by Seller.

3.   Review Period.

(a)                    Purchaser shall have a period commencing on the Effective Date and ending at 5:00 p.m. Eastern Time on the date that is thirty (30) days after the Effective Date (the "Review Period"), at Purchaser's sole cost and expense, to inspect and investigate the suitability of the Property for Purchaser's purposes and to conduct engineering and environmental studies (collectively, the "Inspections"). Purchaser acknowledges having been advised by Seller that Seller does not have any surveys, environmental reports, title reports or other materials concerning the Property in its possession or control. Purchaser acknowledges and agrees that all documents, materials, and information furnished to or made available to Purchaser pursuant to this Section 3(a) or otherwise are being furnished or made available to Purchaser for information purposes only and without any representation or warranty by Seller with respect thereto, express or implied, and all such documents, materials, and information are expressly understood by Purchaser to be subject to the confidentiality provisions of Section 16 below.

If the Inspections performed during the Review Period recommend additional environmental and engineering studies (the "Additional Inspections"), upon written notice from by the Purchaser to the Seller and its counsel at the notice address set forth in Section 13 below, Seller will permit the Review Period to be extended for an additional period that is the later of (i) 5:00 p.m. Eastern Time on the date that is sixty (60) days after the Effective Date or (ii) 5 days following the completion of the Additional Inspections. Purchaser shall provide Seller with a copy of the Inspections specifying the need for the Additional Inspections.

During the Review Period, Seller shall permit Purchaser and Purchaser's representatives to enter the Property for the sole purpose of conducting engineering and environmental inspections during reasonable times and upon reasonable prior notice to Seller and provided that in all cases Seller shall have the opportunity to have a representative present during any such physical Inspections. Purchaser shall promptly repair any and all damage to the Property attributable to the conduct of the Inspections, and shall promptly return the Property to the same condition as existed prior to the conduct thereof. No invasive Inspections shall be conducted without Seller's prior written approval, which approval shall not be unreasonably denied or delayed. For purposes of this Section, "invasive Inspections" shall be broadly interpreted to mean Inspections that are more than mere visual Inspections. Any request for an invasive Inspection shall be directed in writing to Seller and its counsel at the notice addresses set forth in Section 13 below (an "Inspection Request").

Purchaser shall cause a copy of all final inspection reports obtained or generated in connection with the conduct of all Inspections, including any and all tests, engineering studies and environmental studies conducted of the Property (the "Reports"), to be delivered to Seller without cost to Seller.

(b)                    No later than the last day of the Review Period, (including all approved extensions) TIME BEING OF THE ESSSENCE with respect to such date, Purchaser shall notify Seller that Purchaser has elected to proceed with the purchase of the Property as provided herein, such notice to be in writing and delivered to Seller and its counsel in the manner prescribed and at the notice addresses set forth in Section 13 below (the "Continuation Notice"). If

Purchase Agreement #4236

Purchaser fails to deliver the Continuation Notice on or prior to the last day of the Review Period for any reason whatsoever, TIME BEING OF THE ESSENCE with respect to such date, Purchaser shall be deemed to have elected to terminate this Agreement, this Agreement shall be deemed terminated without any further action or notice on the part of Seller or Purchaser, and the Deposit shall be promptly returned by Escrow Agent to Purchaser in accordance with the terms and conditions set forth on Exhibit B attached hereto and both parties will be relieved of all rights and obligations and liabilities hereunder, except for the parties' obligations pursuant to Section 16 and any other obligations expressly stated to survive the termination of this Agreement; provided, however, that Escrow Agent shall have no obligation to disburse the Deposit unless it has been directed to do so in writing and only then in accordance with the terms and conditions set forth on Exhibit B attached hereto. Purchaser shall also have the right to terminate this Agreement for any or no reason on or prior to the last day of the Review Period, TIME BEING OF THE ESSENCE with respect to such date, by delivering written notice of termination to Seller and its counsel on or prior to the last day of the Review Period, including all extensions, as provided in Paragraph 3(a) herein, in the manner prescribed and at the notice addresses set forth in Section 13 below, in which event the Deposit shall be promptly returned by Escrow Agent to Purchaser in accordance with the terms and conditions set forth on Exhibit B attached hereto and both parties will be relieved of all rights and obligations and liabilities hereunder, except for the parties' obligations pursuant to Section 16 and any other obligations expressly stated to survive the termination of this Agreement; provided, however, that Escrow Agent shall have no obligation to disburse the Deposit unless it has been directed to do so in writing and only then in accordance with the terms and conditions set forth on Exhibit B attached hereto.

(c)        Purchaser hereby agrees to indemnify, defend and hold harmless Seller from and against any loss, liability, damages, costs or expenses incurred by Seller as a result of Purchaser's exercise of the right of inspection granted under this Section, so long as such loss, liability, damages, cost and expenses are not a result of seller's actions or lack of action . Purchaser acknowledges and agrees that any such Inspections conducted by Purchaser or Purchaser's agents and representatives shall be solely at the risk of Purchaser. Purchaser shall carry comprehensive public liability insurance covering all activities conducted by Purchaser, its agents, contractors and engineers on the Property. Such insurance shall have limits of not less than One Million and 00/100 Dollars ($1,000,000.00) for personal injury to or death of any one person, Two Million and 00/100 Dollars ($2,000,000.00) for personal injury to or death of any number of persons in any one accident and One Million and 00/100 Dollars ($1,000,000.00) for property damage, and shall name Seller as an additional insured. Prior to entry upon the Property for performance of any Inspections, Purchaser shall deliver to Seller certificates evidencing such insurance and Seller's interest as an additional insured. All of the obligations of Purchaser under this Section 3 shall survive Closing or the termination of this Agreement.

