# EXHIBIT   N

LAW OFFICE

# Ira M. Emanuel, P.C.

Four Laurel Road, New City, NY 10956
Tel: 845.634.4141  Fax: 845.634.9312
E-mail: Info@EmanuelLaw.com
www.EmanuelLaw.com

Counsel to
Freeman & Loftus, RLLP

Amy Mele, Esq.
*Of counsel*

December 28, 2018

Mr. Erik Asheim, Building Inspector
Clarkstown Building Department
10 Maple Avenue
New City, NY 10956

Re: Ateres Bais Yaakov Academy of Rockland
    - Grace Baptist Church Site, 20 Demarest Road, Nanuet, New York

Dear Mr. Asheim:

I represent Ateres Bais Yaakov Academy of Rockland ("ABY"), the contract vendee of the above-referenced site. You have asked that ABY submit a description of its proposed use of the site so that you could make a zoning evaluation.

To that end, enclosed please find the following:

- Building Permit application;
- Narrative describing the proposed use of the site;
- Opinion letter from me regarding the current use of the site, the proposed use of the site, and the impact of the Clarkstown Zoning Code, federal statutory law, and New York State case law with respect to the proposed religious and educational use of the site;
- Affidavit of William French, Pastor of Grace Baptist Church, regarding the history of that Church's use of the site, beginning in approximately 1860 and continuing to the present day.

If there is an application fee due, please advise me and I will attend to payment.

I look forward to hearing from you as soon as possible. If you have any questions or require additional information, please contact me.

Very truly yours,

Ira M. Emanuel

Encls.
CC:   Thomas Mascola, Esq.
      Client
      Patrick Loftus, Esq.

# EXHIBIT 1

# TOWN OF CLARKSTOWN
## OFFICE OF THE BUILDING INSPECTOR
### 10 MAPLE AVE. * NEW CITY, NY 10956 * (845) 639-2100
# APPLICATION FOR BUILDING * OCCUPANCY * DEMOLITION PERMIT
(Applicant to complete numbered items)

1.  TAX MAP 64

    BLOCK 1

    LOT 47, 48, 50 and 51

    REMAPPED SBL# _____

    VERIFIED BY ASSESSORS OFFICE:
    DATE_____ BY_____

    ZONING DISTRICT R-10

    PERMIT NO._____

    FEE (C.O. FEE INCL.)_____

    RENEWED_____

    __ITEMS 2-7 MUST BE COMPLETED__

    RECEIVED BY: _____

2.  DATE: 12/26/ 2018

3.  LOCATION: NO.: 20         STREET: Demarest Avenue         HAMLET: Nanuet

    PROJECT NAME: Ateres Bais Yaakov Academy of Rockland

4.  NAME AND **ADDRESS** OF:

    PROPERTY OWNER: Grace Baptist Church of Nanuet         TEL. NO.: 845-623-3897

    ADDRESS: 20 Demarest Avenue, Nanuet, NY 10954

    CONTRACT VENDEE:
    ~~XXXXXXXXXXXXXXX~~ NAME: Ateres Bais Yaakov Academy of Rockland      TEL. NO.: 845-368-2200

    AGENT OF OWNER/LESSEE: Aaron Fink         TEL. NO.: 845-368-2200

5.  ESTIMATED CONSTRUCTION VALUE: $ 500,000

6.  EXISTING AND/OR PROPOSED USE OF STRUCTURE OR LAND: house of worship and school

    (IF COMMERCIAL PROPERTY, LIST NAME OF PRIOR USER): _____

7.  DESCRIBE BRIEFLY THE NATURE OF THE PROPOSED WORK OR USE:
    For immediate occupancy: painting, minor repairs, fix signage, and additional repairs necessary for compliance with applicable fire and building codes

    (complete reverse side)

---

OFFICIAL USE ONLY

OCCUPANCY CLASS _____         CONSTRUCTION TYPE _____

PERMIT GRANTED FOR:

DATE:_____         BUILDING INSPECTOR:_____

***THIS PERMIT EXPIRES 18 MONTHS AFTER DATE OF ISSUANCE***
A CERTIFICATE OF OCCUPANCY IS REQUIRED PRIOR TO USE OR OCCUPANCY

8. BULK

| Col. 1 ZONE | | 2 GROUP | | 3 USE |
|---|---|---|---|---|
| | REQUIRED | EXISTING | | PROPOSED |
| 4 | Floor area ratio | | | |
| 5 | Lot area | | | |
| 6 | Lot Width | | | |
| 7 | Front yard depth | | | |
| 8 | Side yard width | | | |
| 9 | Total width both side yards | | | |
| 10 | Rear yard depth | | | |
| 11 | Maximum building height in feet and inches per foot of distance from lot line | | | |

9.   SIZE OF BUILDING

| | EXISTING | PROPOSED | COMPLETED |
|---|---|---|---|
| Square feet floor area | | | |
| Front in feet | | | |
| Rear in feet | | | |
| Maximum depth in feet | | | |
| Number of stories | | | |

