# EXHIBIT CC

LAW OFFICE

# Ira M. Emanuel, P.C.

Four Laurel Road, New City, NY 10956
Tel: 845.634.4141  Fax: 845.634.9312
E-mail: Info@EmanuelLaw.com
www.EmanuelLaw.com

Counsel to
Freeman & Loftus, RLLP

Amy Mele, Esq.
*Of counsel*

June 6, 2019

Clarkstown Zoning Board of Appeals
10 Maple Avenue
New City, NY 10956
Att: Catherine Cirrone

Re: Appeal of Ateres Bais Yaakov Academy of Rockland

Dear Ms. Cirrone:

As you know, I represent the applicant, Ateres Bais Yaakov Academy of Rockland ("ABY") in the above-referenced appeal. At the time of application, ABY was a contract vendee of the subject property; the owner being Grace Baptist Church ("GBC").

As of May 16, the proposed transaction was cancelled by GBC. ABY attributes this cancellation to the actions of and on behalf of the Town of Clarkstown, including those actions that were in violation of New York State and federal law relating to religious and educational land uses. Attached is a memorandum of law concerning religious discrimination from Weil, Gotshal & Manges LLP, ABY's *pro bono* attorneys, with a specific focus upon how the Building Inspector's denial of its request for a building permit infringed upon ABY's religious liberty and was rife with invidious discrimination. ABY also believes that the Town's interference was the direct cause of ABY losing its financing resources.

On May 16, GBC filed a letter with the ZBA "revok[ing] any consent to land use applications" relating to the subject property. ABY hereby objects to GBC's withdrawal of consent and urges the ZBA to schedule a hearing in the coming weeks. Contrary to GBC's belief, the ZBA is still lawfully obligated to continue to hear ABY's appeal because declaratory relief on the misapplication of Local Law No. 5 of the Clarkstown Zoning Code and/or a grant of an area variance will necessarily bind those interested in purchasing the Grace Baptist Church in the future (whether that be ABY or otherwise) and would also affect other properties to which Local Law No. 5 has been or will be similarly misapplied. This is especially true because the Town's own actions have conveniently left itself as one of the few, if not the only, likely purchasers of the Property. Indeed, recent press reports have

confirmed that this is exactly what is happening. In addition, ABY's appeal and application for an area variance is not moot because the nature of the action is capable of repetition yet evades review. Public policy should not incentivize towns to engage in delay and xenophobic tactics, which ABY contends is the case here.

In light of the foregoing, the ZBA should – and is lawfully required to – consider ABY's appeal and application. ABY expressly reserves all rights and remedies it may have against the Town of Clarkstown, its officers, agents, boards, commissions and employees, including the right to seek redress under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc. This reservation of rights both survives and includes ABY's loss of a complete interest in the Property, which ABY maintains was due to the Town's discriminatory actions. *See e.g.*, *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163 (9th Cir. 2010); *Matter of Shellfish, Inc. v. New York State Dep't of Envtl. Conservation*, 76 A.D.3d 975 (2d Dep't 2010); *Froehlich v. Town of Huntington*, 159 A.D.2d 606, 607, 552 N.Y.S.2d 660, 661 (2d Dep't 1990); *Hearst Corp. v. Clyne*, 50 N.Y.2d 707, 714–15, 409 N.E.2d 876, 878 (N.Y. 1980).

Very truly yours,

Ira M. Emanuel

Cc:    Client
       Lisa Kahn, Esq.
       Yehudah L. Buchweitz, Esq.
       David Yolkut, Esq.
       Robert G. Sugarman
       Kaela Dahan, Esq.

ZONING BOARD OF APPEALS:  TOWN OF CLARKSTOWN
COUNTY OF ROCKLAND:  STATE OF NEW YORK
-----------------------------------------------------------------------------X

In the Matter of the Application of:

ATERES BAIS YAAKOV ACADEMY OF ROCKLAND


Appealing the determination of the Building Inspector, or alternatively, seeking an
area variance
-----------------------------------------------------------------------------X




**SPECIAL MEMORANDUM OF LAW CONCERNING RELIGIOUS
DISCRIMINATION IN CONNECTION WITH ATERES BAIS YAAKOV
ACADEMY OF ROCKLAND'S APPEAL AND APPLICATION FOR AN
AREA VARIANCE**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS .................................................................................................3

    Enactment of Local Law No. 5 .................................................................................4

    ABY Faces Firestorm of Local Opposition and Discriminatory Backlash.........................6

