# EXHIBIT   HH

LAW OFFICE

# Ira M. Emanuel, P.C.

Four Laurel Road, New City, NY 10956
Tel: 845.634.4141  Fax: 845.634.9312
E-mail: Info@EmanuelLaw.com
www.EmanuelLaw.com

Counsel to
Freeman & Loftus, RLLP

Amy Mele, Esq.
*Of counsel*

August 6, 2019

Supervisor and Town Board
Town of Clarkstown
10 Maple Avenue
New City, NY 10956

      Re: Proposed Local Law Amending Various Sections of Chapter 290 (Zoning
           Code) – Public Hearing to be held on August 6, 2019

Dear Supervisor Hoehmann and Town Board Members:

      I represent Ateres Bais Yaakov Academy of Rockland (ABY) and other
similarly situated entities. I write in opposition to the proposed local law described
above, and that this letter be incorporated into the record of the public hearing on
this matter.

      This proposed local law builds on existing provisions of the Zoning Code,
which, as I have previously opined, violate New York State and federal law or will
result in the violation of these laws when applied. These existing provisions require
that, in most residential districts of the Town, all uses other than single family
homes must be located on State or County major or secondary roads.[1]

      Existing provisions also made it clear that this restriction was a bulk or area
restriction, for which relief could be provided via an area variance from the Zoning
Board of Appeals.

      This proposed local law now purports to designate this restriction as a use
restriction, necessitating a use variance from the ZBA if relief is to be granted. Such
a designation is contrary to the Town Law and case law defining use and area
restrictions, and will also further violate State case law, federal law, and the State
Constitution when applied to religious and educational uses.

---

[1] The only exception appeared to be in the R-10 district, where the restriction applied only to two-
family homes. The proposed local law eliminates the exception for the R-10 district. Proposed Local
Law, § 6.

Proposed Amendment to Zoning Code                                    Page 2
August 6, 2019

### Use vs. Area Restrictions

In 2016, the Town of Clarkstown adopted Local Law No. 5 of 2016 (LL5). LL5 covered a number of matters relating to the Zoning Code of the Town. Of relevance to this discussion is Section 290-20.I(7), which provides that in residential districts, "[a]ll uses other than single-family residences shall have minimum frontage of 100 feet and access to either a state or county major or secondary road as classified on the Town Official Map."

Section 290-20.I(7) is part of Article V ("Bulk Regulation") and is contained in a larger section entitled, "Additional Bulk Regulations." Among the other bulk regulations included in § 290-20 are: "Additional required yard regulations," bulk requirements for "Lots divided by district boundary" and "Lots within 25 feet of the boundary for a more restrictive district," "Courts," "Spacing of buildings," bulk requirements for multi-family residences ("MF") and active adult residential districts ("AAR"); bulk requirements for regional shopping districts ("RS"); and bulk requirements for home occupations, "keeping domestic animals" and "[r]etail/commercial agriculture allowable operations" in residential districts.

LL5 also added Note 48 to the *Bulk* Table, which provides: "These uses shall have minimum frontage of 100 feet and access to either a state or county major or secondary road as classified on the Town Official Map." Notably, the *Use* Tables, which were also amended by LL5, do not contain this provision.

In addition, by inserting a special provision applying Note 48 to one specific type of use – loading docks for dormitories[2] – the drafters further evidenced their intent to make § 290-20.I(7) a *bulk* requirement rather than a *use* requirement. For these specific loading docks, "Ingress and egress roads shall be from a county major or secondary road. A variance from this provision shall be deemed a *use* variance." (emphasis added).

New York courts have applied the distinction between use and bulk regulations to locational requirements. For example, in *Real Holding Corporation v. Lehigh*,[3] the Court of Appeals held that relief from the Town Code provisions which mandated 1,000 feet between a gasoline filling station and the boundary line of certain residentially zoned lands and 2,500 feet between gasoline filling stations constituted an area variance, and was not a use variance.

The courts have also distinguished between non-conforming uses and non-complying bulks. In *Amzalak v. Inc. Village of Valley Stream*, for example, the Village sought the demolition of a non-complying building that had been vacant for some time. The court held that nothing in the Zoning Code required:

---

[2] § 290-17.BB(8)(b)[1], enacted in LL5 of 2016, § 13.

