# EXHIBIT II

Richard H. Sarajian*
Alan G. Rosenblatt
Brian J. Quinn
John E. Finnegan
David Warren*
Lino J. Sciarretta*

OF COUNSEL:
Anthony Montalbano
Thomas A. Condon
William Frank

Montalbano, Condon & Frank, P.C.

ATTORNEYS AND COUNSELORS AT LAW

67 North Main Street • New City, New York 10956-8070

PHONE (845) 634-7010 FAX (845) 634-8993

*Kurt E. Johnson
Martin Butcher
**Andrew Ross
Rudolph O. Zodda, III

*ADMITTED IN NY & NJ
**ADMITTED IN NY & MA

August 6, 2019

**VIA EMAIL**

Supervisor George Hoehmann and Members of the Town Board
Town of Clarkstown
10 Maple Avenue
New City, NY 10956

      Re:    **PH-1. Adopting a Local Law Amending Various Sections of Chapter 290 of the Town Code**

Dear Supervisor Hoehmann and Members of the Town Board:

      We represent various clients before the land use boards throughout the Town and other municipalities in Hudson Valley region. To that end, we write to address our concerns regarding the legality of the proposed local zoning law that is scheduled for a public hearing this evening for the Town Board's consideration. We ask that that this letter be entered as part of the record in connection with this matter.

      As currently drafted, the proposed local law seeks to amend the bulk sections of Chapter 290, Zoning, Article II, "Districts, Zoning Map & Controls"; Article V, "Bulk Regulation"; and Attachment 31, Table 12, Note 48 of the "General Bulk Regulations." In all of the foregoing sections, for all uses other than single-family residences, the Town Board seeks to amend the Zoning Code bulk provisions by inserting the following text: "ingress and egress roads shall be from state or county major or secondary roads as classified on the Town Official Map. *A variance from this provision shall be deemed a use variance*" (emphasis added). It is this last sentence of the proposed local law that we believe runs afoul NY Town Law § 267 and recent case law. If the law is adopted as proposed, we submit it would be arbitrary, capricious and contrary to law.

      Pursuant to NY Town Law § 267(1)(b), an "area variance" is defined as the "authorization

by the zoning board of appeals for the use of land in a manner which is not allowed by the *dimensional or physical requirements* of the applicable zoning regulations" (emphasis added). A "use variance" shall mean "the authorization by the zoning board of appeals for *the use of land for a purpose which is otherwise not allowed or is prohibited* by the applicable zoning regulations." NY Town Law § 267 (1)(a) (emphasis added).

An area variance permits deviation from strict compliance with zoning ordinance requirements for, as an example, the physical characteristics of premises, so long as the purposes for which the premises are intended to be used are permitted by the ordinance. *Croissant v. Zoning Board of Appeals of the Town of Woodstock*, 183 A.D.2d 673 (3rd Dept. 1981). A use variance, on the other hand, involves the utilization of land not permitted by the zoning ordinance. *Id*. The New York Court of Appeals has addressed this distinction between bulk and use. In *Real Holding Corporation v. Lehigh*, 2 N.Y.3d 297 (2004), the Court held that relief from a town code provision that required 1,000 feet between a gasoline filling station and the boundary line of certain residentially zoned lands and 2,500 feet between gasoline filling stations constituted an area variance, and not a use variance.

The Town should be aware of a recent case decided this year by the Appellate Division, Second Department: *Route 17K Real Estate v. Zoning Bd. of Appeals of the Town of Newburgh*, 168 A.D.3d 1065 (2nd Dept. 2019). The *Route 17K* case involves an application dealing with location of hotel's principal frontage. The Town of Newburgh zoning code required that a hotel have its "principal frontage" on a state or county highway (see Town of Newburgh Town Code § 185-27[c][1]). The hotel applied for an area variance from this requirement before the zoning board of appeals ("ZBA"). Petitioners who opposed the hotel argued that a variance from principal frontage was a use variance. In citing NY Town Law § 267 (1)(b), the Appellate Division held, contrary to the petitioners' contention, that the ZBA properly treated the hotel's application as an area variance rather than a use variance. The Court agreed that the "principal frontage" requirement is a "physical requirement" of the applicable zoning regulations, rather than a use restriction. Accordingly, variance from frontage constituted a request for an area variance, not a use variance.[1]

Interestingly, the proposed local law is making ingress and egress from a state or county road, which, like frontage, is a physical characteristic, into a use variance. One can surmise that the reason for doing this is to indirectly ban legitimate non-residential uses in single family zone districts by imposing the use variance criteria in what is truly a "bulk" or "dimensional" requirement.

