# EXHIBIT  SS

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND
----------------------------------------------------------x

ATERES BAIS YAAKOV ACADEMY OF
ROCKLAND

                        Plaintiff-Petitioner,

For a Judgment Pursuant to Articles 78            Index No.
And 30 of the Civil Practice Law                  Date Filed:
and Rules,

                  – against –

THE TOWN OF CLARKSTOWN, THE          **VERIFIED ARTICLE 78**
TOWN OF CLARKSTOWN ZONING            **PETITION & DECLARATORY**
BOARD OF APPEALS, and THE TOWN       **JUDGMENT COMPLAINT**
OF CLARKSTOWN BUILDING
DEPARTMENT

                      Defendants-Respondents,
----------------------------------------------------------x

      Plaintiff-Petitioner Ateres Bais Yaakov Academy of Rockland ("ABY"), by and through

its undersigned counsel, respectfully alleges as follows:

## PRELIMINARY STATEMENT

      1.     This is a hybrid Article 78 proceeding and declaratory judgment action brought

under Articles 78 and 30 of the CPLR to review the Town of Clarkstown Zoning Board of

Appeals' (the "ZBA") refusal to hear ABY's appeal of the Town of Clarkstown's Building

Department's ("the Building Department") erroneous decision denying ABY's request for a

building permit and in the alternative, its application for an area variance.  The ZBA's ruling was

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

arbitrary and capricious, unsupported by law and fact, and failed to provide reasonable

accommodation to the free exercise of religion.

2.      The ZBA's arbitrary and capricious ruling – in addition to the erroneous

determination of the Building Department – also constitute an interference with and deprivation

of ABY's constitutional and civil rights to the free exercise of religion.  New York State law,

including as expressed in several cases from the Appellate Division, Second Department,

requires the ZBA to reasonably accommodate free exercise.[1]  The ZBA (and the Building

Department) knowingly and intentionally interfered with that free exercise by refusing to make

any reasonable accommodation.  Also, by refusing to make any reasonable accommodation, the

ZBA (and the Building Department) placed a substantial burden on ABY's free exercise rights.

6.      Accordingly, ABY seeks a judgment: (1) Compelling the ZBA to hear

ABY's appeal of the Building Department's erroneous decision denying ABY's request for a

building permit and in the alternative, its application for an area variance; (2) Directing the ZBA,

---

[1] *See e.g.*, *East End Eruv Ass'n, Inc. v. Town of Southampton*, No. 14-21124, 2015 WL 4160461, at *6 (N.Y. Sup. Ct. Suffolk Cty. June 30, 2015) (concluding that "greater flexibility is required in evaluating an application for a religious use" and that zoning boards have "an affirmative duty . . . to suggest measures to accommodate the planned religious use (citation omitted)); *Smith v. Cmty. Bd. No. 14*, 128 Misc. 2d 944, 949 (N.Y. Sup. Ct. Queens Cty. 1985), *aff'd*, 133 A.D.2d 79 (2d Dep't 1987) (concluding that "New York courts have long recognized the principle of accommodation" and "have repeatedly held that by their very nature religious institutions are beneficial to the public welfare and consequently proposed religious uses should be accommodated"); *see also Westchester Reform Temple v. Brown*, 22 N.Y.2d 488, 492-97 (1968) (reversing Planning Commission's rejection of synagogue's expansion plan, concluding that "under the guise of reasonable regulation, [the Planning Commission], has unconstitutionally abridged religious freedom"); *St. Thomas Malankara Orthodox Church, Inc., Long Island v. Bd. of Appeals, Town of Hempstead*, 23 A.D.3d 666, 666–67 (2d Dep't 2005) (zoning board's denial of church's application to waive certain off-street parking requirements was "arbitrary, capricious and an abuse of discretion and was properly annulled" because board was required to recommend other alternatives to "accommodate proposed religious use while mitigating adverse effects on surrounding community to the greatest extent possible"); *Richmond v. City of New Rochelle Bd. of Appeals on Zoning*, 24 A.D.3d 782, 782–83 (2d Dep't 2005) (affirming grant of area variance, and holding that zoning board must make "every effort to accommodate [a] religious use" ); *Harrison Orthodox Minyan, Inc. v. Town Bd. of Harrison*, 159 A.D.2d 572, 572–73 (2d Dep't 1990) (a town board's unqualified denial of a special exception use permit was "arbitrary, capricious, and an abuse of discretion" where it did not make any attempts to accommodate religious use); *Jewish Reconstructionist Synagogue of the N. Shore, Inc. v. Levitan*, 41 A.D.2d 537, 538 (2d Dep't 1973), *aff'd*, 34 N.Y.2d 827 (1974) ("facilities for religious or educational uses are, by their very nature, clearly in furtherance of the public morals and general welfare; that different considerations apply to them; and that considerations which might properly control commercial structures may not control or even apply to religious structures" (citations omitted)).

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

upon that hearing, to find that a variance from Clarkstown Town Code § 290.20.I(7) is not required for use of a "school of general instruction" or, in the alternative, directing the ZBA to grant ABY's application for an area variance; (3) Alternatively, annulling and setting aside the Building Department's determination as contrary to law, arbitrary and capricious, invalid as applied to ABY, and in violation of ABY's constitutional right to the free exercise of their religion; (4) Compelling the Town of Clarkstown (the "Town") to produce all disclosable records responsive to ABY's Freedom of Information Law ("FOIL") requests within twenty (20) days of the Court's order, and awarding ABY attorney's fees incurred in obtaining the Town's belated compliance with its requests for records; and (5) Granting such other and further relief as this Court deems just and proper, including the costs and disbursements of this Proceeding pursuant to CPLR §§ 7806 and 8101.

## **PARTIES**

3.      Plaintiff-Petitioner ABY is a New York State chartered education corporation providing both secular and Jewish religious instruction to girls in grades pre-K through 12 since 2000. Previously, ABY was located at 236 Cherry Lane in the Village of Airmont. ABY currently occupies temporary quarters in the Village of New Hempstead (the "New Hempstead Property"). Those quarters are made up of two modular buildings comprised of manufactured modules. ABY's permit to remain at that site, having already been extended, expires at the conclusion of the 2019-20 school year, at which time the modular buildings must be removed. The permits cannot be renewed, as the Village of New Hempstead has repealed the local law that allowed the existing temporary use. As such, ABY has put the New Hempstead Property up for sale.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

4.     Rabbi Aaron Fink is the founder and Dean of ABY.  A graduate of Johns Hopkins University with a Masters Degree in Education and an alumnus of Ner Israel Rabbinical College, Rabbi Fink's vision for educational excellence and positive personal growth has left its mark on multiple communities in the United States.  He has been committed to children's education for over 38 years.  Rabbi Fink founded ABY in 2000.  ABY's mission is to provide academic excellence and personal development, crystalizing the potential of each student.  ABY girls graduate with distinction and a sense of purpose.  All a reflection of Rabbi Fink's vision.  A visionary and down to earth mentor, Rabbi Fink continues to teach and is an active lecturer, educational consultant and mentor.  He conducts workshops on the latest trends in education, building positivity in students and creating a climate conducive for spiritual and academic growth.

