# EXHIBIT TT

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND
--------------------------------------------------------------------- X
In the Matter of the Application of : Index No. SU-2019-34514
:
ATERES BAIS YAAKOV ACADEMY OF :
ROCKLAND, :
:
Petitioner, :
: AFFIRMATION OF
For a Judgment Pursuant to Article 78 of the : JOHN M. FLANNERY
Civil Practice Law and Rules, :
:
-against- :
:
THE TOWN OF CLARKSTOWN, THE TOWN OF :
CLARKSTOWN ZONING BOARD OF APPEALS, and THE :
TOWN OF CLARKSTOWN BUILDING DEPARTMENT, :
:
Respondents. :
--------------------------------------------------------------------- X

JOHN M. FLANNERY, an attorney duly admitted to practice law before the courts of the state of New York, hereby affirms, under penalty of perjury, as follows.

1. I am a member of Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, attorneys for respondents Town of Clarkstown (the "Town"), Town of Clarkstown Zoning Board of Appeals (the "ZBA"), and Town of Clarkstown Building Department (the "Building Department") (collectively, "Respondents") in the above-captioned hybrid proceeding. I submit this affirmation in support of Respondents' motion to dismiss the first three causes of action in the petition herein on grounds that petitioner Ateres Bais Yaakov Academy of Rockland ("ABY" or "Petitioner") lacks standing, and the fourth cause of action on the merits. I have knowledge of the facts set forth below based on my representation of Respondents in this case.

**Pertinent Facts and Procedural History**

2. The Grace Baptist Church of Nanuet ("GBC"), a New York religious corporation

with offices at 20 Demarest Avenue, is the owner of a parcel of real property known generally by the street addresses 22 Demarest Avenue, 24 Demarest Avenue, 26 Demarest Avenue, and 9 Highway Avenue, in Nanuet, New York (hereinafter, the "GBC Property").

3. The GBC Property is located within the Town's R-10 (Medium High Density Residence) Zoning District.

4. The GBC Property is surrounded by narrow, local streets and does not have frontage along or access to a state or county major or secondary road as classified on the Clarkstown Official Map.

5. In March 2016, the Town passed a local law (Local Law No. 5 of 2016), which added Section 290-20(I) to the Town's Zoning Ordinance. As relevant here, subsection (7) of Section 290-20(I) provides that within the R-10 district (and certain other residential districts not applicable here), "[a]ll uses other than single-family residences shall have minimum frontage of 100 feet and access to either a state or county major or secondary road as classified on the Town Official Map."

6. The legislative purpose of Local Law No. 5 is to preserve the residential character of the R-10 zoning district by restricting uses other than single-family residences to locations that abut and which have access to larger roads.

7. Local Law No. 5 added "Note 48" to the General Bulk Regulations, incorporated by reference in Section 290-11(b) of the Zoning Ordinance, and set forth in full in Attachment 31 to the Zoning Ordinance. Tracking the language of Section 290-20(I)(7), when Note 48 is made applicable to a particular use in a particular zoning district, such use "shall have minimum frontage of 100 feet and access to either a state or county major or secondary road as classified on the Town Official Map."

-2-

7897315v.1

8. As set forth on the Bulk Table (Attachment 31), Note 48 is applied within the R-10 Zoning District to Group N (two-family residences). However, an explicit reference to Note 48 was not made for Group O ("All other uses for which standards are not otherwise specified").[1]

9. On October 17, 2018 – 2.5 years after the enactment of Local Law No. 5 -- GBC entered into a contract for the purchase and sale of the GBC Property to Petitioner Ateres Bais Yaakov Academy of Rockland, a New York corporation with offices at 200 Summit Park Road, New Hempstead, NY 10977 (as defined above, "ABY" or "Petitioner"). A copy of the purchase and sale agreement (the "Agreement") is annexed hereto as **Exhibit A**.

10. Notably, ABY's obligation to purchase the GBC Property was not made contingent on ABY obtaining financing for the purchase price, and the Agreement was entered into on a "time is of the essence" basis. *See* Ex. A.

