**EXHIBIT BBB**

Yehudah L. Buchweitz
Robert G. Sugarman
David Yolkut
Kaela Dahan
Michael E. Nagelberg
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

---

ATERES BAIS YAAKOV ACADEMY OF ROCKLAND,

        Petitioner,

-against-

THE TOWN OF CLARKSTOWN, THE TOWN OF CLARKSTOWN ZONING BOARD OF APPEALS, and THE TOWN OF CLARKSTOWN BUILDING DEPARTMENT,

        Respondents.

Index No. 034514/2019

Hon. Robert M. Berliner, J.S.C.

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PETITIONER'S FOURTH CAUSE OF ACTION OF ITS ARTICLE 78 PETITION**

## TABLE OF CONTENTS

Page

Preliminary Statement ...................................................................................................................1

Facts .............................................................................................................................................2

Argument .....................................................................................................................................2

    I.     The Town Failed to Provide or Unreasonably Delayed Providing Documents Required by Law .............................................................................2

    II.    ABY Properly Submitted Its Appeal, and the Town's Claim that It Did Not Receive the Appeal is Nonsense ..................................................................8

    III.   ABY Has Stated a Claim upon Which Relief Can Be Granted, and the Town's Admission of Its Failure to Respond within the Statutory Time, and Its Denial of Records Without Reasonable Basis, Entitle ABY to Attorneys' Fees ..........................................................................................10

Conclusion ................................................................................................................................11

## PRELIMINARY STATEMENT

The essence of Respondents' (collectively, the "Town") answer and memorandum of law[1] is the representation that the Town has provided all responsive documents to Petitioner ABY's Freedom of Information Law demands in a timely and lawful manner, and thus ABY's Fourth Cause of Action should be dismissed. As demonstrated below, that contention is contrary to fact and law. Documents belatedly provided by the Town – *only after* ABY filed its Article 78 Petition (the "Petition") – unequivocally prove that the Town failed to fulfill its obligation to search for and locate responsive documents, failed to produce several responsive documents, and unreasonably delayed in disclosing several others. These egregious omissions and delays demonstrate that the Town simply cannot be taken at its word. The Town's arguments should be rejected accordingly.

*First*, the Town cites a long string of cases supporting the uncontroversial notion that a recipient of a FOIL demand need not furnish documents that "do not exist," a position ABY has never contested. However, since the filing of the Petition, the Town has provided documents *clearly responsive* to ABY's initial FOIL demand, after initially relying on the same refrain that those records likewise "do not exist." Those documents, in turn, reference other responsive documents that also should have been timely provided to ABY, but were not. The Town has thus itself provided overwhelming evidence that other documents pertaining to ABY's FOIL demand do in fact exist and have been unlawfully withheld, entitling ABY to attorneys' fees and creating a triable issue of fact as to the sufficiency of the Town's compliance with FOIL and as to whether additional responsive documents have been unlawfully withheld.

---

[1] All references to "Answer" herein shall refer to the Town's Verified Answer, NYSCEF No. 48. All references to "Memo" herein shall refer to the Town's Memorandum of Law, NYSCEF No. 54.

1

*Second*, in attempting to excuse their egregious violation of FOIL, the Town makes the bad-faith argument that ABY purportedly did not properly submit its July 22, 2019 FOIL appeal (the "Appeal"). Nonsense. In fact, ABY's email submission was proper and lawful, and in any event, the Town clearly received the Appeal. It was thus required, but failed, to respond within ten (10) days.

*Third*, in engaging in their circuitous and flawed statutory arguments, the Town actually admits that it was late in responding to the Appeal, further entitling ABY to attorneys' fees.

## FACTS

ABY reasserts all facts pertaining to the FOIL demands and responses in its Petition. Since the filing of its Petition, ABY submitted another FOIL demand to the Town on October 13, 2019, requesting the purchase and sale agreement between Grace Baptist Church ("GBC") and the Town and any related documents.[2] On November 13, 2019, the Town provided ABY with the signed offer from Supervisor George Hoehmann to Patrick Loftus with respect to the Property, and noted that additional documents would be provided. *See* Ex. 2. On December 4, 2019, the Town provided ABY with the executed purchase and sale agreement between GBC and the Town, and several emails pertaining to the negotiation and details of the sale, **some of which were dated prior to ABY's initial FOIL demand of June 6, 2019**.

