# EXHIBIT DDD

**Weil, Gotshal & Manges LLP**

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

January 14, 2020

Mr. John Flannery
Wilson Elser Moskowitz Edelman & Dicker LLP
1133 Westchester Ave.
White Plains, NY 10604

Re:   Ateres Bais Yaakov Academy of Rockland

Dear Counsel,

As you know, we represent Ateres Bais Yaakov Academy of Rockland ("ABY") in its ongoing litigation against Clarkstown (the "Town") concerning ABY's sabotaged purchase of the Grace Baptist Church (the "Property"). Please provide this letter to the Town Supervisor, Town Attorney and Town Board, as well as the Town's insurance carrier. If you do not confirm you have shared it, we will do a FOIL request to them to confirm it has been provided to the Town.

In a letter dated November 6, 2019 (attached hereto as Exhibit A), we put the Town on notice that ABY is prepared to vindicate its constitutional and federal rights through all appropriate venues. To date, we have received no response to that letter. We now follow up to inform you that we intend to intervene in Grace Baptist Church's recent application for approval to sell the Property to the Town. Concurrently, as you know, we have filed an appeal of the Supreme Court of Rockland County's recent decision in its Article 78 proceeding against the Town. In addition, in the near term, we intend to seek redress for the Town's and its officials' violations in federal court – seeking compensatory as well as punitive damages and attorneys' fees – and have recently drafted a complaint to that effect, which we intend to file in the near term unless we can reach a settlement in a timely fashion.

Our complaint will allege that the actions of the Town, the Clarkstown Building Department (the "Building Department"), and the Clarkstown Zoning Board of Appeals (the "ZBA") (collectively, the "Governmental Defendants") with respect to ABY violated the federal Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*. Additionally, in interfering with and depriving ABY of its rights to the free exercise of its religion, the Town and certain of its officials – including Supervisor George Hoehmann –coordinated its actions with a citizens' group called "Citizens United to Protect Our Neighborhood," or CUPON of Greater Nanuet ("CUPON"), which was formed

**Weil, Gotshal & Manges LLP**

January 14, 2020
Page 2

for the express purpose of preventing ABY from operating its school in the Town. In this regard, we intend to file claims against the Governmental Defendants and CUPON, as well as Supervisor Hoehmann in his individual capacity, for conspiring with invidious, discriminatory animus toward ABY to deprive ABY of equal protection of laws or equal privileges and immunities, in violation of 42 U.S.C. § 1985. Additionally, we intend to file claims against the Governmental Defendants and Supervisor Hoehmann for acting under color of State Law to deprive ABY of its rights, privileges or immunities secured by the Constitution and the laws of the United States in violation of 42 U.S.C. § 1983. We also intend to file claims against all defendants for tortiously interfering with ABY's contract to purchase the Property, including but not limited to organizing and conspiring to prevent the sale, denying ABY's permit and variance applications, and refusing to consider ABY's appeal. The purpose of this egregious interference was twofold: (1) to prevent ABY from establishing a religious school in the Town; and (2) to eliminate all viable purchasers other than the Town, thus cornering the market for the Property.

The Town's actions to obstruct ABY from purchasing the Property in order to establish a religious girl's school blatantly violated RLUIPA and ABY's right to be treated on equal terms. Just shortly after ABY entered into a contract to purchase the Property, Supervisor Hoehmann revealed the Town's intention of burdening the religious school by stating at a November 27, 2018 Town Board Meeting that while "[t]he Town cannot interfere with a private property matter between two parties," the "Town will strongly enforce our zoning laws and our building code within the entire Town of Clarkstown." Supervisor Hoehmann went on to add that ABY's purchase would "NOT occur in the Town of Clarkstown without ALL approvals," and that in enforcing its zoning code, the Town would "**issue search warrants if necessary**" (emphasis added).

Sticking to his word, the Town made ABY jump through multiple hoops before it ultimately crippled ABY's chances of purchasing the Property. First, the Town denied ABY a permit in a determination that was wholly erroneous and contrary to applicable law – a contention that was effectively conceded with the Town's subsequent attempt (and failure) to amend its zoning code to align with its desired misapplication. Shortly thereafter, when ABY submitted an appeal to the ZBA, the ZBA inexplicably declined to even schedule a hearing – despite ABY conforming to the ZBA's own rules – and placed on ABY the additional burden of submitting a survey of the Property – a requirement that was both unnecessary and with which ABY complied at great expense.

These stall tactics were all part of the Town's calculated plan to prevent ABY from closing on the Property. ABY had already secured a letter of intent from a bank to finance its purchase of the Property. Additionally, ABY awaited approval from the Rockland Economic Assistance Corporation ("REAC") on a public assistance package, which the REAC had already preliminarily transferred to ABY. Thus ABY stood on firm ground to close on the purchase of the Property as planned. However, in the wake of fierce public opposition manufactured by CUPON and other defendants, the REAC cancelled its public hearing. Furthermore, the bank revoked its letter of intent as a direct result of the Building Department denying ABY's building permit application. Any chance of ABY obtaining alternative financing was demolished by the ZBA's continued refusal to schedule a hearing. As the Town knew

**Weil, Gotshal & Manges LLP**

January 14, 2020
Page 3

very well, obtaining financing for a school it would not allow was an all but impossible task, and to strike the very last blow, Supervisor Hoehmann expressed the Town's continued interested in purchasing the property just as ABY's revoked financing caused the deal to crumble.