4.    Title.

(a)    As of the Closing Date (as defined below), as a condition to Purchaser's obligation to consummate the Closing hereunder, Seller shall convey fee title to the Property that the Title Company (as defined in Section 4(b) below) shall be willing to insure without special premium with its standard form of owner's title policy subject only to the following (collectively, the "Permitted Encumbrances"):        (i) Present and future zoning restrictions, regulations, requirements, laws,

ordinances, resolutions and orders applicable to the Property, and all other laws, requirements, orders, rules, or regulations, now hereafter in effect, of any governmental or quasi-governmental authority, department or agency having jurisdiction over the Property or any part thereof; provided, that as of the Closing Date, the existing Improvements may remain unaltered;

(ii) Real estate taxes and assessments for the fiscal year in which the Closing occurs, subject to apportionment in accordance with this Agreement;

(iii) all matters which would be disclosed by an accurate survey of the Property to which Purchaser has not objected or to which Seller has declined to cure in Seller's Title Response Notice and Purchaser has elected to accept pursuant to 4(b) below;

(iv) The standard printed conditions and exclusions from coverage contained in standard form owner's policy of title insurance policy issued by the Title Company (defined below) which shall insure Purchaser's title, other than those that can be removed by the title affidavit that Seller is required to provide pursuant to the terms of this Agreement;

(v) The items shown on the Title Commitment (as defined below) which to which Purchaser has not objected or to which Seller has declined to cure in Seller's Title Response Notice and Purchaser has elected to accept pursuant to 4(b) below;

(vi) Omitted.

(vii) sewer agreements and gas, electricity and telephone easements, recorded or unrecorded, if any, encumbering the Property; provided that the Title Company shall be willing to insure that the existing Improvements may continue to be maintained on the Property; and

(viii) any state of facts an accurate survey and physical inspection of the Property would show, provided same do not render title to the Property uninsurable. Encroachments shall be deemed Permitted Encumbrances if the Title Company shall be willing to insure at closing that the Improvements which encroach may remain undisturbed so long as the Improvements shall stand.

Promptly after the date hereof, Purchaser will order a commitment for title insurance on the Property (the "Title Commitment") from a reputable title company that is licensed or authorized to issue title insurance

by the New York State Insurance Department or any agent for such title company (the "Title Company"). Purchaser shall advise Seller's counsel of the name and contact information for the individual at the Title Company assigned to the Title Commitment. In addition, Purchaser may order a current survey of the Property, or an update to Seller's existing survey, if available (the "Survey"). Within ten (10) days after Purchaser's receipt of the Title Commitment and Survey, but in any event before the last day of the Review Period, Purchaser shall deliver to Seller a copy of the title commitment which shall serve as a written statement identifying the title exceptions and other matters noted therein or thereon objected to by Purchaser that do not constitute Permitted Encumbrances ("Title Objections").

(b)        Seller shall have five (5) days after receipt of Purchaser's notice of Title Objections to advise Purchaser in writing (such written notice, "Seller's Title Response Notice") of which Title Objections Seller shall cure on or before Closing; provided, that, Seller shall be entitled to adjournments of the Closing for the purpose of curing the Title Objections, but nothing herein shall require Seller to bring any action or proceeding, or incur any expense greater than $10,000 in order to render the title to be in accordance with this Agreement. In the event Seller fails to give such written notice to Purchaser within such five (5) day period, Seller shall be deemed to have elected not to satisfy or cure any defects or objections set forth in Purchaser's notice. Within three (3) business days of delivery of Seller's Title Response Notice (or the date that Seller is deemed to have elected not to cure any Title Objections), and provided Seller has elected (or is deemed to have elected) not to satisfy or cure one or more of Purchaser's Title Objections, Purchaser shall deliver written notice to Seller of Purchaser's election to either (i) terminate this Agreement, in which event the Deposit shall be promptly returned by Escrow Agent to Purchaser in accordance with the terms and conditions set forth on Exhibit B attached hereto and both parties will be relieved of all rights and obligations and liabilities hereunder, except for the parties' obligations pursuant to Section 16 and any other obligations expressly stated to survive the termination of this Agreement, or (ii) accept title subject to such Title Objections that Seller elected (or was deemed to have elected) not to cure without deduction to the Purchase Price.

5.   Approvals.  This Agreement is further subject to the following:

(a)            Seller's receipt of any necessary approvals from the NY Attorney General or court of competent jurisdiction, which is contingent on the Seller's congregation approving this Agreement. In the event any necessary approval is denied, this Agreement will be terminated and Purchaser shall receive a full refund of the Deposit.