10. Name and address of person(s) responsible for the supervision of the work performed pursuant to the State Uniform Code and the Clarkstown Zoning Ordinance.

| | NAME | ADDRESS | TELEPHONE |
|---|---|---|---|
| General Contractor | | | |
| Registered Architect | | | |
| Professional Engineer | | | |
| Builder | | | |

| Rockland County Home Improvement License # |
|---|
| Workman's Compensation Carrier |
| Rockland County Plumbing, Heating, A/C License # |

11   AFFIDAVIT

TOWN OF CLARKSTOWN
COUNTY OF ROCKLAND          ss:
STATE OF NEW YORK

Aaron Fink _____ being duly sworn, deposes and says:

(PRINT NAME)   Please Circle One: (~~XXXX XXXXXXXXXXXXXXXXXX XXXXXXXXXXX~~) contract vendee

that Grace Baptist Church of Nanuet _____ is the owner in fee of the premises to which this application applies; that he (the applicant) is duly authorized to make this application; and that the statements contained here are true to the best of his knowledge and belief, and that the work will be performed in the manner set forth in the application and in the plans and specifications filed therewith, and in accordance with the State Uniform Building Code and all other applicable laws, ordinances and regulations of the Town of Clarkstown. The permit holder shall immediately inform this office of any change occurring during the course of the work. (I also declare that the structure or area described in this application will not be occupied or used until I have obtained a Certificate of Occupancy).

_____
Signature of applicant

Sworn to before me this

26 _____ day of December, 2018

_____
Notary Public, State of New York

MARK A. HERTZ
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01HE4850154
QUALIFIED IN ROCKLAND COUNTY
COMMISSION EXPIRES JANUARY 6, 20 22

**OFFICE USE ONLY**

___ Dept. of Environmental Control Approval          ___ Special Flood Hazard Area - Zone_____

---

****SEPARATE APPLICATION FOR CERTIFICATE OF OCCUPANCY IS REQUIRED**
PRIOR TO ANY USE OR OCCUPANCY***

Ateres Bais Yaakov Academy of Rockland
20 Demarest Avenue, Nanuet, NY
(Formerly Grace Baptist Church Site)
Narrative Summary

## Background

Ateres Bais Yaakov Academy of Rockland is a full service Nursery – grade 12 private religious school for girls. Like Albertus Magnus High School in Bardonia, Ateres offers a split day of religious Judaic Bible studies plus a full program of General Studies in compliance with the New York State Syllabi and Standards for English, Social Studies, Mathematics, Science and World Language. In addition, Ateres offers a full complement of specialty subjects (Art, Music, STEM etc.), and programs in character development and civic responsibility.

Ateres is Chartered and accredited by the New York State Board of Regents. Its students perform above-average on all State mandated testing, High School Regents exams and College Board SAT and AP assessments. Ateres graduates are known for their positivity and success in institutes of higher learning where they pursue advanced degrees at religious and secular colleges and Universities and go on to launch successful professional careers. Ateres currently serves 300 students and hopes to return to its capacity of about 450 children in Grades Nursery—12(single classes N-8 @ 25 students each and two parallel classes 9-12 @25 students/class).

## Schedule and Program

Ateres generally meets Monday—Friday. It also holds special events on Sunday and provides after-school programming and communal educational programing during the evenings. Worship services for the students are held daily. Ateres students participate in a private hot lunch program. Meals are cooked on-premises.

Grades N-8 arrive at 9 am and depart at 4:15 Monday—Thursday. Friday dismissal is at 1 pm all year long. Grades 9-12 arrive at 9 and depart at 5:15 Monday—Thursday. Friday dismissal is at 1 pm all year long. School operates from September—June with regularly scheduled student vacations for Jewish festivals, and secular holidays as well as a mid-winter break. On those days when the public schools are closed and school district transportation is not provided, Ateres students are carpooled to and from school. We would be glad to coordinate our arrival schedule with the Nanuet School District.

Students arrive via school bus provided by the district in which they reside. Approximately 8 buses, 5 large and 3 mini buses, deliver Ateres students in the morning. 6 buses pick up students at 4:15 and 3 at 5:15. Ateres students live primarily in Ramapo and would be coming from the North. Although the routing is done by the student's resident school district, it is being recommended that students will arrive via Main Street (South bound) and turn left onto Orchard Street passing the school building and turning right onto North Highview Rd. and then right again into the driveway to the drop off area. (see route map attached). Buses would turn right out of the driveway onto Demarest Avenue and left onto William street and turn right onto Main street as they head out to their next run.

Ateres students do not drive to school.  Parents rarely carpool (except on those days when public school transportation is not available because the public schools are closed). There are a handful of students who parents drop off a late and/or pick up early during any given day.

Regular appointments with vendors, potential parents and deliveries also occur each day.