    ABY Submits a Permit Application, Which the Building Inspector Denied.....................8

    Delayed Hearing of Appeal ......................................................................................8

    Cancellation of Contract ..........................................................................................9

ARGUMENT ...................................................................................................................9

**I.**    ABY's Appeal Is Still Alive And The ZBA Must Consider Its Application......................9

**II.**   The ZBA Is Required To Reasonably Accommodate ABY's Free Exercise Rights
    Under The United States And New York Constitutions ...................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*,
　651 F.3d 1163 (9th Cir. 2011) ................................................15

*Cmty. Bd. 7 v. Schaffer*,
　84 N.Y.2d 148 (1994) ................................................2, 10

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*,
　138 F. Supp. 3d 352 (S.D.N.Y. 2015)................................................15

*East End Eruv Ass'n, Inc. v. Town of Southampton*,
　No. 14-21124, 2015 WL 4160461 (Sup. Ct. Suffolk Cty. June 30, 2015) ............13

*Froehlich v. Town of Huntington*,
　159 A.D.2d 606 (2d Dep't 1990)................................................2, 9, 15

*Harrison Orthodox Minyan, Inc. v. Town Board of Harrison*,
　159 A.D.2d 572 (2d Dep't 1990)................................................12, 13

*Hearst Corp. v. Clyne*,
　50 N.Y.2d 707 (1980) ................................................10, 11, 15

*Lynch v. Donnelly*,
　465 U.S. 668 (1984)................................................12

*N. Shore Hebrew Acad. v. Wegman*
　105 A.D.2d 702 (2d Dep't 1984) ................................................14

*Reaching Hearts Int'l, Inc. v. Prince George's Cty.*,
　478 F. App'x 54 (4th Cir. 2012) ................................................15

*Richmond v. New Rochelle Bd. of Appeals on Zoning*,
　24 A.D.3d 782 (2005) ................................................13, 14

*Shellfish, Inc. v. N.Y. State Dep't of Envtl. Conservation*,
　76 A.D.3d 975 (2d Dep't 2010)................................................10, 11, 15

*Smith v. Cmty. Bd. No. 14*,
　128 Misc. 2d 944 (Sup. Ct. Queens Cty. 1985), *aff'd*, 133 A.D.2d 79 (2d
　Dep't 1987) ................................................2, 12

*St. Thomas Malankara Orthodox Church, Inc. v. Board of Appeals*,
　23 A.D.3d 666 (2d Dep't 2005) ................................................12

*Truscott v. City of Albany Bd. of Zoning Appeals*,
   152 A.D.3d 1038 (3d Dep't 2017) ................................................................10

*Westchester Day Sch. v. Vill. of Mamaroneck*,
   504 F.3d 338 (2d Cir. 2007) ......................................................................15

*Westchester Reform Temple v. Brown*,
   22 N.Y.2d 488 (1968) ................................................................................13

**Constittions, Statutes & Local Codes**

U.S. Const. amend. I ..............................................................................1, 11, 14

U.S. Const. amend. IVX ................................................................................11

42 U.S.C. § 2000cc (RLUIPA) ...............................................................14, 15

N.Y. Const. art. I, § 3 ....................................................................................1, 11

Clarkstown Town Code § 290-29C ................................................................8

Clarkstown Zoning Code § 290-3 ..................................................................3

Clarkstown Zoning Code § 290-20.I(7) .......................................................4, 5

Clarkstown Zoning Code § 290-29 ................................................................5

**Other Authorities**

146 CONG. REC. S7774–01 (daily ed. July 27, 2000) ................................15

Ateres Bais Yaakov Academy of Rockland ("ABY"), by its *pro bono* attorneys, Weil, Gotshal & Manges LLP ("Weil"), respectfully submits this special Memorandum of Law concerning religious discrimination in connection with ABY's appeal and application for an area variance to the Zoning Board of Appeals (the "ZBA" or the "Board") of the Town of Clarkstown ("Clarkstown" or "the Town") for a property that ABY was under contract to acquire before the seller cancelled the contract following discriminatory actions by the Town.  This Memorandum of Law focuses on the application of land use laws to religious institutions under federal and state law.

## PRELIMINARY STATEMENT

ABY's appeal does not merely concern garden-variety zoning issues; it also implicates ABY's constitutional rights as guaranteed by the First Amendment of the Constitution of the United States and Article I, Section 3 of the New York State Constitution.  A number of courts in this Department and across the State have reached this intersection of zoning and constitutional freedoms, and have opted to protect constitutional rights.