[3] 2 N.Y.3d 297, 299 (2004).

the demolition [upon] cessation of use of a non-conforming building for
its non-use for any period. It is limited solely to the termination of the
right to use a building in a particular manner. This ordinance must be
strictly construed. * * *

Since it is the building and not the use thereof which does not
conform to the ordinance, summary judgment is granted to the
[property owner, and the building was permitted to remain despite its
non-complying bulk].[4]

In *Dawson v. Zoning Board of Appeals of Southold,*[5] the Second Department
relied on the *Amzalak* decision above. Ms. Dawson owned property on which was
located a primary residence and a cottage used as a secondary residence. The
Village required her to obtain area variances, which the ZBA conditionally granted.
Citing *Amzalak*, the Appellate Division held that the cottage "constituted a
nonconforming building rather than a nonconforming use." Since the ZBA
"unreasonably and erroneously determined that the cottage fell into the latter
category," it incorrectly focused on the cessation of use. The Appellate Division
therefore held that Ms. Dawson was entitled to a certificate of occupancy and
annulled the ZBA's determination.

Most recently, and most clearly, the Second Department addressed this issue
in *Matter of Route 17K Real Estate, LLC, v. Zoning Board of Appeals of the Town of
Newburgh.*[6] In that case, a property owner wished to build a hotel. The Town of
Newburgh required hotels to have its "principal frontage" on a state or county
highway. The subject parcel lacked the required "principal frontage", and therefore
sought, and obtained, an area variance from that requirement.  A neighboring
property owner sued, claiming that the proper remedy was a use variance.

Both the Supreme Court and the Appellate Division dismissed this claim:

Contrary to the petitioners' contention, the ZBA properly treated
RAM's application as entirely for area variances rather than, in part,
for a use variance. Pursuant to Town Law § 267(1)(b), an area variance
is defined as the "authorization by the zoning board of appeals for the
use of land in a manner which is not allowed by the dimensional or
physical requirements of the applicable zoning regulations" (emphasis
added). One aspect of RAM's request for a variance related to a
provision of the Town's Zoning Law which required that a hotel have
its "principal frontage" on a state or county highway (see Town of
Newburgh Town Code § 185-27[c] [1]). We agree with the ZBA and the
Supreme Court that the "principal frontage" requirement is a "physical

---

[4] *220 N.Y.S.2d 113, 114 (Sup. Ct., Nassau Co. 1961).*
[5] 12 A.D.3d 444, 785 N.Y.S.2d 84 (2d Dept. 2004).
[6] Case No. 2017-04647, decided January 30, 2019.

requirement," rather than a use restriction, and that RAM's
application is thus properly regarded as one for an area variance.[7]

Further, placing the restriction in a Use Table, as proposed in Section 7 of the
proposed local law, does not mean that the restriction is a use restriction. Parking
requirements, often placed in Use Tables, have nonetheless been determined to be
bulk requirements when applied to uses permitted in the district.[8]

Thus, it is clear that the locational requirements of the Zoning Code as set
forth in section 290-20.I(7) and Note 48 to the Bulk Table are *bulk* requirements.
The Town has no authority to convert them to use requirements simply by calling
them use requirements. Such an attempt violates the definitions in the Town Law
and the case law cited above.

### *Federal Law*

Religious uses, including but not limited to houses of worship and religious
schools, are protected under the Religious Land Use and Institutionalized Persons
Act of 2000 ("RLUIPA"), 42 USC § 2000cc.

Under RLUIPA, a government may not use land use regulations to impose a
"substantial burden" on religious uses in the absence of a "compelling governmental
interest" exercised using the "least restrictive means".[9]

The statute applies whenever

the substantial burden is imposed in the implementation of a land use
regulation or system of land use regulations, under which a
government makes, or has in place formal or informal procedures or
practices that permit the government to make, individualized
assessments of the proposed uses for the property involved.[10]

The determination of whether a person or entity may use a property for a
religious use is clearly an "individualized assessment" of the proposed use of the
property.

Government may not determine what a religious use needs, nor may it
regulate its internal operations or religious practices.[11]

---

[7] *Id.,* at p 2.
[8] *Matter of Colin Realty Co., LLC v. Town of North Hempstead,* 24 NY3d 96, 996 N.Y.S.2d 559
(2014).
[9] *Westchester Day School v. Village of Mamaroneck,* 504 F.3d 338, 349 (2d Cir. 2007); 42 USC §
2000cc-2(b).
[10] 42 USC § 2000cc(a)(2)(C).
[11] *Bikur Cholim, Inc. v. Village of Suffern,* 664 F.Supp.2d 267, 285 (SDNY 2009).