As the Town Board is aware, the showing required for entitlement to a use variance is a difficult one. In order to obtain a use variance, an applicant must demonstrate that applicable zoning regulations and restrictions have caused unnecessary hardship. In order to prove such unnecessary hardship the applicant shall demonstrate to the zoning board of appeals that for

---

[1] Similarly, parking requirements, have also been determined by the courts to be bulk requirements requiring an area variance and not use variances. *Matter of Colin Realty Co., LLC v. Town of North Hempstead*, 24 NY3d 96 (2014).

Case 7:20-cv-01399-NSR   Document 1-36   Filed 02/18/20   Page 4 of 5

3 | P a g e

each and every permitted use under the zoning regulations for the particular district where the property is located, (1) the applicant cannot realize a reasonable return, provided that lack of return is substantial as demonstrated by competent financial evidence; (2) that the alleged hardship relating to the property in question is unique, and does not apply to a substantial portion of the district or neighborhood; (3) that the requested use variance, if granted, will not alter the essential character of the neighborhood; and (4) that the alleged hardship has not been self-created. NY Town Law § 267-b(2)(b).

Again, by treating ingress and egress as a "use variance," the Town Board is creating a different standard for applicants that is inconsistent with Town Law § 267 and would create unintended consequences. For example, under the current local law as proposed, an applicant for senior housing, which is a use expressly permitted in certain residential zone districts, would have to apply for both area and use variances if it needed a frontage and ingress/egress variances. From a practical and legal standpoint, this wouldn't make sense since senior housing is a permitted use in the Town's residential zone district. Frontage is clearly an area requirement and ingress/egress, which is also an area element, would now be considered a "use." This runs afoul Town Law § 267. How can a ZBA be asked to go through the use variance criteria for "ingress and egress" when the underlying use, senior housing, is expressly permitted in the zone district? This would cause the ZBA to act contrary to law.

Furthermore, the Town is not amending the "uses" permitted in the zone districts but is directly amending provisions of the Town Zoning Code relating to bulk. These are area and not use elements. In fact, Section 290-20(I)(7) of the Zoning Code, which the Town Board seeks to amend, is specifically found in Article V entitled "Bulk Regulation." Here the non-residential uses set forth in the Zoning Code are expressly permitted in the residential zone districts.[2]

Based on the foregoing, the Town Board should not adopt the proposed local law as currently drafted. The area requirements of the Zoning Code as set forth in § 290-20(I)(7) and Note 48 to the Bulk Table are indeed just that, *bulk* requirements. There is no basis in which the Town can treat these physical and dimensional requirements by simply calling them "use" requirements. In that regard, the proposed local law violates the NY Town Law and case law. In addition, this zoning amendment, if approved, should not be applied to applications already

---

[2] As this Board is aware, our firm also represents certain public utilities before the various boards. Public utilities are entitled to certain preferences under the law when it comes to land use. *Consolidated Edison Company of New York, Inc. v. Hoffman*, 43 N.Y.2d 598 (1978); *Cellular Telephone Company v. Rosenberg*, 82 N.Y.2d 364 (1993). A "public utility" has been defined to mean " 'a private business...which provides services so essential to the public interest as to enjoy certain privileges such as eminent domain and be subject to such governmental regulation as fixing of rates, and standards of service' " (2 Anderson, American Law of Zoning § 12.32, at 568–569 [3d ed]). Characteristics of a public utility include (1) the essential nature of the services offered which must be taken into account when regulations seek to limit expansion of facilities which provide the services, (2) operation under a franchise, subject to some measure of public regulation, and (3) logistic problems, such as the fact that the product of the utility must be piped, wired or otherwise served to each user, the supply must be maintained at a constant level to meet minute-by-minute need, and the user has no alternative source, and the supplier commonly has no alternative means of delivery. *Id* at § 12.32, at 569]. This local law, as proposed, could directly impact the nature of services offered by utilities and the public safety resulting from such service.

submitted and/or pending before any boards before the Town.

We would suggest that the Town Board schedule a new public hearing once a revised draft of the local law is ready for distribution, taking into account the legal issues raised herein. We thank you for your time and attention to this matter and look forward to discussing this at tonight's public hearing.

<div style="text-align: right;">Very truly yours,

*[signature]*

Lino J. Sciarretta</div>

cc: Paul Schofield, Esq., Deputy Town Attorney (via email)
       Jose Simoes, Principal Planner (via email)