5.     Respondent Clarkstown is a municipality in Rockland County existing by virtue of the laws of the State of New York and is empowered to act through its governing body, its officials, employees, and official bodies.  It maintains its office and principle place of business at 10 Maple Avenue, New City, NY 10956.

6.     Respondent ZBA is the duly constituted zoning board of appeals of the Town, organized and existing pursuant to the laws of the State of New York. The ZBA is authorized by the Town to hear appeals from determinations of the Building Inspector, to interpret the Town Zoning Code, and to grant variances from the provisions of the Town Zoning Code.

7.     Respondent Building Department is a duly constituted agency of Town, organized and existing pursuant to the laws of the State of New York, charged, in part, with interpreting the Town Zoning Code (subject to review by Respondent ZBA) and issuing building permits and certificates of occupancy.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction to decide this Petition pursuant to CPLR

§ 7803(1) and § 7803(3) because the ZBA's denial to hear ABY's appeal and, in the alternative,

its application for an area variance, and the ZBA's failure to respond to ABY's FOIL request in a

timely manner, are final determinations made in violation of lawful procedure, affected by an

error of law, are arbitrary and capricious, and constitute a failure of this body to perform a duty

enjoined upon it by law.  This Court also has jurisdiction to render a declaratory judgment

pursuant to CPLR § 3001.

9.      This Court has personal jurisdiction over Plaintiffs pursuant to CPLR § 301.

10.      This Court has personal jurisdiction over Defendants pursuant to CPLR §

302(a)(1).

11.      Venue lies in Rockland County pursuant to CPLR § 506(b) and § 7804(b) because

it is where material events giving rise to this Proceeding took place.

## BACKGROUND

### I.      THE PROPERTY

12.      Grace Baptist Church of Nanuet ("GBC") is located at 20 Demarset Avenue,

Nanuet, New York (the "Property" or the "GBC Campus").

13.      The Property is located in an R-10 residential zoning district within the Nanuet

Hamlet Overlay District.  There are no specific regulations governing schools in this district.

14.      According to Table 1 of the Clarkstown Zoning Code, "schools of general

instruction" are permitted uses, as of right, in the R-10 district.  A "school of general instruction"

is defined by Town Code § 290-3 as "[a]ny public or private nursery, elementary, junior high,

high school or college offering courses in general instruction and accredited by the New York

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

State Education Department, offering courses at least five days per week and seven months per year."

15.    "School[]" is defined as "[a]ny public school under the jurisdiction of the Commissioner of Education of the State of New York; any parochial school operated and maintained by any religious corporation authorized to perform its corporate functions in the State of New York; or any school chartered by the Board of Regents of the University of the State of New York."

16.    "Nursery School" is defined as "[a] school designed to provide daytime care or instruction for two or more children from two to five years of age, inclusive, and operated on a regular basis."

17.    The only "schools" defined in Article 1 of the Town Code are "schools," "schools of general instruction," and "nursery school[s]." All three definitions apply to ABY. ABY is a "school" in that it is a "school chartered by the Board of Regents of the University of the State of New York." ABY is also a "school of general instruction" in that it meets the definition through its course offerings. ABY is also a "nursery school" in that it provides pre-K "instruction" for children "five years of age."

18.    The Property consists of the following tax lots: 64.09-1-47, 48, 50 and 51. It is generally bounded by the following roads: Demarest Avenue, Orchard Street, Highview Avenue, and Church Street. None of these roads is a "state or county major or secondary roads."

19.    In a sworn affidavit submitted by Rev. William French, pastor of the Grace Baptist Church, to the Building Department on December 26, 2018 in connection with ABY's application for a building permit (the "French Affidavit"), Pastor French chronicles GBC's history on the Property. *See* Ex. 1 to Ex. A.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

20.     According to Pastor French, since 1860, GBC has continuously and regularly conducted worship services of various Christian faiths and has provided religious education consistent with their Christian beliefs.  And, both religious and educational uses continue to this day.

21.     Pastor French also describes the buildings and additions that were constructed on the Property over the years.  He notes that "[t]he original 1860 building, housing the old sanctuary, still exists, and has been added to over time.  The first addition, initially used as an educational wing and now housing the nursery and library, was built in 1928.  The new educational wing was built in 1955.  The new sanctuary was added in 1965."

22.     As noted above, GBC built an educational wing in 1955, which it has used continuously ever since.  The building, which contains nine large classrooms and forty smaller classrooms within the large ones, was built specifically for a school use.  The building and the Property have continued to be used for educational and religious purposes by both GBC and other resident religious institutions.

23.     There is no dispute that a school use was permitted at its inception and for many decades thereafter: indeed, the certificate of occupancy, dated June 4, 1965, expressly references the following uses: "Church[es], Office[s], and Bible School[s]."

## II.     ENACTMENT OF LOCAL LAW NO. 5

24.     It was not until 2016 that Clarkstown adopted Local Law No. 5 of 2016 ("LL5"), which covered a number of matters relating to the Zoning Code of the Town.  LL5, attached hereto as Exhibit B, added Section 290-20.I(7) to the Zoning Code, which provides that in residential districts, "[a]ll uses other than single-family residences shall have minimum frontage of 100 feet and access to either a state or county major or secondary road as classified on the Town Official Map."

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)          INDEX NO. UNASSIGNED

NYSCEF DOC. NO.  Case 7:20-cv-01399-NSR   Document 1-46   Filed 02/18/20   Page 9 of 32   RECEIVED NYSCEF: 08/08/2019

25.     LL5 also added the following Note 48 to the Bulk Table: "These uses shall have minimum frontage of 100 feet and access to either a state or county major or secondary road as classified on the Town Official Map." The Uses to which Note 48 refers are, generally, all uses other than single-family dwellings in residential districts. However, in the relevant R-10 district, Note 48 applies ***only to two-family dwellings*** (Use Group N), but not to any other allowed uses (*e.g.*, Use Groups M [single-family residences] and O [all other uses]).

26.     As described in more detail below, the Town maintains that this provision now renders GBC's century and a half of continued use at the GBC Campus illegal.

27.     The enactment of LL5 came at a particularly inopportune time for GBC. Its membership was declining and it was having difficulty generating sufficient revenue to maintain its campus. GBC thus decided to sell.