11. On December 26, 2018, ABY – at that point having the status as a contract vendee of the GBC Property – submitted an application concerning the property to the Building Department indicating as the proposed use: "house of worship and school." A copy of the Building Permit Application is annexed as **Exhibit B.** The application sought permission for occupancy of the GBC Property following "painting, minor repairs, fix signage, and additional repairs necessary for compliance with applicable fire and building codes." *Id.*

12. By letter dated January 11, 2019, the Clarkstown Building Inspector denied ABY's application. *See* **Exhibit C.**

13. In denying the application, the Building Inspector reviewed Town records which

---

[1] The omission of a reference to Note 48 in Group O in the R-10 district was an oversight, as the clear intent of Local Law No. 5 was to require that all structures, other than single family residences, would have at least 100 feet of frontage along and access to a either a state or county major or secondary road. On July 25, 2019, the Town published a proposed amendment to Section 290-20(I)(7) of the Zoning Ordinance to correct this oversight.

7897315v.1

established that the last New York State Fire Safety Inspection for a school of general instruction on the GBC Property was held on December 11, 1990, and thus concluded that the property's use as a school had lapsed for many years. Ex. C.

14. Under Section 290-29C of the Town's Zoning Ordinance, when a non-conforming use is discontinued for a period of more than one year, the building or land where such nonconforming use previously existed may only thereafter be occupied and used for a conforming use. *See* Clarkstown Zoning Ordinance, at §290-29C; *see also* Ex. C.

15. Because the GBC Property is not located with frontage along or access to a state or county major or secondary road, because the property's use as a school of general instruction had lapsed for more than one year, and because ABY had applied for permission to use the property for a use other than a single-family residence, its application was denied, subject to the issuance of a variance from the Clarkstown Zoning Board of Appeals (hereinafter "ZBA"). *See* Ex. C.

16. On March 8, 2019, ABY filed an appeal to the ZBA.

17. On March 19, 2019, the Clarkstown Building Inspector emailed counsel for ABY, Ira Emmanuel, Esq., informing him that ABY's appeal was incomplete as to form because it was missing a survey of the property.

18. ABY submitted the survey to the Building Department on May 7, 2019.

19. Meanwhile, after the closing of the agreement to purchase the GBC Property had been adjourned several times at the request of ABY, GBC eventually informed ABY that if the closing was not consummated on May 16, 2019, at 10:00 a.m., GBC would terminate the agreement.

20. ABY failed to appear at the closing on May 16, 2019.

21. Accordingly, by letter dated May 16, 2019, counsel for GBC informed ABY that

-4-

7897315v.1

the agreement had been terminated, and that ABY's down payment of $107,500, had been returned via wire transfer. See **Exhibit D**.

22. By letter dated May 16, 2019, a copy of which is annexed as **Exhibit E**, counsel for Grace Baptist Church then wrote to the Clarkstown Town Attorney stating that while GBC had "previously consented to the submission of various land use applications by [ABY]," the contract for sale of the GBC Property to ABY had been terminated, and accordingly, GBC "revoked any consent to land use applications relating to the [GBC P]roperty." Ex. E.

23. Because ABY no longer had any interest in the GBC Property, and having received a letter from the property's owner revoking permission for ABY to pursue any land use applications concerning the property, the ZBA took no action on ABY's appeal from the denial of its building permit application.

24. Meanwhile, on or about June 6, 2019, Ms. Kaela Dahan, of the law firm Weil, Gotschal & Manges, LLP, submitted a Freedom of Information Law (FOIL) request on behalf of ABY seeking Town records relating to a variety of topics, including (i) communications between Town Officials and GBC (or its attorneys or real estate broker) concerning the GBC Property; (ii) a statement of Supervisor George Hoehmann published by lohud.com regarding the Town's interest in purchasing the GBC Property; and (iii) copies of any documents relating to any agreement or letter of intent concerning a purchase of the GBC Property by the Town.

25. On or about July 5, 2019, the Town Clerk produced documents as required by FOIL in response to ABY's demand. However, with respect to the three topics outlined above, the Town's response indicated that "no such records exist."

26. By letter dated July 22, 2019, Ms. Dahan emailed an "appeal" to the Town Supervisor, stating "[f]rankly, I find the Town Clerk's response difficult to believe." A copy of

the "appeal" is annexed as **Exhibit F**.

27. The Town responded to the appeal on August 9, 2019, confirming that with respect to the categories at issue the requested documents did not exist. *See* **Exhibit G**.