## ARGUMENT

**I.    THE TOWN FAILED TO PROVIDE OR UNREASONABLY DELAYED PROVIDING DOCUMENTS REQUIRED BY LAW**

The Town disingenuously claims it has "incontrovertible documentary evidence demonstrating" its compliance with FOIL. Memo at 4. Of course, the Town can only make this

---

[2] *See* Affirmation of Kaela Dahan, ¶ 2 (Ex. 1). All subsequent numbered exhibit references are to those exhibits described in the Dahan Affirmation.

2

claim due to its own unreasonable and unlawful withholding of documentary evidence. If an agency is allowed to summarily deny a FOIL demand without even a cursory, let alone thorough, investigation, and then rely on its blunderbuss denials as its documentary evidence to dismiss an appeal, the agency is essentially insulated from the public's demands. This is the very opposite of the "free society" in which the "government is the public's business" that is FOIL's purpose.[3] On that basis alone, and as a matter of policy, the Court should reject the Town's "documentary evidence" argument.

But even beyond these policy considerations, documents that the Town provided to ABY in response to subsequent FOIL demands incontrovertibly show that the Town was simply not telling the truth about the supposed "nonexistence" of records responsive to ABY's FOIL demand. These documents, described below, wholly undermine the entire veracity of the Town's FOIL responses, and create a triable issue of fact as to whether the Town has indeed produced all required records.

On June 6, 2019, ABY properly submitted a FOIL demand to Supervisor Hoehmann requesting the following:

> Any and all records, written, electronic or otherwise, of the Town of Clarkstown relating to
>
> (A) the purchase and sale of all or a portion of that certain parcel of land currently owned by Grace Baptist Church of Nanuet located at 22 Demarest Ave, 24 Demarest Ave, 26 Demarest Ave and 9 Highview Ave, Nanuet, NY, including but not limited to:
>
>> (1) records of communications between the Town of Clarkstown or any of its representatives or agents and any other party, including Grace Baptist Church of Nanuet and its officers and directors, including Pastor William French, Patrick Loftus, Esq., Rand Realty or Paul Adler, Esq.,

---

[3] N.Y. Pub. Officer's Law §84 (McKinney's 2020).

3

(2) records relating to the statement of Clarkstown Town Supervisor George Hoehmann as quoted on lohud.com, May 16, 2019, regarding the Town's interest in the property and evaluating its options with respect thereto,

(3) copies of minutes and tape recordings of all meetings of the Town Board or other committee or subcommittee at which the sale of the property, or the Town's interest in the same, was discussed and

(4) copies of any offers, term sheets, letters of intent or agreements, whether formal or informal, binding or non-binding, submitted or received by the Town regarding the purchase of such property, in each case including but not limited to the time period between October 17th, 2018 through May 16, 2019,

(B) a list of applications by any school or religious institution to the Clarkstown Building Department for permits, use variances or area variances within the last 5 years together with the decisions issued by the Town with respect thereto (including a list of applications that were not ultimately heard at a meeting of the Zoning Board of Appeals due to incomplete submissions or applications otherwise terminated) and

(C) requirements of the Clarkstown Zoning Board of Appeal for applicants to submit a survey (or other supporting documentation not required by the Zoning Code) together with applications. If the documents are capable of being scanned or provided in electronic form, please email the records to Kaela.Dahan@weil.com.

Answer Ex. A (spacing added).

On July 5, 2019, the Town responded to requests (A)(1), (A)(2), and (A)(4), stating that "[n]o records exist." Answer Ex. B. On July 22, 2019, ABY submitted an appeal to Supervisor Hoehmann, stating that it found the Town's denial of responsive records "difficult to believe" based on published news articles discussing the Town's interest in the GBC property (the "Property"). Answer Ex. D. After the Town continued stonewalling, ABY submitted another FOIL demand on October 13, 2019, this time requesting the purchase and sale agreement between GBC and the Town and related documents. Ex. 1. On November 13, 2019, the Town provided ABY with a mere 12 pages of documents related to the sale, including the purchase offer for the Property signed by Supervisor Hoehmann on September 25, 2019. Ex. 2.