Any chance of the Town masking its thinly veiled discriminatory administration of its zoning laws was obliterated when Supervisor Hoehmann met with CUPON, a group that, upon its establishment, created a petition on Change.org entitled, "Petition against Grace Baptist Church becoming a school." Indeed, social media posts confirm that Supervisor Hoehmann and other Town officials were present for a January 10, 2019 CUPON meeting, at which the attendees participated in a "2 hour presentation that focused on how the community can protect themselves from a **hostile invasion**" (emphasis added). Moreover, on May 30, 2019, CUPON announced on its official Facebook page an upcoming meeting in which Supervisor Hoehmann would "update [CUPON] on Town activities," thus further illustrating the Town's ongoing coordination with CUPON to deprive ABY of its constitutionally guaranteed rights.

The Town then culminated its campaign to forestall ABY's efforts by entering into a contract to purchase the Property *for itself* – notably, for the same "commercial" purpose the Town and CUPON decried in connection with ABY's purchase of the Property. At Town Board meetings, the Superintendent of the Nanuet Union Free School District and various individuals from CUPON expressed "concern" that ABY would increase traffic in the neighborhood – a wholly unsupported concern given ABY's moderate size and offer to work with the Town to alter its school hours. Additionally, in multiple court filings, the Town has contended that the "legislative purpose" of Local Law No. 5 ("LL5") was to "preserve the residential character" of the Town by "restricting non-residential uses." Yet the Town now intends to use the Property for "a community center, meeting facility, parking and similar uses," as noted in a Short Environmental Assessment Form filed with the Town's SEQRA application. While the Town has long conceded that this is a "commercial" use, it also claimed that it is a "permitted use under the zoning regulations" and is "consistent with the predominant character of the existing built or natural landscape." In other words, the Town seeks to hold itself to a different standard, whereby a commercial community center and meeting facility with a large parking lot is a "permitted use" that is "consistent with" the residential nature of the neighborhood, but a religious school is not.

Nor is this even the first time that the Town has misused the law to burden a religious institution. At least one other test of this new law came when a handful of families of the minority Syro-Malankara religious community applied to build a church on land it purchased for that very purpose only a couple years before the enactment of LL5. The Town's Building Inspector denied the permit and the ZBA denied the petition for a variance, leading to the Syro-Malankaras conceding and selling their property to the Town. In announcing the purchase, Supervisor Hoehmann said keeping the Syro-Malankaras from building a tiny church with a single weekend mass was a "**bold step**" for "**protecting** the **quality of life** our residents demand and **deserve**" (emphasis added). It does not appear the Syro-Malankara community survived this xenophobic dispossession.

**Weil, Gotshal & Manges LLP**

January 14, 2020
Page 4

That the Town has used LL5 to target religious minorities is unsurprising given the law's facially dubious motives. As proof of the Town's discriminatory intent in passing the law, LL5 added to the zoning code a new school definition—schools of general instruction—which are defined as those schools accredited by the New York State Education Department. Such schools are permitted as of right in most residential districts, whereas unaccredited schools – classically religious schools – are not permitted in any residential district. In fact, only a few months ago, the Building Department raised this very provision as an obstacle for a proposed religious elementary school that otherwise complies with building requirements but does not have state accreditation. Additionally, LL5 requires non-single family residences in residential districts to have a minimum frontage of 100 feet and access to either a state or county major or secondary road, but this is a pretext to discriminate because **86%** of the Town's **own** public schools would fail this requirement. Thus, the Town has cleverly exempted its public schools from satisfying a requirement that it pretends is for safety and welfare, but in reality is just used to keep religious schools from opening.

Thus, the very enactment of LL5 facially restricts religious schools and treats them on unequal terms, and the Town's enforcement of LL5 has placed a substantial burden on the free exercise of religion.

ABY intends to seek all damages available, including punitive damages. The damages sustained by ABY are severe. For example, as a result of the Town's discriminatory attempt to prevent ABY from purchasing the Property, ABY has had to secure temporary locations to hold classes and host school events for the 2019-2020 school year, and will have to do the same for 2020-2021. ABY was also not able to pay off substantial loans that it would have been able to pay off upon the sale of its current New Hempstead property. Further, as a direct result of the Town preventing ABY from expanding into larger and more permanent facilities, ABY lost students and the opportunity to enroll many more students. Additionally, ABY was forced by the Town to incur substantial fees, including for an expensive survey of GBC, for which there was no legal requirement, advice on its bond, and legal fees. Accordingly, as a remedy for the Town's unlawful discrimination, ABY plans to seek in excess of $10 million against the Governmental Defendants, CUPON, and Supervisor Hoehmann.

At bottom, ABY has suffered severe financial hardship as a direct result of the Town's egregious and discriminatory actions, in addition to and separate from the irreparable and incalculable damages of invidious discrimination. In this current climate, we will not stand idly by as the Town and its officials conspire to target an Orthodox-Jewish religious school. However, we are willing to work together with all parties to come to a settlement that would resolve all our claims and court actions, including the planned federal case, the Second Department appeal, and the application to intervene in the sale approval of Grace Baptist Church, in a manner that serves both the Town's and our client's interests in continuing to operate as a school for the benefit of the community. Please let us know by no later than the close of business on January 21, 2020, in writing, whether you will agree to explore alternative means of resolution; otherwise, we will have no choice but to continue to seek relief in the courts. We look forward to working together with the Town to resolve this issue amicably. Please do not hesitate to contact me directly.

**Weil, Gotshal & Manges LLP**

January 14, 2020
Page 5

Sincerely,

Yehudah Buchweitz

# EXHIBIT A

[Letter from ABY to Town of Nov. 6, 2019

Found at Exhibit WW]