6.   Adjustments.  Except as otherwise specifically provided herein, Purchaser and Seller shall adjust as of midnight of the day preceding the Closing the items hereinafter set forth. If any such items are not determinable at the Closing, the adjustment shall be made subsequent to the Closing when the charge is determined. Any errors or omissions in computing adjustments at

the Closing shall be promptly corrected.  The obligations set forth in this Section 6 shall survive the Closing.  Except as otherwise specifically provided for herein, all adjustments shall be made in the manner recommended by the Customs in Respect to Title Closings of the Real Estate Board of New York, Inc., and there shall be no other adjustments.  The items to be adjusted are:

(a) Real estate taxes on the basis of the fiscal period for which same are assessed.  If the Closing shall occur before the tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the next preceding fiscal period applied to the latest assessed valuation.  Promptly after the new tax rate is fixed, the apportionment of real estate taxes shall be recomputed.

(b) Water rates, water meter charges, sewer rents and vault charges, if any, on the basis of the fiscal period for which assessed.  If there be a water meter or meters on the Property, the unfixed meter charges and the unfixed sewer rent thereon shall be apportioned on the basis of the last reading, and shall be appropriately readjusted after the Closing on the basis of the next subsequent bills.

(c) Final readings and final billings for utilities shall be made if reasonably possible as of the Closing at Seller's sole cost and expense.  Seller will be entitled to all deposits in effect with the utility providers and Purchaser will make its own arrangements for deposits with the utility providers.

(d) Any other item which, under the terms of this Agreement, is to be apportioned at Closing.

7.    Representations.

(a) Seller represents and warrants to Purchaser as follows:

(i) As of the date hereof, there are no pending or, to Seller's knowledge, threatened in writing condemnation or eminent domain proceedings that would affect any part of the Property issued within the last twenty-four (24) months.

(ii) Seller is a religious corporation duly organized and in good standing under the laws of the State of New York.

(iii) Seller has the capacity and authority to execute this Agreement and perform the obligations of Seller under this Agreement.  All action necessary to authorize the execution, delivery and performance of this Agreement by Seller has been taken and such action has not been rescinded or modified.  Upon the execution and delivery of this Agreement, this Agreement will be legally binding upon Seller and enforceable against Seller in accordance with all of its provisions, subject to applicable bankruptcy, insolvency, reorganization, moratorium, or other similar laws and general equitable principles.  The person signing this Agreement on behalf of Seller has been duly authorized to sign and deliver this Agreement on behalf of Seller.

(iv) Other than this Agreement, Seller has not entered into any contract of sale, or granted any rights to third parties (including tenants), with respect to the

sale of the Property or any portion thereof or any interest therein, which contract or right is currently in force and effect.

(v)     There are no service, management or maintenance contracts, licenses, leases, or occupancy agreements relating to the Property that will be binding upon the Property or upon Purchaser after the Closing.

(vi)     Seller is not a "foreign person", "foreign partnership", "foreign trust" or "foreign estate", as those terms are defined in Section 1445 of the Internal Revenue Code.

(vii)     There is no existing or, to Seller's knowledge, threatened in writing, litigation, proceeding or investigation against Seller with respect to the Property.

(viii)     Seller is not a party to or the subject of any petition for bankruptcy or other insolvency proceeding.

(ix)     There are no tax certiorari actions or proceedings pending against or affecting the Property.

(x)     )     The entire Building is on the date hereof vacant and unoccupied. There are no leases of, occupancy agreements for or parties in possession of all or any portion of the Property

(xi)

For purposes hereof, Seller's "knowledge" shall mean the actual, as opposed to constructive, knowledge of the officer of Seller executing this Agreement.  Each of the representations and warranties of Seller contained in this Agreement is made as of the Effective Date and shall merge in the Deed and shall not survive the Closing Date.

(b)     Purchaser represents and warrants to Seller as follows:

(i)     Purchaser is duly organized and in good standing under the laws of the State of New York.

(ii)     Purchaser has the capacity and authority to execute this Agreement and perform the obligations of Purchaser under this Agreement.  All action necessary to authorize the execution, delivery and performance of this Agreement by Purchaser has been taken and such action has not been rescinded or modified.  Upon the execution and delivery of this Agreement, this Agreement will be legally binding upon Purchaser and enforceable against Purchaser in accordance with all of its provisions.  The person signing this Agreement on behalf of Purchaser has been duly authorized to sign and deliver this Agreement on behalf of Purchaser.

(iii)     The execution and delivery of this Agreement and the performance of its obligations hereunder by Purchaser will not conflict with any provision of any law or regulation to which Purchaser is subject or any agreement or instrument to

which Purchaser is a party or by which it is bound or any order or decree applicable to Purchaser or result in the creation or imposition of any lien on any of Purchaser's assets or property which would materially and adversely affect the ability of Purchaser to carry out the terms of this Agreement.