## Faculty

Ateres employs about 75 faculty members, of which about 35 are there at the same time. 8 Elementary teachers work for half a day, arriving 15 minutes before school and departing at 1 pm M-TH, with their counterparts arriving at 12:30 and departing at 4:15. The split in the schedule on Friday is at 11 am. The high school is departmentalized and teachers come and go throughout the school day. Approximately 40 parking spots are needed for staff and administration at any one time. Over 100 currently exist.

**Facility**

The building-currently known as the Grace Baptist Church - features all amenities needed for effectively running the Ateres program. From a Prayer center, auditorium, social halls, lunchroom, classroom space, kitchen and offices, the facility is in, an almost, move-in condition. Aside from paint, set forth below is the wish list of improvements we wish to make to the facility noted as a stage 1 and stage 2 improvement, respectively. All work to be designed by licensed architect/engineer and installed by licensed contractors subject to the issuance of a building permit.

**Proposed Improvements and Repairs**

**Preliminary Stage (for immediate occupancy).**

- Painting, minor repairs, removal of internal signage, covering of external signage. Install temporary signage.

- Additional repairs necessary for compliance with applicable fire and building codes.

**Stage 1. (See building layout maps for additional notes)**

- Installation of facility wide Sprinkler System, Heat/Smoke/Carbon Monoxide detectors and 44 Control Central Station Monitoring (the previous school and house of worship were grandfathered without safety systems installed)

- Low Voltage wiring —Installation of alarms, security cameras and internet access points

- Installation of HVAC ductless "split systems" in all classrooms.

- Multi-stall girls' lavatory on upper floor of educational building

- Removal of choir pews on raised stage area in Chapel. Stage area to be refurbished with the Installation of Stage curtains, lighting and sound equipment.

- Roof Solar Electrical System—for green energy.

- LED lighting upgrade

- Replace floor and ceiling tile as needed

- Electrical and plumbing upgraders as needed.

- Remove existing exterior signage and install ABY exterior signage.

**Stage 2.**

- Addition of dividing walls in oversized classrooms

- Remove classroom cubicles and portioning of classroom into 2 where applicable.

- Replace windows

- Installation of Playground

- Parking lot striping

# Basement



# 1st Floor

**Proposed**

Orchard Street



Main Parking Lot
(South Lot)

# 2nd Floor

**Proposed**

Orchard Street



Korean Pastor's Office

A

Student Prayer Center

Platform

Platform Storage 3

Old Sancturay

Old Organ Chamber

Remove cubicles

C

B

Resource rooms ABCD

Classroom 22

New Lavatory

Classroom 24

24E

D

24F

JC

Ladies' Restroom

Educational Wing

Demarest Avenue

Remove cubicle

Re-move cubicles and enlarge rooms

Classroom 21

Classroom 20

Re-move cubicles

Classroom 23

23A

25F

23B

combine

23C

Classroom 25

25E

Remove cubicles

Youth Office

Lower Roof

Finance Office

Ducts

Music Office

Down

Down

Down

UP

Down

Boardroom

Highview Avenue

Balcony

Sanctuary

Down

Down

Men's Restroom

Main Parking Lot
(South Lot)





**Room Dimensions**

Beth A. Reichgott
NY Associate Broker
NJ Sales Associate
268 S. Main St. Suite B
New City, NY 10956
845.770.1198 Office
201.390.6884 Cell



✱ 3/29/2018   All interior measurements are approximate. ✱

# Rand Commercial

## Room Dimensions

Beth A. Reichgott
NJ Sales Associate
268 S. Main St. Suite B
New City, NY 10956
845.770.1198 Office
201.390.6884 Cell



ORCHARD STREET

OLD SANCTUARY

MEN · LADIES

NURSERY 1
2 year old · #5

EDUCATION BUILDING

#6
PRIMARY DEPT.
2ND GRADE

CHURCH LIBRARY
#1

NURSERY 2
5 year old

CRIB ROOM
23 x 22

BEGINNER
4 year old · #3

BEGINNER
5 year old · #4

OFFICE

#7
PRIMARY DEPT.
3RD GRADE

OFFICE
OFFICE

OFFICE · BOOK STORE

MINISTER OF EDUCATION

PASTOR

SANCTUARY

LADIES

DEMAREST AVENUE

HIGHVIEW AVENUE

MAIN LEVEL

3/29/2018    all interior measurements are approximate

**Room Dimensions**



Beth A. Reichgott
NY Associate Broker
NJ Sales Associate
268 S. Main St. Suite B
New City, NY 10956
845.770.1198 Office
201.390.6884 Cell



LAW OFFICE

# Ira M. Emanuel, P.C.

Four Laurel Road, New City, NY 10956
Tel: 845.634.4141  Fax: 845.634.9312
E-mail: Info@EmanuelLaw.com
www.EmanuelLaw.com

Counsel to
Freeman & Loftus, RLLP

Amy Mele, Esq.
*Of counsel*

December 26, 2018

Mr. Erik Asheim
Building Inspector
Town of Clarkstown
10 Maple Avenue
New City, NY 10956

> Re:    Ateres Bais Yaakov Academy of Rockland
>        20 Demarest Avenue, Nanuet, NY

Dear Mr. Asheim:

I represent Ateres Bais Yaakov Academy of Rockland ("ABY"), which is the contract vendee of the above-referenced property.