As an initial matter, there should be no mistake: the ZBA is still lawfully obligated to continue to hear ABY's appeal, even though ABY is no longer under contract to purchase the Property (as defined below).  As the ZBA knows, ABY's appeal was submitted prior to the cancellation of its contract, and that appeal is still ripe for resolution.  If anything, ABY's appeal has only become stronger given that the cancellation of its contract has stemmed directly from the actions of the Town, including actions that violate New York State and federal law relating to religious and educational land uses.  Moreover, the ZBA's judgment will necessarily bind future property interests in the property, and the nature of this action is capable of repetition yet evades review.  In such circumstances, New York Courts have allowed claims to proceed despite a

complete property interest.  *See Froehlich v. Town of Huntington*, 159 A.D.2d 606, 607 (2d Dep't 1990); *Cmty. Bd. 7 v. Schaffer*, 84 N.Y.2d 148, 153-54 (1994).

By arbitrarily and erroneously denying ABY's application for a building permit to make certain needed improvements to the Grace Baptist Church (the "Building Inspector's Determination") – a decision that ABY contends was rife with invidious discrimination – the Town infringed upon ABY's religious liberty.  Specifically, by interpreting Local Law No. 5 of 2016 to create new *use* requirements – a determination that is wholly erroneous for all of the reasons ABY stated in its appeal – and by summarily concluding that the school use at the property had ceased merely because the Town Building Department had no records of a New York State Fire Inspection on the campus of the Grace Baptist Church since 1990, the Building Inspector's Determination unlawfully impeded the establishment of an Orthodox Jewish school in Clarkstown.

Moreover, in considering ABY's alternative application for an area variance, a ZBA is obligated to reasonably accommodate the free exercise of religion.  *See, e.g.*, *Smith v. Cmty. Bd. No. 14*, 128 Misc. 2d 944, 949 (N.Y. Sup. Ct. Queens Cty. 1985), *aff'd*, 133 A.D.2d 79 (2d Dep't 1987) (concluding that "New York courts have long recognized the principle of accommodation" and "have repeatedly held that by their very nature religious institutions are beneficial to the public welfare and consequently proposed religious uses should be accommodated").

## STATEMENT OF FACTS

ABY is a New York State chartered education corporation providing both secular and Jewish religious instruction to girls in grades pre-K through 12.  It has recently entered into a contract to purchase the campus of Grace Baptist Church at 20 Demarest Avenue, Nanuet (and other adjacent parcels identified in the application form) (the "Property" or the "GBC Campus"). Grace Baptist Church ("GBC") has occupied the location since 1860.  *See* Affidavit of William French, Pastor of GBC (the "French Affidavit")[1].  During the ensuing 159 years, GBC built two sanctuaries, offices, and a large school building containing nine large classrooms with forty smaller classrooms, along with attendant offices, storage, and bathrooms.  *Id.*  GBC and its tenants have continuously and regularly conducted worship services of various Christian faiths and have provided religious education consistent with their Christian beliefs.  *Id.*  Both religious and educational uses continue to this day.  *Id.*

The Property is located in an R-10 residential zoning district within the Hamlet Overlay District.  According to Table 1 of the Clarkstown Zoning Code, "school[s] of general instruction" are permitted uses, as of right, in the R-10 district.  A "school of general instruction" is defined as "[a]ny public or private nursery, elementary, junior high, high school or college offering courses in general instruction and accredited by the New York State Education Department, offering courses at least five days per week and seven months per year."[2]

---

[1] The French Affidavit was originally included in the underlying building permit application for this project, the denial of which gives jurisdiction to this Board.  See Exhibit 2 for a complete copy of ABY's building permit application, filed on or about January 4, 2019 (the "Building Permit Application").

[2] Clarkstown Zoning Code § 290-3, as amended by Local Law No. 5 (2016).

"Schools" is further defined as "[a]ny public school under the jurisdiction of the Commissioner of Education of the State of New York; any parochial school operated and maintained by any religious corporation authorized to perform its corporate functions in the State of New York; or any school chartered by the Board of Regents of the University of the State of New York."[3]

The only "schools" defined in Article 1 of the Zoning Code (which contains the "Definitions" provisions of the Code) are "schools," "school[s] of general instruction," and "nursery school[s]." All three definitions apply to ABY. ABY is a "school" in that it is a "school chartered by the Board of Regents of the University of the State of New York."[4] ABY is also a "school of general instruction" in that it meets the definition through its course offerings.[5] Furthermore, ABY is a "nursery school" in that it provides pre-K "instruction" for children "five years of age."[6]

The Property is generally bounded by Demarest Avenue, Orchard Street, Highview Avenue, and Church Street. All are local Town roads.