Proposed Amendment to Zoning Code                                      Page 5
August 6, 2019

Government may not discriminate in favor of non-religious uses,[12] nor may it favor one religious use over another religious use.[13]

A determination based on location (e.g., barring new religious facilities from locations not on eligible roads) discriminates in favor of established religious facilities and against new religious facilities in the same location or having the same location characteristics.

Government may not "implement a land use regulation that * * * unreasonably limits religious assemblies, institutions, or structures within a jurisdiction."[14]

From the creation of the Town of Clarkstown through 2016, and from the adoption of the first Clarkstown Zoning Code through 2016, there was no need to limit the location of schools and religious institutions to "State or County major or secondary roads". In addition, the 2016 enactment did not require institutions that did not meet the location requirements to relocate. The 2016 enactment was clearly aimed at limiting the number and location of religious institutions within the Town of Clarkstown, and, by doing so, to keep them out of the Town.

A government may "avoid the preemptive force" of RLUIPA by changing the policy or practice that results in a substantial burden on religious exercise, retaining the policy or practice and exempting the substantially burdened religious exercise, by providing exemptions from the policy or practice for applications that substantially burden religious exercise, or by any other means that eliminates the substantial burden.[15]

It is the responsibility of the Town, and therefore of its agencies, boards and officials, to find ways to avoid the negative results prohibited by federal law. Enactment of the proposed local law is exactly the opposite of the Town's responsibility under RLUIPA.

### *New York Law*

New York protects both religious educational uses. New York case law, based on long-standing interpretations of the New York State Constitution, has determined that educational and religious uses are "inherently beneficial" to the residential areas in which they are located.[16]

---

[12] 42 USC § 2000cc-1(b)(1).
[13] *Id.* at 1(b)(2).
[14] *Id.* at 1(b)(3).
[15] 42 USC § 2000cc-3(e).
[16] *Cornell University v. Bagnardi,* 68 N.Y.2d 583, 510 N.Y.S.2d 861 (1986).

Proposed Amendment to Zoning Code                                       Page 6
August 6, 2019

New York requires that "every effort to accommodate the religious [and educational] use must be made."[17]

This requirement is similar to that of federal law, and may actually impose a greater duty upon the Town.

A legislative attempt to exclude educational and religious uses from a residential area is unconstitutional.[18]

A review of the allowable uses in the various R districts shows that, except for one- and two-family homes and governmental or utility uses, the only other allowed uses are for schools, places of worship, and cemeteries.[19]

The current Zoning Code, as amended by Local Law No. 5 of 2016 and as proposed to be amended now, is a direct attempt to limit and exclude educational and religious uses from the R Districts of the Town of Clarkstown. While this may be appropriate for some "non-residential" uses, it is clearly contrary to the New York State Constitution when applied to religious and educational uses.

Both federal and State courts have ruled that potential impacts, unless they create a safety hazard, are insufficient to bar the establishment of a school in a location.[20] In particular, the New York State Court of Appeals has ruled that "typical" potential concerns are insufficient to outweigh the public benefit of a religious institution's presence in a neighborhood:

> The presumptive value of religious facilities must be balanced against any actual detriment to the public health, safety or welfare, bearing in mind that typical hazards of traffic congestion, noise, diminution in property values, and the like, are generally insufficient to outweigh the public benefit of religious institutions and the constitutional protection to which such organizations are entitled.[21]

---

[17] *Rosenfeld v. ZBA of Town of Ramapo,* 6 A.D.3d 450, 774 N.Y.S.2d 359 (2d Dept 2004) quoting *Genesis Assembly of God v. Davies,* 208 A.D.2d 627, 617 N.Y.S.2d 202 (2d Dept 1994).

[18] *Albany Preparatory Charter School v. City of Albany,* 10 Misc.3d 870, 805 N.Y.S.2d 818 (Sup. Ct., Albany Co., 2005), aff'd as modified 818 N.Y.S.2d 651 (3d Dept 2006).

[19] There are some other uses that are permitted as accessory uses to the listed allowed uses.