28.     GBC attempted to sell to the Town of Clarkstown and the Nanuet Union Free School District ("Nanuet UFSD"), both of which are exempt from the restrictions of LL5. Neither attempted sale of the Property was successful. *Id.*

29.     ABY does not know why the Nanuet UFSD was interested in the site, but it does know the Town's intent. Upon information and belief, the Town intended to use the GBC Campus as a senior citizen center. It also sought to share the Property, and possibly the cost of purchase, with the Rockland County Sewer District No. 1 (the "Sewer District"). The Sewer District planned to use the GBC Campus for offices and as an education/training center—in other words, as a school.

30.     GBC then went to the open real estate market. It was able to attract only two serious prospects. The first was a Buddhist religious group, which intended to use the GBC

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)                    INDEX NO. UNASSIGNED

NYSCEF DOC. NO.    Case 7:20-cv-01399-NSR    Document 1-46    Filed 02/18/20    Page 10 of 32    08/08/2019

Campus for Buddhist religious worship services and education. That group decided not to go forward. The second was ABY.

31. The enactment of LL5 adversely impacts not only ABY, but also a number of existing private schools in Clarkstown, and prospective uses such as was contemplated by the Buddhist religious group. A map showing the locations of identifiable private and public schools in the Town and whether they are on a "state or county major or secondary road" indicates that, of eleven identified private schools, at least four are not located on eligible roads. *See* Ex. C. These schools include Rockland Christian School, St. Anthony School, and Blue Rock School. Under LL5, each of these schools would be severely restricted in their ability to sell their property if they chose to attempt to do so. And, if LL5's restrictions were to be applied to public schools, then eighteen of the twenty-one identified public schools in the Town would be on ineligible roads.

32. Immediately across Church Street from the GBC Campus is the Highview Elementary School, operated by the Nanuet UFSD. Further to the East along Church Street are two other schools operated by the Nanuet UFSD: A. MacArthur Barr Middle School and Nanuet High School. Because these schools are public schools, they are exempt from the restrictions of the Zoning Code. If any of them were to be sold to a private school, however, they would be automatically deemed unlawful and non-conforming.

## III. ABY ENTERS INTO A CONTRACT TO PURCHASE THE GBC CAMPUS, BUT FACES A FIRESTORM OF LOCAL OPPOSITION AND DISCRIMINATION

33. On October 17, 2018, ABY entered into a contract to purchase the GBC Campus.

34. News of ABY's interest in the Property did not sit well with many vocal members of the Nanuet community, Clarkstown residents in general, as well as political figures in the area, who have called ABY's move to Nanuet a "hostile invasion" and have opposed the sale ever

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

since.

35.    Unfortunately, since entering into a contract to purchase the GBC Campus, ABY has faced a vicious backlash of local opposition.  At raucous meetings and on social media, ABY has been told – in no uncertain terms – "*we don't want you*."[2]  In a post on its official Facebook page, a prominent community political group called ABY's move to Nanuet a "*hostile invasion*." (emphasis added)  *See* Ex. 3 to Ex. A.

36.    Pastor French has also been publicly criticized for daring to sell the Property to an Orthodox Jewish institution.  Representatives from ABY and GBC voluntarily appeared at a Town Board meeting on November 26, 2018, to try to assuage some of the community's concerns.  ABY explained that its curriculum was virtually identical to the curricula of other local religious schools such as Albertus Magnus High School and St. Anthony's Elementary School.  Three of ABY's accomplished graduates were introduced: the owner of a small business in the fashion industry, a pre-med student, and an MBA candidate.  While some residents were careful to couch their objections in terms of "increased traffic" (when in reality, ABY would use a total of eight buses, twice daily, plus some staff, and based even on post-LL5 zoning, a school could be on the other side of Demarest Avenue – an HC district – with the same traffic impact but no location restrictions), others could barely contain their hostility, shouting "*go away, we don't want you, go back to Ramapo*"[3] (emphasis added).  Therefore, any and all comments regarding "traffic" are total pretext.

37.    On November 27, 2018, at a Town Board Regular Meeting (minutes of which are

---

[2] SHOCKING FOOTAGE: Angry Residents Shout "We Don't Want You" at Rabbi Trying to Build Girls School in Nanuet – "That Was The Attitude in PITTSBURGH",
https://www.theyeshivaworld.com/news/general/1631889/shocking-footage-angry-residents-shout-we-dont-want-you-at-rabbi-trying-to-build-girls-school-in-nanuet-that-was-the-attitude-in-pittsburgh.html, at 2:34.

[33] *Id.*

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)     INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 6     Case 7:20-cv-01399-NSR     Document 1-46     Filed 02/18/20     Page 12 of 32     RECEIVED NYSCEF: 08/08/2019

attached hereto as Exhibit D), Supervisor George Hoehmann noted that the sale between ABY and GBC is a "private sale" and that it would be "illegal and inappropriate" for the Town to interfere, but that "there is definitely an interest in this property for Town usage and the school district is interested in the parking located there." Hoehmann then emphasized the potential zoning issues ABY would have to contend with, noting that ABY "must go through a process." He repeated that while "[t]he Town cannot interfere with a private property matter between two parties," the "Town will strongly enforce our zoning laws and our building code within the entire Town of Clarkstown." The audience roared in approval.

38. Public comments of Town residents included inappropriate questions about how Rabbi Fink was getting the money for the Property and rhetorical questions about what happens "[i]f this God-awful deal does go through" There were *ad hominum* statements about not wanting "Nanuet to turn into Ramapo [a neighboring town with a large Jewish community]," calls for the Town to "have worked harder" to purchase the Property," and allegations about water utilities and other issues at the New Hempstead Property (with one resident stating, "We are not a third world country"). Mixed among these attacks were questions about how the purchase would affect taxpayers, as well as traffic and congestion issues.

39. Joe Rand, Partner of RAND Commercial Realty, who represented GBC in this transaction, complained about the "anonymous threats" he received against him and his family for agreeing to sell to ABY.

40. Speaking on behalf of ABY, Rabbi Fink briefly described its mission statement and its students' academic achievements, and stated that he "looks forward to being our new neighbors" and "will be consulting with the School District and the Town to make this transition as successful as possible."

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    INDEX NO. UNASSIGNED

NYSCEF DOC. NO.  Case 7:20-cv-01399-NSR   Document 1-46   Filed 02/18/20   Page 13 of 32 NYSCEF: 08/08/2019

41.     In response, Supervisor Hoehmann stated, "[t]here are significant concerns that our public have and need to be addressed.  He understands that it is a personal sale, but would like to address some of the concerns of the public."  These "concerns" included, as noted above, how Rabbi Fink obtained the funds to purchase the Property, and why he did not pursue an available building in a neighboring municipality.

42.     Supervisor Hoehmann also stated at the meeting, "You have attested that you plan to buy, close, move in and operate.  This will NOT occur in the Town of Clarkstown without ALL approvals."  Rabbi Fink stated that "he expects to follow every aspect of the law in Clarkstown that pertain to Zoning Laws and Building Codes." *See* Ex. D.