28. ABY commenced the instant proceeding on August 8, 2019.

29. ABY's petition, a copy of which is annexed as **Exhibit H**, sets forth four causes of action. First, ABY alleges that the ZBA failed to perform a duty enjoined upon it by law by arbitrarily and capriciously denying ABY's appeal from the denial of its building permit application. Petition, at ¶¶89-93. Second, ABY alleges that the ZBA failed to perform a duty enjoined upon it by law when it did not, upon a hearing, overturn the Building Department's denial of its application. *Id.* at ¶¶94-99. Third, ZBA alleges that the Building Department's denial of its application was arbitrary and capricious, and in violation of ABY's constitutional right to the free exercise of religion. *Id.* at ¶¶100-104. Fourth, ABY alleges that the Town failed to perform a duty enjoined upon it by law by denying to hear ABY's FOIL appeal. *Id.* at ¶¶105-107.

30. As detailed in the argument below, ABY lacks standing to pursue the first three causes of action, and ABY's cause of action based on its FOIL demand fails on the merits.

## Argument

### POINT I

### ABY LACKS STANDING TO PURSUE THE FIRST THREE CAUSES OF ACTION IN THE PETITION

31. "The standing of a party to seek judicial review of a particular claim or controversy is a threshold matter which, once questioned, should ordinarily be resolved by the court before the merits are reached." *Hoston v. New York State Dep't of Health*, 203 A.D.2d 826, 827 (3d Dep't 1994), citing *Society of Plastics Indus. v. County of Suffolk*, 77 N.Y.2d 761, 769 (1991).

32. "The two-part test for the threshold legal requirement of standing to challenge

governmental action requires, first, an injury-in-fact and, second, that the injury 'falls within the zone of interests or concerns sought to be promoted or protected by the statutory provision.'" *In re Gym Door Repairs, Inc. v. New York City Dep't of Ed.,* 112 A.D.3d 1198, 1199 (3d Dep't 2013), quoting *New York State Ass'n of Nurse Anesthetists v. Novello,* 2 N.Y.3d 207, 211 (2004).

33. "The requirement that a petitioner's injury fall within the concerns [of] the statute ensures that a group or individual 'whose interests are only marginally related to, or even inconsistent with, the purposes of the statute cannot use the courts to further their own purposes at the expense of the statutory purposes.'" *Reisner v. Catone,* 33 Misc.3d 659, 665 (Sup. Ct. N.Y. Co. 2011), quoting *Matter of Transactive Corp. v. New York State Dep't of Social Serv.,* 92 N.Y.2d 579, 587 (1998).

34. "As the concept of standing has evolved, the 'zone of interest' test has developed into the primary test, focusing on whether the interest sought to be protected is within the concerns the Legislature sought to advance or protect by a statutory enactment." *In re LaSalle Ambulance, Inc. v. New York State Dep't of Health,* 245 A.D.2d 724, 724 (3d Dep't 1997).

35. Here, ABY's essential claim – expressed in the first, second and third causes of action -- is that after entering into the purchase and sale Agreement with Grace Baptist Church and thus having the status as a contract vendee ABY submitted an application for a building permit to perform certain repairs on the GBC Property; that its application was wrongfully denied; and that the ZBA then arbitrarily refused to hear its appeal from the denial.

36. With respect to this claim ABY fails both parts of the standing test.

37. First, ABY does have an injury in fact. The Agreement to sell the GBC Property was made on a "time is of the essence" basis. *See* Exhibit A. The Agreement was entered into on October 17, 2018 and the closing was contemplated on December 31, 2018. *Id.*

38. ABY requested several adjournments of the Closing Date, to which GBC agreed, but eventually GBC gave ABY a final deadline. *See* Ex. D. When ABY could not comply with that deadline, GBC terminated the agreement. *Id.*

39. GBC then promptly notified the Town that it was revoking its consent for ABY to pursue any land use applications with respect to the GBC Property. *See* Ex. E.

40. Having had a contract vendee relationship to the GBC Property, and having subsequently lost even that connection to the property, the denial of ABY's building permit application does not cause ABY an injury in fact. *See In re Violet Realty, Inc. v. County of Erie*, 158 A.D.3d 1316 (4th Dep't 2018) (party without title claim to property lacked standing to challenge an administrative decision removing access to parking facility). By contrast, where a party owns, or even has a leasehold interest, in property negatively affected by municipal zoning, such a party would satisfy the injury-in-fact element of the zoning test. *See In re Kucinski v. Zoning Board of Appeals of the Town of Dover*, 148 A.D.2d 612 (2d Dep't 1989) (party with leasehold interest in property had standing to challenge a zoning determination affecting a neighboring property).

41. Second, even assuming ABY suffered an injury-in-fact, it cannot satisfy the "zone of interests" portion of the standing test.