On December 4, 2019, **nearly six months** after ABY's initial FOIL demand seeking documents related to the Town's interest in the Property, and *over four* months since it claimed

4

that "no records exist," the Town finally provided ABY with some additional documents. The response included three emails related to the Property sent by Paul Adler, GBC's real estate broker, on June 5, 2019 and June 6, 2019 to various Town representatives. These emails demonstrate that the Town indeed had multiple records related to its interest in the purchase and sale of the Property, which were directly responsive to ABY's June 6, 2019 FOIL demand. They demonstrate, among other things, that the Town was actually engaged in active conversations with GBC about the Property during and around the time of the June 6, 2019 FOIL demand, and yet unlawfully withheld those records from ABY for *six months*. Troublingly, had ABY not submitted an additional FOIL demand and filed for Article 78 relief, the Town would have likely continued to withhold these documents.

The first document is a June 5, 2019 email from Paul Adler to Supervisor Hoehmann, Paul Schofield (Deputy Town Attorney), and Susan Resnick (Town employee), attaching, among other things, the cancelled contract between ABY and GBC. Mr. Adler states that "these documents will be helpful to your appraiser in determining the market value," and references (i) ABY's proposed purchase price, (ii) the amount that would be increased if the parsonage adjacent to the Property would have been included in the sale, and (iii) the resulting "firm sales price of $4.9m." Ex. 3.

The second email, also from June 5, 2019, is another email from Mr. Adler to Mr. Schofield and Supervisor Hoehmann, among other recipients, attaching a "Title Report" for the Property intended for Schofield's "review and use." Ex. 4.

The third email, from June 6, 2019, is from Mr. Adler to Supervisor Hoehmann, Mr. Schofield, and Ms. Resnick, and discusses "an effort to assist the Town of Clarkstown & Nanuet

5

School District in their due diligence deliberations," and attaches "an inspection report for the Grace Baptist Church which might be helpful and instructive." Ex. 5.

Each of these emails falls squarely under requests (A)(1) and (A)(2) of ABY's June 6, 2019 FOIL demand, as they are records of communications between Town representatives and Mr. Adler, who is *explicitly* referenced in the FOIL demand, and relates to the sale and purchase of the Property, including the Town's interest in and efforts towards purchasing the Property for itself. *See* Answer Ex. A.[4]

Nor can these records possibly constitute the entirety of responsive documents. On their face, these emails reference and were a part of larger conversations and exchanges between representatives of the Town and GBC regarding the Town's proposed purchase of the Property that, to date, **still have not been provided to ABY**. For example, when Mr. Adler discusses the

---

[4] Furthermore, the Town should have documents that respond to section (B) of ABY's June 6, 2019 demand despite the Town's disingenuous response that "[t]he Town of Clarkstown does not maintain records in the manner and categories as contemplated by [y]our request." Answer Ex. B. In May 2017, St. Peter's Syro-Malankara Catholic Church of Rockland submitted a proposal to construct a two-story building in the Town. *See* Michael D'Onofrio, *New Clarkstown law may sink Catholic church plan*, LOHUD (May 5, 2017), https://www.lohud.com/story/news/local/rockland/clarkstown/2017/05/05/clarkstown-catholic-church-overdevelopment/101194558. Additionally, in February 2018, Ramah Day Camp in Nyack submitted an application seeking permission to use its summer staff house year-round. *See Jewish Theological Ctr. & Ramah Day Camp in Nyack v. Town of Clarkstown*, No. 032265/2019, slip op. (N.Y. Sup. Ct., Rockland Cty. Jan. 7, 2020). All documents pertaining to these submissions fall under section (B) of ABY's FOIL demand and also should have been produced. Notably, these examples are only the ones we have been able to find from the outside, and from what we understand, these applications were both rejected by the Town. There also appeared to be potential buyers from the Chung Tai Chan Monastery and Concilio Iglesia Dios Pentecostal, *see* Exs. 4-5 (title report and inspection report prepared for each entity), but no records related to either were produced. Notably, the Town appears to have scared off at least two earlier potential buyers with its incorrect assertions regarding what the property can be used for. *See* Answer Ex. B (referring to two prior buyers who "backed out" after meeting with the Town "to learn about potential usage of the property"). At the very least, the existence of such documents creates a triable issue of fact as to the sufficiency of the Town's record-keeping policies and FOIL compliance procedures.

"market price for the assemblage" as compared to the value of ABY's contract with GBC, he is clearly justifying an increase in the purchase price from the ABY contract that the Town must have previously questioned or attempted to negotiate down. Ex. 3. And, when Mr. Adler references assisting the Town in its "due diligence deliberations," he strongly implies that such deliberations, and communications related to those deliberations, had already occurred. Ex. 5. In other words, ABY continues to find it "hard to believe" that all documents responsive to its demands have been disclosed.