8.     **Except as expressly set forth in this Agreement, the Property is being sold in an "AS IS" condition and "with all faults" as of the date of this Agreement and as of Closing. Purchaser acknowledges and agrees that except as expressly set forth in this Agreement, Seller has not made, does not make and specifically negates and disclaims any guaranties of any kind or character whatsoever, whether express or implied, oral or written, past, present or future, of, as to, concerning or with respect to (a) the value, nature, quality or condition of the Property, including the water, soil and geology, (b) the income to be derived from the Property, (c) the suitability of the Property for any and all activities and uses which Purchaser or any tenant may conduct thereon, (d) the compliance of or by the Property or its operation with any laws, rules, ordinances or regulations of any applicable governmental authority or body, (e) the habitability, merchantability, marketability, profitability or fitness for a particular purpose of the Property, (f) the manner or quality of the construction or materials, if any, incorporated into the Property, (g) the manner, quality, state of repair or lack of repair of the Property, or (h) compliance with any environmental or land use laws, rules, regulations, orders or requirements, including the existence in or on the Property of hazardous materials or underground storage tanks or (i) any other matter with respect to the Property. Additionally, no person acting on behalf of Seller is authorized to make, and by execution hereof Purchaser acknowledges that, except as expressly set forth herein, no person has made any representation, agreement, statement, warranty, guaranty or promise regarding the Property or the transaction contemplated herein; and no such representation, warranty, agreement, guaranty, statement or promise if any, made by any person acting on behalf of Seller shall be valid or binding upon Seller unless expressly set forth herein. Purchaser further acknowledges and agrees that having been given the opportunity to inspect the Property, Purchaser is relying solely on its own investigation of the Property and not on any information provided by Seller, and agrees to accept the Property at the Closing and waive all objections or claims against Seller (including any right or claim of contribution) arising from or related to the Property or to any hazardous materials on the Property.**

9.     <u>Closing Documents</u>.

(a)     At the Closing, Seller shall deliver or cause to be delivered the following documents (collectively, the "<u>Seller's Closing Documents</u>"), each of which shall be signed by Seller and notarized or acknowledged where applicable:

(i)     Bargain and Sale Deed With Covenant Against Grantor's Actss conveying the Property subject only to the Permitted Encumbrances;

(ii)     If applicable, a good standing certificate from the Secretary of State of the State in which the Seller is organized, authorizing resolutions or consents and such other evidence as the Title Company will reasonably require of the due authorization, execution and delivery of this Agreement and the other Seller's Closing Documents;

(iii)    Any and all required transfer tax forms;

(iv)    A certification, pursuant to Section 1445 of the Internal Revenue Code of 1986, as amended, that Seller is not a "foreign person" within the meaning of said Section;

(v)    Written approval from the NY Attorney General and court of competent jurisdiction, if necessary, for the transaction contemplated by this Agreement;

(vi)    An executed closing statement for the purchase and sale of the Property;

(vii)    Such other instruments or documents which by the terms of this Agreement are to be delivered by Seller at Closing.

(viii)    Bill of Sale, if applicable;

(ix)    An executed copy of the affidavit, which shall be provided within seven (7) days of the fully executed contract, in a form that is reasonably acceptable to the Purchaser, attached as Exhibit C hereto for Purchaser's use in obtaining municipal approvals after closing.

(b)    At the Closing, Purchaser shall deliver or cause to be delivered the following documents (collectively, the "Purchaser's Closing Documents"), each of which shall be signed by Purchaser and notarized or acknowledged where applicable:

(i)    Any and all required transfer tax forms;

(ii)    Written approval from the NY Attorney General and court of competent jurisdiction, if necessary, for the transaction contemplated by this Agreement;

(iii)    A closing statement for the purchase and sale of the Property; and

(iv)    Such other instruments or documents which by the terms of this Agreement are to be delivered by Purchaser at Closing or that may reasonably be required by Purchaser, Purchaser's Title Company and/or Lender.

10.    Closing.    The Seller's Closing Documents and the Purchaser's Closing Documents shall be delivered, together with payment of the Purchase Price, at the offices of Seller's counsel in New City, New York (the "Closing"). The Closing shall be consummated on the date which is on or about December 31, 2018 (the "Scheduled Closing Date"), . The date on which the Closing is consummated is referred to herein as the "Closing Date". At the Closing the Seller shall deliver physical possession of the Property vacant and in its then "as-is" condition with all of Seller's personal property removed therefrom and free of any leases and/or tenancies.

11.    Closing Costs.    Purchaser shall pay all premiums and charges of the Title Company for the Owner's Title Policy to be issued pursuant to the Title Commitment and all recording and filing charges in connection with the instrument by which Seller conveys the Property.

Purchaser shall pay the cost of the Survey obtained by Purchaser, and, except as otherwise provided herein, all other costs customarily paid by the buyer pursuant to local practice. Seller shall pay all customary costs associated with a sale, attributable to the Seller, including but not limited to transfer tax returns and recording fees. Each party shall pay its own attorneys. The obligations of the parties to pay applicable closing charges shall survive the Closing or termination of this Agreement.

       12.    Transfer Taxes.  Seller shall pay any and all transfer taxes due in connection with the transactions contemplated hereby.  All such tax payments shall be made payable directly to the order of the appropriate governmental officer or the Title Company.  Seller may direct that a portion of the Purchase Price be used to pay such taxes.