ABY is a New York State Regents-chartered private religious girls' school, serving grades pre-K through 12. A description of the school's program and operations are submitted herewith.

ABY is currently occupying temporary quarters in the Village of New Hempstead. Those quarters are made up of a series of manufactured modules, similar to office trailers. ABY's permit to remain at that site, having already been extended, expires on May 22, 2019. It cannot be renewed, as New Hempstead has repealed the local law that allowed the existing temporary use.

At ABY's request, I have reviewed the Clarkstown Zoning Code, the history of the site, and applicable federal and State laws as they relate to the current and prospective use of the site. For the history of the site, I have relied on an affidavit from Pastor William French, the Pastor of the current owner/occupant, Grace Baptist Church, and on the materials supporting this affidavit ("French Affidavit"). A copy of the affidavit and the supporting materials is also submitted herewith.

Mr. Erik Asheim, Building Inspector                                           Page 2
December 26, 2018

## *Clarkstown Zoning Code*

The subject site is located in an R-10 zoning district and within the Nanuet Hamlet Overlay District.

According to Table 1 of the Zoning Code, "Schools of general instruction" are permitted uses in the R-10 district.

As of this writing, there are no specific regulations governing schools in the Nanuet Hamlet Overlay District.

A "school of general instruction" is defined as:

Any public or private nursery, elementary, junior high, high school or college offering courses in general instruction and accredited by the New York State Education Department, offering courses at least five days per week and seven months per year.[1]

"School" is further defined as:

Any public school under the jurisdiction of the Commissioner of Education of the State of New York; any parochial school operated and maintained by any religious corporation authorized to perform its corporate functions in the State of New York; or any school chartered by the Board of Regents of the University of the State of New York.[2]

ABY is a "school" in that it is a "school chartered by the Board of Regents of the University of the State of New York."[3]

ABY is a "school of general instruction" in that it meets the definition thereof through its course offerings.[4]

An electronic search of Article 1 of the Zoning Code (which contains the "Definitions" provisions of the Code) reveals that the only "schools" defined in the Zoning Code are "schools", "schools of general instruction", and "nursery schools". All three definitions apply to ABY.

The subject site is generally bounded by Demarest Avenue, Orchard Street, Highview Avenue, and Church Street. All are local Town roads.

---

[1] Clarkstown Zoning Code (hereafter "ZC") § 290-3, as amended by LL 5-2016.
[2] ZC § 290-3.
[3] Attached as Exhibit A is a copy of ABY's provisional and permanent charter certificates.
[4] *See,* Narrative submitted herewith.

Mr. Erik Asheim, Building Inspector                                      Page 3
December 26, 2018

### History of the Site

As set forth in greater detail in the French Affidavit, Grace Baptist Church has been in this location since 1860. The original building contained a sanctuary, church offices, and ancillary facilities.

In or about 1955, the current educational wing was built. The educational wing was built specifically for school use. This building contains nine large classrooms and 40 smaller classrooms within the large ones. The building and the site have continued to be used for educational and religious purposes by both Grace Baptist Church and other resident religious institutions.[5] That use has continued through this year.[6]

### Non-conforming Use

There appears to be no question that the school use was legal when initiated.[7] However, an amendment to the Zoning Code adopted as Local Law No. 5 of 2016 purports to render such use non-conforming.

The amendment added section 290-20.I(7): "All uses other than single-family residences shall have minimum frontage of 100 feet and access to either a state or county major or secondary road as classified on the Town Official Map."[8]

That same amendment added Note 48 to the Use Table: "These uses shall have minimum frontage of 100 feet and access to either a state or county major or secondary road as classified on the Town Official Map."

The Uses to which Note 48 refers are, generally, all uses other than single family dwellings in residential districts. However, in the relevant R-10 district, Note 48 applies *only* to two-family dwellings (Use Group N), but not to any other allowed uses (*i.e.,* Use Groups M [single family residences] and O [all other uses]).

This is not a simple printing error. The text of Local Law No. 5 also expressly applies Note 48 *only* to Use Group N in the R-10 district:

---

[5] Grace Baptist Church gave other users of its campus licenses, rather than leases. Copies of these licenses are submitted herewith.
[6] *See,* French Affidavit and supporting documents.
[7] *See, e.g.,* Certificate of Occupancy dated June 4, 1965, for "Church, Office and Bible School".
[8] Local Law No. 5 of 2016, Section 8.

Mr. Erik Asheim, Building Inspector                                                Page 4
December 26, 2018

Add Note 48, which shall read:

These uses shall have minimum frontage of 100' and access to
either a State or County major or secondary road as classified on
the Town Official Map.