<u>Enactment of Local Law No. 5</u>

In 2016, Clarkstown adopted Local Law No. 5 of 2016 ("LL5"), which covered a number of matters relating to the Zoning Code of the Town. LL5 added Section 290-20.I(7) to the Zoning Code, which provides that in residential districts, "[a]ll uses other than single-family residences

---

[3] *Id.*

[4] *See* Exhibit A to Counsel's Opinion Letter included in the Building Permit Application (Exhibit 2 hereto) for a copy of ABY's provisional and permanent charter certificate.

[5] *See* ABY's Narrative Summary included in the Building Permit Application (Exhibit 2 hereto).

[6] *Id.*

shall have minimum frontage of 100 feet and access to either a state or county major or secondary road as classified on the Town Official Map." As described in more detail below, the Town maintains that this provision now renders GBC's century and a half of continued use at the GBC Campus illegal.

The enactment of LL5 came at a particularly inopportune time for GBC.[7]  Its membership was declining and it was having difficulty generating sufficient revenue to maintain its campus. *Id.*  Therefore, GBC decided to sell.  Section 290-20.I(7), as erroneously interpreted by the Building Inspector since "school[s] of general instruction" are permitted as of right,[8] combined with the fact that the building is specifically designed as a place of worship with an educational annex, severely restricted GBC's market.  *See supra* note 7.  GBC attempted to sell to the Town of Clarkstown and the Nanuet Union Free School District ("Nanuet UFSD"), both of which are exempt from the restrictions of LL5.  *Id.*  Neither attempted sale of the Property was successful. *Id.*

ABY does not know why the Nanuet UFSD was interested in the site, but it does know the Town's intent.  According to information received from GBC's real estate broker, Paul Adler, the Town intended to use the GBC Campus as a senior citizen center.  *Id.*  It also sought to share the Property, and possibly the cost of purchase, with the Rockland County Sewer District No. 1 (the "Sewer District").  *Id.*  The Sewer District planned to use the GBC Campus for offices and as an education/training center – in other words, a school.  *Id.*

---

[7] *See* ABY's Narrative Summary included in ABY's Appeal and Application for an Area Variance (Exhibit 3 hereto) at 4.

[8] GBC was allowed to continue its use in its present location as a prior non-conforming use under section 290-29 of the Zoning Code, but only if it did not cease such use for a continuous period of one year.  ABY disputes this, as the use is permitted in the district as of right, and because LL5 only added a *bulk* requirement; it did not change the *use* requirements.

GBC then went to the open real estate market.  *Id.*  It was able to attract only two serious prospects.  *Id.*  The first was a Buddhist religious group, which intended to use the GBC Campus for Buddhist religious worship services and education.  *Id.*  That group decided not to go forward. *Id.*  The second was ABY.

The enactment of LL5 adversely impacts not only ABY, but also a number of existing private schools in Clarkstown.[9]  Of eleven identified private schools, at least four are not located on eligible roads, including Rockland Christian School, St. Anthony School, and Blue Rock School.  Moreover, if LL5's restrictions were to be applied to public schools, then eighteen of the twenty-one identified public schools in Clarkstown would be on ineligible roads.  *Id.*

<u>ABY Faces Firestorm of Local Opposition and Discriminatory Backlash</u>

Unfortunately, vocal members of the Nanuet community, Clarkstown residents in general, as well as political figures in the area, have opposed the potential sale.  At rallies and on social media, ABY has been told "we don't want you."[10]  In a post on its Facebook page, the Rockland County Republican Committee called ABY's move to Nanuet a "hostile invasion."  *See* Exhibit 5.

GBC's Pastor, William French, has also been publicly criticized for daring to sell the Property to an Orthodox Jewish institution.  *See* Exhibit 3 at 5.  Representatives from ABY and GBC voluntarily appeared at a Town Board meeting on November 26, 2018, to try to assuage some of the community's concerns.  ABY explained its curriculum, which is virtually identical to

---

[9] See Exhibit 4 for a map showing the locations of identifiable private and public schools in Clarkstown and whether they are on a State or country major or secondary road.