[20] *Westchester Day School v. Village of Mamaroneck,* 417 F.Supp. 477 (SDNY 2006).

[21] *Matter of Westchester Reform Temple v Brown,* 22 N.Y.2d 488, 496 (1968), also cited in *High Street United Methodist Church v. City of Binghamton,* 715 N.Y.S.2d 279, 283 (Sup. Ct., Broome County, 2000).

The Court of Appeals went on to say, "where an irreconcilable conflict exists between the right to erect a religious structure and the potential hazards of traffic or diminution in value, the latter must yield to the former."[22]

Again, the proposed amendment, and the existing Zoning Code, are directly contrary to New York case law, which is grounded in the New York State Constitution.

### *Potential Impact of the Proposed Amendment*

If the proposed amendment is enacted, it will render each and every use in the affected residential districts, other than single family homes, as prior non-conforming uses unless they are located on a State or County major or secondary road. Any attempt to enlarge or expand these uses, including existing religious and educational uses, will require a use variance.[23] Any affected religious or educational use that ceases operation for more than one year loses its status as a permitted non-conforming use.[24]

The effect of the foregoing is financially devastating to existing affected institutions. With the exception of relatively small buildings, it is financially impossible to convert a house of worship or school to a single family home.

It is also virtually impossible for any affected institution, whether new or existing, to meet the requirements for a use variance.

Town Law § 267-b.2 provides the criteria for obtaining a use variance:

(b) No such use variance shall be granted by a board of appeals without a showing by the applicant that applicable zoning regulations and restrictions have caused unnecessary hardship. In order to prove such unnecessary hardship the applicant shall demonstrate to the board of appeals that for each and every permitted use under the zoning regulations for the particular district where the property is located, (1) the applicant cannot realize a reasonable return, provided that lack of return is substantial as demonstrated by competent financial evidence; (2) that the alleged hardship relating to the property in question is unique, and does not apply to a substantial portion of the district or neighborhood; (3) that the requested use variance, if granted, will not alter the essential character of the

---

[22] *Westchester Reform Temple,* at 497, reiterating the Court's holding in *Matter of Diocese of Rochester v Planning Board,* 1 N.Y.2d 508.
[23] *See,* Clarkstown Zoning Code, § 290-29.A.
[24] Clarkstown Zoning Code, § 290-29.C.

Proposed Amendment to Zoning Code                                                    Page 8
August 6, 2019

neighborhood; and (4) that the alleged hardship has not been self-created.

Each of the four criteria must be met in order to obtain a use variance.

It is settled law that a person or entity seeking to use a property for a use otherwise prohibited by the Zoning Code has created his/her/its own hardship and is therefore not eligible for a use variance.[25]

It may also be impossible for religious and educational institutions, which are not-for-profit entities, to show that they cannot obtain the required reasonable return from any permitted use.

These impacts are not limited to one or two sites. Attached as Exhibit 1 is a map and chart of existing affected schools. There are 22 schools on ineligible roads within the Town of Clarkstown. While most of these schools are public schools, and therefore exempt from the Zoning Code, they become non-conforming if they are closed and sold to a private institution.

Attached as Exhibit 2 is a map and chart of existing affected houses of worship. There are 14 houses of worship that this office has been able to identify as affected.

The adoption of the proposed local law will place a substantial burden on each of these 22 schools and 14 houses of worship, in violation of State and/or federal law.

The students, faculty and staff of these schools, the congregants and clergy of these houses of worship, and the taxpayers of the Town of Clarkstown, should be spared the impact of this improvident act.

On behalf of my clients, and myself (as a Clarkstown resident), I urge you to abandon this proposed local law and to revisit Local Law No. 5 of 2016.

Very truly yours,

Ira M. Emanuel

CC:    Client
       Kaela Dahan, Esq.
       Yehudah Buchweitz, Esq.
              Weil, Gotschal & Manges

---

[25] *See, Expressview Development, Inc. v. Town of Gates Zoning Board of Appeals,* 147 A.D.3d 1427, 46 N.Y.S.3d 725 (4th Dept. 2017), 2 Salkin, New York Zoning Law and Practice (4th ed.) § 29:10.

[Map of Schools in Clarkstown

Found at Exhibit E]

[Map of Houses of Worship in Clarkstown

Found at Exhibit JJ]