43.     Supervisor Hoehmann concluded, "The Town will make sure that all laws, codes, variances, and enforcements are followed with specific uses. . . . We currently have three Code Enforcement Officers and we have a Deputy Town Attorney who has a career as a criminal Prosecutor from New York City. . . . ***We will issue search warrants if necessary***" (emphasis added).

44.     The local opposition also formed a citizens' group called "Citizens United to Protect Our Neighborhood," or "CUPON" of Greater Nanuet, for the express purpose of preventing ABY from operating its school.  CUPON established a Facebook page, held meetings at schools operated by the Nanuet UFSD, and hired counsel.  At a CUPON meeting, counsel for CUPON felt it necessary to tell its members that they had "adversaries," not "enemies," and that they should not operate on the basis of "hate."  But, he told the crowd, "If you can't get that hate out of your heart, then please keep your mouth shut."[4]

---

[4] A video of Stephen Mogel, Esq's presentation was posted to CUPON of Greater Nanuet's Facebook page at https://www.facebook.com/CTWTDWYTK/videos/2222326208086174, at 3:10.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 6    Case 7:20-cv-01399-NSR    Document 1-46    Filed 02/18/20    Page 14 of 32    RECEIVED NYSCEF: 08/08/2019

45.    On December 12, 2018, CUPON also started a "GoFundMe" campaign.  It has raised a total of $13,230 to date.  *See* Ex. E.  CUPON's very purpose, as per its fundraising page, which it has since updated, was to prevent ABY's purchase of the Property: "Nanuet has become united in its efforts to ensure that the sale of the Grace Baptist Church is one that makes sense for the town, its residents, and their children's future."  *See* Ex. 4 to Ex. A.  Indeed, CUPON created a petition on Change.org entitled, "Petition against Grace Baptist Church becoming a school." As of August 6, 2019, the petition has been signed by 4,820 people.  *See* Ex. F.

## IV.    ABY SUBMITS A PERMIT APPLICATION, WHICH THE BUILDING INSPECTOR DENIED

46.    Despite this hostile climate, ABY persisted.  On December 26, 2018, in conformance with the procedures of the Town's Building Department, which requires an updated Use Permit / Certificate of Occupancy any time a non-residential building changes hands, ABY submitted an application to the Building Department for a permit to make some needed improvements to the buildings (the "Building Permit Application").  The Building Permit Application, attached hereto as Exhibit 1 to Exhibit A, was accompanied by a description of ABY's proposed use of the Property, the sworn French Affidavit describing the history of the Property, and an opinion letter from ABY's land use counsel regarding the applicable law.

47.    On January 11, 2019, in apparent disregard of the French Affidavit, the Building Inspector denied the building permit (the "Denial Letter").  The Building Inspector summarily concluded that because the Building Department had no records of a New York State Fire Inspection on the Property since 1990, GBC's school use at the Property had ceased under Clarkstown Town Code section 290-29(C).  And, because the Building Inspector interpreted Clarkstown Town Code section 290-20.I(7) to create new use requirements – a determination

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.) INDEX NO. UNASSIGNED

NYSCEF DOC. NO. Case 7:20-cv-01399-NSR   Document 1-46   Filed 02/18/20   Page 15 of 32   RECEIVED NYSCEF: 08/08/2019

that is wholly erroneous and contrary to applicable law – he concluded that "[a] variance from the [ZBA] would be required for the use of the school of general instruction."

48.     Specifically, in his Denial Letter, attached hereto as Exhibit 2 to Exhibit A, the Building Inspector stated:

> 1. A variance from the Clarkstown Zoning Board of Appeals would be required for the use of the school of general instruction. Our records show the last required NY State Fire Safety inspection for a school of general instruction on this property was conducted on December 11, 1990. Clarkstown Town Code section 290-29C (non-conforming use) "Discontinuance of use. If active and continuous operations are not carried on with respect to a nonconforming use during a continuous period of one year, the building or land where such nonconforming use previously existed shall thereafter be occupied and used only for a conforming use." Clarkstown Town Code section 290-20I(7) additional regulations, All uses other than single family residences shall have minimum frontage of 100 feet and access to either a state or county major or secondary road as classified on the Town Official Map.

49.     The Building Inspector's decision was wrong for at least two reasons: *first*, Section 290-20.I(7) is a *bulk* requirement rather than a *use* requirement, and thus the "cessation of use" provision of § 290-29.C does not apply; and *second*, § 290-20.I(7) does not apply to schools in the R-10 Zoning District because the only Use Group to which this requirement applies consists **solely of two-family houses (i.e., not schools).**

### A.     § 290-20.I(7) is a *Bulk* Requirement, Not a *Use* Requirement

50.     Section 290-20.I(7), was added by LL5.  It is part of Article V ("Bulk Regulation") and contained in a larger section entitled, "Additional Bulk Regulations."  Among the other bulk regulations included in § 290-20 are: "Additional required yard regulations," bulk requirements for "Lots divided by district boundary" and "Lots within 25 feet of the boundary for a more restrictive district," "Courts," "Spacing of buildings," bulk requirements for multi-family residences ("MF") and active adult residential districts ("AAR"); bulk requirements for regional shopping districts ("RS"); and bulk requirements for home occupations, "keeping

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    INDEX NO. UNASSIGNED

NYSCEF DOC. NO.    Case 7:20-cv-01399-NSR    Document 1-46    Filed 02/18/20    Page 16 of 32    RECEIVED NYSCEF: 08/08/2019

domestic animals" and "[r]etail/commercial agriculture allowable operations" in residential districts.

51.     LL5 also added Note 48 to the *Bulk* Table, which provides: "These uses shall have minimum frontage of 100 feet and access to either a state or county major or secondary road as classified on the Town Official Map." Critically, however, the *Use* Tables, which were also amended by LL5, do not contain this provision.

52.     Moreover, by inserting a special provision applying this location restriction to *only one* specific type of use – loading docks for *dormitories*[5] – the drafters further evidenced their intent to make § 290-20.I(7) a *bulk* requirement rather than a *use* requirement. For these specific loading docks, "Ingress and egress roads shall be from a county major or secondary road. A variance from this provision shall be deemed a *use* variance" (emphasis added).

53.     In short, because § 290-20.I(7) is a *bulk* requirement, not a *use* requirement, the Building Inspector's reliance on § 290-29.C was improper and contrary to applicable law.

54.     § 290-29.C reads:

Discontinuance of *use*. If active and continuous operations are not carried on with respect to a nonconforming use during a continuous period of one year, the building or land where such nonconforming use previously existed shall thereafter be occupied and used only for a conforming use. Intent to resume active operations shall not affect the foregoing. (Emphasis added).