42. The statutory provision under which ABY's building permit application was denied is Section 290-20(I)(7) of the Town's Zoning Ordinance, which requires that in residential zoning districts, including the R-10 district, "[a]ll uses other than single-family residences shall have minimum frontage of 100 feet and access to either a state or county major or secondary road as classified on the Town Official Map."

43. As noted above, the legislative purpose of Section 290-20(I)(7), which was enacted

-8-

7897315v.1

by Local Law No. 5, is to preserve the residential character of the R-10 zoning district by restricting non-residential uses within the district to locations which abut and have access to larger roads. The interest sought to be protected and preserved by Local Law No. 5 is therefore the *residential character* of Clarkstown's residential neighborhoods.

44. Indeed, like many municipalities in the New York metropolitan area, Clarkstown has taken steps to fight against urban sprawl, to preserve open spaces, and to keep its residential neighborhoods free from the intrusion of activities that would entail increased vehicular activity and traffic. Local Law No. 5 is simply a legislative expression of that effort.

45. In *Park Manor Rehabilitation and Health Care Center, LLC,* 129 A.D.3d 1276 (3d Dep't 2015), the Court dismissed an Article 78 proceeding for lack of standing where the petitioner, a former owner of a nursing home, did not fall within the zone of interest created by the relevant statute. The relevant statute in *Park Manor* were provisions of the New York State Social Services Law that apply to reimbursement for medical expenditures under the Medicaid program. Analyzing those provisions, and finding that they only benefit current operators of nursing homes, the court held that petitioner, which had sold its interest and was no longer operating the nursing home in question, fell outside the zone of interest crated by the statute. *Id.* at 1277-1279.

46. In *Hoston v. New York State Dep't of Health,* 203 A.D.2d 826 (3d Dep't 1994), ministers and pastors of religious congregations in the Rochester area commenced an Article 78 proceeding challenging administrative action by the Department of Health which granted permission to Planned Parenthood to expand facilities providing abortion services. The court held that petitioner's stated concern – that an over-supply of abortion services would make it more difficult for them to counsel congregants concerning health care needs, *i.e.*, to recommend childbirth over abortion – did not fall within the zone of interests intended to be protected by

-9-

7897315v.1

Article 28 of the Public Health Law. *Id.* at 828.

47.     In *Reisner v. Catone,* 33 Misc.3d 659 (Sup. Ct. N.Y. Co. 2011), the petitioner, a psychologist, sought to have the New York State Office of Professional Discipline commence and pursue disciplinary proceedings against a non-party psychologist for the latter's role in interrogations taking place at the U.S. military based at Guantanamo Bay, Cuba. The court granted respondent's motion to dismiss for lack of standing finding, *inter alia,* that the purpose of the statute in question – provisions of the New York Education Law governing the licensing and discipline of psychologists – was to protect the welfare of patients seeking professional help, whereas the petitioner was pursuing a broader, political purpose. Accordingly, the court held that the petitioner did not fall within the zone of interests protected by the statute. *Id.* at 665.

48.     Here, the stated concern of ABY is to open a religious school. As in the cases discussed above, this concern does not fall within the zone of interests sought to be protected by Section 290-20(I) of the Clarkstown Zoning Ordinance, which was designed to protect and preserve the residential character of Clarkstown's residential neighborhoods by requiring uses other than single family residences to have frontage along and access to larger roads. *See Brighton Residents Against Violence to Children, Inc. v. MW Properties, LLC,* 304 A.D.2d 53 (4th Dep't 2003) (anti-abortion group's concern that adjacent landowners and their customers were threatened by potential violence outside of abortion clinic failed the zone of interest test because "stemming the threat of violence arising from abortion does not fall within the legitimate objections of local zoning and land use laws"); *see also Long Island Business Aviation Assoc., Inc. v. Town of Babylon,* 29 A.D.3d 794 (2d Dep't 2006) (petitioner failed to show that the interests it asserted were within the zone of interest protected by the zoning law at issue); *Rediker v. Zoning Bd. of Appeals of Town of Philipstown,* 280 A.D.2d 548, 550 (2d Dep't 2001) (land owner adjacent to

cellphone monopole the construction of which was authorized by challenged agency action lacked standing because he did not fall within the zone of interests to be protected by the relevant provisions of the Town code).