Finally, the minutes of the November 27, 2018 Town Board meeting explicitly state that, as far back as November 26, 2018, the Town had already expressed interest in the Property. Answer Ex. B. On that day, Supervisor Hoehmann met with GBC and the Nanuet School District about a potential sale of the Property. As those minutes attest, "[t]he Town was interested in the land and solicited a qualified appraiser of the property." *Id*. The appraisal in 2018, and any other documents related to the Town's interest at that time – which surely exist – are also responsive to ABY's June 6, 2019 FOIL demand and must be provided by the Town.

At bottom, these emails and minutes provide "incontrovertible documentary evidence" that the Town unlawfully withheld documents responsive to ABY's June 6, 2019 FOIL demand. They also directly refute the Town's cavalier insistence that "[n]o records exist." Answer Ex. B. In light of these records, any such claims are simply incredible, and the Town cannot be trusted. "When an agency has the ability to retrieve or extract a record or data maintained in a computer storage system with *reasonable effort*, it shall be required to do so." N.Y. Pub. Officer's Law §89(3)(a) (McKinney's 2020). (emphasis added). Furthermore, FOIL demands that the agency conduct a "diligent search" before certifying that "it does not have possession" of a record or document. *Id*. The Town cannot state in good faith that it expended a "reasonable effort" or

conducted a "diligent search" in responding to ABY's FOIL demand when it failed to locate emails that fall squarely within the bounds of the demand. The Town undoubtedly has access to the work emails of Supervisor Hoehmann, Mr. Schofield, and Ms. Resnick, who received these emails in their capacities as employees of the Town, and these emails should have been discovered and disclosed immediately upon an even cursory review. Yet, based on information contained in the electronic footers and headers of the documents in the Town's response on December 4, 2019, it is clear that the Town's production derived solely from Mr. Schofield's email files (and no one else from the Town). Because the face of these emails reflect that Mr. Schofield (or his designee) did not print these emails out until December 4, 2019, the Town's production was clearly incomplete, belated, irresponsible, and inexcusable. *See* Ex. 6 (including several emails, all from Mr. Schofield's account, all printed on December 4, 2019 between 12:34 PM and 3:22 PM, including a break from 1:03 PM to 2:06 PM).

Alternatively, if there really are no other documents responsive to ABY's FOIL demand (beyond the documents that the Town belatedly produced), then there is a serious and substantial question as to whether the Town destroyed documents despite a duty to preserve them in light of ABY's pending appeal to the ZBA during that time. In any event, ABY is entitled to all such documents to the extent they exist, and is entitled to attorneys' fees for the unreasonable delay in disclosure. Additionally, the lateness and carelessness prevalent in the Town's responses create a triable issue of fact as to whether ABY has received all documents to which it is entitled.

## II. ABY PROPERLY SUBMITTED ITS APPEAL, AND THE TOWN'S CLAIM THAT IT DID NOT RECEIVE THE APPEAL IS NONSENSE

Contrary to the Town's assertions, ABY properly submitted its Appeal via email. As an initial matter, the FOIL statute itself *favors* electronic submission: "All entities shall, provided such entity has reasonable means available, accept requests for records submitted in the form of

8

electronic mail and shall respond to such requests by electronic mail…provided that the written requests do not seek a response in some other form." N.Y. Pub. Officer's Law §89(3)(b) (McKinney's 2020). Moreover, "[e]ach state agency…that maintains a website shall ensure its website provides for the online submission of a request for records pursuant to this article." *Id.* at §89(3)(c). In fact, the Town has a website, which, notably, ABY utilized to submit its June 6, 2019 FOIL demand.[5] Clearly, then, the Town has "reasonable means available" to receive appeals in electronic form. The only discretion provided by the statute to deviate from electronic submission is provided to the requester (i.e., ABY), and not the recipient (i.e., the Town). In all events, this argument is a canard, since it is uncontested that Supervisor Hoehmann received the Appeal through his official Town email.[6] Consequently, ABY's Appeal, submitted via electronic mail as conceded by the Town[7] and as preferred by statute, was proper, regardless of any "requirement" the Town claims to have to the contrary. Memo at 5.