       13.    Brokerage.  Purchaser and Seller each expressly acknowledge that each of Rand Commercial and Sunshine Realty Group LLC (collectively, "Broker") have acted as a broker with respect to the transaction and with respect to this Agreement.  Seller shall pay any brokerage commission due to Broker in accordance with the separate written agreement between Seller and Broker.  Purchaser and Seller each represent and warrant to the other that no broker, finder or other party other than Broker is entitled to a commission or other compensation or was instrumental or had any role in bringing about this sale.  Seller agrees to defend, indemnify and hold harmless Purchaser from and against any loss, cost, damage, liability and expense (including, without limitation, reasonable counsel fees and disbursements) suffered, paid or incurred by Purchaser arising out of or in connection with any claims for commissions, fees or compensation made against Purchaser by any broker, finder or other person (including any claim by Broker) that dealt with Seller in connection with the transaction contemplated hereby.  Purchaser agrees to defend, indemnify and hold harmless Seller from and against any loss, cost, damage, liability and expense (including, without limitation, reasonable counsel fees and disbursements) suffered, paid or incurred by Seller arising out of or in connection with any claims for commissions, fees or compensation made against Seller by any broker, finder or other person (excluding any claim by Broker) that dealt with Purchaser in connection with the transaction contemplated hereby.  The provisions of this Section shall survive the Closing or termination of this Agreement.

       14.    Notices.  All notices hereunder shall be in writing and shall be sent by registered or certified mail, return receipt requested, postage prepaid, hand delivery or by nationally recognized overnight carrier to the parties at the following addresses:

       To the Seller:

       Ateres Bais Yaakov
       200 Summit Park Rd.
       New Hempstead, NY 10977

       with a copy to:

       Chaim Dahan, Esq.
       2115 Avenue U
       Brooklyn, New York 11229

To the Seller:

Grace Baptist Church of Nanuet
20 Demarest Ave.
Nanuet, New York 10954
Attn: Andrew Li

with a copy to:

Freeman & Loftus RLLP
4 Laurel Road
New City, New York 10956
Attn: Patrick Loftus, Esq.

or at such other address in the United States of America as may be designated by either of the parties in a written notice given in accordance with the provisions of this Section. Notice shall be effective on the date the same is received or refused. Notices may be given by counsel for a party on behalf of such party.

15.    Personal Property.  The parties hereto agree that no part of the Purchase Price shall be deemed to have been paid by Purchaser for any Personal Property transferred hereunder. Although it is not anticipated that any sales tax shall be due and payable in respect of the Personal Property, Purchaser agrees that Purchaser shall pay any sales tax assessed in connection with the sale of the Property to Purchaser and Purchaser shall save, defend, indemnify and hold Seller harmless from and against any and all liability for any sales tax which may now or hereafter be imposed upon Seller or the Property with respect to the sale of the Personal Property. The parties hereto agree that no part of the Purchase Price is attributable to the Personal Property.   The provisions of this Section 14 shall survive Closing.

16.    Casualty/Condemnation.  In the event of a casualty which requires repairs and/or restorations in excess of 25% of the replacement cost of the building or a condemnation of the 25% or more of the Property, Seller shall promptly give written notice thereof to Purchaser and Purchaser shall have the right to either (i) terminate this Agreement upon written notice to Seller, in which event the Deposit shall be returned to the Purchaser, this Agreement shall be deemed terminated and neither party shall have any further rights or obligations to the other, except for those expressly stated to survive the termination of this Agreement, or (ii) consummate the Closing, in which event the Seller will credit against the Purchase Price payable by the Purchaser at the Closing an amount equal to the net proceeds (after deducting the costs of collection of such proceeds and any disbursements or expenses associated with restoration of the Property performed by Seller), if any, received by Seller from such casualty or condemnation. If as of the Closing Date under clause (ii), Seller has not received any such insurance or condemnation proceeds, then the parties shall nevertheless consummate on the Closing Date the conveyance of the Property (without any deduction for such insurance or condemnation proceeds) and the Seller will at Closing assign to the Purchaser all rights of the Seller, if any, to the insurance or condemnation proceeds and to all other rights or claims arising out of or in connection with such casualty or condemnation. In the event of a casualty which requires repairs and/or restorations of less than 25% of the replacement cost of the building or a condemnation of less than 25% of the Property, Seller shall promptly give written notice thereof to Purchaser and Seller, at Seller's sole option, shall either (i) make such

repairs prior to Closing or (ii) assign its rights to the proceeds of insurance for such casualty to Purchaser.

17. <u>Confidentiality</u>. Seller agrees to keep Purchaser's name and the Purchase Price confidential and Seller shall not divulge such information to any third party other than its congregation, accountants, attorneys, auditors, lenders and consultants and as may be required by law or pursuant to the order of a court having competent jurisdiction or otherwise in order to enforce its rights hereunder. Purchaser shall hold, and cause all of its agents, representatives, consultants, accountants and attorneys to hold, the terms of this Agreement and all information made available by Seller to Purchaser or obtained by Purchaser relating to the Property in the course of Purchaser's due diligence, including, without limitations, the Due Diligence Materials and any and all Reports (the "<u>Confidential Information</u>") in strictest confidence, except as may be disclosed to Purchaser's accountants, attorneys, auditors, lenders, potential lenders and consultants and as may be required by law or pursuant to the order of a court having competent jurisdiction or otherwise in order to enforce its rights hereunder 1 or to the extent that disclosure is required by applicable law or pursuant to the order of a court having competent jurisdiction or otherwise in order to enforce Purchaser's rights hereunder. In the event of a breach or threatened breach by Purchaser/Seller or their agents, or representatives, consultants, accounts or attorneys of this Section, Seller/Purchaser shall be entitled to an injunction restraining Purchaser and/or Seller and their agents, representatives, consultants, accountants and attorneys from disclosing, in whole or in part, such Confidential Information. Nothing herein shall be construed as prohibiting Seller from pursuing any other available remedy at law or in equity for such breach or threatened breach. The provisions of this Section shall survive termination of this Agreement, provided, that the provisions of this Section shall not survive delivery of the deed and payment in full of the Purchase Price.