Add Note 48 reference to R-160, Group C, Column 3; R-80, Group C,
Column 3; R-40 Group F, Column 3; R-22, Group I, Column 3; R-15,
Group L, Column 3 and R-10, Group N, Column 3.[9]

It is well-established law that, where there is an ambiguity in a Zoning Code,
the ambiguity is to be resolved against the municipality and in favor of the property
owner, as zoning codes are "in derogation of the common law property rights" of
owners.[10] The Use Table and Section 290-20.I conflict with one another.

In addition, it is well-established law that specific provisions control general
provisions.[11] Section 6 of Local Law 5 listed each of the Use Groups to which Note
48 was to apply. That list omitted Use Group O. This is in sharp contrast to the
catch-all provision of Section 8, which added identical provisions to all the
residential districts at one fell swoop.[12]

Even assuming that the location limitation created by Local Law 5 of 2016 is
applicable in the R-10 district, it is not applicable to the school use on the subject
parcel.

Under § 290-27 of the Zoning Code, non-conforming uses that were legal
when initiated may continue despite their subsequent non-conformity. However,

If active and continuous operations are not carried on with respect to a
nonconforming use during a continuous period of one year, the building
or land where such nonconforming use previously existed shall
thereafter be occupied and used only for a conforming use. Intent to
resume active operations shall not affect the foregoing.[13]

As set forth above, and in the French Affidavit, the premises were used as a
school (and also church and office) from prior to the adoption of Local Law 5 of 2016
through 2018.

---

[9] LL5 of 2016, Section 6. Section 6 also added Use Group N to the R-10 row, a designation that did
not previously exist. Use Group O, however, has been in existence since at least 2005.
[10] *C. DeMasco Scrap Iron & Metal Corp. v. Zirk,*62 A.D.2d 92, 98, 405 N.Y.S.2d 260, 264 (2d Dept
1978) aff'd 46 N.Y.2d 864, 414 N.Y.S.2d 516 (1979).
[11] *See, Dutchess County Dept. of Social Services v. Day,* 96 N.Y.2d 149, 153, 726 N.Y.S.2d 54 (2001);
*Erie County Water Authority v. Kramer,* 4 A.D.2d 545, 550 (4th Dept 1957), aff'd 5 N.Y.2d 954 (1959)
[12] These provisions became § 290-20.I.
[13] Zoning Code § 290-29.C.

Mr. Erik Asheim, Building Inspector                                    Page 5
December 26, 2018

### *Federal Law*

ABY operates a private school whose mission is to educate girls of the Jewish faith in both religious and secular topics. As such, it is protected under 42 USC § 2000cc.

Under federal law, a government may not use land use regulations to impose a "substantial burden" on religious uses in the absence of a "compelling governmental interest" exercised using the "least restrictive means".[14]

The statute applies whenever

the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved.[15]

The determination of whether ABY may use the former Grace Baptist Church education building as a school is clearly an "individualized assessment" of the proposed use of the property.

Government may not determine what a religious use needs, nor may it regulate its internal operations or religious practices.[16]

While Grace Baptist Church and the other tenants of the property may have satisfied their religious practices with part-time schools, ABY's religious mission includes full-time education.

Government may not discriminate in favor of non-religious uses,[17] nor may it favor one religious use over another religious use.[18]

A determination that the education building may not be used as a school by ABY (a) discriminates in favor of the former Grace Baptist Church and against ABY, and (b) if based on location, discriminates in favor of established religious facilities and against new religious facilities in the same location or having the same location characteristics.

---

[14] *Westchester Day School v. Village of Mamaroneck,* 504 F.3d 338, 349 (2d Cir. 2007); 42 USC § 2000cc-2(b).

[15] 42 USC § 2000cc(a)(2)(C).

[16] *Bikur Cholim, Inc. v. Village of Suffern,* 664 F.Supp.2d 267, 285 (SDNY 2009).

[17] 42 USC § 2000cc-1(b)(1).

[18] *Id.* at 1(b)(2).

Mr. Erik Asheim, Building Inspector                                    Page 6
December 26, 2018

Government may not "implement a land use regulation that * * * unreasonably limits religious assemblies, institutions, or structures within a jurisdiction."[19]

From the creation of the Town of Clarkstown through 2016, and from the adoption of the first Clarkstown Zoning Code through 2016, there was no need to limit the location of schools and religious institutions to "State or County major or secondary roads". In addition, the 2016 enactment did not require institutions that did not meet the location requirements to relocate. The 2016 enactment was clearly aimed at limiting the number and location of religious institutions within the Town of Clarkstown, and, by doing so, to keep them out of the Town.

A government may "avoid the preemptive force" of federal law by

changing the policy or practice that results in a substantial burden on religious exercise, retaining the policy or practice and exempting the substantially burdened religious exercise, by providing exemptions from the policy or practice for applications that substantially burden religious exercise, or by any other means that eliminates the substantial burden.[20]

It is the responsibility of the Town, and therefore of its agencies, boards and officials, to find ways to avoid the negative results prohibited by federal law.