[10] SHOCKING FOOTAGE: Angry Residents Shout "We Don't Want You" at Rabbi Trying to Build Girls School in Nanuet – "That Was The Attitude in PITTSBURGH", https://www.theyeshivaworld.com/news/general/1631889/shocking-footage-angry-residents-shout-we-dont-want-you-at-rabbi-trying-to-build-girls-school-in-nanuet-that-was-the-attitude-in-pittsburgh.html, at 2:34.

the curricula of other local religious schools such as Albertus Magnus and St. Anthony's.  Three of ABY's accomplished graduates were introduced: the owner of a small business in the fashion industry, a pre-med student, and an MBA candidate.  While some residents were careful to couch their objections in terms of increased traffic (a total of eight buses, twice per day, plus some staff), others could barely contain their hostility towards an Orthodox Jewish school having the audacity to invade *their* town, stating "go away, we don't want you, go back to Ramapo."[11]  The local opposition formed a new citizens' group called "Citizens United to Protect Our Neighborhood," or "CUPON" of Greater Nanuet, for the express purpose of preventing ABY from operating its school.  CUPON has established a Facebook page, held meetings at schools operated by the Nanuet UFSD, and hired counsel.  At a CUPON meeting, counsel for CUPON felt it necessary to tell its members that they had "adversaries," not "enemies," and that they should not operate on the basis of "hate."  But, he told the crowd, "If you can't get that hate out of your heart, then please keep your mouth shut."[12]

CUPON has also started a "GoFundMe" campaign.[13]  As of  March 2, 2019, CUPON's purpose was clearly stated on its fundraising page: "Nanuet has become united in its efforts to ensure that the sale of the Grace Baptist Church is one that makes sense for the town, its residents, and their children's future."[14]

---

[11] *Id.*

[12] A video of Stephen Mogel, Esq.'s presentation was posted to CUPON of Greater Nanuet's Facebook page at https://www.facebook.com/CTWTDWYTK/videos/2222326208086174/, at 3:10.

[13] *See* https://www.gofundme.com/cupon-of-greater-nanuet.  As of May 9, 2019, CUPON had raised $13,230 of its $25,000 goal. *See* Exhibit 6.

[14] ABY's Narrative Summary included in ABY's Appeal and Application for an Area Variance (Exhibit 3 hereto) at Exhibit 4.

CUPON also created a petition on Change.org entitled, "Petition against Grace Baptist Church becoming a school."[15]  As of May 9, 2019, the petition had been signed by 4,820 people.

<u>ABY Submits a Permit Application, Which the Building Inspector Denied</u>

Despite this hostile climate, ABY persisted.  In conformance with the procedures of the Clarkstown Building Department, which requires an updated Use Permit / Certificate of Occupancy any time a non-residential building changes hands, ABY submitted an application to the Clarkstown Building Department for a permit to make some needed improvements to the buildings.  *See* Exhibit 2.  The Building Permit Application was accompanied by a description of ABY's proposed use of the Property, the sworn French Affidavit describing the history of the Property, and an opinion letter from ABY's land use counsel regarding the applicable law.

These accompanying materials were not considered.  The Building Plans Examiner did not dispute any of the facts set forth in the Building Permit Application or its accompanying affidavit.  Rather, he summarily concluded that, because the Building Department had no records of a New York State Fire Inspection on the Property since 1990, GBC's school use at the Property had ceased.[16]  And, because the Building Inspector interpreted LL5 to create new use requirements – a determination that is wholly erroneous – he denied the building permit.

<u>Delayed Hearing of Appeal</u>

On March 8, 2019, following denial of the Building Permit Application, ABY submitted an appeal and application for an area variance to the ZBA.  Despite the fact that the appeal included

---

[15] *See* https://www.change.org/p/legislators-of-nanuet-petition-against-the-grace-baptist-church-becoming-a-school (attached hereto as Exhibit 7).

[16] Clarkstown Town Code section 290-29C (non-conforming use) provides, "Discontinuance of use. If active and continuous operations are not carried on with respect to a nonconforming use during a continuous period of one year, the building or land where such nonconforming use previously existed shall thereafter be occupied and used only for a conforming use."

all elements and documents required by the Zoning Code and published rules of the ZBA, the ZBA declined to schedule a hearing and responded on March 19, 2019 with a new requirement for ABY to submit a survey of the Property.  In a letter to the ZBA on April 4, 2019, ABY reiterated that a survey was not required by the Zoning Code or the published rules of the ZBA, that no survey was currently available, but that ABY would commission the preparation of a survey at great expense and time.  On May 7, 2019, ABY submitted the survey to the ZBA.