55.     This section stands in stark contrast to § 290-28, which reads:

Buildings with nonconforming *bulk*. Buildings with nonconforming bulk may receive routine maintenance or repairs and interior structural alteration. Relocation or enlargement is permitted, provided that no new nonconforming bulk is added to such building. "Nonconforming bulk" shall mean any portion of the building which is located within a required front, rear or side yard. Additional nonconforming bulk shall be deemed to occur if any additional floor area or projection into a required front, rear or side yard is proposed. In the event that a building with prior nonconforming bulk is damaged by casualty or voluntarily

---

[5] § 290-17.BB(8)(b)[1], enacted in LL5 of 2016, § 13.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

INDEX NO. UNASSIGNED

NYSCEF DOC. NO. Case 7:20-cv-01399-NSR   Document 1-46   Filed 02/18/20   Page 17 of 32   RECEIVED NYSCEF: 08/08/2019

demolished, any new or replacement construction shall be required to conform to the then existing general bulk regulations unless excepted by the provisions of § 290-29E.  In all cases involving reconstruction, alteration or enlargement, site plan approval, if required by § 290-31C, shall be obtained prior to the issuance of a building permit.  (Emphasis added).

56.    New York caselaw[6] illustrates the clear difference between a non-conforming *use* and a non-complying *bulk*.  While non-conforming uses may be lost as a result of cessation of use, such cessation has no impact on the *bulk* or dimensional requirements.

## B. § 290-20.I(7) Does *Not* Apply to Schools in the R-10 District

57.    The location requirement of § 290-20.I(7) is embodied in Note 48 to the Bulk Table.  The Use Groups to which Note 48 refers are, generally, all uses other than single-family dwellings in residential districts.  However, in the relevant R-10 district, Note 48 applies *only* to *two-family dwellings* (Use Group N), but not to any other allowed uses (*i.e.*, Use Groups M [single-family residences] and O [all other uses]).  Below is an excerpted copy of the Bulk Table.  Each of the Use Groups to which Note 48 applies is circled:

---

[6] *Matter of Route 17K Real Estate v. Town of Newburgh Zoning Board of Appeals, 168 A.D.3d 1065 (2d Dept 2019); Real Holding Corp. v. Lehigh*, 2 N.Y.3d 297, 299 (2004); *Dawson v. Zoning Board of Appeals of Southold*, 12 A.D.3d 444 (2d Dep't 2004); *Amzalak v. Inc. Village of Valley Stream*, 220 N.Y.S.2d 113, 114 (Sup. Ct., Nassau Cnty. 1961).

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    INDEX NO. UNASSIGNED

NYSCEF DOC. NO.    Case 7:20-cv-01399-NSR    Document 1-46    Filed 02/18/20    Page 18 of 32    RECEIVED NYSCEF: 08/08/2019

| 1 | 2 | 3 |
|---|---|---|
| **District** | **Group** | **For Uses Listed Below**<br>**(Uses herein refer in abbreviated form**<br>**to the uses listed in detail in**<br>**Use Table Cols. 2 and 3)** |
| R-160 | A | Single-family residences |
| | Ⓒ | All other uses for which standards are not otherwise specified<br>(See Note No. 48) |
| R-80 | A | Single-family residences |
| | Ⓒ | All other uses for which standards are not otherwise specified<br>(See Note No. 48) |
| R-40 | D | Single-family residences |
| | Ⓕ | Same as Group C<br>(See Note No. 48) |
| R-22 | G | Single-family residences |
| | Ⓘ | Same as Group C<br>(See Note No. 48) |
| R-15 | J | Single-family residences |
| | Ⓛ | Same as Group C<br>(See Note No. 48) |
| R-10 | M | Single-family residences |
| | Ⓝ | Two-family residence<br>(See Note No. 48) |
| | O | All other uses for which standards are not otherwise specified |

58.     As clearly depicted above, within the R-10 district, the text of LL5 expressly

applies Note 48 *only* to Use Group N (*i.e.*, "Two-family residences").

59.     Moreover, even assuming that Section 290-20.I(7) were applicable to Use Group

O in the R-10 district – and it is not – it would *still* not apply to the school use on the Property.

That is because, under Section 290-27 of the Town Code, non-conforming uses that ***were legal***

***when initiated*** may continue despite their subsequent non-conformity.  Here, as set forth above

and as detailed in the French Affidavit, the Property has been continuously used as a school (and

also a church and office) since at least 1860.  Indeed, its use as a school continues to this very

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)                    INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 1    Case 7:20-cv-01399-NSR    Document 1-46    Filed 02/18/20    Page 19 of 32    RECEIVED NYSCEF: 08/08/2019

day.  If the Building Inspector were correct about its interpretation, GBC would not be allowed to sell the Property to anyone except a government institution, such as the Town itself, which is interested in this Property.

## V.    ABY SUBMITS APPEAL AND APPLICATION FOR AN AREA VARIANCE TO THE ZBA

60.    On March 8, 2019, following denial of the Building Permit Application, ABY submitted an appeal to the ZBA, contending that  the Building Inspector's application of Section 290-20.I(7) and Note 48 to ABY was wholly improper and contrary to applicable law.  ABY also sought, in the alternative, an area variance from the requirements of that section, allowing the use of the GBC Campus as a school and house of worship without having frontage on, and access to, a "state or county major or secondary road."  ABY made clear that it currently has no plans to erect new buildings, add on to the existing buildings, or demolish the existing buildings.  It also currently has no plans to alter the existing parking area or street grid.  ABY explained that other than a few cosmetic changes and the removal of non-Jewish religious symbols, it wishes only to modify the interior to meet its educational needs.  The only change to the neighborhood will be the use of a school building and its accompanying sanctuaries by a Jewish entity, rather than a Christian one.

61.    Even though the appeal, attached hereto as Exhibit A, included all elements and documents required by the Clarkstown Town Code and the ZBA's own published rule, and set forth the various actual and legal arguments for why the ZBA should grant its application for an area variance, the ZBA declined to even schedule a hearing.  Instead, it responded on March 19, 2019 with a new requirement for ABY to submit a survey of the Property.  *See* Ex. G.  Such a survey was not required.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO.

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 08/08/2019

Case 7:20-cv-01399-NSR    Document 1-46    Filed 02/18/20    Page 20 of 32

62.     In a letter to the ZBA on April 4, 2019, ABY agreed to commission a survey at great expense, even though neither the Town Code nor the ZBA's published rules required one. *See* Ex. H.  On May 7, 2019, ABY submitted the survey to the ZBA.  *See* Ex. I.

## VI.    ABY FACES ADDITIONAL DISCRIMINATORY BACKLASH FOLLOWING ABY'S APPEAL TO THE ZBA

63.     On or around March 13, 2019, in the days immediately following ABY's appeal to the ZBA, ABY faced additional discriminatory backlash.  Certain residents took to social media to voice their hatred[7]:

- "***They are nothing but parasites!*** They don't want to follow the rules, ***they are disgusting!*** Unfortunately what [] said was pretty close to what will happen! They will hire lawyers for the ***cult*** and tirelessly drag it through the courts until they get the desired results! #monseycowboys #parasites #hopetheyallgetmeasles." (emphasis added)

- "You better before the[y] ***infest*** Pearl River! Good luck!" (emphasis added)

- "I was waiting for this.  What Rockland County needs is an awesome lawyer to argue before the Supreme Court that RLUIPA is unconstitutional. And we need that lawyer now."