49. In contrast to the cases discussed above, property owners and residents have been found to fall within the zone of interests of zoning laws where they challenge the environmental impact of agency action approving development on adjacent or nearby land. *See Shinnecock Neighbors v. Town of Southampton,* 53 Misc.3d 874, 879 (Sup. Ct. Suffolk Co. 2016) (property owners challenging administrative action that would allegedly increase area noise and air pollution, and community degradation caused by new wastewater treatment plant, fell within zone of interests protected by the Town's zoning laws); *Davidson v. Board of Zoning Appeals of Inc. Village of Oyster Bay Cove,* 10 Misc.3d 1065(A) (Sup. Ct. Nassau Co. 2005) (the concern of a property owner challenging agency action on grounds that it would endanger the health, safety and welfare of the community of which he is a member, "falls clearly within the zone of interest protected by the zoning laws").

50. Here, of course, ABY is not a property owner or resident within the R-10 zoning district. But, even assuming it were, ABY is not asserting a concern protected by the statute in question because ABY is not attempting to protect the residential character of the area, but rather to bring a non-residential use within the district on a property which does not abut or have access to a state or county major or secondary road.

51. And because, as the Building Inspector determined, the previously-permitted use of the GBC Property as a school had discontinued for nearly thirty years, even assuming ABY had an ownership interest in the property, it could not claim protection from the Zoning ordinance by virtue of preexisting use, but rather would have to meet the ordinance, or not, based on a new

application of the law to ABY's proposed use.

52. Finally, to conclude that ABY has standing go forward with this Article 78 proceeding would be to allow a party with no property interest within the Town to challenge the Town's zoning scheme. There are simply no grounds, in policy or law, which would allow such an unprecedented interference with a municipality's inherent right to govern its own local affairs.

53. In sum, ABY cannot meet either part of the standing test and the first three causes of action in the petition must be dismissed for lack of standing.

## POINT II
### THE TOWN FULLY COMPLIED WITH ITS OBLIGATION UNDER FOIL

54. Article 6 of the New York Public Officers Law is known as the Freedom of Information Law ("FOIL"). Under FOIL, government agencies are generally required to "make available for public inspection and copying all records." N.Y. Pub. Officer Law §87(2) (McKinney's 2015). Subject to a series of exemptions not relevant here, in response to a FOIL request the government agency must either "provide a copy of such record and certify to the correctness of such copy if so requested, or as the case may be, shall certify that it does not have possession of such record or that such record cannot be found after diligent search." *Id.* at §89(3)(a). FOIL does not prescribe the precise manner in which the certification called for in Section 89(3)(a) should be made. *See Rattley v. New York City Police Dep't*, 96 N.Y.2d 873, 875 (2001).

55. As Section 89(3)(a) implies, and as courts have consistently held, the recipient of a FOIL demand "is under no obligation to furnish [the requesting party] with documents which [it] does not have." *Walsh v. Wasser*, 225 A.D.2d 911, 912 (3d Dep't 1996), citing *Matter of Adams v. Hirsch*, 182 A.D.2d 583 (1st Dep't 1992); *see also Chrysler v. Town of Newburgh Police Dep't*,

-12-

13 A.D.3d 368, 369 (2d Dep't 2004); *New York Assoc. of Homes and Servs. for the Aging, Inc. v. Novello*, 13 A.D.3d 958 (3d Dep't 2004).

56. Here, in response to ABY's FOIL demand, the Town produced documents as required and, with respect to items 1, 2 and 4 in the demand responded that "no such records exist." Ms. Dahan emailed an appeal stating that she found the response "difficult to believe." Ex. F. Notwithstanding this expression of opinion, the Town responded to the appeal, confirming that with respect to the items 1, 2 and 4 "the requested documents do not exist." Ex. G.[2]

57. The Town, like any municipal agency responding to a FOIL demand, is under no obligation to produce documents that it does not possess. The Town responded to the original demand, and the appeal, clearly stating that it did not possess documents responsive to the topics in question. Accordingly, the Town has fulfilled its obligation under FOIL, and the fourth cause of action should be dismissed.

### Conclusion

58. The petition should be dismissed.

Dated: White Plains, NY
September 6, 2019

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP
Attorneys for Respondents

*/s/ John M. Flannery*
John M. Flannery, Esq.

1133 Westchester Avenue
White Plains, NY 10604
(914) 323-7000

---

[2] It should be noted that even though the "appeal" was sent via email and not, as the Town requires, by first class mail, the Town responded to the Ms. Dahan's email. *See* Ex. G.