Furthermore, a review of the "form application for FOIL requests" that the Town claims sets forth a "requirement"[8] to submit the appeal via regular mail or delivery, reveals that no such requirement actually exists. The form states as follows: "Notice: You have a right to appeal a denial of this application within thirty days of the date of denial to the head of this agency." *Id.* ABY did just that—it emailed the Appeal within thirty days to Supervisor Hoehmann. The form

---

[5] *See* Town of Clarkstown, *FOIL Requests* (2017), https://town.clarkstown.ny.us/cms/one.aspx?pageId=10665723 (last visited Jan. 24, 2020).

[6] The Town's argument concerning a typo in the zip code in the address block of the Appeal, Answer ¶ 124, is absurd and meaningless; as the Town admits, the Appeal was never sent by letter, nor did it need to be.

[7] *See* Memo at 5.

[8] Answer Ex. C.

9

then lists Supervisor Hoehmann as the correct point of contact, and provides his business address and business phone number. Nowhere does the form say that notice is to be provided by first class mail or delivery to the address listed, as the Town now speciously claims. Answer ¶ 124.

Lastly, because Supervisor Hoehmann did in fact receive the Appeal on July 22, 2019, *see* Ex. 7, he then had 10 business days to respond to the Appeal by either "fully explain[ing] in writing to the person requesting the record the reasons for further denial, or provid[ing] access to the record sought." N.Y. Pub. Officer's Law §89(4)(a) (McKinney's 2020). Despite receipt of the Appeal and knowledge of these requirements, the Town has conceded that it "fail[ed]…to conform to the provisions of [the statute]." Memo at 5.

### III. ABY HAS STATED A CLAIM UPON WHICH RELIEF CAN BE GRANTED, AND THE TOWN'S ADMISSION OF ITS FAILURE TO RESPOND WITHIN THE STATUTORY TIME, AND ITS DENIAL OF RECORDS WITHOUT REASONABLE BASIS, ENTITLE ABY TO ATTORNEYS' FEES

In light of its admitted failure to conform to the requirements of the FOIL statute, the Town's arguments for dismissal are difficult to understand. The Town argues that "the Town's failure to respond within ten business day [sic] *does not constitute a denial* of the obligation to hear ABY's FOIL appeal because, as a matter of law, the failure of the Town to conform to the provisions of [the statute]… *shall constitute a denial* of the appeal." Answer ¶ 126 (citations omitted) (emphasis added). While it remains unclear if the Town wishes to assert that its failure to respond did or did not constitute a denial, such denial would in no way impact the relief which ABY clearly and properly requested from the Court in its Petition, and to which it is entitled as a matter of law.

In its Petition, ABY stated that "a Town is required to produce all disclosable documents responsive to a FOIL request for records," that "the Town's failure to respond thus constituted a denial of access under FOIL §89(4)(a)-(b)," and requested that the Court compel the Town "to

10

produce all disclosable records responsive to ABY's FOIL requests…" and award "ABY attorney's fees incurred in obtaining the Town's belated compliance with its requests for records." Petition ¶¶ 106–107, 4 at 28 – 29. Contrary to the Town's misleading arguments, ABY requested precisely the type of relief statutorily contemplated by bringing an Article 78 Proceeding: "[A] person denied access to a record in an appeal determination . . . may bring a proceeding for review of such denial pursuant to article seventy-eight of the civil practice law and rules." N.Y. Pub. Officer's Law §89(4)(b) (McKinney's 2020). ABY's request for attorneys' fees was similarly soundly based in the statute. ABY requests both a mandatory award of attorneys' fees upon its showing that the Town "had no reasonable basis for denying access," *see* N.Y. Pub. Officer's Law §89(4)(c)(ii) (McKinney's 2020), as explained in Section I, or, in the alternative, the discretionary award of attorneys' upon its showing, and upon the Town's admission, that the Town "failed to respond to a request or appeal within the statutory time." *See* N.Y. Pub. Officer's Law §89(4)(c)(i) (McKinney's 2020).

## CONCLUSION

For these reasons, ABY respectfully requests that the Court grant the relief requested in the Fourth Cause of Action of its Petition.

Dated:  New York, New York
        January 24, 2020

/s/ Yehudah L. Buchweitz
Yehudah L. Buchweitz
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone (212) 310-8000
Facsimile (212) 310-8007
yehudah.buchweitz@weil.com

Robert G. Sugarman
David Yolkut
Kaela Dahan
Michael E. Nagelberg

11

WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000
robert.sugarman@weil.com
david.yolkut@weil.com
kaela.dahan@weil.com
michael.nagelberg@weil.com