18.    <u>Defaults</u>.

(a)            Notwithstanding any provisions of this Agreement to the contrary, if Purchaser fails to timely close this transaction on the Closing Date for reasons other than Seller's default or the failure of any of the express conditions to Purchaser's performance, then this Agreement shall terminate and the Deposit shall be delivered to Seller as agreed upon liquidated damages as Seller's sole remedy. Seller and Purchaser acknowledge that: (i) it would be impossible to accurately determine Seller's damages in the event of Purchaser's default in closing this transaction; and (ii) the Deposit is fair and equitable. The limitation of damages set forth herein shall not apply to any indemnities, covenants or obligations of Purchaser which expressly survive either the termination of this Agreement or Closing, for which Seller shall be entitled to all rights and remedies available at law or in equity.

(b)            If Closing does not occur by reason of a default by Seller which continues for ten (10) days after written notice from Purchaser, and provided that Purchaser is ready, willing and able to consummate the Closing, then Purchaser shall have the right to pursue any of the following  remedies at its option: (i) to sue Seller for specific performance (Seller and Purchaser acknowledging that money damages may not be an adequate remedy for a breach of this Agreement by Seller), provided that the Deposit shall remain in escrow at all times during the pendency of such action; or (ii) to terminate this Agreement, in which event the Deposit made by Purchaser shall be promptly returned by Escrow Agent to Purchaser in accordance with the terms and conditions set forth on <u>Exhibit B</u> attached hereto and both parties will be relieved of all rights and obligations and liabilities hereunder, except for the parties' obligations pursuant to Section

16 and any other obligations expressly stated to survive the termination of this Agreement. No other remedy or relief shall be available to Purchaser, and Purchaser hereby waives any and all other remedies, including the right to sue Seller for damages. Any suit by Purchaser to enforce specific performance under this Agreement must be filed on or before ninety (90) days after the date of Seller's alleged breach or Purchaser's right to enforce specific performance under this Agreement shall be forever waived.

      19.   <u>Miscellaneous.</u>

      (a)      This Agreement constitutes the entire agreement between the parties. This Agreement cannot be changed, modified, waived or terminated orally but only by an agreement in writing signed by the parties hereto. This Agreement shall be binding upon the parties hereto and their respective heirs, executors, personal representatives, successors and permitted assigns.

      (b)      Purchaser may not assign its rights under this Agreement without first obtaining Seller's written approval, which approval may be given or withheld in Seller's sole and absolute discretion.

      (c)      This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same original, and the execution of separate counterparts by Purchaser and Seller shall bind Purchaser and Seller as if they had each executed the same counterpart.

      (d)      This Agreement shall be construed and enforced in accordance with the laws of the State of New York. All judicial proceedings brought against either party hereto arising out of or relating to this Agreement shall be brought in State court located in the County of Rockland. By executing and delivering this Agreement, each of Seller and Purchaser irrevocably accepts generally and unconditional jurisdiction and venue of such courts and expressly waives any defense of forum non conveniens.

      (e)      The headings used in this Agreement are for convenience only and do not constitute substantive matters to be considered in construing the same. The parties acknowledge that the parties and their counsel have reviewed and revised this Agreement and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement or any exhibits or amendments hereto.

      (f)      In the event that either party hereto shall commence litigation against the other in connection herewith, the losing party in such action shall reimburse the reasonable attorneys' fees and disbursements of the prevailing party in such action.

      (g)      Neither this Agreement nor a memorandum thereof may be recorded by any party hereto without the prior written consent of the other party hereto. The foregoing provision shall survive the Closing or any termination of this Agreement.

      (h)      No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not

similar, nor shall any waiver constitute a continuing waiver, nor shall a waiver in any instance constitute a waiver in any subsequent instance.  No waiver shall be binding unless executed in writing by the party making the waiver.

(i)      The provisions of this Agreement and of the documents to be executed and delivered at Closing are and will be for the benefit of Seller and Purchaser only and are not for the benefit of any third party, and accordingly, no third party shall have the right to enforce the provisions of this Agreement or of the documents to be executed and delivered at Closing

(j)      Neither Seller, the managers, employees, consultants, advisors, representatives or agents of Seller, nor the shareholders, officers, directors, employees or agents of any of them shall be liable under this Agreement and Purchaser shall look solely to the Property for the payment of any claim or the performance of any obligation by Seller.

(k)      Each party to this Agreement hereby expressly waives any right to trial by jury of any claim, counterclaim, demand, action or cause of action (each, an "Action") (a) arising out of this Agreement, including any present or future amendment thereof or (b) in any way connected with or related or incidental to the dealings of the parties or any of them with respect to this Agreement (as hereafter amended) or any other instrument, document or agreement executed or delivered in connection herewith, or the transactions related hereto or thereto, in each case whether such Action is now existing or hereafter arising, and whether sounding in contract or tort or otherwise and regardless of which party asserts such Action; and each party hereby agrees and consents that any such Action shall be decided by court trial without a jury, and that any party to this Agreement may file an original counterpart or a copy of this Section 18(k) with any court as written evidence of the consent of the parties to the waiver of any right they might otherwise have to trial by jury.