### New York Law

New York protects ABY as both a religious and an educational institution. New York case law has determined that educational and religious uses are "inherently beneficial" to the residential areas in which they are located.[21]

New York requires that "every effort to accommodate the religious [and educational] use must be made."[22]

This requirement is similar to that of federal law, and may actually impose a greater duty upon the Town.

A legislative attempt to exclude educational and religious uses from a residential area is unconstitutional.[23]

---

[19] *Id.* at 1(b)(3).
[20] 42 USC § 2000cc-3(e).
[21] *Cornell University v. Bagnardi,* 68 N.Y.2d 583, 510 N.Y.S.2d 861 (1986).
[22] *Rosenfeld v. ZBA of Town of Ramapo,* 6 A.D.3d 450, 774 N.Y.S.2d 359 (2d Dept 2004) quoting *Genesis Assembly of God v. Davies,* 208 A.D.2d 627, 617 N.Y.S.2d 202 (2d Dept 1994).
[23] *Albany Preparatory Charter School v. City of Albany,* 10 Misc.3d 870, 805 N.Y.S.2d 818 (Sup. Ct., Albany Co., 2005), aff'd as modified 818 N.Y.S.2d 651 (3d Dept 2006).

Mr. Erik Asheim, Building Inspector                                                   Page 7
December 26, 2018

A review of the allowable uses in the R-10 district shows that, except for one- and two-family homes and governmental or utility uses, the only other allowed uses are for schools, places of worship, and cemeteries.[24]

If Sections 6 and 8 of Local Law No. 5 of 2016 are interpreted to apply to Use Group O, as well as to Use Group N, then they are a direct attempt to exclude educational and religious uses from the R-10 District of the Town of Clarkstown. In fact, the overall purpose of these Sections is to limit, if not prohibit, the future construction of "non-residential" uses in residential zoning districts. While this may be appropriate for some "non-residential" uses, it is clearly contrary to the New York State Constitution when applied to religious and educational uses.

Both federal and State courts have ruled that potential traffic impacts, unless they create a safety hazard, are insufficient to bar the establishment of a school in a location.[25] In particular, the New York State Court of Appeals has ruled that potential traffic concerns are insufficient to outweigh the public benefit of a religious institution's presence in a neighborhood:

> The presumptive value of religious facilities must be balanced against any actual detriment to the public health, safety or welfare, bearing in mind that typical hazards of traffic congestion, noise, diminution in property values, and the like, are generally insufficient to outweigh the public benefit of religious institutions and the constitutional protection to which such organizations are entitled.[26]

The Court of Appeals went on to say, "where an irreconcilable conflict exists between the right to erect a religious structure and the potential hazards of traffic or diminution in value, the latter must yield to the former."[27]

### Substantial Burden

While many of these cases arose in the context of a land use board's consideration of a special permit or variance application, there is nothing in the law that prohibits the application of these considerations by a Building Inspector when making a discretionary individual assessment, as here.

---

[24] There are some other uses that are permitted as accessory uses to the listed allowed uses.
[25] *Westchester Day School v. Village of Mamaroneck,* 417 F.Supp. 477 (SDNY 2006).
[26] *Matter of Westchester Reform Temple v Brown,* 22 N.Y.2d 488, 496 (1968), also cited in *High Street United Methodist Church v. City of Binghamton,* 715 N.Y.S.2d 279, 283 (Sup. Ct., Broome County, 2000).
[27] *Westchester Reform Temple,* at 497, reiterating the Court's holding in *Matter of Diocese of Rochester v Planning Board,* 1 N.Y.2d 508.

Mr. Erik Asheim, Building Inspector                                                    Page 8
December 26, 2018

Indeed, it would not be unreasonable for a court to hold that denial of a
certificate of occupancy in the face of known religious exemptions, thus forcing an
application to the Zoning Board of Appeals, is itself a substantial burden on
religious exercise. The imposition of such a substantial burden, as discussed above,
violates both federal and State law.

The case of *Saints Constantine and Helen Greek Orthodox Church v. City of
New Berlin*[28] is instructive here. In that case, a church purchased land in a
residentially-zoned area of the city. The purchased land was adjacent to an existing
church on one side. On the other side was a parcel that belonged to a different
church, which the city had rezoned to allow the construction of a new church. In
discussions with the city's in-house Planning Department, the Church agreed to the
creation of a planned unit development ("PUD") that, in conjunction with a zone
change to "institutional", would allow it to use its property as a church (similar to
the adjacent properties). The City's Planning Commission disagreed with the
Planning Department, and upon that negative recommendation, the City Council
denied the PUD application.

The Mayor then offered two alternatives: (1) apply for a conditional use
permit, or (2) apply for a PUD that would overlay the existing residential district
instead of the institutional district.