Cancellation of Contract

Prior to denial of the Building Permit Application, ABY had arrived at a non-binding agreement with a lender to finance ABY's purchase of the Property.  Following denial of the Building Permit Application, that agreement was revoked by the lender.  Given the battle ABY was now facing to obtain the permits required by the ZBA and the undue delay imposed by the ZBA in scheduling a hearing, ABY experienced difficulty obtaining alternative means of financing their acquisition.  Ultimately, GBC terminated the contract on May 16, 2019.

**ARGUMENT**

## I.     **ABY's Appeal Is Still Alive And The ZBA Must Consider Its Application**

The ZBA should consider ABY's appeal and application for an area variance because the ZBA's judgment will necessarily bind future property interests in this Property.  Generally, the loss of a complete property interest during the appeals process does not render a party's claims moot because "[t]he issues are not academic since the judgment is binding on the new owners." *Froehlich*, 159 A.D.2d at 607.  Here, declaratory relief on the misapplication of a Clarkstown zoning ordinance, as well as an area variance determination, will affect future permit applicants for the Property and other similarly situated properties, including ABY's own interest in rekindling its purchase of the Property following the grant of a permit or variance.

Moreover, the ZBA should continue to hear this appeal because the nature of this action is capable of repetition yet evades review.  Claims are not moot where "the rights of the parties will be directly affected by the determination of the appeal and the interest of the parties is an immediate consequence of the judgment." *Truscott v. City of Albany Bd. of Zoning Appeals*, 152 A.D.3d 1038, 1039 (3d Dep't 2017).  Furthermore, claims are not deemed moot where there is:

> (1) a likelihood of repetition, either between the parties or among other members of the public; (2) a phenomenon typically evading review; and (3) a showing of significant or important questions not previously passed on, i. e., substantial and novel issues.

*Hearst Corp. v. Clyne*, 50 N.Y.2d 707, 714-15 (1980); *see Cmty. Bd. 7*, 84 N.Y.2d at 154 (applying the *Hearst* factors and preserving plaintiffs' claims concerning subsequently withdrawn FOIL requests for a later scaled down property plan). ABY's appeal must proceed.  ABY's rights and interests will be directly affected by the ZBA's determination, as granting a permit or variance will have the immediate consequence of placing ABY in a stronger position to recommence discussions with GBC to purchase the Property.  Moreover, all three *Hearst* elements favor ABY: there is a strong likelihood that ABY *and* other members of the public will revisit the very issues in this appeal for both this Property and future properties facing questions of applicability of Clarkstown's zoning ordinance at issue and accessibility to an area variance.  *See, e.g., Shellfish, Inc. v. N.Y. State Dep't of Envtl. Conservation*, 76 A.D.3d 975, 978 (2d Dep't 2010) (applying the *Hearst* factors to plaintiff's fishing permitting challenge concerning an already-completed fishing season, and finding no mootness where "[i]t is also conceivable that a similarly situated permit applicant will face a similar dilemma . . . which will negatively affect future permit requests.").  This is a notable phenomenon that would typically evade review – zoning authorities could delay proceedings and misapply their zoning ordinances at an early stage, create uncertainty in the marketplace, and cause relevant parties to lose their prospective or current property interests before

exhausting their respective zoning appeals.  Finally, this appeal raises the novel issues of whether Local Law No. 5 of 2016 in fact creates new *use* requirements – a determination that is wholly erroneous for all of the reasons ABY stated in its appeal – and whether use of a property is deemed to have ceased merely because the Town Building Department has no records of a New York State Fire Inspection.  *See Shellfish*, 76 A.D.3d at 978 (finding "significant and novel questions which should be addressed" where "the contentions raised by the parties regarding the interpretation and implementation of the various statutes and regulations applicable to the issuance of the subject permits" were at issue).  Accordingly, because ABY meets all three *Hearst* elements, and because public policy should not incentivize towns to engage in delay tactics to moot out property interest-related claims, the ZBA should – and is lawfully required to – continue to consider ABY's appeal and application.