- "Of course they are appealing.  Of course they blame the Nanuet community. Of course they hired RLUIPA lawyers.  Nanuet welcome to the game, you will be labeled anti-Semitic.  You will all be harassed and intimidated on social media, at your work place, and at public forums . . . ."

---

[7] Screenshots of these posts are attached hereto as Exhibit J.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

64.     In a Facebook post responding to a picture of the "For Sale" sign on the Property listing Paul Adler as the broker, one vocal resident wrote "pffft . . . the realtor's name says it all." *See* Ex. K.

## VII.   ABY IS UNABLE TO OBTAIN FINANCING AS A RESULT OF CLARKSTOWN'S DISCRIMINATORY CONDUCT; GBC CANCELS CONTRACT

65.     ABY had arrangements with a lender to finance ABY's purchase of the Property prior to the denial of the Building Permit Application.  Upon the denial of the Building Permit Application, however, the lender pulled out.  Moreover, because of the undue delay imposed by the ZBA in scheduling a hearing and ABY's resulting inability to obtain the permits required by the Building Department, ABY was unable to obtain alternative means of financing the acquisition of the Property.

66.     Ultimately, GBC terminated the contract on May 16, 2019, and filed a letter with the ZBA that same day "revok[ing] any consent to land use applications" relating to the Property. *See* Ex. L.

67.     On June 6, 2019, ABY filed a letter with the ZBA objecting to GBC's withdrawal of consent and urging the ZBA to schedule a hearing in the coming weeks.  ABY also stated its belief that the Town's interference was the direct cause of ABY losing its financing resources. *See* Ex. M.

68.     ABY attached to its letter a special memorandum of law concerning religious discrimination from its *pro bono* attorneys, which specifically focused upon how the Building Inspector's denial of its request for a building permit infringed upon ABY's religious liberties and was rife with invidious discrimination.  *See id.*

69.     ABY emphasized that the ZBA was still lawfully obligated to continue to hear ABY's appeal because declaratory relief on the misapplication of Town Code sections 290-29(C)

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

and 290-20.I(7) and/or grant of an area variance would necessarily bind those interested in purchasing the GBC Campus in the future (whether that be ABY or otherwise) and would also affect other properties to which these sections of the Town Code have been or will be similarly misapplied. ABY noted that this was especially true because the Town's own actions has conveniently left itself as one of the few, if not the only, likely purchasers of the Property. Indeed, recent press reports and statements made by Supervisor Hoehmann confirm that this is exactly what is happening.

70.     ABY further contended that its appeal and application for an area variance was not moot because the nature of the action is capable of repetition yet evading review. ABY argued that public policy should not incentivize towns to engage in delay and xenophobic tactics. Otherwise towns – as the Town of Clarkstown has done with respect to ABY – could delay proceedings and misapply their zoning ordinances at an early stage, create uncertainty in the marketplace, and cause relevant parties to lose their prospective or current property interests *before* exhausting their respective zoning appeals.

71.     ABY also emphasized that – as guaranteed by the First Amendment of the U.S. Constitution and Article I, Section 3 of the New York State Constitution – the ZBA was required to reasonably accommodate ABY's free exercise rights through its intended operation of a Jewish school on the Property. ABY also reminded the ZBA that if it places ABY on unequal terms with other applicants and/or substantially burdens ABY's religious exercise, it would subject the Town to potential violations of both the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

72.     The anti-Semitic rants from local residents continued. For example, one resident posted on Facebook:

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)     INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 2     Case 7:20-cv-01399-NSR     Document 1-46     Filed 02/18/20     Page 23 of 32     RECEIVED NYSCEF: 08/08/2019

- "We have laws and those laws protect the people from the ridiculous situation they have created!!!! Take a ride or research how many times these so called religious have been caught doing crimes or violating laws!!!! About time this happened and the law abiding citizens will not stand for any false lawsuit or pressure to have a ***religious phony school!!! Go back to Europe or whatever country your from!!!*** This is Native American land and the disrespect you see these stereotypes not just Hasidic but others coming here to take advantage its ridiculous and unacceptable!!!!"[8] (emphasis added)

73.     Utterly failing to understand the Town's affirmative duty to take steps to reasonably accommodate religious land use, Supervisor Hoehmann told the local press that "[w]e will continue to vigorously enforce our building and zoning codes irrespective of the background of the owner," and that ABY "was treated just like any other applicant."[9]

74.     On June 18, 2019 – nearly two weeks after ABY's submission to the ZBA – in a phone conversation regarding ABY's Freedom of Information Law request, ZBA Secretary Catherine Cirrone informed ABY's counsel that the ZBA had taken no further action with respect to ABY's appeal.

75.     On June 24, 2019, counsel submitted another letter to the ZBA addressing the ZBA's continuing efforts to inordinately delay ABY's appeal, and thereby allow a government entity to purchase the Property at a discount. *See* Ex. O.  ABY's letter reminded the ZBA that, in

---

[8] *See* Ex. N.

[9] Robert Brum, *Jewish academy alleges discrimination by Clarkstown in Grace Baptist application*, ROCKLAND/WESTCHESTER JOURNAL NEWS (June 7, 2019), https://www.lohud.com/story/news/local/rockland/nanuet/2019/06/07/jewish-school-alleges-discrimination-vs-clarkstown-grace-baptist-application/1370413001)

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)   INDEX NO. UNASSIGNED

NYSCEF DOC. NO.   Case 7:20-cv-01399-NSR   Document 1-46   Filed 02/18/20   Page 24 of 32   RECEIVED NYSCEF: 08/08/2019

addition to the ZBA's affirmative obligations to consider and reasonably accommodate the free exercise of religion, as set forth in ABY's special memorandum of law, undue delay, in and of itself, can be evidence of invidious discrimination.[10]  Counsel urged the ZBA to cease its delay, and review and respond to ABY's submission as expeditiously as possible.

## VIII. ZBA REFUSES TO HEAR ABY'S APPEAL AND APPLICATION FOR AN AREA VARIANCE AND THE TOWN BELATEDLY TRIES TO "FIX" THE GLARING DEFECTS IN ITS ZONING POSITION WITH INVIDIOUS INTENT

76.     On July 9, 2019, ABY received a letter from Wilson Elser Moskowitz Edelman & Decker LLP, the Town's outside counsel, indicating that the ZBA "will not entertain any appeal by [ABY] with respect to the [Property]," purportedly because "the contract for the sale of the property to [ABY] has been terminated and [ABY's] right to make any application to the Town concerning the property has been revoked."  *See* Ex. P.  The Town has thus taken the legally unsupportable position that ABY's appeal will ***not even be heard.***  This is not a valid legal basis to refuse to hold a hearing.