(l)      Seller acknowledges that Purchaser may obtain financing in order to complete this transaction. Seller further agrees that if Seller has an existing mortgage on the Property, Seller agrees to use its best efforts to facilitate an assignment of same to the Purchaser.

(m)

(n)      Purchaser represents and warrants to Seller that neither Purchaser nor any of its constituent owners or affiliates (i) is in violation of any Anti-Terrorism Law, (ii) is a Prohibited Person, (iii) knowingly conducts any business or engages in any transaction or dealing with any Prohibited Person, including the making or receiving of any contribution of funds, goods or services to or for the benefit of any Prohibited Person, (iv) deals in or otherwise engages in any transaction relating to property or interests in property blocked pursuant to Executive Order No. 13224 (as defined below), or (v) engages in or conspires to engage in any transaction that evades or avoids, or has the purpose or intent of evading or avoiding, or attempts to violate, any of the prohibitions set forth in any Anti-Terrorism Law. As used herein: (A) "Anti-Terrorism Law" is defined as any Law relating to terrorism or money-laundering, including Executive Order No. 13224 and the USA Patriot Act (as defined below); (B) "Executive Order No. 13224" is defined as the Executive Order No. 13224 on Terrorist Financing, effective September 24, 2001, relating to "Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism," as amended; (C) "Prohibited Person" is defined as any

person or entity (1) listed in the Annex to, or otherwise subject to the provisions of, Executive Order No. 13224; (2) owned or controlled by, or acting for or on behalf of, any party described in subparagraph (C)(1) above; (3) with whom any lender is prohibited from dealing or otherwise engaging in any transaction by any Anti-Terrorism Law; (4) who commits, threatens or conspires to commit or supports "terrorism" as defined in Executive Order No. 13224; (5) named as a "specially designated national and blocked person" on the most current list published by the U.S. Treasury Department Office of Foreign Assets Control at its official website, http://www.treas.gov/ofac/t11sdn.pdf or at any replacement website or other official publication of such list; or (6) affiliated with any party described in subparagraphs (C)(1)-(5) above; and (D) "USA Patriot Act" is defined as the "Uniting and Strengthening" America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001" (Public Law 107 56), as amended.

[No Further Text On This Page]

IN WITNESS WHEREOF, this Agreement has been entered into as of the day and year first above written.

SELLER:

GRACE BAPTIST CHURCH OF NANUET

By: _____

Name: Andrew L.

Title: Trustee

PURCHASER:

ATERES BAIS YAAKOV *ACADEMY OF ROCKLAND*

By: _____

Name:

Title: Aaron Fink

Dean

Purchase Agreement #4236        SIGNATURE PAGE TO PURCHASE AGREEEMENT

EXHIBIT A

Description of the Land

.

EXHIBIT B
Escrow Instructions

For purposes of these escrow instructions, the "Deposit" shall mean the Deposit and he Additional Deposit.  The Deposit shall be held in escrow by Escrow Agent on the following terms and conditions:

      1.      The Deposit shall be deposited in a non-interest bearing account IOLA account.

      2.      Escrow Agent shall deliver the Deposit to Seller or Purchaser, as the case may be, on the following conditions:

The Deposit shall be paid to Seller, upon the consummation of the Closing;

The Deposit shall be paid to Seller, upon receipt of demand therefor signed by Seller stating that Purchaser has defaulted in the performance of its obligations under this Agreement or that Seller is otherwise entitled to the Deposit pursuant to the terms of this Agreement; provided, however, that Escrow Agent shall not honor such demand until at least 10 days after the date on which Escrow Agent shall have delivered a copy of such demand to Purchaser, nor thereafter following such 10-day period if Escrow Agent shall have received a notice of objection from Purchaser given in accordance with the provisions of paragraphs 3 and 4; or

The Deposit shall be paid to Purchaser, upon receipt of demand therefor signed by Purchaser stating that either Seller has defaulted in the performance of its obligations under this Agreement or that Purchaser is otherwise entitled to the refund of the Deposit pursuant to the terms of this Agreement; provided, however, that Escrow Agent shall not honor such demand until at least 10 days after the date on which Escrow Agent shall have delivered a copy of such demand to Seller, nor thereafter following such 10-day period if Escrow Agent shall have received a notice of objection from Seller given in accordance with the provisions of paragraphs 3 and 4.

      3.      Any notice to or demand upon Escrow Agent shall be in writing and shall be sufficient only if received by Escrow Agent within the applicable time periods set forth herein, if any.  Notices to or demands upon Escrow Agent shall be delivered to it by email,  registered or certified mail, return receipt requested, or by nationally recognized overnight delivery, or served personally upon the Escrow Agent with receipt acknowledged in writing by an authorized signatory of Escrow Agent, in each case at Freeman & Loftus RLLP, 4 Laurel Road, New City, NY 10956 Attention:  Patrick J. Loftus, Esq.  Notices from Escrow Agent to Seller or Purchaser shall be delivered to their respective addresses set forth in Section 13 of this Agreement, or at such other address as the party in question shall have last designated by notice to Escrow Agent.  All such deliveries shall be by registered or certified mail, return receipt requested or by hand delivery or by a nationally recognized overnight courier. Notices may be sent by counsel for a party.