The federal Court of Appeals for the Seventh Circuit held that the City had
imposed a substantial burden on the Church. With respect to the suggested
conditional use permit, the Court found that the City's requirement to begin
construction within one year would require the Church to endure unwarranted
delays. This is because the Church would need to wait to apply for the permit until
it had raised sufficient funds to ensure that it could begin timely construction.
However, the uncertainty of obtaining the permit would, itself, be a detriment to the
necessary fund raising. Thus, the requirement to obtain a conditional use permit
was deemed a substantial burden on the Church.

As to the suggestion that the Church apply for a PUD that overlay the
existing residential district, the Court held that this was an obvious delaying tactic.
Such a PUD would be virtually identical to the one that the City Council had
denied.

The burden here was substantial. The Church could have searched
around for other parcels of land (though a lot more effort would have
been involved in such a search than, as the City would have it, calling
up some real estate agents), or it could have continued filing
applications with the City, but in either case there would have been

---

[28] 396 F.3d 895 (7th Cir. 2005).

Mr. Erik Asheim, Building Inspector                                          Page 9
December 26, 2018

delay, uncertainty, and expense. That the burden would not be insuperable would not make it insubstantial.[29]

The Court then refused to remand the matter for trial (the facts not being in dispute) or to the City for further administrative proceedings. It granted the Church's relief, but stayed its order for 90 days solely for the purpose of determining

> whether the Church's proposal may contain some loophole that might permit (though doubtless with low probability) the eventual putting of the property to a nonreligious institutional use. The closing of the loophole, if there is a loophole, does not require a trial in the district court or a further administrative proceeding of uncertain duration and, given the whiff of bad faith arising from the Planning Commission's rejection of a solution that would have eliminated the City's only legitimate concern, an uncertain outcome as well.[30]

Here, it is clear that the subject property was used as a school, especially since the construction of the education wing in the late 1950s. If Note 48 and/or § 290-20.I apply, then the building cannot be used, as of right, for any other purpose permitted in the R-10 district. ABY would then be faced with the uncertainty of applying to the Zoning Board of Appeals for a variance. Given the public reaction thus far, it is not unreasonable to assume that such an application would create additional tumult, negative public reaction, delay, and substantial expense to ABY.

I trust that the foregoing, together with the additional submissions referenced, are sufficient for you to determine that ABY's use constitutes a continuation of the existing school use at the site.

Very truly yours,

Ira M. Emanuel

Cc:   Thomas Mascola, Esq., Town Attorney
      Client

---

[29] *Id.* 396 F.3d at 901
[30] *Id.*

## The University of the State of New York

### Education Department

### ATERES BAIS YAAKOV ACADEMY OF ROCKLAND

### PROVISIONAL CHARTER

This Instrument Witnesseth That the Board of Regents for and on behalf of the Education Department of the State of New York at their meeting of July 18, 2002,

Voted, that

1. A provisional charter valid for a term of three years is granted incorporating Aaron J. Fink, Basya Z. Fink, Sidney A. Greenwald, Mark Hertz, Eliyahu Fink, Tova M. Pepper and their associates and successors as an education corporation under the corporate name of Ateres Bais Yaakov Academy of Rockland, located in Monsey, county of Rockland and state of New York.

2. The purposes for which such corporation is formed are to operate a nursery school for preschool children from three to five years of age, a kindergarten for five-year-olds, a grade one through eight elementary school and a grade nine through twelve secondary school.

3. The persons named as incorporators shall constitute the first board of trustees. The board shall have power to adopt bylaws, including therein provisions fixing the method of election and the term of office of trustees, and shall have power by vote of two-thirds of all the members of the board of trustees to change the number of trustees to be not more than twenty-five nor less than five.

4. The names and post office addresses of the first trustees are as follows:

Aaron J. Fink
One Slevin Court
Monsey, New York 10952

Basya Z. Fink
One Slevin Court
Monsey, New York 10952

Sidney A. Greenwald
303 South Grandview Avenue
Monsey, New York 10952

Mark Hertz
47 Olympia Lane
Monsey, New York 10952

Eliyahu Fink
One Slevin Court
Monsey, New York 10952

Tova M. Pepper
11 South Parker Drive
Monsey, New York 10952

5. The corporation hereby created shall be a nonstock corporation organized and operated exclusively for educational purposes, as defined in section 501(c)(3) of the Internal Revenue Code of 1986 (or the corresponding provision of any future Federal tax code), and no part of the net earnings or net income shall inure to the benefit of any member, trustee, director or officer of the corporation, or any private individual (except that reasonable compensation may be paid for services rendered to or for the corporation), and no member, trustee, director or officer of the corporation, or any private individual, shall be entitled to share in the distribution of any of the corporate assets upon dissolution of the corporation.

6. Notwithstanding any other provision of these articles the corporation shall not carry on any other activities not permitted to be carried on (a) by a corporation exempt from Federal income tax under section 501(c)(3) of the Internal Revenue Code of 1986 (or the corresponding provision of any future Federal tax code) or (b) by a corporation, contributions to which are deductible under section 170(c)(2) of the Internal Revenue Code of 1986 (or the corresponding provision of any future Federal tax code).