## II.    The ZBA Is Required To Reasonably Accommodate ABY's Free Exercise Rights Under The United States And New York Constitutions

ABY, through its *pro bono* attorneys, incorporates by reference – and agrees with – arguments articulated in the Narrative Summary submitted to the ZBA on March 8, 2019 in connection with ABY's appeal of the Building Plans Examiner's erroneous determination and ABY's application for an area variance.  *See* Exhibit 3.  ABY seeks to emphasize that controlling precedent – including from within this Judicial Department – requires the ZBA to reasonably accommodate its members' free exercise rights, as guaranteed by the First Amendment of the Constitution of the United States and Article I, Section 3 of the New York State Constitution.  The U.S. Constitution, applicable to the States via the Fourteenth Amendment, requires state and local governments to make reasonable accommodations for religious practice.  As the U.S. Supreme Court has held, the Constitution does not "require complete separation of church and state; *it*

*affirmatively mandates accommodation*, not merely tolerance, of all religions, and forbids hostility toward any." *Lynch v. Donnelly*, 465 U.S. 668, 673 (1984) (emphasis added).

New York courts have clearly and indisputably articulated:

> ***New York courts have long recognized the principle of accommodation*** . . . "[t]he free practice of one's religion is a right deeply cherished by the citizens of our State and Nation, and one that is zealously protected by the free exercise clause of the First Amendment." New York courts have repeatedly held that by their very nature religious institutions are beneficial to the public welfare and consequently proposed religious uses should be accommodated.

*Smith v. Cmty. Bd. No. 14*, 128 Misc. 2d 944, 949 (Sup. Ct. Queens Cty. 1985), *aff'd*, 133 A.D.2d 79 (2d Dep't 1987) (emphasis added) (internal citation omitted).   Furthermore, the Second Department has, on numerous occasions, recognized that zoning board decisions are arbitrary and capricious where they have failed to accommodate religious practice.  For example, in *St. Thomas Malankara Orthodox Church, Inc. v. Board of Appeals*, 23 A.D.3d 666 (2d Dep't 2005), the Town of Hempstead Board of Appeals denied a church's application to waive certain off-street parking requirements.  The Second Department affirmed the Supreme Court's holding that the Zoning Board's determination was "arbitrary, capricious, and an abuse of discretion," *id.* at 667, since a local zoning board was "required to suggest measures to accommodate [the] proposed religious use while mitigating [the] adverse effects on [the] surrounding community to [the] greatest extent possible." *Id.*  As the Court explained, "[i]t is well settled that . . . 'greater flexibility is required in evaluating an application for a religious use than an application for another use and every effort to accommodate the religious use must be made.'" *Id.* at 666 (internal citations omitted).

Similarly, the Second Department held in *Harrison Orthodox Minyan, Inc. v. Town Board of Harrison*, 159 A.D.2d 572 (2d Dep't 1990) that the town board's denial of a permit was "arbitrary, capricious and an abuse of discretion" where the board failed to make any attempts to accommodate a special use exception permit in connection with Petitioner's use of a private

12

residence for religious services.  The Court noted that "more flexibility is required and efforts must be made to accommodate the religious use, if possible" and that "[e]very effort must be made to accommodate the religious use subject to conditions reasonably related to land use."  *Id*. at 573 (internal citations omitted).  Because the town board failed to "suggest measures to accommodate the planned religious use," the Second Department set aside its unconditional findings denying the application.  *Id*. at 573 (internal quotations omitted).

In *East End Eruv Ass'n, Inc. v. Town of Southampton*, No. 14-21124, 2015 WL 4160461 (N.Y. Sup. Ct. Suffolk Cty. June 30, 2015), a case in which Weil represented the petitioner, the Court explicitly stated:

> It is well-settled that, while religious institutions are not exempt from local zoning laws, greater flexibility is required in evaluating an application for a religious use and every effort to accommodate the religious use must be made . . . Thus, a zoning board of appeals may not merely deny an application for a religious use unless the use is dangerous or contrary to the public welfare of the community. Instead, **when a variance is denied, the board has an "affirmative duty … to suggest measures to accommodate the planned religious use**, without causing the religious institution to incur excessive additional costs, while mitigating the detrimental effects to the health, safety and welfare of the surrounding community."

*Id*. at *6 (internal citations omitted) (emphasis added).

The Court held that the ZBA's failure to suggest measures to accommodate the planned religious use "was improper and constituted an abuse of the ZBA's discretion as it ignored its affirmative duty to suggest measures to accommodate the EEEA's variance applications." *Id*.