77.     The Town's efforts to quash ABY's purchase of the Property have continued unabated.  On July 25, 2019, the Town published legal notice of a proposed amendment to, among other provisions of the Town Code, section 290-20.I(7).  This latest proposed amendment is a transparent and discriminatory attempt to belatedly "fix" its zoning laws to address issues raised by ABY in its initial application.

78.     Specifically, the proposed amendment would, among other things, render each and every use in the affected residential districts, other than single family homes, as prior non-conforming *uses* unless they are located on a State or County major or secondary road.  And, any

---

[10] *See, e.g.*, *Fortress Bible Church v. Feiner*, 734 F. Supp. 2d 409, 503 (S.D.N.Y. 2010), *aff'd*, 694 F.3d 208 (2d Cir. 2012); *Westchester Day Sch. v. Vill. of Mamaroneck*, 417 F. Supp. 2d 477, 549 (S.D.N.Y. 2006), *aff'd*, 504 F.3d 338 (2d Cir. 2007); *Israelite Church of God in Jesus Christ, Inc. v. City of Hackensack*, No. 1 l-CV-5960 SRC, 2012 WL 3284054, at *2 (D.N.J. Aug. 10, 2012).

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

INDEX NO. UNASSIGNED

NYSCEF DOC. NO.   Case 7:20-cv-01399-NSR   Document 1-46   Filed 02/18/20   Page 25 of 32   RECEIVED NYSCEF: 08/08/2019

attempt to enlarge or expand these uses, including existing religious and educational uses – like the GBC Campus – will require a use variance.[11]  A copy of the proposed amendment is attached hereto as Exhibit Q.

79.     The effect of the foregoing is financially devastating to existing affected institutions. With the exception of relatively small buildings, it is financially impossible to convert a house of worship or school to a single family home.[12]

80.     It is also virtually impossible for any affected institution, whether new or existing, to meet the requirements for a use variance.

81.     Town Law § 267-b.2 provides the criteria for obtaining a use variance.  Each of the four criteria must be met:

> (b) No such use variance shall be granted by a board of appeals without a showing by the applicant that applicable zoning regulations and restrictions have caused unnecessary hardship. In order to prove such unnecessary hardship the applicant shall demonstrate to the board of appeals that for each and every permitted use under the zoning regulations for the particular district where the property is located, (1) the applicant cannot realize a reasonable return, provided that lack of return is substantial as demonstrated by competent financial evidence; (2) that the alleged hardship relating to the property in question is unique, and does not apply to a substantial portion of the district or neighborhood; (3) that the requested use variance, if granted, will not alter the essential character of the neighborhood; and (4) that the alleged hardship has not been self-created.

82.     It is settled law that a person or entity seeking to use a property for a use otherwise prohibited by the Zoning Code has created his/her/its own hardship and is therefore not eligible for a use variance.[13]

---

[11] The proposed amendment would also amend the Bulk Table so that Section 290-20.I(7) and Note 48, discussed above, would now specifically apply to Use Group O and potentially restrict ABY's proposed use of the Property. Notably, this is precisely the flaw in the zoning code that ABY pointed out in its appeal to the ZBA.

[12] See Exs. R-S for copies of two letters submitted to the Town Board on August 6, 2019 challenging the proposed amendment.

[13] *See Expressview Dev., Inc. v. Town of Gates Zoning Bd. of Appeals,* 147 A.D.3d 1427, 46 N.Y.S.3d 725 (4th Dep't 2017), 2 Salkin, New York Zoning Law and Practice (4th ed.) § 29:10.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

24

83.     The proposed amendment would thus make it exceedingly difficult, if not impossible, to locate a school or house of worship on the Property and severely restrict GBC's ability to sell.

## IX.     THE TOWN RENEWS ITS INTEREST IN PURCHASING THE GBC CAMPUS

84.     Following GBC's cancellation of its contract with ABY, the Town renewed its interest in purchasing the Property.

85.     On May 16, 2019, the Rockland/Westchester Journal News quoted Supervisor Hoehmann as expressly stating that "the [T]own has interest in the property and will evaluate its options in the coming weeks."[14]

86.     A few weeks later, Supervisor Hoehmann left no doubt about the Town's intentions: "I am excited about the prospects for the acquisition of Grace Baptist Church. . . . All options are on the table and I look forward to the involvement of the school district and potentially the private sector to create something unique for the benefit of all residents."[15]

87.     Despite these public statements, the Town Clerk remarkably responded to ABY's recent FOIL request – which requested all records and communications relating to the Town's current interest in the Property – by stating that "no such records exist."  On July 22, 2016, ABY submitted an appeal to Supervisor Hoehmann, challenging that determination.  *See* Ex. T.  Pursuant to Pursuant to FOIL § 89(4)(a)-(b), Supervisor Hoehmann had ten (10) business days to respond to ABY's FOIL appeal.  ABY has to date not received a further response.

---

[14] Robert Brum, *Nanuet: Grace Baptist Church terminates sale to Ateres Bais Yaacov*, ROCKLAND/WESTCHESTER JOURNAL NEWS (MAY 16, 2019), https://www.lohud.com/story/news/local/rockland/nanuet/2019/05/16/grace-baptist-church-terminates-sale-yeshiva-nanuet/3665127002.

[15] Robert Brum, *Nanuet: Town, school district exploring Grace Baptist Church purchase*, ROCKLAND/WESTCHESTER JOURNAL NEWS (June 4, 2019), https://www.lohud.com/story/news/local/rockland/nanuet/2019/06/04/nanuet-town-school-district-exploring-grace-baptist-church-purchase/1342961001.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

## FIRST CAUSE OF ACTION

### Request for Relief Under Article 78 of the CPLR

88.     ABY incorporates by reference the allegations set forth in ¶¶ 1-87 of this Petition as if fully set forth herein.

89.     The ZBA "failed to perform a duty enjoined upon it by law" by arbitrarily and capriciously denying to hear ABY's appeal and, in the alternative, its application for an area variance.  CPLR § 7803.

90.      In its brief to the ZBA, ABY demonstrated its standing to continue its appeal under well-settled New York caselaw.  By denying to hear ABY's appeal based solely on GBC's revocation of consent, the ZBA blatantly disregarded these well-established legal principles.

91.     The ZBA's determination was also contrary to law and arbitrary and capricious because it contravened established law on religious liberty: the United States Constitution requires governments to make reasonable accommodations for religious practice.  The Supreme Court has held that the Constitution does not "require complete separation of church and state; *it affirmatively mandates accommodation*, not merely tolerance, of all religions, and forbids hostility toward any."  *Lynch v. Donnelly*, 465 U.S. 668, 673 (1984) (emphasis added).