      4.      Upon receipt of a demand for the Deposit, made by Seller or Purchaser pursuant to paragraph 2, Escrow Agent shall promptly deliver a copy thereof to the other party.  The other party shall have the right to object to the delivery of the Deposit, as applicable, by delivering to Escrow Agent notice of objection within 10 days after the date Escrow Agent delivers such copy to the

other party, but not thereafter.  Upon receipt of such notice of objection, Escrow Agent shall promptly deliver a copy thereof to the party who made the written demand.

5.    If (a) Escrow Agent shall have received a notice of objection as provided for in paragraph 4 within the time therein prescribed or (b) any other disagreement or dispute shall arise between the parties or any other persons resulting in adverse claims and demands being made for the Deposit, whether or not litigation has been instituted, then and in any such event, Escrow Agent shall refuse to comply with any claims or demands on it, and shall continue to hold the Deposit until Escrow Agent receives either (x) a written notice signed by both parties directing the disbursement of the Deposit, or (y) a final non-appealable order of a court of competent jurisdiction, entered in an action, suit or proceeding in which Seller and Purchaser are parties, directing the disbursement of the Deposit, in either of which events Escrow Agent shall then disburse the Deposit, in accordance with such direction. Escrow Agent shall not be or become liable in any way or to any person for its refusal to comply with any such claims and demands unless and until it has received such direction. Upon compliance with such direction, Escrow Agent shall be released of and from all liability hereunder.

6.    Notwithstanding the foregoing, Escrow Agent shall have the following rights in the circumstances described in clause (a) or (b) of paragraph 5:

(a) If Escrow Agent shall have received a notice signed by either party advising that a litigation between the parties over entitlement to the Deposit has been commenced, Escrow Agent may, on notice to the parties, deposit the Deposit with the clerk of the court in which such litigation is pending; or

(b) Escrow Agent may, on notice to the parties, take such affirmative steps as it may, at its option, elect in order to terminate its duties as Escrow Agent, including, but not limited to, the deposit of the Deposit with a court of competent jurisdiction and the commencement of an action for interpleader, the reasonable costs of which shall be borne by whichever of the parties is the losing party.  Upon the taking by Escrow Agent of the action described in clause (a) or (b) of this paragraph 6, Escrow Agent shall be released of and from all liability hereunder.

7.    Seller and Purchaser shall jointly and severally hold harmless and indemnify Escrow Agent from and against any and all costs, expenses and liabilities (including, without limitation, reasonable attorneys' fees and disbursements) resulting from or incurred in connection with the performance of Escrow Agent's duties hereunder or any dispute arising under this Agreement, except for Escrow Agent's gross negligence or willful misconduct, and except that, as between Seller and Purchaser, the loser of any dispute over entitlement to the Deposit shall bear the costs and expenses of Escrow Agent in connection therewith.  With respect to the foregoing indemnity, reasonable attorneys' fees shall include, but not be limited to, the fair value of legal services, if any, rendered by Escrow Agent to itself. Escrow Agent is acting hereunder as a depository only and is not responsible or liable in any manner whatsoever for the sufficiency, correctness, genuineness or validity of any instrument deposited with it or for any notice or demand given to it or for the form of execution of such instrument, notice or demand, or for the identification, authority or rights of any person executing, depositing or giving the same or for the terms and conditions of any instrument, pursuant to which the parties may act.

8.     Escrow Agent shall not have any duties or responsibilities, except those set forth in this Exhibit   and shall not incur any liability (a) in acting upon any signature, notice, demand, request, waiver, consent, receipt or other paper or document believed by Escrow Agent to be genuine and Escrow Agent may assume that any person purporting to give it any notice on behalf of any party in accordance with the provisions hereof has been duly authorized to do so, or (b) in otherwise acting or failing to act under this Exhibit   except in the case of Escrow Agent's gross negligence or willful misconduct.  Escrow Agent shall not be responsible for any interest on the Deposit except as is actually earned, or for the loss of any interest resulting from the withdrawal of the Deposit prior to the date interest is posted thereon or for any loss caused by the failure, suspension, bankruptcy or dissolution of the institution in which the Deposit is deposited.

9.     Seller and Purchaser acknowledge that Escrow Agent is acting solely as stakeholder at the request of Seller and Purchaser and for their convenience, that Escrow Agent shall not be deemed to be the agent of either of the parties, and that Escrow Agent shall not be liable to either of the parties, except for its gross negligence or willful misconduct.

10.     Purchaser acknowledges and agrees that Escrow Agent may represent Seller in the transaction contemplated by this Agreement and in any dispute arising hereunder.

11.     Escrow Agent may act or refrain from acting in respect of any matter referred to in this Exhibit in full reliance upon, and with the advice of, counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

12.     Escrow Agent may resign upon ten (10) days written notice to Seller and Purchaser for any reason or no reason at all.  Upon such event, if Seller and Purchaser do not jointly approve of and appoint a successor to Escrow Agent within such ten (10) day period by delivering notice thereof to Escrow Agent, Escrow Agent may petition a court of competent jurisdiction to name a successor.  Upon joint approval and appointment of a successor to Escrow Agent by Seller and Purchaser, Escrow Agent shall promptly deliver the Deposit to such successor.

13.     The provisions of this Exhibit shall survive the termination of this Agreement.