Ateres Bais Yaakov Academy of Rockland
Page two

7.  No substantial part of the activities of the corporation shall be devoted to carrying on propaganda, or otherwise attempting to influence legislation, (except to the extent authorized by Internal Revenue Code section 501(h) as amended, or the corresponding provision of any future Federal tax code, during any fiscal year or years in which the corporation has chosen to utilize the benefits authorized by the statutory provision) and the corporation shall not participate in or intervene (including the publishing or distribution of statements) in any political campaign on behalf of or in opposition to any candidate for public office.

8.  Upon dissolution of the corporation, the board of trustees shall, after paying or making provision for the payment of all the liabilities of the corporation, dispose of the remaining assets of the corporation exclusively for one or more exempt purposes, within the meaning of section 501(c)(3) of the Internal Revenue Code of 1986 (or the corresponding provision of any future Federal tax code), or shall distribute the same to the Federal government, or to a state or local government, for a public purpose. Any such assets not so disposed of shall be disposed of by order of the Supreme Court of the State of New York in the judicial district where the principal office of the corporation is then located, exclusively for such purposes or to such organization or organizations, organized and operated exclusively for such purposes, as said Court shall determine.

9.  The mailing address of the corporation shall be 236 Cherry Lane, Monsey, New York 10952.

10.  The Commissioner of Education is designated as the representative of the corporation upon whom process in any action or proceeding against it may be served.

11.  Such provisional charter will be made absolute if, within three years after the date when this charter is granted, the corporation shall acquire resources and equipment which are available for its use and support and which are sufficient and suitable for its chartered purposes in the judgment of the Regents of the University, and shall be maintaining an institution of educational usefulness and character satisfactory to the Regents. Prior to the expiration of said three-year period, an application for the extension of such provisional charter or for an absolute charter will be entertained by the Regents, but in the event that such application is not made, then at the expiration of said term of three years, and upon notice by the Regents, such provisional charter shall terminate and become void and shall be surrendered to the Regents.

Granted, July 18, 2002, by the Board of Regents of The University of the State of New York, for and on behalf of the State Education Department, and executed under the seal of said University and recorded as Number 23,404.

Chancellor

President of the University and
Commissioner of Education



**THE STATE EDUCATION DEPARTMENT** / THE UNIVERSITY OF THE STATE OF NEW YORK / ALBANY, NY 12234

Counsel and Deputy Commissioner for Legal Affairs
Tel. 518-474-6400
Fax 518-474-1940

September 10, 2007

Rabbi Moshe Dear
Ateres Bais Yaakow Academy of Rockland
236 Cherry Lane
Monsey, New York 10952

Dear Rabbi Moshe Dear:

I am pleased to advise you that the Board of Regents, at its meeting today, formally voted to extend the provisional charter of **Ateres Bais Yaakow Academy of Rockland**.  A copy of the vote adopted is enclosed.

The charter is valid to September 10, 2010 and may be terminated by the Regents unless application is made prior to that time for the further extension of such provisional charter or for an absolute charter.

The formal charter document will be prepared and forwarded to you by the Secretary to the Board of Regents.  You should expect to receive your charter document shortly.

Yours truly,

Kathy A. Ahearn

Enclosure

Adopted September 10, 2007

ATERES BAIS YAAKOW ACADEMY OF ROCKLAND.  An application having been made by and on behalf of the trustees of Ateres Bais Yaakow Academy of Rockland, for its provisional charter to be extended, it was

Voted, that the provisional charter of Ateres Bais Yaakow Academy of Rockland, located in Monsey, county of Rockland, and state of New York, which was granted by action of the Board of Regents on July 17, 2003 be, and the same hereby is, extended until September 10, 2010; and prior to that date, an application for the further extension of such provisional charter or for an absolute charter will be entertained by the Regents, but, in the event that such application is not made, then after September 10, 2010 and upon notice by the Regents, such provisional charter shall terminate and become void and shall be surrendered to the Regents.



**The University of the State of New York**

**Education** **Department**

## ATERES BAIS YAAKOV ACADEMY OF ROCKLAND

### ABSOLUTE CHARTER

This Instrument Witnesseth That the Board of Regents for and on behalf of the Education Department of the State of New York at their meeting of October 19, 2010,

An application having been made by and on behalf of the trustees of the Ateres Bais Yaakov Academy of Rockland, for its provisional charter to be made absolute, and it appearing to the satisfaction of the Regents that the conditions for an absolute charter have been met, it was

Voted, that the provisional charter of the Ateres Bais Yaakov Academy of Rockland, located in Monsey, county of Rockland, state of New York, which was granted by action of the Board of Regents on July 18, 2002; which provisional charter was extended by Regents action on September 10, 2007 be, and the same hereby is, made absolute.



Granted, October 19, 2010, by the Board of Regents of The University of the State of New York, for and on behalf of the State Education Department, and executed under the seal of said University and recorded as Number 25,234.

Chancellor

President of the University and
Commissioner of Education

[French Affidavit

Found at Exhibit C]