Numerous additional New York and Second Department cases reaffirm the ZBA's obligation to accommodate religion.  *See, e.g.*, *Westchester Reform Temple v. Brown*, 22 N.Y.2d 488, 493-97 (1968) (reversing the Planning Commission's rejection of synagogue's expansion plan, concluding that "under the guise of reasonable regulation, [the Planning Commission] has unconstitutionally abridged religious freedom"); *Richmond v. City of New Rochelle Bd. of Appeals*

*on Zoning*, 24 A.D.3d 782, 783 (2005) (affirming grant of area variance as rational and not arbitrary and capricious because the Board "did not improperly elevate the religious concerns of the applicant over the public health, safety and welfare" of the community, and the board instead rightly made an effort to accommodate the religious use, as required by the law); *N. Shore Hebrew Acad. v. Wegman* 105 A.D.2d 702, 705 (2d Dep't 1984) (holding that board of trustees unconstitutionally applied zoning ordinances to prohibit religious institution from expanding its programs, and finding that "stricter scrutiny" applies to such zoning restrictions).

In light of this voluminous case law, the ZBA must make a meaningful effort to accommodate ABY's religious exercise through its intended operation of a Jewish day school on the Property.  This is particularly appropriate in light of ABY's continued commitment to working with the Town to ensure a smooth transportation process to and from the school.  *See* Exhibit 3 at 18.  Nor should the ZBA ignore the troubling evidence that the Town has, far from accommodating ABY's religious exercise, actively sought to infringe upon those rights.

Furthermore, if the ZBA places ABY on unequal terms with other applicants, and/or substantially burdens ABY's religious exercise, it would subject the Town of Clarkstown to potential violations of both the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA).  In early 2019, Weil, secured a RLUIPA recovery on behalf of its client, Congregation Shomrei Torah of Clifton, NJ.  In response, Clifton's counsel created a primer – attached hereto as Exhibit 8 – for educating municipalities on avoiding RLUIPA violations.  The primer makes clear that "A decision of a local land use board which substantially burdens the right to exercise a religion is presumptively unconstitutional, will be overturned by a federal district court, and money damages will be awarded to the religious congregation, including attorney's fees, compensation damages and, in serious cases, punitive damages." *Id.*  ABY urges the ZBA and

other Clarkstown officials to carefully read this primer, and to also take into account Congress'

legislative intent in passing RLUIPA, which was to forestall this exact type of scenario. As

Senators Kennedy and Hatch observed:

> Sometimes, zoning board members or neighborhood residents explicitly offer race or
> religion as the reason to exclude a proposed church, especially in cases of black churches
> and Jewish shuls and synagogues. More often, discrimination lurks behind such vague and
> universally applicable reasons as traffic, aesthetics, or not consistent with the city's land
> use plan.

146 CONG. REC. S7774–01 (daily ed. July 27, 2000) (Joint Statement of Sen. Orrin Hatch and

Sen. Edward Kennedy).

Moreover, should the Town be found to have violated RLUIPA, it will be subject to fee-

shifting and substantial monetary liability. *See, e.g.*, *Reaching Hearts Int'l, Inc. v. Prince George's*

*Cty.*, 478 F. App'x 54 (4th Cir. 2012); *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338

(2d Cir. 2007); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp.

3d 352 (S.D.N.Y. 2015).

Accordingly, ABY strongly urges the Town to adhere to federal and state law, as well as

its rights afforded by the U.S. and New York State Constitutions.  ABY expressly reserves all

rights and remedies it may have against the Town, its officers, agents, boards, commissions and

employees, including the right to seek redress under the Religious Land Use and Institutionalized

Persons Act, 42 U.S.C. § 2000cc.  This reservation of rights both survives and includes ABY's

loss of a complete interest in the Property, which ABY maintains was due to the Town's

discriminatory actions. *See e.g.*, *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651

F.3d 1163 (9th Cir. 2010); *Shellfish*, 76 A.D.3d 975; *Froehlich*, 159 A.D.2d at 607; *Hearst*, 50

N.Y.2d at 714–15.

Dated:      June 6, 2019                    */s/ Yehudah L. Buchweitz*
                                            Yehudah L. Buchweitz
                                            David Yolkut
                                            Robert G. Sugarman
                                            WEIL, GOTSHAL & MANGES LLP
                                            767 Fifth Avenue
                                            New York, NY 10153
                                            (212) 310-8000
                                            yehudah.buchweitz@weil.com
                                            david.yolkut@weil.com
                                            robert.sugarman@weil.com

                                            *Co-Counsel for Applicant*