92.     The Second Department has also acknowledged a ZBA's affirmative obligation to accommodate religion.  *See Smith*, 128 Misc. 2d at 949 (concluding that "New York courts have long recognized the principle of accommodation" and "have repeatedly held that by their very nature religious institutions are beneficial to the public welfare and consequently proposed religious uses should be accommodated").  The ZBA, and the Building Department, have utterly failed to do so.

93.     Therefore, this Court should find that the ZBA was required to hear ABY's appeal, and should compel the ZBA to do so.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

## SECOND CAUSE OF ACTION

### Request for Declaratory Relief Under Article 78 of the CPLR

94.     ABY incorporates by reference the allegations set forth in ¶¶ 1-93 of this Petition as if fully set forth herein.

95.     The ZBA "failed to perform a duty enjoined upon it by law" when it did not, upon a hearing, overturn the Building Department's determination that was contrary to law, arbitrary and capricious.  CPLR § 7803(1).

96.     The Building Department's determination denying ABY's request for a building permit was contrary to law, arbitrary and capricious, and in violation of ABY's constitutional right to the free exercise of their religion.  CPLR § 7803(3).

97.     The Building Department failed to recognize that LL5 is a bulk requirement, not a use requirement, and so it does not apply to schools within the R-10 Zoning District, including ABY.

98.     Furthermore, the Building Department failed to recognize that LL5 does not apply to schools at all.

99.     Therefore, this Court should direct the ZBA to overturn the Building Department's determination and find that a variance from Clarkstown Town Code § 290.20.I(7) is not required for use of a "school of general instruction" or, in the alternative, direct the ZBA to grant Petitioner's application for an area variance.

## THIRD CAUSE OF ACTION

### Request for Declaratory Relief Under Article 30 of the CPLR

100.     ABY incorporates by reference the allegations set forth in ¶¶ 1-99 of this Petition as if fully set forth herein.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
INDEX NO. UNASSIGNED

NYSCEF DOC. NO. Case 7:20-cv-01399-NSR   Document 1-46   Filed 02/18/20   Page 29 of 32   RECEIVED NYSCEF: 08/08/2019

101.    The Building Department's determination denying ABY's request for a building permit was contrary to law, arbitrary and capricious, invalid as applied to ABY, and in violation of ABY's constitutional right to the free exercise of their religion.

102.    The Building Department failed to recognize that LL5 is a bulk requirement, not a use requirement, and so it does not apply to schools within the R-10 Zoning District, including ABY.

103.    Furthermore, the Building Department failed to recognize that LL5 does not apply to schools at all.

104.    Therefore, this Court should declare the Building Department's determination contrary to law, arbitrary and capricious, invalid as applied to ABY, and in violation of ABY's constitutional right to the free exercise of religion.

## FOURTH CAUSE OF ACTION

### Request for Relief Under Article of the CPLR

105.    ABY incorporates by reference the allegations set forth in ¶¶ 1-93 of this Petition as if fully set forth herein.

106.    The Town "failed to perform a duty enjoined upon it by law" by denying to hear ABY's FOIL appeal.  CPLR § 7803.  A Town is required to produce all disclosable documents responsive to a FOIL request for records.  The Town's failure to respond thus constituted a denial of access under FOIL § 89(4)(a)-(b).

107.    Pursuant to FOIL § 89(4)(c), ABY is also entitled to attorney's fees in obtaining the Town's compliance with its request for records.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)     INDEX NO. UNASSIGNED

NYSCEF DOC. NO. Case 7:20-cv-01399-NSR   Document 1-46   Filed 02/18/20   Page 30 of 32 RECEIVED NYSCEF: 08/08/2019

## RELIEF REQUESTED

WHEREFORE, Plaintiff-Petitioner requests that this Court enter an Order:

1.      As to the First Cause of Action, compelling the ZBA to hear ABY's appeal of the Building Department's erroneous decision denying ABY's request for a building permit and in the alternative, its application for an area variance;

2.      As to the Second Cause of Action, directing the ZBA, upon that hearing, to find that a variance from Clarkstown Town Code § 290.20.I(7) is not required for use of a "school of general instruction" or, in the alternative, directing the ZBA to grant ABY's application for an area variance;

3.      As to the Third Cause of Action, alternatively, annulling and setting aside the Building Department's determination as contrary to law, arbitrary and capricious, invalid as applied to ABY, and in violation of ABY's constitutional right to the free exercise of their religion;

4.      As to the Fourth Cause of Action, compelling the Town to produce all disclosable records responsive to ABY's FOIL requests within twenty (20) days of the Court's order, and awarding ABY attorney's fees incurred in obtaining the Town's belated compliance with its requests for records; and

5.      Granting such other and further relief as this Court deems just and proper, including the costs and disbursements of this Proceeding pursuant to CPLR §§ 7806 and 8101.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Dated: August 8, 2019

Respectfully submitted,

/s/ Yehudah L. Buchweitz
Yehudah L. Buchweitz
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8256
yehudah.buchweitz@weil.com

Robert G. Sugarman
David Yolkut
Kaela Dahan
Michael E. Nagelberg
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
robert.sugarman@weil.com
david.yolkut@weil.com
kaela.dahan@weil.com
michael.nagelberg@weil.com

*Counsel for Plaintiff-Petitioner*

IRA M. EMANUEL, P.C.
Ira M. Emanuel
Amy Mele
4 Laurel Road
New City, NY 10956
(845) 634-4141
ira@emanuellaw.com
amy@amymelelaw.com

*Of Counsel*

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
INDEX NO. UNASSIGNED

NYSCEF DOC. NO. Case 7:20-cv-01399-NSR   Document 1-46   Filed 02/18/20   Page 32 of 32 SCEF: 08/08/2019

## VERIFICATION

STATE OF NEW YORK      )
                              ) s.s.
COUNTY OF NEW YORK     )

Pursuant to C.P.L.R. section 3020, AARON FINK, being duly sworn, deposes and says as

follows:

     I am the founder and Dean of Plaintiff-Petitioner Ateres Bais Yaakov Academy of

Rockland in the within entitled action. I have read the foregoing petition and know the contents

thereof, and the same are true to my own knowledge, except as to the matters therein stated to be

alleged upon information and belief, and as to those matters I believe it to be true. The basis of

my belief is the books, files and records of the institution and documents filed with or by the

Town of Clarkstown and its other agencies, including the Town of Clarkstown Zoning Board of

Appeals and the Town of Clarkstown Building Department.

                                                  _____
                                                    Aaron Fink

Sworn to before me this 8th day

of August, 2019

_____

NOTARY PUBLIC

HARRIET FRIEDMAN
Notary Public, State of New York
No. 01FR4766014
Qualified in Rockland County
Commission Expires Feb. 28, 20 23

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.